Earl Crago #115357
Name and Prisoner/Booking Number

Arizona State Prison Complex Eyman, Unit SMU I
Place of Confinement

PO Box 4000
Mailing Address

Florence, AZ, 85326
City, State, Zip Code

(Failure to notify the Court of your change of address may result in dismissal of this action.)

```
    FILED      ___ LODGED
___ RECEIVED   ___ COPY

      JUN 2 1 2019

  CLERK U S DISTRICT COURT
      DISTRICT OF ARIZONA
  BY_____ DEPUTY
```

THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING TO FEDERAL AND/OR LOCAL RULES AND PRACTICES AND IS SUBJECT TO REJECTION BY THE COURT.
REFERENCE  G.O. 14-17
                 (Rule Number/Section)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Earl Felton Crago
(Full Name of Plaintiff)

Plaintiff,

v.

(1) Joseph Pitz, Deputy Warden
(Full Name of Defendant)

(2) _____,

(3) _____,

(4) _____,

Defendant(s).

☐ Check if there are additional Defendants and attach page 1-A listing them.

CASE NO. CV-19-04532-PHX-ROS--ESW
(To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT
BY A PRISONER**

JURY TRIAL DEMANDED
☒ Original Complaint
☐ First Amended Complaint
☐ Second Amended Complaint

## A. JURISDICTION

1. This Court has jurisdiction over this action pursuant to:
   ☒ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
   ☐ 28 U.S.C. § 1331; *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).
   ☐ Other: _____.

2. Institution/city where violation occurred: ASPC-LEWIS, Unit Buckley / Buckeye, Arizona 85326.

Revised 3/11/16                               1                                **550/555**

## B. DEFENDANTS

1. Name of first Defendant: __Joseph Pitz_____. The first Defendant is employed as: __Deputy Warden_____ at __ASPC-Lewis, Unit Buckley_____.
   (Position and Title)                                      (Institution)

2. Name of second Defendant: _____. The second Defendant is employed as:
as: _____ at _____.
   (Position and Title)                                      (Institution)

3. Name of third Defendant: _____. The third Defendant is employed
as: _____ at _____.
   (Position and Title)                                      (Institution)

4. Name of fourth Defendant: _____. The fourth Defendant is employed
as: _____ at _____.
   (Position and Title)                                      (Institution)

If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner?      ☒ Yes      ☐ No

2. If yes, how many lawsuits have you filed? __Unsure__.  Describe the previous lawsuits:

   a. First prior lawsuit:
      1. Parties: __Earl F. Crago_____ v. __Wayne Mooney, et al._____
      2. Court and case number: __U.S.D.C.-Arizona, Case No. 17-0513-PHX-ROS (ESW)__.
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) __Settled after close of settlement conference for $1300.00_____.

   b. Second prior lawsuit:
      1. Parties: __Earl F. Crago_____ v. __Schriro, et al._____
      2. Court and case number: __USDC-Arizona, Case No. 06-443-PHX-EHC (JRI)__.
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) __Settled after close of settlement conference for fees plus $1000.00, total $2000.00__.

   c. Third prior lawsuit: __There are more but I do not have access to them._____
      1. Parties: _____ v. _____
      2. Court and case number: _____.
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) _____

If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.

2

### D. CAUSE OF ACTION

### COUNT I

1. State the constitutional or other federal civil right that was violated: U.S. Const., Amend. VIII, as defined by Farmer v. Brennan, 511 U.S. 825 (1994); Helling v. McKinney, 509 U.S. 25 (1993).

2. **Count I.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
   - ☒ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count I. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   In 2018, at ASPC-Lewis, Unit Buckley, the inmate ("I/M") population discovered they could disable the locks on the doors by sliding plastic into the locks. Over a period of time all the doors on the yard no longer locked. There is also a chronic shortage of staff so that there are usually only two staff members to run recreation, feeding, showers, medical, and programming turnouts for 400 inmates. This leaves the pods unmonitored for 3 to 5 hour stretches of time. In late 2018 there was a serious staff assault in building (bldg) 4 in which two staff members were assaulted for a long time by 20-40 inmates due to there being no staff on the yard to help them and all of the doors being unlocked/broken. After the staff assault Deputy Warden Pitz ("Pitz") held a series of townhall meetings, which are group discussions, with inmates that Pitz chose because they had influence over other inmates on the unit. Plaintiff ("Crago") was one of the inmates present at the town hall meetings from November 2018 through May 2019. Pitz told the inmates that he needed them to make the rest of the inmates on the yard stop coming out of their cells. If the inmates present would do this then Pitz would give them job preferences and priviliges.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

   I suffered multiple injuries to my person resulting in extreme physical pain and mental anxiety, I was prevented from seeking medical attention, I was given false disciplinary tickets, I was placed into Maximum custody isolation.

5. **Administrative Remedies:**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?   ☒ Yes   ☐ No
   b. Did you submit a request for administrative relief on Count I?   ☒ Yes   ☐ No
   c. Did you appeal your request for relief on Count I to the highest level?   ☐ Yes   ☒ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. See facts at Count One, supra.

3

Inmates asked Pitz what would happen if they had to assault inmates to make them stay in their cells, because most inmates would not stay in their cells just because another inmate told them to. Pitz said he would make sure they didn't get disciplinary tickets for forcing inmates to stay in their cells.

Inmates asked what type of priviliges would they get for doing what Pitz was asking them to do. Pitz said he would give them jobs, he would reinstate phone and visitation priviliges for those who had lost them for drug related tickets, he would increase recreation turnouts from 3 times per week to 6 times per week, he would allow them to house with their own race, he would bring I/m Cheatham back to the yard (Cheatham was taken off the yard for being caught with 2 ounces of heroin and a I-Phone 9 then fighting with guards and breaking out several windows. The drugs on the yard had dried up after Cheatham was taken off the yard). Most of the inmates agreed, Pitz did everything he promised including bringing Cheatham back to the yard. Hundreds of inmate assaults followed.

Crago was one of the few inmates who refused Pitz's offer. Crago filed a informal complaint to begin exhausting the grievance remedies so that he could file a civil rights complaint against Pitz.

Pitz brought the informal complaint to Crago and asked Crago if he filed it, Crago said yes. Crago then asked Pitz why didn't he simply fix the door locks and have more staff assigned to the yard, or at least stop taking staff from the yard to do searches at other units. Pitz said there's no money in the budget to cover the cost of fixing the doors, and there's a staff shortage state wide.

3 A

Pitz then told Crago not to file anymore paperwork on the issue and left. Crago read the Prison Litigation Reform Act and decided he had to at least attempt to exhaust the grievance process, so he submitted a formal grievance to Seargeant Fink. In late January 2019, I/M Auturo Florez, ADC# 270746, was allowed to exit bldg 1 on the Buckley Blue Yard and pass through two security fences to enter Buckley Red Yard then entered into bldg 3 where Crago was being housed in 3-D-19. Crago was then made to go into the 3-C/D hallway where there are no security cameras. Florez then attacked Crago causing numerous cuts, abrasions, and bruises to Crago's head, face, and body. After assaulting Crago, Florez told Crago that Pitz said not to file anymore paperwork and asked Crago if he understood, Crago asked Florez what Pitz was giving him for assaulting Crago. Florez replied Pitz gave him a job and gave back his visits and phone priviliges. Florez then told Crago if he went to medical he'd be assaulted again. Crago went back to his cell. I/M Steve Antrobus #064479, who was Pitz's administrative clerk, came to Crago's cell and told Crago Pitz said that if Crago didn't stop trying to file paperwork Pitz would send bigger meaner inmates to assault Crago again. Antrobus then taped close the gashes in Crago's left eyebrow and forehead.

    On February 8, 2019, Crago was given a disciplinary ticket for mail that unknown persons sent to the prison addressed to Crago. The mail allegedly had two cell phones in it. Crago told the disciplinary hearing officer (DHO) that he had no control over what was mailed to the prison by people outside of the prison

3 B

The fact that the mail never made it into the unit where Crago was housed and that no attempt was made to hide the phones from discovery by the prison guards who open and inspect all incoming mail should be proof enough that Crago had nothing to do with it. The DHO told Crago that Pitz told the DHO to find Crago guilty. Crago told the DHO he did everything Pitz told him to do why was he still harrassing Crago.

Crago appealed the ticket and wrote an inmate letter to the complex warden Berry Larson telling him the doorlocks were broken and Crago could show them how to fix them if they would give him a parole recomendation after the fix was proven to work. Following the submission of this inmate letter inmate Barnette from cell 3-D-23 opened Crago's cell door (3-D-19) and told Crago CO3 Robinson wanted Crago to go to her office, this was not uncommon because Barnette acted as CO3 Robinson's clerk.

Crago followed Barnette into the 3 C/D hallway. Barnette pulled a weapon that looked like a crude ice pick out of his pocket and began trying to stab Crago. Crago was stabbed in the right index finger, left hand twice between thumb and index finger, left wrist and left middle finger, right bicep. Crago grabbed Barnette's hand and pushed it away from Crago causing the weapon to stab Barnette in the left eye. Barnette ran to medical and was taken to the hospital, he is now blind in the left eye. No staff came to investigate. Barnette was placed back into cell 3-D-23. Crago asked Barnette why he attacked Crago. Barnette said he was caught with drugs by CO2 Law and CO2 Henderson. Pitz told Barnette to

attack Crago if he wanted to keep working for CO 3 Robinson and not be sent to Max Custody. Barnette then told Crago that Pitz said to stop pushing paper work on the doorlocks. Shortly after this altercation Pitz had Crago moved to 3-A-2 with an inmate of a different race. Pitz then had Crago put on report. A guard said he found a phone in Crago's cell. Crago told the DHO his cell had never been searched. The DHO asked if Crago wanted to appeal it. Crago said no and told the DHO to tell Pitz Crago would not push anymore paperwork on the doorlocks.

In April 2019, CO 3 Robinson told Crago that attorney Holly Gieszl was trying to schedule a legal call. Shortly after that in April 2019, I/M Eric Samson attacked Crago in the 3 A/B hallway. Other inmates pulled Samson off of Crago and held him while Crago questioned him. Samson told Crago he had been caught on Buckley Blue Yard with (2) ounces of heroin. Pitz approached Samson and told him he would reinstate his visit and phone priviliges and make sure criminal charges were not filed for the heroin if Samson attacked Crago and told him not to talk to Holly Gieszl.

On April 31, 2019, Holly Gieszl held an attorney client visit with Crago at Buckley Unit. On May 1, 2019, Pitz had Crago brought up to the administration building. Pitz asked Crago what he said to the attorney. Crago said he didn't say anything about Pitz to the attorney. Pitz told Crago he didn't believe him and that nobody would believe Crago. On May 2, 2019, Crago was transferred to Rast Max Custody. On May 3, 2019, Crago was transferred to SMU Max Custody isolation. Crago has not been given any of his legal property in SMU, and guards have told Crago he will not get it.

3 D

Pitz acted with deliberated indifference to Crago's health and safety when he instructed inmates Florez, Barnette, and Samson to assault Crago. Crago was seriously injured by these assaults and Crago could not seek medical attention because of the threat of further assault if he did.

3E

## COUNT II

1. State the constitutional or other federal civil right that was violated: <u>U.S. Cons., Amend. I</u>.

2. **Count II.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☒ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   See Facts Stated at Count One, Supra.

   Deputy Warden Pitz retaliated against Crago for attempting to file administrative remedies and speak to attorney Holly Gieszle about Pitz having inmates assault both Crago and other inmates on the yard and expose the broken door locks on the yard. This violated Crago's First Amendment Rights.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

   See injuries stated at Facts and Injury sections of Count One, Supra.

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?  ☒ Yes  ☐ No
   b. Did you submit a request for administrative relief on Count II?  ☒ Yes  ☐ No
   c. Did you appeal your request for relief on Count II to the highest level?  ☐ Yes  ☒ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. See Facts at Count One, Supra.

4

## COUNT III

1. State the constitutional or other federal civil right that was violated: <u>U.S. Const. Amend VIII.</u>

2. **Count III.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
   - ☒ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count III. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   See Facts stated at Count One, Supra.

   DW. Pitz showed deliberate indifference to the health and safety of all inmates at ASPC-Lewis, Unit Buckley by allowing the unit to operate with broken door locks, not enough staff to control the inmate population, and using inmates to keep other inmates inside of their cells.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

   Crago suffered Hundreds of inmate and staff assaults, Crago physically assaulted 3 seperate times resulting in multiple cuts, bruises, abrasions, stab wounds, and anxiety.

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☒ Yes ☐ No
   b. Did you submit a request for administrative relief on Count III? ☒ Yes ☐ No
   c. Did you appeal your request for relief on Count III to the highest level? ☐ Yes ☒ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. See Facts stated at Count One, Supra.

If you assert more than three Counts, answer the questions listed above for each additional Count on a separate page.

E.  REQUEST FOR RELIEF

State the relief you are seeking:

Count One: Compensatory Damages - Two Million Dollars; Punitive Damages Three Million Dollars; Injunction Requiring Buckley Unit Be Closed Until the Faulty Door locking mechanisms are replaced. Injunction Requiring video cameras be placed in building hallways.

Count Two: Compensatory Damages - Two Million Dollars; Punitive Damages Three Million Dollars; ~~Injunction~~

Count Three: Compensatory damages Two Million Dollars, Punitive Damages Three million Dollars, Injunction ordering Buckley Unit closed until the door locks are fixed.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on __May 28, 2019__
                    DATE

_Earl Felton Crago_ (signature)
SIGNATURE OF PLAINTIFF

__N/A__
(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)


_____
(Signature of attorney, if any)


_____
(Attorney's address & telephone number)

ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form.  If you need more space, you may attach no more than fifteen additional pages.  But the form must be completely filled in to the extent applicable. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages.

6