Kathleen L. Wieneke, Bar #011139
Laura Van Buren, Bar #031669
WIENEKE LAW GROUP, PLC
1095 West Rio Salado Parkway, Suite 209
Tempe, Arizona 85281
Telephone: (602) 715-1868
Facsimile: (602) 455-1109
Email: kwieneke@wienekelawgroup.com
Email: lvanburen@wienekelawgroup.com

*Attorneys for Defendants Larson, Pitz, Ryan, Standridge, Trujillo, McWilliams, Thompson and Walker*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Earl Felton Crago,<br><br>                Plaintiff,<br><br>        v.<br><br>Joseph Pitz, et al.,<br><br>                Defendants. | NO: 2:19-cv-04532-ROS-ESW<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFF'S SEPARATE, DISTINCT NUMBERED PARAGRAPHS IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL** |

Defendants Larson, Pitz, Ryan, Standridge, Trujillo, McWilliams, Thompson and Walker ("Defendants") respond to Plaintiff's Separate, Distinct Numbered Paragraphs in Support of Plaintiff's Motion to Compel.[1] Plaintiff's discovery requests seek information that is not relevant or proportional to the needs of the case. Further, any minimal benefit Plaintiff will gain from the discovery is outweighed by the substantial burden it poses to prison security. Plaintiff is not entitled to any additional discovery from Defendants.

---

[1] This Response incorporates all arguments set forth in Defendants' Response to Plaintiff's Motion to Compel, as well as the objections originally set forth in Defendants' discovery responses.

## I.     BERRY LARSON

### A.     Interrogatories

#### 1.     Interrogatory No. 4

This Interrogatory asks whether Berry Larson filed a memorandum containing the quoted language regarding "unit doors" and pins. Defendants object to this Request because it is vague and ambiguous as to "memorandum." Plaintiff did not define this term, and it is not clear if it is meant to encompass emails, letters, reports, or some other form of communication. It appears that Plaintiff may be asking about the monthly 703 Reports prepared by Berry Larson and addressed to the Northern Region Operations Director ("NROD"). Contrary to Plaintiff's assertion, while the publicly available Report to the Governor (Doc. 53-1) referenced the 703 Reports, these Reports were never actually published. And, as discussed in Defendants' Response to Plaintiff's Motion to Compel, discovery regarding cell doors, locks, and staffing is not actually relevant to Plaintiff's alleged assaults and not proportional to the needs of the case.

Without waiving these objections, Defendants have answered this Interrogatory in their Second Supplemental Responses to Plaintiff's Interrogatories to Berry Larson served on August 17, 2020.

#### 2.     Interrogatory No. 5

This Request asks about a quote purportedly contained in a May 2018 memorandum from Berry Larson to the NROD. *See* Response to Paragraph 1 (Interrogatory No. 4).

#### 3.     Interrogatory No. 6

This Request asks about a quote purportedly contained in a June 2018 memorandum from Berry Larson to the NROD. *See* Response to Paragraph 1 (Interrogatory No. 4).

#### 4.     Interrogatory No. 7

This Request asks about a quote purportedly contained in an August 2018 memorandum from Berry Larson to the NROD. *See* Response to Paragraph 1 (Interrogatory No. 4).

### 5.      Interrogatory No. 8

This Request asks about a quote purportedly contained in a September 2018 memorandum from Berry Larson to the NROD. *See* Response to Paragraph 1 (Interrogatory No. 4).

### 6.      Interrogatory No. 9

This Request asks about a quote purportedly contained in an October 2018 memorandum from Berry Larson to the NROD. *See* Response to Paragraph 1 (Interrogatory No. 4).

### 7.      Interrogatory No. 10

This Request asks about a quote purportedly contained in a November 2018 memorandum from Berry Larson to the NROD. *See* Response to Paragraph 1 (Interrogatory No. 4).

### 8.      Interrogatory No. 11

This Request asks about a quote purportedly contained in a December 2018 memorandum from Berry Larson to the NROD. *See* Response to Paragraph 1 (Interrogatory No. 4).

### 9.      Interrogatory No. 21

This Interrogatory asks for the number of validated security threat group ("STG") members at Buckley Unit between 2017 and 2019. Plaintiff alleges that this request is relevant "to showing how many security threat group members defendants had placed into the protective segregation unit." What is not clear, however, is how the number of security threat group members is relevant to the three alleged assaults on Plaintiff by four distinct, named inmates. Plaintiff's Second Amended Complaint does not challenge his placement in protective segregation, nor does it challenge the placement of his assailants into protective segregation. Thus, the request has no relevance to Plaintiff's claims. It is also not proportional to the needs of the case, particularly because information about the placement of Security Threat Group members is confidential and highly sensitive. Any negligible benefit Plaintiff would receive from this information is outweighed by the substantial

burden this disclosure would place on prison operations. Further, because Plaintiff's alleged assaults occurred between January and April of 2019, the Request is overbroad as to scope. By asking about STG members, the Interrogatory seeks confidential, sensitive information that could jeopardize prison safety and security; therefore, Defendants are statutorily prohibited from releasing this information. *See* A.R.S. §31-221(C).

### 10. Interrogatory No. 23

Defendants reject the premise of this Interrogatory, namely, that Defendant Larson "repeatedly notified the NROD that inmates were escaping their cell daily because the cell doors were failing lock." Therefore, Defendants cannot respond to the Request as written. Further, Plaintiff's discovery regarding door locks is not relevant or proportional to his claimed assaults. Additionally, communications between high-level prison administrators contain security-sensitive information that could jeopardize the security of the prison or endanger the safety and security of inmates or staff. *See* A.R.S. §31-221(C). Any negligible benefit Plaintiff would receive from this information is outweighed by the substantial burden this disclosure would place on prison operations.

### B. Requests for Production

### 11. Request for Production No. 6

This Request asks for the Inspector General Bureau Audit Unit Report for all of Lewis prison in 2017, 2018, and 2019. Because Plaintiff's claims are limited to three alleged assaults in Buckley Unit from January through April 2019, this Request is overbroad as to scope and time. And, Plaintiff has not identified why these Audit Reports are relevant to the three alleged assaults. Further, Audit Reports are confidential and privileged. A.R.S. § 12-2322 protects "each document and communication that is created for an audit," including "interviews with current or former employees." And, the deliberative process privileges prevent parties from inquiring broadly into the work performed by investigators in performing an audit report. *See Wilson v. Maricopa Cnty.*, 2006 U.S. Dist. LEXIS 29645, at *8 (D. Ariz. May 12, 2006). Further, any negligible benefit Plaintiff would receive from

1   this information is outweighed by the substantial burden this disclosure would place on

2   prison operations.

3                    **12.    Request for Production No. 11**

4          This Request asks for all memoranda from Deputy Wardens and Assistant Deputy

5   Wardens to the Warden at ASPC-Lewis from January 2017 through December 2018

6   "regarding the UA of doors by inmates or cell doors not locking." Because Plaintiff's SAC

7   arises out of alleged assaults at Buckley Unit from January through April 2019, the Request

8   is overbroad in scope and time. It is also vague and ambiguous as to "memoranda." Plaintiff

9   does not define this term, and it is not clear if it is intended to encompass all emails, letters,

10  reports, or some other category of documents. Additionally, memoranda between prison

11  officials discussing general cell door issues is not relevant to Plaintiff's three alleged

12  assaults. It is also not proportional to the needs of the case, particularly because

13  communications between prison officials regarding plant security is confidential and highly

14  sensitive. Additionally, the Interrogatory seeks confidential, sensitive information that

15  could jeopardize prison safety and security; therefore, Defendants are statutorily prohibited

16  from releasing this information. *See* A.R.S. §31-221(C).

17                   **13.    Request for Production No. 12**

18         This Request seeks all e-mails, memoranda, and records "that you believe show you

19  acted with due diligence in notifying your superiors of the problem of inmates UAing cell

20  doors and/or show that you acted with due diligence in attempting to remedy the problem

21  of inmates UAing doors." The Request is vague and ambiguous as to "due diligence," and

22  therefore, Defendants cannot answer the Request as written. "Due diligence" is not the

23  relevant standard for an Eighth Amendment Deliberate Indifference claim. Additionally,

24  this Request is overbroad and unduly burdensome in that it is not limited in time or location.

25  Communications between prison officials regarding the cell door locks are not relevant to

26  Plaintiff's claims, and contain security-sensitive information that could jeopardize the

27  security of the prison or endanger the safety and security of inmates or staff. *See* A.R.S.

28  §31-221(C).

## II.   STATE OF ARIZONA

### A.   Requests for Production

#### 14.   Request for Production No. 1

This Request seeks the Automated Inmate Management System Records for Plaintiff's alleged assailants. Plaintiff specifically seeks the assailants' "STG designations, disciplinary history, visitation suspension/activation history, [and] step-down program history." Contrary to Plaintiff's assertion, inmate AIMS records are <u>not</u> publicly available on the Arizona Department of Corrections website. Further, Plaintiff's request for the complete prison history of these inmates is not relevant or proportional to Plaintiff's claims, which are limited to specific alleged assaults in early 2019. Additionally, Defendants are statutorily prohibited from producing these records. *See* A.R.S. §31-221(C) (prohibiting the disclosure of records "endangering the life or physical safety of a person") and §31-221(E) ("a prisoner shall not have access to any prisoner records other than viewing the prisoner's own automated summary record file").

#### 15.   Request for Production No. 2

This Request asks for the "Statements of Opposition to Proposed Placement in Maximum Custody" submitted by 11 inmates. *See* Response to Paragraph 14 (Request for Production No. 1). In addition, this Request is not relevant or proportional to the needs of the case because it asks for records on inmates who had no involvement in the alleged assaults on Plaintiff and who are not even mentioned in the Second Amended Complaint.

#### 16.   Request for Production No. 6

This Request seeks all "monthly Memoranda reports submitted by the Lewis Complex Warden to the Northern Regional Operation Director between January 2017 to the present." This Request is overbroad, not relevant, and not proportional to the needs of the case to the extent it requests memoranda that discuss all of Lewis Prison, and not just the Buckley Unit. It also seeks memoranda from well before and after the alleged 2019 assaults. Further, these monthly Memoranda contain information that is not relevant to Plaintiff's complaint and that is highly security sensitive. As discussed in response

Paragraph 1, these were not published as part of the Governor's Report. In addition to being not relevant or proportional to the needs of this case, Defendants are statutorily prohibited from disclosing these reports because they contain information that could jeopardize prison safety and security. *See* A.R.S. §31-221(C).

### 17.    Request for Production No. 7

This Request seeks "monthly Memoranda reports regarding security deice inspections at ASPC-Lewis, Buckley Unit and Morey Unit). *See* Response to Paragraph 16 (Request for Production No. 6).

### 18.    Request for Production No. 8

This Request asks for "Complete copy of the minutes from Warden's meeting with COIIs on August 30, 2017 at ASPC-Lewis." This Request is not relevant or proportional to the needs of the case because the alleged meeting occurred over a year before the alleged assault on Plaintiff. These minutes were not published as part of the Governor's Report (Doc. 53-1). Any references to door locks in those minutes are not relevant to Plaintiff's alleged assaults. And, the minutes contain security-sensitive information that is not relevant or proportional to Plaintiff's claims and that could jeopardize prison safety and security. *See* A.R.S. §31-221(C).

### 19.    Request for Production No. 10

This Request asks for "all Significant Incident Reports for lock related issues at ASPC-Lewis, Buckley from December 2018 to the present." The Request is overbroad as to time, and vague and ambiguous as to "lock related issues." Further, Significant Incident Reports discussing incidents other than the alleged assaults on Plaintiff are not relevant or proportional to the needs of the case. These Reports would also contain security-sensitive information and information about other prisoners, and thus Defendants are statutorily prohibited from producing them in this litigation. *See* A.R.S. §31-221(C) (prohibiting the disclosure of records "endangering the life or physical safety of a person") and §31-221(E) ("a prisoner shall not have access to any prisoner records other than viewing the prisoner's own automated summary record file).

**20.**      **Request for Production No. 12**

This Request seeks information regarding the alleged seizure of heroin from inmate Barnette in 2019. Even if these records were relevant (which Defendants maintain they are not), Defendants are statutorily prohibited from producing these records. *See* A.R.S. §31-221(C) (prohibiting the disclosure of records "endangering the life or physical safety of a person") and §31-221(E) ("a prisoner shall not have access to any prisoner records other than viewing the prisoner's own automated summary record file).

**21.**      **Request for Production No. 13**

This Request seeks information about the seizure of heroin from inmate Samson in 2018 and/or 2019. *See* Response to Paragraph 20 (Request for Production No. 12).

**22.**      **Request for Production No. 14**

This Request seeks reports and video footage related to other assaults on other inmates and staff members. These assaults are not relevant to the three alleged assaults on Plaintiff in the Buckley Unit in 2019. Additionally, the request for "reports" is vague, ambiguous, and overbroad. Any "reports" are not relevant to the alleged assaults on Plaintiff, and are likely to contain security-sensitive information that make their production not proportional to the needs of the case. *See also* A.R.S. §31-221(C) (prohibiting the disclosure of records "endangering the life or physical safety of a person").

**23.**      **Request for Production No. 15**

This Request seeks the "Lewis Security Alert and Video demonstrating how inmates can obstruct doors" from 2006. In addition to the obvious security concerns in producing this video to a current inmate, the video is not relevant to Plaintiff's claims that he was assaulted outside of his cell in 2019.

**III.   ERNIE TRUJILLO**

**A.      Interrogatory/Request for Production**

**24.      Interrogatory No. 4**

Plaintiff requests the "collapse and control" policy "instituted at ASPC-Lewis in 2018 and 2019." However, Plaintiff does not allege that any "collapse and control" policy

caused or contributed in any way to his assaults. Defendants objected to this Request as not relevant or proportional to the needs of the case, and seeking security-sensitive information that could jeopardize the security of the prison or endanger the safety and security of inmates or staff. *See* A.R.S. §31-221(C).

Without waiving these objections, Defendants have supplemented this discovery response to state that there was no "collapse and control" policy at Lewis Prison in 2019.

## IV. **JOSEPH PITZ**

### A. **Interrogatories**

25. **Interrogatory No. 17.**

This Interrogatory asks for the number of staff members assaulted at Buckley Unit between 2017 and 2019. However, any assaults on staff are not relevant to the alleged assaults on Plaintiff, an inmate, in early 2019. This Request is also overbroad as to time.

26. **Interrogatory No. 18**

This Interrogatory asks for the number of inmates assaulted under any circumstances at Buckley Unit between 2017 and 2019. Other assaults on other inmates under difference circumstances are not relevant or proportional to the needs of Plaintiff's case. Further, the Request is overbroad as to time.

27. **Interrogatory No. 20**

This Interrogatory asks for the number of times Joseph Pitz requested more staff be assigned to Buckley Unit. Because Plaintiff does not allege facts showing that a shortage of staff caused or contributed to his assaults, this Interrogatory is not relevant or proportional to the needs of the case.

28. **Interrogatory No. 21**

This Interrogatory asks if Joseph Pitz "allow[ed] staff to be taken from Buckley and reassigned to More Unit while Buckley was understaffed." *See* Response to Paragraph 27 (Interrogatory No. 20).

### B. **Requests for Production**

29. [None/skipped by Plaintiff]

9

### 30.      Request for Production No. 5

This Request asks for "shift staffing logs" for ASPC-Lewis/Buckley between October 1, 2018 and April 30, 2019. *See* Response to Paragraph 27 (Interrogatory No. 20). In addition, this Request overbroad as to time, and vague and ambiguous as to what is meant by "shift staffing logs."

## V.   **CHARLES RYAN**

### A.   **Interrogatories**

### 31.      Interrogatory No. 2

This Request asks when Charles Ryan was "made aware inmates at Lewis Complex were accessing cell doors without authorization." This Request is not relevant or proportional to the needs of Plaintiff's claim. First, Plaintiff does not allege facts that would show that he was personally assaulted because inmates accessed cell doors without authorization. Second, Ryan's general knowledge about inmates accessing their cell doors is not relevant to Plaintiff's deliberate indifference claim. A prison official is deliberately indifferent when he has actual knowledge of a substantial or excessive risk to inmate health or safety, and then fails to respond reasonably. *See Farmer v. Brennan*, 511 U.S. 825 (1994). The appropriate inquiry is whether the officers were aware of a substantial risk of serious harm to someone in Plaintiff's situation. *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1077 (9th Cir. Cal. August 7, 2013). Thus, Ryan could only be found deliberately indifferent if he had actual knowledge that Plaintiff, or the inmates at Buckley Unit, faced a substantial or excessive risk to their safety. If and when Defendant Ryan knew that some inmates were "accessing cell doors without authorization" is not relevant to whether he knew of a substantial risk of serious harm to Plaintiff.

### 32.      Interrogatory No. 7

This Request asks "[h]ow many times was the incident command system activated for unauthorized access of cell/slider doors by inmates at Lewis Complex in 2017, 2018, and 2019." The Request is overbroad as to time and location. It also seeks information about

incidents that are completely unrelated to the alleged assaults on Plaintiff, and is thus irrelevant and not proportional to the needs of the case.

**33.      Interrogatory No. 9**

This Request asks "[h]ow many work orders for malfunctioning/broken door locks were submitted at Lewis Complex in 2017, 2018, and 2019." *See* Response to Paragraph 32 (Interrogatory No. 7).

**34.      Interrogatory No. 13**

This Request asks Defendant Ryan, "Why didn't you submit a capital improvement funding request to the ADOA for the Prison Facility Locking Systems Replacement at Lewis Complex in 2017, 2018, and 2019." Plaintiff has not demonstrated why ADCRR budget requests are relevant to his claims that he was assaulted in early 2019. Further, the Request is overbroad as to time.

DATED this 17ᵗʰ day of August 2020.

WIENEKE LAW GROUP, PLC

By:     */s/ Laura Van Buren*
          Kathleen L. Wieneke
          Laura Van Buren
          1095 West Rio Salado Parkway, Suite 209
          Tempe, Arizona 85281
          *Attorneys for Defendants Larson, Pitz, Ryan, Standridge, Trujillo, McWilliams, Thompson and Walker*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 17, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

N/A

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

Earl Crago, ADC# 115357
ASPC-Safford-Tonto
896 S. Cook Road
Safford, AZ 85546
Plaintiff Pro Per

By:    */s/ Mica Mahler*_____