**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Earl Felton Crago, Jr.,

        Plaintiff,

v.

Joseph Pitz, et al.,

        Defendants.

No. CV-19-04532-PHX-ROS

**ORDER**

      This Order addresses three stipulations, fourteen motions in limine,[1] and the parties' disputes regarding jury instructions. This Order makes clear the Court was unable to resolve all issues raised by the parties. In light of this Order, the parties must meet and confer in an attempt to resolve the issues the Court could not definitively rule on. For those issues the parties still cannot resolve, they are to file a notice of specific issues to be resolved at the Final Pretrial Conference.

## I.    Stipulations

      The parties filed three stipulations regarding evidentiary issues. The Court will grant those stipulations and the parties must comply with their agreed-upon limitations as set forth below.

### A.  Miscellaneous Limitations (Doc. 229)

---

[1] Based on the internal numbering the parties used in their filings, it appears they may have intended to file a total of sixteen motions. Plaintiff filed six motions, numbered one through seven, except no motion numbered two was filed. (Doc. 232, 233, 234, 235, 236, 237). Defendants filed eight motions, numbered one through nine, except no motion numbered seven was filed. (Doc. 243, 244, 245, 246, 247, 248, 249, 250).

Plaintiff has agreed he will not "introduce evidence or arguments" regarding:

1)  Allegations of sexual assault by inmate Bradley Rakestraw;

2)  Specific use-of-force cases, including but not limited to the George Floyd case; or

3)  The fact that Plaintiff has previously reached settlements with the State of Arizona, the Arizona Department of Corrections, and/or individual employees of the same. (Doc. 229).

**B.  Plaintiff's Drug Use (Doc. 230)**

Defendants have agreed they will not mention Plaintiff's "drug use prior to his incarceration within the Arizona Department of Corrections, Rehabilitation and Reentry." (Doc. 230 at 1).

**C.  Plaintiff's Convictions (Doc. 231)**

The parties agree they will not "admit evidence or discuss the underlying circumstances surrounding [Plaintiff's] convictions." They agree, however, the following statement may be read to the jury: "In 1994, Plaintiff Earl Felton Crago, Jr. was convicted of first-degree murder and in 2002 he was convicted of two counts of aggravated assault." (Doc. 231 at 1). Finally, in the event a party believes additional information regarding Plaintiff's convictions should be referenced, the parties agree to "meet-and-confer" and "approach the court prior to raising any such information." (Doc. 231 at 2).

**II.    Plaintiff's Motions in Limine**

Many of the motions in limine discussed below cannot be resolved because the parties have not provided sufficiently specific arguments aimed at exact evidence. Therefore, the parties will be required to file an updated statement by 9:00 a.m. on September 8, 2022, identifying the aspects of the motions in limine that should be resolved at the Final Pretrial Conference. Now that the parties have submitted their trial exhibits, the updated statement must identify the exact evidence they seek to preclude through one of the motions in limine discussed below.

**A.  Plaintiff Will be Allowed to Appear in Civilian Clothing (Doc. 232)**

Plaintiff's first motion in limine requests he be allowed "to appear before the jury

in civilian clothing and without visible restraints." (Doc. 232 at 1). Defendants oppose this motion, arguing Plaintiff's conviction for murder, as well as his disciplinary history while in prison, prove he is a uniquely serious security risk. Thus, Defendants claim Plaintiff "should be shackled at all times, including at the hands and feet; [and] attired in his ADCRR prison uniform to minimize the risk of escape." (Doc. 255 at 2).

The Ninth Circuit has adopted different rules for visible shackles versus prison clothing. Visible "[s]hackling must be limited to cases urgently demanding that action." *Claiborne v. Blauser*, 934 F.3d 885, 900 (9th Cir. 2019) (quotation marks and citation omitted). Visible shacking is not permitted based solely on a prisoner's criminal conviction or that he is serving a "lengthy prison sentence." *Id.* at 898. However, a prisoner's history of violence in prison or incidents of misbehavior during court proceedings may suffice to permit visible shackling. See *id.*

In the present case, Plaintiff was convicted of a violent crime, is serving a lengthy prison sentence, and has an extensive history of violence in prison, including attacks on corrections officers. Based on these individual characteristics, and the evidence available at this time, leg shackling is appropriate. However, there is no need for that shackling to be visible to the jury. As the Court has done in the past when shackling is merited, Plaintiff will be required to wear leg shackles at all times, but a curtain will be placed at the tables such that the jurors cannot see the shackles. In addition, the jury will not be present when Plaintiff enters the courtroom or when he takes the stand.[2] At present, there is no need for hand shackling although Defendants may renew this request, if appropriate, on the first day of trial.

As for prison clothing, the Ninth Circuit has noted "[p]rison clothing cannot be considered inherently prejudicial when the jury already knows, based upon other facts, that the defendant has been deprived of his liberty." *Duckett v. Godinez*, 67 F.3d 734, 747 (9th Cir. 1995). Given the claims and evidence in this case, the jury will know Plaintiff is currently incarcerated. But while prison clothing may not be "inherently

---

[2] Security officers, if necessary, will be unobtrusively placed by the witness stand.

prejudicial," there is no need for the constant reminder of Plaintiff's status as a prisoner. *See Maus v. Baker*, 747 F.3d 926, 927 (7th Cir. 2014) (noting "the contrast between a litigant's wearing prison garb and his opponents' wearing law enforcement uniforms is likely to influence the jury against the prisoner"). Plaintiff will be permitted to wear non-prison clothing, but that clothing must be supplied by Plaintiff's counsel. Accordingly, Plaintiff's motion will be granted in part and denied in part.

**B. Disciplinary Histories (Doc. 233)**

Plaintiff seeks to exclude his prison disciplinary history, and the prison disciplinary histories of his incarcerated witnesses. Plaintiff also seeks to prevent any "questions or references" to those histories. Plaintiff admits, however, the histories and questions about those histories may be relevant and admissible if they "relate directly" to his allegations in this case. (Doc. 233 at 3). Defendants respond that they plan to ask questions about the disciplinary histories directly relevant to Plaintiff's claims.

Defendants explain one aspect in particular they plan to explore involves Plaintiff's allegations that he received disciplinary action in retaliation for his complaints about the cell doors not locking. Defendants plan on showing the disciplinary action Plaintiff claims was retaliatory had a legitimate evidentiary basis. Defendants also plan to show Plaintiff was not assaulted because Defendant Pitz ordered other prisoners to do so. Rather, Plaintiff allegedly was assaulted "because of his long history of trafficking, extortion, and intimidation." (Doc. 260 at 4). As for the disciplinary histories of Plaintiff's witnesses, Defendants argue the "witnesses ***were*** the problematic inmates at Buckley unit" meaning it was unlikely staff would have "turned to [the witnesses] to enforce order." (Doc. 260 at 8) (emphasis in original).

Defendants' planned use of Plaintiff's disciplinary history to rebut his claim of retaliation likely will be appropriate. However, Defendants' other planned uses of the histories may veer into improper character evidence. *See* Fed. R. Evid. 404. Plaintiff's motion will be denied, and Defendants may appropriately offer this evidence, but Plaintiff should raise his objections, if any, in response to events at trial.

**C.  Calls by Steven Antrobus (Doc. 234)**

Plaintiff seeks to exclude the recordings or transcripts of calls between another prisoner, Steven Antrobus, and Kim Kirst, Antobus' wife.  Defendants believe Plaintiff and Antrobus worked together in prosecuting this case.  During phone calls between Kirst and Antrobus, there were discussions of "affidavits" Kirst was preparing.  Defendants contend those affidavits contained statements from other prisoners.  Kirst allegedly typed the affidavits and mailed them to Antrobus for him to have the affiants sign.  Plaintiff then used those affidavits in this case.

During one call, Antrobus told Kirst "we get 10 percent of that, and it's going to be a lot."  In another call Antrobus stated "we get 10 percent of that, and we have that in writing already."  (Doc. 256 at 2-3).  According to Defendants, those were statements by Antrobus that he and Kirst will receive 10% of any monetary amount Plaintiff recovers in this suit.

To the extent Defendants wish to ask Antrobus about his financial interest in this suit, they are entitled to do so.  A witness's "financial interest in the outcome of [a] trial" may be "critical to the jury's determination" of the witness's credibility.  *United States v. Dees*, 34 F.3d 838, 844 (9th Cir. 1994).  Whether the recordings or transcripts of the calls are admissible, however, will depend on the context in which Defendants attempt to introduce them.  Defense counsel is to be prepared to explain at the Final Pretrial Conference how they intend to offer and use them.  Therefore, the motion to exclude the recordings or transcripts will be denied.

**D.  Payments Promised or Received (Doc. 235)**

Plaintiff seeks to exclude "proposed testimony that certain individuals were promised or were provided consideration in exchange [for] assistance in this litigation." (Doc. 235 at 1).  Similar to the situation with Steven Antrobus, Defendants believe Plaintiff may have promised compensation to eleven other individuals and those individuals may testify at trial.  Defendants plan on asking those individuals about any promised compensation.  Defendants are entitled to do so.  Plaintiff's motion will be

denied.

**E.  Testimony of Captain Shawn Baker (Doc. 236)**

Plaintiff seeks to exclude the testimony of Captain Shawn Baker.  According to Plaintiff, Baker's testimony is irrelevant.  Defendants respond Baker's planned testimony is directly relevant to Plaintiff's retaliation claim.

In connection with his retaliation claim, Plaintiff alleges he engaged in protected activity of complaining about the conditions in his unit and subsequently he received fabricated disciplinary reports.  One of the allegedly fabricated disciplinary reports involved a package addressed to Plaintiff that was received at the prison in February 2019.  When that package was screened, officers located two cell phones hidden beneath a false bottom.  Because Plaintiff was the intended recipient of the package, he received a disciplinary report for promoting prison contraband.

On March 13, 2019, Baker conducted a disciplinary hearing regarding the package and Baker found Plaintiff guilty.  According to Plaintiff, Baker stated Defendant Pitz had instructed him to find Plaintiff guilty.  Plaintiff believes Baker's actions were part of Pitz's retaliatory actions against him.  Defendants respond Baker will testify Defendant Pitz did not instruct him to find Plaintiff guilty.  Instead, Baker will state he found Plaintiff guilty based on the evidence against him.

Baker's testimony is directly relevant to an aspect of Plaintiff's retaliation claim.  Therefore, Plaintiff's motion will be denied and Baker will be allowed to testify.

**F.  References and Arguments (Doc. 237)**

Plaintiff's final motion in limine seeks to exclude eight different types of evidence.  The Court will address each type separately.

### 1)  Referring to Plaintiff by his incarcerated status

Plaintiff requests Defendants "address and refer to Plaintiff as 'Mr. Crago' or 'Plaintiff' and refer to other inmate witnesses by their names."  (Doc. 237 at 2).  Defendants agree their counsel will refer to Plaintiff as "Mr. Crago" or "Plaintiff."  Counsel will also address other prisoner witnesses are "Mr. ***."  (Doc. 254 at 4).  But

defense counsel argue non-prisoner witnesses should be allowed to refer to "prisoners" or "inmates" in describing general matters. Based on defense counsel's agreement to refer to individuals by their given names, but also recognizing some general references to "prisoners" or "inmates" will be necessary when speaking of general matters, Plaintiff's motion will be denied as moot.

### 2)   Referencing Plaintiff's or his witnesses' arrests that did not lead to conviction

Plaintiff does not identify the specific arrests at issue and Defendants state they do not know which arrests are being referenced. Because of that uncertainty, Defendants cannot agree they will not make any reference to arrests. It is possible arrests will be relevant based on testimony offered at trial. Therefore, this aspect of Plaintiff's motion will be denied.

### 3)   Referring to other litigation in which Plaintiff has been involved

Plaintiff does not identify the other litigation he seeks to exclude and Defendants state they cannot adopt a clear position given that ambiguity. In general, Plaintiff's other litigation activities will not be relevant. However, Defendants state it is possible Plaintiff's allegations in other cases will contradict his allegations in this case. Given that possibility, the Court cannot definitively exclude all references to other litigation at this point. This aspect of Plaintiff's motion will be denied.

### 4)   Evidence of Defendants' commendations

Plaintiff seeks to prevent Defendants from referencing any "commendations, awards, or other professional honors" they received. Plaintiff does not identify the honors he has in mind and Defendants claim they are unaware which honors might be referenced at trial. Defendants argue it is possible the honors will be relevant should Plaintiff make arguments regarding Defendants general propensities. Defendants' honors may qualify as impermissible character evidence but because the exact honors have not been identified, Plaintiff's motion will be denied. Plaintiff may renew his objections, if any, in response to particular questions. And Plaintiff is to be prepared to discuss this

issue at the Final Pretrial Conference.

**5) Developing questions and arguments designed to prompt admiration for corrections officials**

Plaintiff argues Defendants should be prohibited from making statements such as "Corrections officials keep 'bad guys' in jail" or "Corrections officials risk their lives for us every day." Defendants claim it is not clear the extent of the limitation Plaintiff is attempting to impose. But Defendants claim they are entitled to explore their motivations for performing their work, at least in response to Plaintiff's request for punitive damages.

Defendants may make limited references to their own views of their motivations and desires. Defense counsel must, however, keep such references to a minimum, and those suggested above are not presently admissible. Thus, this aspect of Plaintiff's motion will be denied with the understanding that defense counsel will not make improper argument or elicit excessive or flattering testimony on this topic.

**6) Arguing Defendants did not do anything wrong because they were not disciplined**

Plaintiff claims the fact Defendants were not disciplined for their alleged failures should be excluded. Defendants respond that the lack of discipline is relevant, at least, to the issue of punitive damages. Given that Defendants include many high-level administrators, it would be unduly confusing to discuss the lack of discipline. For example, it is not clear who was in a position to "discipline" Charles Ryan at the time of the relevant events. Therefore, argument or evidence regarding a lack of discipline is likely irrelevant. But a complete bar on such evidence would be inappropriate. Therefore, this aspect of Plaintiff's motion will be denied but Defendants should not refer to the lack of discipline absent a clearly admissible basis for doing so. The parties are to be prepared to discuss the specifics of this issue at the Final Pretrial Conference.

**7) Arguing an award of damages would burden defendants**

Plaintiff seeks to exclude evidence or argument that an award of damages will burden Defendants or the state of Arizona. Because Plaintiff is seeking punitive

1    damages, Defendants' wealth is relevant.  However, the state of Arizona is not a party on

2    any claim for monetary relief and, while it may have agreed to indemnify Defendants,

3    evidence or argument regarding the burden on the state will not be permitted.  Thus,

4    Defendants may refer to their own financial positions.  This aspect of Plaintiff's motion

5    will be denied to that limited extent.

6        **8) Referring to Plaintiff or Plaintiff's witnesses by "pejorative**

7        **nicknames"**

8        Plaintiff seeks to prevent Defendants from referring to witnesses by their

9    nicknames.  Defendants respond that using nicknames is inevitable because that is how

10   individuals are known in the prison setting.  Without knowing which nicknames are at

11   issue, the Court cannot resolve this dispute.  In general, the parties should refer to

12   individuals by their given names.  Accordingly, this aspect of Plaintiff's motion will be

13   denied.

14   **III.   Defendants' Motions in Limine**

15   **A. Limitations on Staffing Evidence (Doc. 248)**

16       Defendants seek to preclude four types of evidence related to staffing issues: 1)

17   evidence of staffing at the Buckley unit on days other than when Plaintiff allegedly was

18   assaulted; 2) evidence of staffing at units other than Buckley; 3) testimony about how

19   many staff members are needed to safely operate Buckley; and 4) hearsay statements by

20   non-Defendants regarding staffing.

21       Defendants' motion is based on a misunderstanding of the nature of Plaintiff's

22   primary Eighth Amendment claim.  To prevail on his claim that he was "incarcerated

23   under conditions posing a substantial risk of serious harm," Plaintiff is entitled to explore

24   the conditions around the dates of his assaults.[3]  *Farmer v. Brennan*, 511 U.S. 825, 834,

_____

[3] Plaintiff's claim is not limited to the fact that he was, allegedly, assaulted because of the
lack of staffing and inoperative locks.  That is one aspect of his Eighth Amendment
claim.  The Supreme Court has held, however, a prisoner housed in unsafe conditions
need not "await a tragic event [such as an] actua[l] assaul[t] before obtaining relief."
*Farmer v. Brennan*, 511 U.S. 825, 845 (1994).  As a result, Plaintiff had a viable claim
under 42 U.S.C. § 1983 as soon as he was housed in unsafe conditions posing a
significant risk to his safety.  And even though Plaintiff may not have been able to
recover certain forms of monetary damages had he not suffered a physical injury, *see* 42

(1994).  At the very least, staffing conditions on "days other than when Plaintiff allegedly was assaulted" as well as staffing at closely related units, such as the Morey unit, would prove Defendants' knowledge of ongoing conditions as well as the risk those conditions created for prisoners, including Plaintiff.  Therefore, Plaintiff will not be limited to evidence regarding the dates he allegedly was assaulted, nor will he be limited to the Buckley unit staffing.

Similarly, evidence regarding what prison officials or prisoners viewed as appropriate staffing levels is relevant to show Defendants' knowledge of the alleged risk.  As for "hearsay statements" regarding staffing, those statements may or may not be admissible depending on who made the statements and the contents of the statement.  The Court cannot resolve such abstract hearsay disputes pretrial.  Therefore, Defendants' motion will be denied in full.  The parties are to be prepared to discuss and resolve this issue at the Final Pretrial Conference.

**B.  References to Other Assaults (Doc. 244)**

Defendants seek to preclude references to "inmate-on-staff assaults at any unit" or "inmate-on-inmate assaults that occurred outside of the Buckley Unit."  Defendants also argue Plaintiff should be prohibited from referring to the death of prisoner Andrew McCormick as "murder."

Again, Plaintiff's Eighth Amendment claims require he establish each Defendant had actual knowledge of the risks allegedly created by their actions.  Evidence regarding attacks on staff as well as inmate-on-inmate assaults at closely related units, such as Morey, are relevant to show Defendants' knowledge of the risk facing prisoners housed at Lewis at the relevant time.  Moreover, this evidence may be relevant to the alleged mental anxiety (compensatory damages) Plaintiff faced during that time.  The exact manner in which this evidence may be referenced must be determined at trial.  But

---

U.S.C. § 1997e(e), the unsafe conditions likely would have allowed him to pursue claims for nominal and punitive damages.  *Oliver v. Keller*, 289 F.3d 623, 630 (9th Cir. 2002). Accordingly, Defendants' attempt to limit the evidence at trial to the events on three exact dates is misguided.

inquiring into witnesses' knowledge of these events will be permitted.

Plaintiff states he does not plan to refer to the death of Andrew McCormick as "murder." Therefore, that aspect of Defendants' motion is moot. And Plaintiff is entitled to reference McCormick's death to a limited extent because it may be relevant to show Defendants' knowledge regarding the risks faced by prisoners at Lewis prison. Defendants' motion will be denied in full.

**C. Evidence Regarding Notice of Risk (Doc. 246)**

Defendants seek to preclude any reference to *Russett v. Ryan*, a separate suit filed by a correctional officer in 2016. That suit referenced ongoing staffing issues at Lewis prison as well as inoperative cell doors. Defendants also argue Plaintiff should be prohibited from referencing any monthly reports, known as "703 Reports," dated before January 2019 or involving units other than Buckley.

Again, Defendants have misunderstood the nature of Plaintiff's claims. Plaintiff must establish the conditions under which he was housed created a substantial risk of serious harm and that Defendants knew of that risk but took inadequate steps to alleviate the risk. Therefore, evidence that may tend to show Defendants' knowledge of the risk, including evidence showing when Defendants first learned of the risk, is crucial to Plaintiff's Eighth Amendment claim. Because the *Russett v. Ryan* lawsuit alleged staffing and cell door issues at the Lewis prison, specific knowledge of that suit may indicate Defendants were aware of the conditions at Lewis. Accordingly, Plaintiff may inquire into Defendants' knowledge of the *Russett* suit. It is unlikely Plaintiff will be entitled to introduce any records from that suit as they would be inadmissible or unduly confusing to the jury. Fed. R. Evid. 403.

Similarly, the monthly reports referenced longstanding conditions across the Lewis prison involving prisoners unlocking their cell doors. This evidence tends to show Defendants may have known of the general conditions and took no remedial actions. For example, the staffing report dated February 12, 2019, is a statement from Defendant Gerald Thompson to Defendant Ernest Trujillo. That report states, in relevant part,

"[c]ell doors continue to be a problem" at the Buckley unit.  This evidence may be indicative of deliberate indifference.  The exact manner in which this monthly report and others will be admitted must be left for trial.  In particular, it unclear how Plaintiff will authenticate the reports.  In general, however, Plaintiff is entitled to attempt to do so and Defendants' motion to preclude this evidence will be denied.

### D.  Hearsay Statements (Doc. 243)

Defendants seek to exclude all "hearsay statements."  Defendants do not identify all of the exact statements they wish to exclude but they generally point to statements in declarations from other prisoners as well as statements by prison employees who are not defendants.  Without knowing the exact statements at issue, the Court cannot resolve this motion.  However, Defendants' absolute position that statements by other prison employees are hearsay is not correct.

The primary dispute presented by this motion is whether statements by prison employees qualify as hearsay or non-hearsay.  Under Federal Rule of Evidence 801(d)(2)(D), statements made by a "party's agent or employee on a matter within the scope of that relationship and while it existed" are not hearsay.  Fed. R. Evid. 801(d)(2)(D).  At present, David Shinn is a named party in his official capacity.  And "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  Therefore, the Arizona Department of Corrections, Rehabilitation and Reentry is, "in all respects other than name," a party to this suit.  *Id.*  The statements by prison employees, therefore, potentially qualify as statements made by a party's agent or employee within the scope of Federal Rule of Evidence 801(d)(2)(D).  The Ninth Circuit reached this conclusion forty years ago in a case brought against prisons officials where plaintiffs sought to introduce statements by prison guards.  *Hoptowit v. Ray*, 682 F.2d 1237, 1262 n.10 (9th Cir. 1982).  Much more recently, the D.C. Circuit has repeatedly found, when a government official is sued in his official capacity, statements by government employees may qualify as non-hearsay under Rule 801(d)(2)(D).  *Wilburn v. Robinson*, 480 F.3d 1140, 1148 (D.C. Cir.

2007).  *See also Geleta v. Gray*, 645 F.3d 408, 415 (D.C. Cir. 2011).  In line with this authority, the statements by employees of ADCRR may qualify as non-hearsay and Defendants' motion on this point will be denied.

As for out-of-court statements by other prisoners, those statements likely qualify as inadmissible hearsay.  But the Court cannot determine the admissibility of these statements pretrial.  Therefore, Defendants' motion on this point will be denied.  At the Final Pretrial Conference, the parties must be prepared to discuss the specific statements at issue.

**E.  Report to the Governor (Doc. 250)**

Defendants seek to exclude a report to the governor prepared by retired Justices Rebecca Berch and Ruth McGregor.  That report, titled, "Report to the Governor: the Effectiveness of Locks and Lewis Prison" was the product of an investigation conducted by Justices Berch and McGregor.  The Arizona Governor commissioned the investigation and report to obtain a "third-party review into matters of security" and in particular to address the "problems related to cell locks at Lewis Prison."  Justices Berch and McGregor interviewed a wide variety of prison officials and employees and drafted the report.  When completed, the report was published on the website for the Governor's office.  The report is critical of prison administrators, including current Defendants.

Defendants argue the report is inadmissible hearsay, does not qualify as a public record, provides expert testimony from unqualified witnesses, contain unsupported lay witness opinions, is unduly prejudicial, and lacks foundation because it focuses on conditions in the Morey unit, not the Buckley unit where Plaintiff was housed.

Federal Rule of Evidence 803(8) states "public records" are an exception to the hearsay rule provided certain conditions are met.  The condition most relevant at this point is that the record include "factual findings from a legally authorized investigation."  Plaintiff has not established whether the investigation conducted by Justices Berch and McGregor qualifies as "legally authorized" for purposes of Rule 803.  In particular, Plaintiff has failed to provide controlling legal authority by which the Arizona governor

1    initiated the investigation and, if that legal authority existed, whether it is the type of

2    legal authorization contemplated by Rule 803(8).   The parties are to be prepared to

3    discuss this issue, as well as the other conditions for admissions under Rule 803(8) at the

4    Final Pretrial conference.   At this point, the Court is inclined to grant Defendants' motion

5    but it will not be resolved now based on the present record.

6        **F.  Witnesses Not at Buckley (Doc. 247)**

7        Defendants seek to prevent testimony from four "current and/or former ADCRR

8    employees" who allegedly did not work at the Buckley unit "during the relevant time

9    period."   (Doc. 247 at 1-2).   Plaintiff points out that one of the identified witnesses,

10   Gabriela Contreras, is deceased.   While Plaintiff does not state so explicitly, presumably

11   (and hopefully) he does not plan on trying to call that witness.   Therefore, Defendants'

12   request to exclude that witness will be denied as moot.

13       The three other witnesses Defendants seek to exclude are Shaun Holland, Luis De

14   La O, and Mark Hasz.   Those witnesses did not work in the Buckley unit but they have

15   extensive knowledge regarding the alleged problems with security at Lewis during the

16   relevant time.   For example, Shaun Holland worked as Associate Deputy Warden of the

17   Bachman unit at Lewis.   Based on his experience there, Holland sent a statement to the

18   Governor alleging, in relevant part, the cell doors at Lewis were "failing at an alarming

19   rate" and the prison administration was hiding the problems.   (Doc. 263 at 4).   The fact

20   that Holland did not work in the Buckley unit does not mean his knowledge of conditions

21   at Lewis is irrelevant.   In fact, his allegation that serious problems existed and prison

22   administrators were aware of the problems may be significant evidence in support of

23   Plaintiff's claims.   The other witnesses have similar knowledge that may show

24   Defendants' knowledge of the problems.   These witnesses should focus, to the extent

25   possible, on the conditions Plaintiff faced in the Buckley unit.   Defendants' motion will

26   be denied in full.

27       **G.  Undisclosed Exhibits (Doc. 249)**

28       Defendants seek to exclude three exhibits that allegedly were not timely disclosed.

- 14 -

Those exhibits are 1) a publication by the American Correctional Association entitled Performance-Based Standard and Expected Practices for Adult Correctional Institutions; 2) an interview of an ADCRR employee broadcast by the local news; and 3) documents from a separate case, *Porter v. ADC*, CV-09-2479-PHX-JAT, involving a prisoner death at the Lewis prison.

Plaintiff disclosed a previous version of the publication and Defendants have not explained how the failure to supplement that disclosure with the more recent version has any impact on their trial preparations.  Therefore, the alleged disclosure failure of the publication was harmless.

Plaintiff disclosed some segments broadcast on the local news but he did not disclose this particular interview.  Plaintiff has not established a sufficient reason for his non-disclosure.  Therefore, the interview will be excluded.

As for the *Porter* suit, it involved events in 2008.  Whatever probative value it may have to the conditions Plaintiff faced in 2017, that value is outweighed by the danger of unfair prejudice.   Plaintiff will not be permitted to reference the *Porter* suit. Defendants' motion will be denied in part and granted in part.

**H. Computation of Damages (Doc. 245)**

Defendants seek an order "precluding Plaintiff from seeking compensatory damages at trial and, at minimum, from suggesting any damage amount or range to the jury."   This request is based on Plaintiff's alleged failure to disclose an adequate "computation" of his damages. (Doc. 245 at 1).  In his disclosures, Plaintiff stated he was requesting monetary damages based on his physical and mental injuries in the amount of "ten percent" of ADCRR's annual operating budget.  Defendants now claim that was insufficient.

While not entirely clear, Defendants seem to believe Plaintiff was required to provide a much more formal breakdown of the amounts he was seeking.  Defendants state they have been prejudiced because they have been deprived of "an adequate opportunity to investigate Plaintiff's specific damages claims." (Doc. 245  at 6).  That is

not accurate.

Given that Plaintiff was seeking damages for pain and suffering as well as emotional distress, his disclosure provided ample information for Defendants to assess the amount Plaintiff believed was at issue.  And any additional disclosure would have provided no meaningful information for Defendants to act upon.  *See, e.g.*, *E.E.O.C. v. Wal-Mart Stores, Inc.*, 276 F.R.D. 637, 639 (E.D. Wash. 2011) (noting "district courts have frequently denied motions to compel computations of emotional distress and punitive damages because they are difficult to quantify and are typically considered a fact issue for the jury").  It is not plausible Defendants would have proceeded differently had they received a more comprehensive disclosure.  For example, it would have made no difference to Defendants' behavior during discovery if Plaintiff had disclosed the exact amount he was seeking for the pain and emotional distress of being stabbed on one date versus the exact amount he was seeking for the pain and emotional distress of being beaten until he was unconscious on another date.  Defendants were aware of the exact injuries Plaintiff was alleging and they were also aware Plaintiff was seeking sizeable monetary compensation for those injuries.  If Defendants wished to inquire in more detail into a particular aspect of his damages, they could have asked Plaintiff during a deposition to address that aspect.  Apparently, Defendants chose not to do so.

Plaintiff's damages disclosure was adequate but even if the Court were to conclude Plaintiff's disclosure was somehow inadequate, it was obviously harmless.  Defendants' motion will be denied.

## IV.     Proposed Model Instructions

### A.  Instruction 1.19--Questions by Juror

Plaintiff does not wish to have jurors ask questions.  The Court requires both parties agree before questions will be allowed.  Therefore, Plaintiff's instruction 1.19 will be given and Defendants' instruction 1.19 will not.

### B.  Instruction 2.13--Expert Opinions

Plaintiff proposes a jury instruction regarding evaluation of expert testimony.  It

appears unlikely any expert will be called as no expert was disclosed during discovery. Therefore, at present, Plaintiff's instruction 2.13 will not be given.

### C.  Instruction 1.5--Claims and Defenses

Plaintiff's proposed instruction outlines each of his three claims in neutral language.  (Doc. 242 at 54).  Defendants object by claiming the two Eighth Amendment claims are duplicative.  That is not accurate.  As explained in the Court's summary judgment order, the first Eighth Amendment claim is against all defendants and is based on Defendants' deliberate indifference to a threat to his safety based on the conditions at Lewis prison, such as inadequate staffing and broken locks.  The second Eighth Amendment claim is against Defendant Pitz and is based on Pitz allegedly instructing other prisoners to assault Plaintiff.  The claims have some overlap but they involve distinct issues.  In fact, it is possible one claim will succeed while the other claim fails. Therefore, Defendants' request to conflate the two claims will be rejected.  Plaintiff's proposed instruction 1.5 will be given and Defendants' proposed instruction 1.5 will not.

### D.  Instruction 5.1, 5.2--Damages

The parties agree the model instruction on damages can be given but Defendants will not agree "to the elements to be included" until the evidence is presented at trial. (Doc. 242 at 57).  Presumably Defendants mean they will not agree to the jury being instructed on particular injuries, such as "emotional pain and suffering," until there is evidence of such injuries.  Defendants are entitled to reserve their objection but, given Plaintiff's allegations, it appears likely the Court will give the instructions as Plaintiff proposes.

### E.  Instruction 9.2--Causation

Plaintiff has proposed a very short instruction regarding causation.  Defendants oppose that instruction by claiming Plaintiff "has not alleged in his Complaint or in summary judgment (or in the joint pretrial order) that the individual liability of the Defendants is premised on supervisory liability under Section 1983.  Plaintiff cannot change legal theories now."  (Doc. 242 at 59). Plaintiff responds it has always been clear

he was suing certain defendants for actions or inactions taken in their role as supervisors. In other words, Plaintiff was suing those defendants under a theory of supervisory liability permissible under current law.

Defendants argue "supervisory liability" does not exist under § 1983 and, in any event, Plaintiff has not alleged any "supervisory liability" claim. It is possible Defendants are confusing the various types of "supervisory liability" that are often discussed in the context of § 1983 claims. "[S]upervisors cannot be held liable for the acts of their reports under a *respondeat superior* theory." *Hyde v. City of Willcox*, 23 F.4th 863, 874 (9th Cir. 2022). Courts sometime reformulate this into the shorthand, but technically inaccurate, statement that "[t]here is no supervisory liability under section 1983." *Nichols v. Brown*, 945 F. Supp. 2d 1079, 1103 n.8 (C.D. Cal. 2013). But the more accurate statement is that supervisory liability pursuant to *respondeat superior* does not exist while "supervisory liability" pursuant to the actions or inactions of the individual supervisor does exist. For example, "supervisory liability" may exist under § 1983 when the supervisor is personally involved in a constitutional deprivation or there is "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Keates v. Koile*, 883 F.3d 1228, 1242–43 (9th Cir. 2018). Of particular relevance here, "the claim that a supervisory official knew of unconstitutional conditions and culpable actions of his subordinates but failed to act amounts to acquiescence in the unconstitutional conduct of his subordinates and is sufficient to state a claim of supervisory liability." *Id.*

The position that certain "supervisory" defendants were aware of the conditions at Lewis but failed to take corrective action has always been the basis for Plaintiff's claims against those defendants. For example, in the summary judgment order, the Court explained there was adequate evidence to proceed to trial against Defendant Ryan because a jury could conclude "Ryan knew of the substantial risk of serious harm to prisoners in Buckley Unit and was in a position to avert the harm to Plaintiff but failed to do so with deliberate indifference." (Doc. 195 at 27). Under that view of Plaintiff's

1    claim against supervisory defendants, the Court cannot understand why Defendants insist

2    "Plaintiff has no supervisory liability claim."  (Doc. 424 at 74).

3          Returning to the jury instructions, the parties will be required to resubmit a

4    proposed instruction 9.2 based on Plaintiff's current proposal but with the addition of the

5    language found at Doc. 242 at 60 explaining when liability may reach supervisors.  That

6    language will be useful for the jury to assess whether Plaintiff has established supervisory

7    defendants should be liable.

8              **F.  Instruction 9.11--First Amendment Retaliation**

9          For his First Amendment claim, Plaintiff proposes an instruction that tracks the

10   model instruction while Defendants propose some additions.  The Court will adopt some

11   of both sides' proposals.  The Court presently intends to give the following instruction:

12             The Plaintiff has the burden of proving Defendant Pitz deprived him
       of particular rights under the United States Constitution.  In this case, the
13     Plaintiff alleges Defendant Pitz deprived him of his rights under the First
       Amendment to the Constitution when the Plaintiff, among other things, lost
14     privileges and sustained damage to his person and property after submitting
15     prison grievances.

16             Under the First Amendment, a prisoner has the right to be free from
       retaliation by prison officials for filing grievances or complaints. In order to
17     prove Defendant Pitz deprived the plaintiff of this First Amendment right,
       the Plaintiff must prove all of the following elements by a preponderance of
18     the evidence:

19             1. Defendant Pitz took some adverse action against the Plaintiff;
               2. because of;
20             3. the Plaintiff's protected conduct; and
               4. such action chilled the Plaintiff's First Amendment rights; and
21             5. the adverse action did not reasonably advance a legitimate
22     correctional goal.

23             Under the third element, protected conduct includes the filing of a
       grievance or complaint—whether verbal or written, formal or informal.
24             Under the fourth element, the Plaintiff does not have to show that his
25     speech was actually suppressed, but rather that the adverse action would
       chill or silence a person of ordinary firmness from future First Amendment
26     activities.

27   The parties should be prepared to discuss at the Final Pretrial Conference whether

28   this instruction is appropriate.

### G. Instruction 9.28--Eighth Amendment

The parties disagree on whether this instruction involving the elements of Plaintiff's Eighth Amendment claims should refer to "one or more" or "each" defendant. For example, Plaintiff believes the instruction should read that he must prove "one or more defendants made an intentional decision with respect to the conditions under which the plaintiff was confined." Defendants argue the instruction should read that he must prove "each defendant made an intentional decision with respect to the conditions under which the plaintiff was confined." Neither parties' proposed language is entirely clear.

According to Defendants, use of "one or more" may "improperly suggest[] that liability can attach to all defendants if one defendant is found at fault." (Doc. 242 at 66). While true, use of "each defendant" could improperly suggest the opposite. That is, that every defendant must be found at fault in order for Plaintiff to prevail. To prevent ambiguity, the Court proposes the following instruction based on Plaintiff's. The changes are bolded only to highlight them for purposes of this Order.

> As previously explained, the plaintiff has the burden of proving that the acts or failure to act of **a defendant** deprived the plaintiff of particular rights under the United States Constitution. In this case, the plaintiff alleges defendants deprived him of his rights under the Eighth Amendment to the Constitution by placing him at substantial risk of serious harm or death.
>
> Under the Eighth Amendment, a convicted prisoner has the right to be free from "cruel and unusual punishments." In order to prove **a defendant** deprived the plaintiff of this Eighth Amendment right, the plaintiff must prove the following elements by a preponderance of the evidence:
> 1. **the defendant** made an intentional decision with respect to the conditions under which the plaintiff was confined;
> 2. those conditions put the plaintiff at substantial risk of suffering serious harm;
> 3. **the defendant** did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
> 4. by not taking such measures, **the defendant** caused the plaintiff's injuries.
>
> With respect to the third element, the **defendant's** conduct must be both objectively unreasonable and done with a subjective awareness of the

risk of harm. In other words, **the defendant** must have known facts from which an inference could be drawn that there was a substantial risk of serious harm, and **the defendant** must have actually drawn that inference.

**Liability must be determined on an individual basis. Therefore, for each defendant against whom the plaintiff seeks to establish liability, he must prove all four elements regarding that defendant.**

### V.   Defendants' Proposed Instructions

Defendants have proposed four non-model instructions.

#### A. Non-Model 1--Deference

Defendants request the jury be instructed that it should "give deference to prison officials in the adoption and execution of policies and practices."  After the parties submitted their proposed jury instructions, the Ninth Circuit held the decision whether to give a "deference instruction" depends on "whether the treatment the prisoner challenges (1) was provided pursuant to a security-based policy or practice, and, if so, (2) was a necessary, justified, and non-exaggerated response to security needs."  *Fierro v. Smith*, 39 F.4th 640, 648 (9th Cir. 2022).  If "*both* conditions are met the deference instruction must be given."  *Id.*  If neither condition is met, the deference instruction cannot be given. And if one condition is met and one is not, the instruction may not be given but an instruction stating "whether to give deference to prison officials [is] left to the jury to decide" may be given.  *Id.*  Given this framework, no deference instruction is appropriate.

Defendants have never maintained understaffing Lewis prison or retaining nonfunctional cell locks was a "security-based policy or practice."  Nor have Defendants maintained the alleged practices were appropriate responses to security needs.  Similarly, Defendant Pitz has never maintained ordering other prisoners to attack Plaintiff was a "security-based policy or practice" nor has he maintained such a policy was an appropriate response to security needs.  Therefore, no deference instruction will be given.

#### B.   Non-Model 2--Physical Injury

Defendants seek a jury instruction that Plaintiff must prove he suffered more than a minimal physical injury to be entitled to recover compensatory and punitive damages. In the context of Plaintiff's First Amendment claim, the jury instruction is a misstatement

of the law.  *Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998).  Second, the prospect that being stabbed or beaten unconscious is only "minimal physical injury" is not convincing.  It may mislead the jury to instruct them regarding "minimal physical injury" in the particular context of this case.  Defendants' proposed instruction will not be given.

### C. Non-Model 3--Respondeat Superior

Defendants propose a jury instruction that states Defendants must have "personally participated in the deprivation of [Plaintiff's] constitutional rights."  That is a potentially misleading formulation of the governing law.  As noted early, the claims against supervisory personnel may be based on the failure to act.  *Keates v. Koile*, 883 F.3d 1228, 1242–43 (9th Cir. 2018).  Therefore, this instruction will not be given.

### D. Non-Model 4--Violation of Policy

Defendants propose an instruction that "[a] violation of prison policy does not amount to a constitutional violation."  While it is true that a violation of prison policy does not necessarily amount to a constitutional violation, there is no need to instruct the jury on this point.  Other instructions convey what Plaintiff must prove to establish his claims and there is no indication Plaintiff has any plan to argue violations of prison policy, on their own, are sufficient.  Defendants' proposed instruction will not be given.

## VI.    Trial Schedule

To ensure the trial remains on schedule, the parties will be required to file a witness list identifying the amount of time anticipated for direct, cross, and redirect of each witness.

## VII.    Bifurcation of Trial

The Court denied the motions for summary judgment on December 15, 2021.  On May 17, 2022, the Court set the trial for September 12, 2022.  (Doc. 221).  Defendants waited until September 5, 2022, to file a motion to bifurcate the trial.  Defendants request the jury determine liability on the money damages aspects first and then the Court hear additional evidence on Plaintiff's request for injunctive relief.  According to Defendants,

"[t]o avoid prejudice to the personal capacity Defendants during the liability phase, evidence regarding the current status of the prison must not be admitted."  (Doc. 281 at 7).  Defendants' primary concern is the presence of Defendant Shinn during the jury trial will allow for the admission of some exhibits they believe would otherwise qualify as hearsay.

As discussed in the context of denying Defendants' motion in limine regarding hearsay statements, (Doc. 243), the presence of Defendant Shinn makes the hearsay analysis straightforward.  However, the happenstance of Defendant Ryan being replaced by Defendant Shinn during this litigation does not have the impact Defendants argue it should have.  Even if Defendant Shinn were not a party, the statements at issue were made by employees or agents of Defendant Ryan when he was a defendant in his official capacity.  Defendants have not offered any authority that non-hearsay statements suddenly become hearsay when an official is replaced.  In any event, however, the hearsay issue is moot because bifurcation is not appropriate.

"Rule 42(b) of the Federal Rules of Civil Procedure confers broad discretion upon the district court to bifurcate a trial" based on the circumstances of the case.  *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002).  Here, it would be inefficient to bifurcate the trial.  The evidence and testimony relevant to the claims for monetary damages as well as injunctive relief overlap.  For example, the history of staffing and the minimum appropriate number of staffing are relevant to money damages and injunctive relief.  In addition, arranging for testimony by certain witnesses, such as Plaintiff himself, requires significant effort and coordination.  In these circumstances, a single trial with appropriate limiting instructions to the jury is appropriate.  Bifurcation will not be ordered.

### VIII.  Amend Pretrial Order

Plaintiff seeks to amend the Joint Proposed Pretrial Order in two respects.  First, to add Defendant David Shinn to the list of witnesses to be called at trial.  Second, to add two exhibits.

Plaintiff did not include Defendant Shinn on the Joint Proposed Pretrial Order filed on June 21, 2022.  (Doc. 241-1).  On September 2, 2022, Plaintiff filed a motion arguing Shinn's omission was inadvertent.  Plaintiff requests he be allowed to add Shinn as a witness who will testify regarding "ongoing staffing shortages, UA and door maintenance issues, and ADC policies and procedures."  (Doc. 277).  The parties have been preparing for trial since, at least, June 21, 2022.  Shinn is a named defendant and defense counsel may have known Shinn could be called.  But Defendants were entitled to rely on the Joint Proposed Pretrial Order in preparing their case and witnesses.  Therefore, at present, the Court will not permit Plaintiff to call Shinn.

Plaintiff seeks to add as exhibits two documents not listed in the Joint Proposed Pretrial Order.  Those documents are an "informal complaint resolution" and an "inmate grievance" related to his claim that Defendants Pitz was using other prisoners to enforce rules.  Plaintiff had copies of these documents in his legal records but those copies were taken by prisoner officials in connection with a prison move.  Plaintiff did not regain custody of the documents until approximately one week ago.  These documents have been referenced repeatedly during this litigation and it was prison officials, not Plaintiff, who had custody of them until very recently.  In these circumstances, Plaintiff will be permitted to add these two documents as exhibits.

## IX.    Verdict Form

The parties have proposed competing verdict forms.  The Court anticipates using the following language.  The parties should be prepared to discuss this language at the Final Pretrial Conference

We, the Jury, duly empaneled and sworn in the above-entitled action, upon our oaths find:

**Eighth Amendment Claim**

Which of the Defendants, if any, failed to protect Plaintiff in violation of his Eighth Amendment Rights?

Defendant Ryan            [_____] Yes [_____] No

Defendant Trujillo        [_____] Yes [_____] No

Defendant Thompson        [_____] Yes [_____] No

Defendant Larson          [_____] Yes [_____] No

Defendant Pitz            [_____] Yes [_____] No

**First Amendment Claim**

Did Defendant Pitz retaliate against Plaintiff Crago in violation of the First Amendment?

 [_____] Yes [_____] No

**Damages**

Having found in favor of Plaintiff Earl Crago and against the Defendant(s), we find the damages in the amount of

$_____ against Defendant Charles Ryan.

$ _____against Defendant Ernest Trujillo.

$ _____against Defendant Berry Larson.

$ _____against Defendant Gerald Thompson.

$ _____against Defendant Joseph Pitz.

On the question of punitive damages, we find they are warranted against the following defendants in the following amounts.

$ _____against Defendant Charles Ryan.

$ _____against Defendant Ernest Trujillo.

$ _____against Defendant Berry Larson.

$ _____against Defendant Gerald Thompson.

$ _____against Defendant Joseph Pitz.


By: _____

    Foreperson

 Date: _____

1

2      Accordingly,

3      **IT IS ORDERED** the stipulations (Doc. 229, 230, 231) are **GRANTED**.

4      **IT IS FURTHER ORDERDED** the following motions in limine are **DENIED**:

5   Doc. 233, 234, 235, 236, 237, 248, 244, 245, 246, 243, 250, 247.

6      **IT IS FURTHER ORDERED** the motion in limine (Doc. 232) is **GRANTED**.

7      **IT IS FURTHER ORDERED** the motion in limine (Doc. 249) is **GRANTED IN**

8   **PART** and **DENIED IN PART**.

9      **IT IS FURTHER ORDERED** no later than **9:00 a.m.** on **September 8, 2022**, the

10  parties shall file a joint witness list setting forth the time for direct, cross, and redirect.

11     **IT IS FURTHER ORDERED** no later than **9:00 a.m.** on **September 8, 2022**, the

12  parties shall file a statement identifying the particular issues they were unable to resolve

13  relating to the motions in limine that should be addressed at the Final Pretrial Conference.

14     **IT IS FURTHER ORDERED** the Motion to Bifurcate (Doc. 281) is **DENIED**.

15     **IT IS FURTHER ORDERED** the Motion to Amend (Doc. 277) is **DENIED** and

16  the Motion to Amend (Doc. 284) is **GRANTED**.

17     **IT IS FURTHER ORDERED** the Motion to Secure Inmate Steven Antrobus

18  (Doc. 267) and Motion for Writ of Habeas Corpus (Doc. 268) are **DENIED AS MOOT**.

19     Dated this 6th day of September, 2022.

20

21

22

23           Honorable Roslyn O. Silver
             Senior United States District Judge

24

25

26

27

28