1   Kathleen L. Wieneke, Bar #011139
    Laura Van Buren, Bar #031669
2   Jacob A. Weld, Bar #036932
    WIENEKE LAW GROUP, PLC
3   1225 West Washington Street, Suite 313
    Tempe, Arizona 85288
4   Telephone: (602) 715-1868
    Facsimile: (602) 455-1109
5   Email: kwieneke@wienekelawgroup.com
    Email: lvanburen@wienekelawgroup.com
6   Email: jweld@wienekelawgroup.com

7   *Attorneys for Defendants Larson, Pitz, Ryan, Trujillo, Shinn and Thompson*

                   **UNITED STATES DISTRICT COURT**
8
                       **DISTRICT OF ARIZONA**
9

10  Earl Felton Crago,

11              Plaintiff                    NO.  2:19-cv-04532-ROS-ESW

12       v.
                                             **DEFENDANTS' NOTICE OF**
13  Joseph Pitz, et al.,                     **LODGING SECOND AMENDED**
                                             **JOINT PROPOSED PRETRIAL**
14              Defendants.                   **ORDER**

15                                           **AND OBJECTIONS THERETO TO**
                                             **DOC. 320**
16

17

18          Defendants give notice that on this date they have lodged a proposed Amended Joint

19  Proposed Pretial Order and Objections thereto.  **See objections in bold/italics**

20

21

22

23

24

25

26

158250145

1    DATED this 19th day of September 2022.

2                                    WIENEKE LAW GROUP, PLC

3                           By:    */s/ Laura Van Buren*
4                                  Kathleen L. Wieneke
                                   Laura Van Buren
5                                  Jacob A. Weld
6                                  1225 West Washington Street, Suite 313
                                   Tempe, Arizona 85288
7                                  *Attorneys for Defendants Larson, Pitz, Ryan,*
                                   *Trujillo, Shinn and Thompson*
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

158250145

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on September 19, 2022, I electronically transmitted the attached

3

document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4

Notice of Electronic Filing to the following CM/ECF registrants:

5

6   Christopher D. Thomas                  Thomas J. Tobin
    Andrea J. Driggs                        Cara V. Wallace
7   Paul F. Eckstein                        PERKINS COIE LLP
    Janet M. Howe                           1201 Third Avenue, Suite 4900
8   Kelleen Mull                            Seattle, Washington 98101
    PERKINS COIE LLP                        *Admitting Pro Hac Vice*
9   2901 N. Central Avenue, Suite 2000      *Attorneys for Plaintiff*
10  Phoenix, Arizona 85012-2788
    *Attorneys for Plaintiff*
11

12      I hereby certify that on this same date, I served the attached document by U.S. Mail,

13  postage prepaid, on the following, who is not a registered participant of the CM/ECF

14  System:

15      N/A

16
                                    By:    */s/ Mica Mahler*
17

18

19

20

21

22

23

24

25

26

158250145

1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

8

**DISTRICT OF ARIZONA**

9

Earl Felton Crago,

No.  2:19-cv-04532-ROS-ESW

10

Plaintiff

**SECOND AMENDED JOINT PROPOSED PRETRIAL ORDER AND DEFENDANTS' OBJECTIONS**

11

v.

12

Joseph Pitz, et al.,

13

Defendants.

14
15

Pursuant to the Court's Orders entered March 11, 2022, September 9, 2022, and

16

September 13, 2022, the parties submit the Amended Joint Proposed Pretrial Order.

17

**A      TRIAL COUNSEL FOR THE PARTIES**

18

1.      Counsel for Plaintiff Earl Felton Crago, Jr.

19

Christopher D.  Thomas
Andrea J. Driggs

20

Thomas Tobin
PERKINS COIE LLP

21

2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012

22

Telephone:  602.351.8000

23

CThomas@PerkinsCoie.com
ADriggs@PerkinsCoie.com

24

TTobin@perkinscoie.com

25
26

158250145

1    2.    Counsel for Defendants David Shinn, Joseph Pitz, Berry Larson, Charles L.

2    Ryan, Gerald Thompson, and Ernie Trujillo.

3    Kathleen L. Wieneke
     Laura A.  Van Buren
4    Jacob Weld
     WIENEKE LAW GROUP
5    1225 West Washington Street, Suite 313
     Tempe, Arizona 85281
6    Telephone:  602.715.1868
     Kwieneke@wienekelawgroup.com
7    LvanBuren@wienekelawgroup.com
     jweld@wienekelawgroup.com
8
9

10    3.    Any additional trial counsel for the parties will file an application for

11   admission *pro hac vice* and a notice of appearance, as appropriate, in advance of trial.

12   **B     STATEMENT OF JURISDICTION/VENUE**

13   1.    This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

14   2.    Jurisdiction is not disputed.

15   **C     NATURE OF ACTION**

16        This is a case that arises under the Eighth Amendment (Counts One and Three) and

17   First Amendment (Count Two) to the U.S. Constitution.  Plaintiff Crago, an incarcerated

18   individual, seeks compensatory and punitive damages and declaratory and injunctive relief.

19   In Count One, he alleges that Defendants were deliberately indifferent to Plaintiff's safety

20   by operating Arizona State Prison Complex ("ASPC")-Lewis with broken cell door locks,

21   inadequate staffing, and inmates managing the prison population.  Count Two alleges that

22   Defendant Pitz retaliated against Mr. Crago when he complained about these problems at

23   ASPC-Lewis.  Count Three alleges that Defendant Pitz instructed prisoners to assault and

24   harm Mr. Crago because of his complaints.

25        As to Count One, Defendants deny that they were deliberately indifferent to any

26   serious risk of harm to Plaintiff.  Specifically, Defendants deny that they knew of an

-2-

excessive risk to inmate Crago's safety at the Buckley Unit and that they deliberately ignored this risk.  Further, Defendants deny that Plaintiff suffered a specific injury as a result of the specific conduct of each of the Defendants, or that there exists an affirmative link between the alleged injury and the conduct of each Defendant.

As to Counts Two Defendant Pitz denies he retaliated against Plaintiff, including instructing inmates to assault Plaintiff, denies knowing of any alleged protected conduct and affirmatively alleges that the actions against Plaintiff were done for legitimate penological goals.

As for Count III, the deliberate indifference claim against Defendant Pitz, he alleges this claim is duplicative of Count I in that is seeks duplicative damages, Defendant Shinn, the only Defendant sued in his official capacity, is sued for injunctive and declaratory relief, and seeks bifurcation of these claims from the money damages claims, as they claims are tried to the court and should be diced at the conclusion of the liability/jury portion of the case.

### D   JURY/NON-JURY

Plaintiff has withdrawn his initial demand for a jury trial.  However, Defendants have requested a trial by jury.

### E   CONTENTIONS OF THE PARTIES
#### Plaintiff's Contentions

**Eighth Amendment**.  Plaintiff has claimed violations of the Eighth Amendment against all Defendants (Count One) and Defendant Pitz (Count Three).  The Eighth Amendment1 proscribes conditions of confinement that are "incompatible with the evolving standards of decency that mark the progress of a maturing society" or that

---

[1] As a general matter, for § 1983 claims, a plaintiff must show that that (1) the defendants, acting under color of state law, (2) deprived plaintiffs of rights secured by the Constitution or federal statutes." *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986).

158250145

1   "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97,

2   102–03 (1976) (citations omitted).

3          Under the Eighth Amendment, Defendants act with deliberate indifference when

4   they (1) have subjective knowledge of the risks or when those risks are "obvious" and (2)

5   fail to take reasonable action to abate those risks. *Lemire v. Cal. Dep't. of Corr. & Rehab.*,

6   726 F.3d 1062, 1078 (9th Cir. 2013) (citation omitted).

7          The objective prong is satisfied if the institution deprives a person of "basic human

8   needs," *Helling v. McKinney*, 509 U.S. 25, 32–33 (1993), or a "minimal civilized measure

9   of life's necessities," *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (citation omitted).  The

10  subjective prong is satisfied if Defendants acted with "deliberate indifference." *Grenning*

11  *v. Miller-Stout,* 739 F.3d 1235, 1238 (9th Cir. 2014).  "A showing of deliberate indifference

12  . . . requires a showing that the defendant knew of an excessive risk to inmate health or

13  safety that the defendant deliberately ignored." *Id.*  at 1239.  The very obviousness of the

14  risk may be sufficient to establish knowledge.  *Farmer v. Brennan*, 511 U.S. 825, 842

15  (1994); *see Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995).

16         **Retaliation**.  Plaintiff has also filed a claim against Defendant Pitz in Count Two,

17  alleging a violation of Plaintiff's constitutional rights under the First Amendment.   "[A]

18  viable claim of First Amendment retaliation entails five basic elements:  (1) [a]n assertion

19  that a [government] actor took some adverse action against an inmate (2) because of (3)

20  that inmate's protected conduct, and that such action (4) chilled the inmate's exercise of

21  his First Amendment rights, and (5) the action did not reasonably advance a legitimate

22  correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

23         Plaintiff contends that Defendant Pitz's actions effectively made the usual remedies

24  unavailable to Plaintiff.  *McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015) (as amended)

25  (holding that "the threat of retaliation for reporting an incident can render the prison

26  grievance process effectively unavailable and thereby excuse a prisoner's failure to exhaust

-4-

1    administrative remedies"); *Draper v. Rosario*, 836 F.3d 1072, 1078 (9th Cir. 2016)

2    ("[R]emedies are not considered 'available' if, for example, prison officials do not provide

3    the required forms to the prisoner or if officials threaten retaliation for filing a grievance.");

4    *Andres v. Marshall*, 867 F.3d 1076, 1078-79 (9th Cir. 2017) (per curiam) (as amended)

5    (when "prison officials improperly fail to process a prisoner's grievance, the prisoner is

6    deemed to have exhausted available administrative remedies").

7        **Damages**.  Plaintiff has requested both compensatory and punitive damages.  "A

8    plaintiff who establishes liability for deprivations of constitutional rights actionable under

9    42 U.S.C. § 1983 is entitled to recover compensatory damages for all injuries suffered as a

10   consequence of those deprivations." *Borunda v. Richmond*, 885 F.2d 1384, 1389 (9th Cir.

11   1988); *see also Smith v. Wade*, 461 U.S. 30, 52 (1983) ("Compensatory damages … are

12   mandatory.").   Compensatory damages include actual losses, mental anguish and

13   humiliation, impairment of reputation, and out-of-pocket losses.  *See Borunda*, 885 F.2d at

14   1389; *Knudson v. City of Ellensburg*, 832 F.2d 1142, 1149 (9th Cir. 1987); *Chalmers v.

15   City of Los Angeles*, 762 F.2d 753, 760–61 (9th Cir. 1985).

16       Punitive damages are available to plaintiffs like Mr. Crago under § 1983.  *See Pac.

17   Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 17 (1991); *Kentucky v. Graham*, 473 U.S. 159,

18   167 n.13 (1985); *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005); *Morgan v. Woessner*,

19   997 F.2d 1244, 1255 (9th Cir. 1993); *Cinevision Corp. v. City of Burbank*, 745 F.2d 560,

20   577 n.21 (1984).  This is true even if Plaintiff is unable to show compensable injury.  *See

21   Wade*, 461 U.S. at 55 n.21 (1983).

22       A jury has discretion to award punitive damages, *Smith*, 461 U.S. at 54; *Woods v.

23   Graphic Commc'ns*, 925 F.2d 1195, 1206 (9th Cir. 1991), when a jury finds either that the

24   Defendant(s) acted with an evil motive or demonstrated reckless indifference to the

25   constitutional rights of Plaintiff.  *See Smith*, 461 U.S. at 56; *Dang*, 422 F.3d at 807–09

26   (holding "that oppressive conduct is a proper predicate for punitive damages under §

1    1983"); *Morgan*, 997 F.2d at 1255; *Bouman v. Block,* 940 F.2d 1211, 1233 (9th Cir. 1991).

2    The jury should "make 'a discretionary moral judgment' that the 'conduct merit[s] a

3    punitive award.'" *Woods*, 925 F.2d at 1206 (quoting *Smith*, 461 U.S. at 52).

4          Declaratory Judgment.   Plaintiff has requested declaratory relief.   Declaratory

5    judgment is an equitable remedy which should be granted as a matter of judicial discretion

6    and exercised in the public interest. *Eccles v. Peoples Bank of Lakewood Village*, 333 U.S.

7    426, 431 (1948).

8          Injunctive Relief.   Plaintiff has also requested injunctive relief.   The Prison

9    Litigation Reform Act ("PLRA") states that:

10               [t]he court shall not grant or approve any prospective relief
11               unless the court finds that such relief is narrowly drawn,
                 extends no further than necessary to correct the violation of the
12               Federal right, and is the least intrusive means necessary to
                 correct the violation of the Federal right.  The court shall give
13               substantial weight to any adverse impact on public safety or the
                 operation of a criminal justice system caused by the relief.
14
15   18 U.S.C. § 3626(a)(1)(A) (1997).  Here, Plaintiff's requested injunctive relief is narrowly

16   tailored to correct the violations of his rights at ASPC-Lewis and enjoin Defendants from

17   their objectionable conduct.

18

19

20

21

22

23

24

25

26

1

**Defendants' Contentions**

2

**1.     Plaintiff's Eighth Amendment Deliberate Indifference Claims**

3
In Count One, Plaintiff alleges that Defendants Ryan, Trujillo, Larson, Thompson,

4
and Pitz violated his Eighth Amendment right to be free from cruel and unusual

5
punishment.  Specifically, Plaintiff claims that the Defendants were deliberately indifferent

6
to his safety, which resulted in other inmates assaulting him on three occasions.  He asserts

7
that each Defendant was deliberately indifferent in 1) allowing the APSC- Lewis, Buckley

8
Unit to operate with "broken" cell door locks, 2) utilizing inadequate staffing on the days

9
of the three alleged assaults, and 3) allowing inmates to enforce internal order.  In Count

10
III, Plaintiff alleges Defendant Pitz instructed prisoners to assault him.[2]

11
A claim of deliberate indifference requires more than negligence or "ordinary lack

12
of care," and is the equivalent of reckless disregard.  *Farmer v. Brennan*, 511 U.S. 825,

13
836 (1994).  It is Plaintiff's burden to show "he [was] incarcerated under conditions posing

14
a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.  This requires more than

15
simply alleging he was assaulted.  "It is not…every injury suffered by one prisoner at the

16
hands of another that translates into constitutional liability." *Farmer*, 511 U.S. at 834.  An

17
Eighth Amendment violation requires proof that the alleged deprivation is "sufficiently

18
serious," such that it results in the denial of "the minimal civilized measure of life's

19
necessities." *Id*.  Further, the prison official must possess a sufficiently culpable state of

20
mind. *Id*.

21
Many lower courts have found that in order for the risk of assault to be "serious" or

22
"substantial," the plaintiffs must demonstrate a "pervasive risk of harm to inmates from

23

24

25
    [2] Defendants maintain that Counts One and Three are duplicative, request the same
damages, and that Plaintiff may not recover multiple times for the same alleged injuries.  To the
extent that Plaintiff claims different damages in Count I, Plaintiff sustained no physical injury

26
under 42 U.S.C.  § 1997e(e), and therefore fails to state a claim against these Defendants.

1   other prisoners." *Madrid v. Gomez*, 889 F. Supp. 1146, 1268 (N.D. Cal. 1995) (compiling
2   cases).

3       As for the culpable state of mind, the necessary state of mind is one of "deliberate
4   indifference" to prisoner health or safety. The plaintiff must show that the individual
5   defendants had **actual knowledge** of the substantial risk of serious harm. *Id*. at 844-45,
6   see also *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). This requires Plaintiff to
7   demonstrate that the defendants were both "'aware of facts from which the inference could
8   be drawn that a substantial risk of serious harm exists' and actually drew the inference."
9   *Horton v. City of Santa Maria*, 915 F.3d 592, 599 (9th Cir. 2019) (quoting *Simmons v.
10  Navajo County*, 609 F.3d 1011, 1017 (9th Cir. 2010)); see also, *Ford v. Ramirez-Palmer
11  (Estate of Ford)*, 301 F.3d 1043 1050 (9th Cir. 2002) (noting a reasonable prison official
12  "could know all of the facts" yet mistakenly believe the danger or risk was not high.) A
13  relevant factor is whether the defendant "was in a position to take steps to avert the [harm],
14  but failed to do so intentionally or with deliberate indifference." *Leer v. Murphy*, 844 F.2d
15  628, 633 (9th Cir. 1988). Plaintiff must show that the Defendants, knowing of an actual
16  and substantial risk, were then deliberately indifferent to the risk. *Farmer* 511 U.S. at 844.
17  Essentially, he must show Defendants' acts or omissions in the face of the risk were
18  unreasonable. *Id.* (holding officials are "free from liability if they responded
19  reasonably.").

20      Because there is no respondeat superior liability for Section 1983 claims, the
21  Plaintiff must establish that the Defendants personally participated in the deprivation of his
22  constitutional rights. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). The Plaintiff
23  must prove that he suffered a specific injury as a result of the specific conduct of each of
24  the Defendants, and he must also show an affirmative link between the injury and the
25  conduct of each Defendant. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (plaintiff
26  must establish causal connection between the defendants' actions and the harm allegedly

-8-

1   suffered).  Defendants cannot be liable simply because someone else may have violated

2   Plaintiff's constitutional rights.

3         The violation of prison policy does not amount to a constitutional violation.

4   *Hammler v. Alvarez*, No. 18-CV-326-AJB (WVG), 2019 U.S. Dist.  LEXIS 17720, 2019

5   WL 422575, at *7 (S.D.Cal. Feb. 4, 2019), report and recommendation adopted, No.

6   3:18- CV-0326-AJB-WVG, 2019 U.S. Dist.  LEXIS 123618, 2019 WL 3315567 (S.D. Cal.

7   July 24, 2019) ("the failure to comply with a prison policy, without more, is not sufficient

8   to state a constitutional violation claim.") (citing cases); *Nance v. Miser*, CV

9   12-0734-PHX- RCB, 2012 WL 3631629, at *4 (D. Ariz. Aug. 23, 2012) ("The violation

10   of, or non-compliance with, prison policies, practices, procedures, or regulations, absent

11   more, does not rise to the level of a constitutional violation."); *Case v. Kitsap Cnty.*

12   *Sheriff's Dep't*, 249 F.3d 921, 929-30 (9th Cir. 2001).  *Mann v. Adams*, 855 F.2d 639, 640

13   (9th Cir.1988) (establishing a grievance procedure creates no protected liberty interest).

14   Indeed, agencies are free to set internal policies higher that what the Constitution mandates.

15   This is why care should be used in introducing evidence of policy violations.

16   **Plaintiff's First Amendment Retaliation Claim against Defendant Pitz, Only**

17         Inmates retain their First Amendment rights while incarcerated, including their right

18   to file prison grievances, *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003), and to seek

19   redress in the courts.  *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995).

20         There are five elements of a prisoner First Amendment retaliation claim:  (1) an

21   assertion that a state actor took some adverse action against an inmate (2) because of (3)

22   that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of

23   his First Amendment rights (or that the inmate suffered more than minimal harm) and (5)

24   did not reasonably advance a legitimate correctional goal.  *Rhodes v. Robinson*, 408 F.3d

25   559, 567-568 (9th Cir. 2005).  The plaintiff bears the burden of proving each of these

26

158250145

1   elements by a preponderance of the evidence.  *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d

2   1310, 1314 (9th Cir. 1989).

3       **1.    Adverse Action**

4       Courts have found an adverse action where a defendant allegedly made a false

5   disciplinary report against the prisoner.  *Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir.

6   2004).  But prisoners do not have a due process right to be free from false accusations or

7   false reports by prison officials.  *See Solomon v. Meyer*, No. 11cv02827-JST (PR), 2014

8   U.S. Dist.  LEXIS 9865, 2014 WL 294576, at *2 (N.D. Cal. Jan. 27, 2014) ("[T]here is no

9   due process right to be free from false disciplinary charges.").  So long as they are provided

10  a disciplinary hearing or resource, they have no claim.  *Muhammad v. Rubia*, No. 08cv3209

11  JSW (PR), 2010 U.S. Dist.  LEXIS 39818, 2010 WL 1260425, at *3 (N.D.  Cal. Mar. 29,

12  2010), aff'd, 453 F.  App'x 751 (9th Cir. 2011)

13      **2.    Protected Conduct**

14      Protected conduct includes filing lawsuits, *Rhodes*, 408 F.3d at 567, as well as

15  verbal complaints and written complaints and grievances, *Hines v. Gomez*, 108 F.3d 265,

16  267, 269 (9th Cir. 1997).

17      **3.    Adverse Action "Because of" Protected Conduct"**

18      The prisoner has the burden of demonstrating that the exercise of First Amendment

19  rights was a substantial or motivating factor behind the defendant's conduct.  *Mt. Healthy*

20  *City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S. Ct. 568, 50 L.Ed. 2d 471

21  (1977); *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989).  The

22  plaintiff must allege a retaliatory motive, that is, a causal connection between the adverse

23  action and his protected conduct.  *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2021).

24  The plaintiff must prove the defendant knew of the protected conduct and present evidence

25  that (1) there was proximity in time between the protected conduct and the allegedly

26  retaliatory action, (2) the defendant expressed opposition to the speech, or (3) the

-10-

1   defendant's proffered reason for the adverse action was false or pretextual. *Corales v.*
2   *Bennett*, 567 F.3d 554, 568 (9th Cir. 2009) (citation and emphasis omitted).

3          While timing may be considered as circumstantial evidence of retaliatory motive
4   and intent, timeline alone not enough to support an inference or retaliatory intent. *Pratt v.*
5   *Rowland*, 65 F.3d 802, 808 (9th Cir. 1995).  For example, if an inmate is "an active
6   jailhouse lawyer" and "regularly files grievances and lawsuits regarding prison
7   conditions," then "[a]ctions by prison officials are therefore likely to be close in time to his
8   litigation and grievance activity," and "[t]o show but-for causation in this situation,
9   plaintiff must show more than proximity in time." *See Espinosa v. Dzurenda*, No.
10  3:17- cv-00710-MMD-CBC, 2020 U.S. Dist.  LEXIS 141287, at *13-14 (D.  Nev. June 11,
11  2020); *Bruce v. Cate*, No. C-09-4649 JW (PR), 2012 U.S. Dist.  LEXIS 193646, at *50
12  (N.D. Cal. Mar. 26, 2012).  Such is the case here.

13         **4.      Chilling Effect**

14         In determining whether first amendment activities have been chilled, courts apply
15  an objective test, and whether a person of ordinary firmness would have been chilled is
16  sufficient to state a retaliation claim. *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir.
17  2009).  Thus, that speech was "actually" chilled need not be proven, only that the adverse
18  action "would chill or silence a person of ordinary firmness from future First Amendment
19  activities." *Id.*  (citation omitted).

20         **5.      Absence of Legitimate Correctional Goals**

21         The prisoner must demonstrate the absence of legitimate correctional goals for the
22  conduct of which he complains. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995).  Courts
23  must "afford appropriate deference and flexibility" to prison officials in the evaluation of
24  proffered legitimate penological reasons for conduct alleged to be retaliatory.  *Pratt v.*
25  *Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).  Legitimate correctional goals include
26  "preserving institutional order and discipline." *Barnett v. Centoni*, 31 F.3d 813, 816 (9th

Cir. 1994) (per curium); *see also Kessack v. Washington State Dep't of Corr.*, No. 21- 35631,2022 U.S. App.  LEXIS 15669 *5 (9th Cir June 7, 2022) (finding transfer of highly violent and repeat offender to total confinement was legitimate correctional justification).  A search for evidence of a crime or contraband is also legitimate correctional goal.  *Swan v. Smith*, 50 F. App'x 362 (9th Cir. 2002).  Other legitimate penological goas include ensuring compliance with the grievance process and regulating the activities of prison law clerks, *Shaw v. Murphy*, 532 U.S. 223, 230-31, 121 S. Ct.  1475, 149 L.Ed. 2d 420 (2001), and conducting cell searches.  *Hudson v. Palmer*, 468 U.S. 517, 526-27, 104 S. Ct. 3194, 82 L.Ed. 2d 393 (1984).

Throughout this litigation, Plaintiff alleged that Defendant Pitz engaged in the following acts of retaliation (see doc.56):

- Preventing Plaintiff from completing the grievance process;

- Ordering a disciplinary hearing officer to find Plaintiff guilty of an infraction involving receipt of cell phones;

- Interfering with Plaintiff's access to his attorney; and

- Moving Plaintiff to the SMU maximum custody unit.

In Response to Defendants' Motion for Summary Judgment, ***and the for the first time,*** Plaintiff added new, untimely allegations that Pitz (*see* doc:  185):

- Added a false STG designation to Plaintiff; and

- Issued a false disciplinary report for tampering with a security device.

Defendant Pitz objects to the alleged acts of retaliation that were raised for the first time at summary judgment as untimely and not properly disclosed in violation of Fed. R. Civ. P. 26(a)(1)(A), 26(e) and Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial,

-12-

1   unless the failure was substantially justified or harmless.").[3]   Plaintiff's late disclosure is

2   not harmless or substantially justified.   The new theory was disclosed after the close of

3   discovery and during summary judgement, providing Defendant Pitz with no reasonable

4   opportunity to timely "meet" the evidence.

5   **Plaintiff's Claims for Equitable Relief**

6          Plaintiff requests equitable remedies against Defendant Shinn (only) in his official

7   capacity.   The Court specifically joined Shinn "as a Defendant in his official capacity for

8   the purpose of addressing Plaintiff's claims for injunctive relief." (Doc. 195 at 6:17-21).

9          **1.     Plaintiff's Request for Injunctive Relief**

10         Plaintiff seeks a seeks a permanent injunction requiring one correction officer per

11  thirty inmates at all Arizona prisons, requiring security cameras in all hallways, and

12  ordering the Department of Corrections to segregate verified gang members from the rest

13  of the population.

14         The Prison Litigation Reform Act ("PLRA") imposes requirements on prison

15  litigants who seek injunctive relief.   Specifically, a court may only grant prospective relief

16  if it finds that such relief "is narrowly drawn, extends no further than necessary to correct

17  the violation of the Federal right, and is the least intrusive means necessary to correct the

18  violation of the Federal right." 18 U.S.C. § 3626(a)(2).   *Gilmore v. California*, 220 F.3d

19  987, 998-99 (9th Cir. 2000).

20         A plaintiff may only seek prospective relief such as an injunction for a "continuing

21  violation of federal law." *Green v. Mansour*, 474 U.S. 64, 68, 106 S. Ct. 423, 88 L.Ed. 2d

22  371 (1985).   *See also Mason v. Ryan*, No. CV-17-08098-PCTDGC (MHB), 2019 U.S. Dist.

23  LEXIS 33962, at *41 (D. Ariz. Mar. 4, 2019) (an inmate may only maintain an official

24

25         [3] Defendants objected to this new theory in their Motion For Summary Judgment
    pleadings.   Further, the Advisory Committee Notes that Rule 37 is "'self-executing,' 'automatic'
    sanction to 'provide[] a strong inducement for disclosure of material '" *Yeti By Molly, Ltd.*, 259
26  F.3d at 1106 (quoting Fed. R. Civ. P. 37 Advisory Committee's Note, 1993 Amend.).

158250145

1  capacity suit against the Director "to the extent he seeks prospective injunctive relief for

2  an ongoing violation").  To obtain an injunction as part of a failure-to-protect claim, "the

3  inmate must demonstrate a continuing disregard during the remainder of the litigation and

4  into the future." *Slone v. Ariz.  Dep't of Corr.*, No. CV 02-1128-PHX-MHM (DKD), 2005

5  U.S. Dist.  LEXIS 59441, at *6-7 (D. Ariz. Jan. 6, 2005) (citing *Farmer v. Brennan*, 511

6  U.S. 825, 846 (1994)) (emphasis added).  "Past exposure to harmful or illegal conduct does

7  not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to

8  suffer adverse effects." *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010)

9  (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992)).  Speculation and

10 "subjective apprehension" of future harm is also insufficient.  *Id.*  (quoting *Friends of the

11 Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 184).  Rather, a plaintiff

12 must show that he faces a "real or immediate threat . . . that he will again be wronged in a

13 similar way." *Los Angeles v. Lyons*, 461 U.S. 95, 111, 103 S.  Ct.  1660, 1670 (1983).  To

14 obtain an injunction as part of a failure-to-protect claim, "the inmate must demonstrate a

15 continuing disregard during the remainder of the litigation and into the future."

16        **2.        Plaintiff's Request for Declaratory Relief**

17        Plaintiff seeks a declaration stating that it is unconstitutional to use security threat

18 groups/prison gangs to control and manage prison populations.  Declaratory relief is

19 improper in this case for the reasons set forth in Doc. 176.  Generally, this form of relief

20 should be denied where the record is inadequate to support the extent of relief sought or

21 where it serves no useful purpose in clarifying issues.  *United States v. State of Wash.*, 759

22 F.2d 1353, 1356-1357 (9th Cir. 1985) (en banc).  *See also Metcalf v. Drexel Lending

23 Group*, No. 08-CV-00731 W POR, 2008 U.S. Dist.  LEXIS 87420, 2008 WL 4748134, at

24 *5 (S.D.Cal. Oct. 29, 2008) ("The purpose of a declaratory judgment is to set controversies

25 at rest before they cause harm to the plaintiff, not to remedy harms that have already

26 occurred"); *Metro Acquisitions, LLC v. Sunset III, LLC*, 2:08-cv-00524-RCJLRL, 2009

158250145

1  WL 10709707, at *8 (D.  Nev. May 19, 2009) ("Declaratory relief focuses on prospective

2  litigation, seeking to quell any uncertainties or disputes that may result therefrom.   It

3  operates prospectively and is not intended to redress past wrongs.").

### 3.   Bifurcation of the Equitable Claims Is Required

5  Because equitable claims are decided by the Court, they should be bifurcated form

6  the other counts and await resolution until the close of the jury trial.  "Where equitable and

7  legal claims are joined in the same action, there is a right to jury trial on the legal claims

8  which must not be infringed either by trying the legal issues as incidental to the equitable

9  ones or by a court trial of a common issue existing between the claims."  *Danjaq Ltd. Liab.*

10  *Co. v. Sony Corp.*, 263 F.3d 942, 962 (9th Cir. 2001) (quoting *Ross v. Bernhard*, 396 U.S.

11  531, 537-38 (1970)).  Thus, where legal and equitable claims are present in a single case,

12  the proper course is to conduct a jury trial on the legal claims, followed by a "final

13  determination" of equitable claims by the Court.  *Id.*[4]

### Additional Defenses and Arguments Regarding Plaintiff's Damages

### 1.   Damages Available Under the PLRA.

16  To recover for mental or emotional injuries related to the three alleged assaults,

17  Plaintiff has the burden to show that the suffered more than *de minimus* injuries.

18  The PLRA states that:

19  > No Federal civil action may be brought by a prisoner confined
20  > in a jail, prison, or other correctional facility, for **mental or
   > emotional injury** suffered while in custody **without a prior**

---

22  [4] "Where legal claims tried by the jury and equitable claims tried by the court are 'based
23  on the same set of facts, the Seventh Amendment requires the trial judge to follow the jury's
   implicit or explicit factual determinations.'" *Sanders v. City of Newport*, 657 F.3d 772, 783 (9th
   Cir. 2011) (quoting *Miller v. Fairchild Indus., Inc.*, 885 F.2d 498, 507 (9th Cir. 1989)).  After the
24  jury has submitted its ruling on the legal claims, the Court then "hear[s] any additional evidence
   pertaining only to Plaintiffs' request for injunctive relief in a subsequent court trial, if that is
25  necessary." *Coach, Inc. v. Citi Trends, Inc.*, No. CV 17-4775-DMG (KSx), 2019 U.S. Dist.
   LEXIS 242458, at *25-26 (C.D.  Cal.  Dec. 23, 2019) (citing *Los Angeles Police Protective
26  League v. Gates*, 995 F.2d 1469, 1473 (9th Cir. 1993)).

**showing of physical injury** or the commission of a sexual act
(as defined in section 2246 of title 18, United States Code).

42 U.S.C. § 1997e(e) (emphasis added).

This provision applies to (among others) Eighth Amendment failure-to-protect claims.  *See Manago v. Martinez*, No. 5:21-cv-01939-MCS-KES, 2022 U.S. Dist. LEXIS 34017, at *8 (C.D. Cal. Jan. 28, 2022).[5]

### a.     Defining "Physical Injury" Under 42 U.S.C. § 1997e(e).

In defining "physical injury," the Ninth Circuit has followed the Second, Fifth and Eleventh Circuits to hold that "for all claims to which it applies, 42 U.S.C. § 1997e(e) requires a prior showing of physical injury that need not be significant but must be more than *de minimis*." *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir. 2002).  The exact bounds of what qualifies as "*de minimis*" injury is undefined.  Id.  at 628.  The standard is not met by the allegation of "any" injury.  *Id.*; *Ward v. Oromde*, No. CIV S-09-2542-CMK-P., 2011 U.S. Dist.  LEXIS 102535, 2011 WL 4056035, at *5 (E.D. Cal. Sept. 12, 2011) ("[C]omplaints of bruising, swelling, scrapes, and pain, without evidence of more serious injury, indicate *de minimus* [sic] injury at best."), aff'd, 519 F.  App'x 470 (9th Cir. 2013).

Plaintiff bears the burden of showing a physical injury sufficient to overcome 42 U.S.C. § 1997e(e).  *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) (holding the Plaintiff's complaint must "specifically include his allegations of physical injury").  Vague allegations of harm or injury are not sufficient.  *Oliver*, 289 F.3d at 629 (finding a plaintiff's allegations of "back and leg pain," and unspecified "physical injuries" from a fight insufficient to show more than de minimis injury).  Similarly, minor health complaints have routinely been found insufficient to overcome 42 U.S.C. § 1997e(e).  *See, e.g. Preayer v.*

---

[5] This provision does not apply to First Amendment retaliation claims.  *See Canell v. Lightner*, 143 F.3d 1210 (9th Cir. 1998) ("deprivation of First Amendment rights entitles a plaintiff to judicial relief wholly aside from the physical injury he can show, or any mental or emotional injury he may have incurred…regardless of the form of relief sought").  *Id.*  at 1213.

*Ryan*, No. CV-15-00069-PHX-DGC, 2017 U.S. Dist.  LEXIS 83188, at *11 (D.  Ariz.  May 30, 2017) (noting physical conditions lasting only "a few days" were found *de minimis* by numerous courts.); *Lombardelli v. Halsey*, No. 1:08-CV-00658-AWI, 2012 U.S. Dist. LEXIS 90817, 2012 WL 2529225, at *9 (E.D.  Cal. June 29, 2012) (allegations of headaches at unspecified times showed only de minimis injury).

### b.      Other Categories of Damages Available

The absence of a physical injury does not entirely bar a plaintiff's constitutional claim.  "To the extent that [plaintiff] has actionable claims for compensatory, nominal or punitive damages…we conclude the claims are not barred by § 1997e(e)." *Oliver*, 289 F.3d at 630.  Thus, while 42 U.S.C. § 1997e(e) operates as a limitation on the recovery of an incarcerated litigant, it does not bar an award of compensatory damages (if applicable), nominal damages, or proportional punitive damages.  *See Oliver*, 289 F.3d at 630; *Cummings*, 402 F.3d at 943.

### 2.      Plaintiff Did Not Make An Adequate Damages Disclosure

### a.      A Computation of Damages Is Required Under Rule 26

Rule 26(a) requires the plaintiffs to disclose "a computation of any category of damages claimed." *See Maharaj v. Cal. Bank Trust*, 288 F.R.D.  458, 464 (E.D.  Cal. 2013). As is clear from the Advisory Committee Notes to Rule 26(a)(1)(C), this obligation is mandatory and 'imposes a burden of disclosure that includes the functional equivalent of a standing Request for Production under Rule 34.'" *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 293-94

A computation of damages requires some analysis:  "for instance, in a claim for lost wages, there should be some information relating to hours worked and pay rate." *Id*. Although emotional damages are usually less amenable to calculation, where plaintiffs fail to provide any computation, "[p]laintiff may be foreclosed from suggesting [a] specific amount for emotional distress damages to the jury at trial." *First v. Kia of El Cajon*, 2010

U.S. Dist. LEXIS 802018 (S.D.Cal. 2010); *accord Sandoval v. Am. Bldg. Maint. Indus., Inc.*, 267 F.R.D. 257, 282-83 (D. Minn. 2007). As the court noted in *Sandoval*:

> After all, if plaintiffs present a specific amount to the jury for compensatory damages, then presumably they have a basis and a means for arriving at the amount they are seeking. In short, in that situation, the calculation for emotional distress damages is not necessarily vague, and it would be unfair to defendants if plaintiffs could submit a specific dollar amount for damages to the jury without defendants having the opportunity to discover the basis for the claim and the opportunity before trial to rebut that basis.

*Id*. at *283. As further explained in *Lewis v. City of Burnsville*, 2020 U.S. Dist. LEXIS 115937 (D. Minn. June 29, 2020):

> However, if Plaintiff seeks to ask the jury for a specific dollar amount of such damages at trial—or to suggest any figures, or possible ranges—Plaintiff is required to provide it to Defendants along with the basis for that figure. Plaintiff cannot "reserve" any such disclosure until after fact discovery closes. Further, even if Plaintiff does not intend to as for a specific amount (or suggest a figure or range) but intends to offer evidence supporting any non-economic award, Plaintiff must disclose responsive discovery regarding the claim.

*Id*. at *11; *see also Castellanos v. Maya*, 2016 U.S. Dist. LEXIS 83980 (N.D. Cal. 2016) ("If Plaintiff intends to offer a specific dollar amount of emotional distress damages, he 'presumably has a basis and a means for arriving at the amount'" he seeks . . . he may not argue a specific dollar figure to the jury). Generic references to damages are not sufficient either. *Design Strategy*, 469 F.3d at *296 (excluding claim of lost profits where plaintiffs claimed that they turned over evidence from which the figure could be calculated and they included a generic statement regarding damages in their disclosure statement); *SiteLock LLC v. GoDaddy.com LLC*, No. CV-19-02746-PHX-DWL, 2022 U.S. Dist. LEXIS 36880, at *75-76 (D. Ariz. Mar. 2, 2022) (party violates disclosure obligation by failing to disclose theory of damages until after discovery).

### b.   Plaintiff's Damages Disclosure

Plaintiff never disclosed a computation of damages, as required by Fed. R. Civ. P. 26(a)(1)(A)(iii).   In addition to a "computation of any category of damages," Rule 26 mandates that plaintiff provide "a copy — or a description by category and location — of all documents . . . that the [plaintiff] has in its possession, custody, or control and may use to support its claims." *Id*.   The advisory committee note to Rule 26 describes this requirement as "the functional equivalent of a standing Request for Production under Rule 34." Fed. R. Civ. P. 26 advisory committee's note to 1993 Amendments.

In his Initial Disclosure Statement, Plaintiff merely reiterated his substantive allegations and stated:

> Plaintiff has no idea how a jury will feel, but he feels that requesting ten percent of ADC's gross annual operating budget of 1.1 billion dollars in light of defendants' callous disregard for life and indifference to health and safety in this case is reasonable and plausible on counts one, two, and three.

Plainly, this is not "a computation of each category of damages claimed by the disclosing party" (Fed. R. Civ. P. 26(a)(1)(A)(iii)).   It is simply a demand.   Plaintiff went on to submit six supplemental disclosure statements, none of which supplemented this response.

Additionally, Defendants served discovery asking Plaintiff to "[i]dentify all damages you contend were caused by each of the named Defendants, and for each claim for damages, state the nature, date of occurrence, the name and address of each witness supporting each claim for damages." Plaintiff's response merely said:

> Plaintiff objects:   The request for production of documents must be made through a request for production.   Without waiving this objection, Plaintiff answers that all facts, witnesses, and documents have been disclosed in the SAC, the Plaintiff's initial disclosure and supplemental disclosures, and the defendants' discovery responses.   The request to reproduce these items a second time is vexatious and unduly burdensome.

158250145

Five months after counsel was appointed, and less than two weeks prior to the date the Final Joint Pretrial Order was due to be filed, Plaintiff supplemented his damages interrogatory response to contain more detail about his alleged mental and physical damages.  This supplement, however, was too little too late and still does not offer any computation or dollar figure to any category of damages.

Plaintiff's failure to timely disclose his computation of damages is not harmless. *Hoffman v. Constr.  Protective Servs., Inc.*, 541 F.3d 1175, 1180 (9th Cir. 2008) (finding late disclosure of damages computations was not harmless because it "would have most likely required the court to create a new briefing schedule and perhaps re-open discovery, rather than simply set a trial date").

### 3.   Duty to Mitigate

The jury may consider the reasonableness of Plaintiff's conduct in light of his duty to mitigate damages.  Restatement (Second) of Torts § 918(2) (1977) (a plaintiff is not entitled to recover damages if "the injured person with knowledge of the danger of harm intentionally or heedlessly failed to protect his own interest."); see also *Ryan v. Laporte County Jail*, NO.:  3:19-CV-623, 2020 U.S. Dist.  LEXIS 81975, at *5, (D.  Ind.  May 11, 2020), *citing Smith v. Rowe*, 761 F.2d 360, 367 (7th Cir. 1985).

### F   STIPULATIONS AND UNDISPUTED FACTS

| Stipulations | |
|---|---|
| | It is stipulated that all parties are properly before the court, and that the court has jurisdiction of the parties and of the subject matter. |
| | It is stipulated that all parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties. |
| | The State agrees to make those witnesses who are current State employees at the time of trial and properly listed on the "will call" and "may call" lists available for trial with five days' notice of the day and time they are to testify. |
| | It is stipulated and agreed that Defendants acted under color of state law. |

| | |
|---|---|
| **Undisputed Facts**.  The following material facts are admitted by the parties and require no proof: | |
| **The Parties** | |
| | Plaintiff Earl Felton Crago, Jr.  is in the custody of the Arizona Department of Corrections, Rehabilitation and Reentry.  He currently resides at the Arizona State Prison Complex – Lewis, located in Buckeye, Arizona.  He is a resident of the Buckley Unit, where the events in the Complaint allegedly occurred.  From July 7, 2017, to May 3, 2019, Plaintiff was in Housing Unit 3 of the Buckley Unit. |
| | Defendant Charles Ryan was the Director of the ADC from January 2009 through September 13, 2019. |
| | Defendant Ernest Trujillo was the Northern Regional Operations Director ("NROD") for ADC through June 2019.  He became the NROD starting in approximately October 2014. |
| | He oversaw the Wardens at Lewis Complex (along with several other complexes). |
| | Defendant Berry Larson was the Warden of Lewis Prison from July 2017 through December 28, 2018. |
| | Defendant Gerald Thompson was the Warden at Lewis Prison from December 29, 2018 through May 2020. |
| | Defendant Joseph Pitz was the Deputy Warden of Buckley Unit from November 2018 through October 2019. |
| **The Buckley Unit** | |
| | Buckley Unit is a close custody unit, meaning prisoner movement is controlled, but prisoners within a pod are permitted to gather for mealtimes, outdoor recreation, education, and classes; all prisoners in Buckley Unit are in protective custody.  (Doc. 174 ¶¶ 15-16.) |
| | Buckley Unit has a total of 800 beds within its four housing units, numbered 1 through 4; each housing unit ("HU") contains four pods, labeled A through D.  (Doc. 171 ¶ 3; Doc. 174 ¶ 14.) |
| | A cell location is identified by HU, pod, and cell (e.g., HU3-Pod D- cell 19 or simply 3-D-19). |
| | From October 21, 2017 through February 13, 2019, Plaintiff was assigned to building 3, pod D, cell 19 (3-D-19).  On February 13, 2019, Plaintiff was briefly assigned to building 4, pod C, cell 14.  From February 13, 2019 through April 30, 2019, Plaintiff was assigned to cell 3-A-2.  From April 30, 2019 to May 3, 2019l, Plaintiff was assigned to cell 3-A-24. |
| **The Locks** | |
| | The Buckley Unit used sliding doors with a pneumatic locking system.  (Doc. 174 ¶ 17.) |

| | |
|---|---|
| | Padlocks were installed on 75 of 400 cells at Buckley unit by April 23, 2019.  (Doc. 186 ¶¶ 45-46.) |
| **Town Hall Meetings** | |
| | Deputy Warden Pitz held several Townhall meetings when he first arrived at Buckley Unit. |
| **Other** | |
| | On May 3, 2019, Plaintiff was taken to SMU-1 maximum custody. |
| | Plaintiff did not visit medical between January and May of 2019. |

## G     PLAINTIFF'S ADDITIONAL FACTS

Plaintiff believes that the following facts are not contested.  Defendants do not agree these facts are undisputed in this case, nor do they agree these facts are admissible or relevant.  Some of Defendants' objection to the relevancy and admissibility of undisputed facts through this section were made on the morning of June 21, 2022, and plaintiff accordingly must reserve the right to further respond to those objections later.

158250145

| | |
|---|---|
| **Job Duties** | |
| | |
| | **Director Ryan**.   Defendant Ryan's past job responsibilities are described (in part) as follows:  Under the direction of the Governor, the Director of the ADC, now known as Arizona Department of Corrections, Rehabilitation & Reentry ("ADCRR" or the "Department"), is responsible for the overall planning, operations, organization and policies of the agency to include maintaining and administering all ADC institutions and programs; administering community supervision services for adult offenders released from prison in accordance with the law; developing uniform statewide community field supervision services in Arizona; recommending policies and programs to the governor and Legislature for improving correctional programs; establishing employment qualifications (based on education and practical experience) for Deputy Directors and other key personnel; representing the department at administrative or legislative hearings, court hearings or other public or private gatherings; developing incentives for inmates to encourage good behavior and faithful performance of work; publicly advocates the ADC mission. |
| | **NROD Trujillo**.   Defendant Trujillo's job description included the following:  He was "responsible for the overall operational management of 5 prison complexes; over 14,000 inmates housed in minimum to maximum security units and over 4,000 employees.  The incumbent in this position has a direct confidential working relationship with the Division Director of Offender Operations (ADC000002AHO, gr.  29) and the  Director (ADC000020AHO, gr.  29), both non-covered positions.  This position manages supervisory positions and will be kept [apprised] of confidential information pertaining to departmental employees and inmates.  This position will also maintain confidential personnel and Performance Plans of employees." (STATE-000221.) |
| | **NROD Trujillo**.  Further, the job description for the Northern Regional Operations Director states (in part), "Under the general direction of the Division Director, Offender Operations, this position is responsible for the  direct  administrative  and  managerial  supervision  of  five Correctional Administrator V=s (ADC Prison Wardens) and their assigned institutions, all employees assigned to each prison complex, as well as the inmate populations at:  Arizona State Prison Complex (ASPC)-Eyman, ASPC-Florence, ASPC- Lewis, ASPC-Phoenix, and ASPC-Winslow.   Additional direct supervision of executive level administrative support, to include the Personnel Liaison for the ASPC-Eyman/ASPC-Florence Personnel Office; Ensuring compliance of all Department Orders, Procedural Manuals, and Standards of Operations as they apply to security and operational practices, staff safety, welfare of the inmate population, personnel actions, budget, and administrative actions; Supervision of institutions to include policy compliance; Policy and program development, and implementation statewide with regard to security operations, inmate programming, and standardization of staffing; Determine and publicly advocate substantive |

158250145

program policy and ensure managerial compliance with such policies; With input from the Divisions Budget Administrator make recommendations on the regional complex allocations, regional complex capital and [non- capital] improvements and purchases; Conduct inspections, to include direct review of the entire security systems at each institution which includes the integrity of the systems and policy adherence, as well as consistency of the written instructions for management of those systems, and on-site inspections of the housing unit regulations and standards, hands-on direct review of the operational practices; Audits to include identifying a specific system each month to do a detailed assessment of that system to ensure it is fully compliant with Department policy and documenting the results; Prepare comprehensive reports with appropriate recommendations to the Division Director and the agency Director.  The individual in this position will have extensive responsibilities for ensuring effective implementation of the Blue Ribbon Panel Recommendations, the Department's Strategic Plan and other Agency initiatives that impact the daily operations of prisons such as Restorative Justice, Parallel Universe, and Emergency Response Plans, etc." (STATE-000222.)

**Warden**.    Defendant Larson and Defendant Thompson's duties included (in part) the following:  "The Correctional Administrator V (Warden) administers a correctional complex with inmates of various custody levels from minimum to maximum security.  This position provides supervision of security and non-security staff and provides direct supervision of key personnel i.e., Deputy Wardens, is responsible for completing performance rating for staff.  This position determines actions regarding staff discipline, ensures compliance with staff training requirements and evaluations.  This position reports to the Regional Director and assists with ensuring policy compliance, policy and program development, and implementation statewide with regard to security operations and inmate programming.  Frequent tours and inspections of all areas to ensure compliance with policies, procedures, and health standards.  Tours shall also review staff and inmate morale, evaluate inmate program and activities." (STATE-000217.)

**Warden**.    According to the position description, the Warden is to allocate time as follows:  40% on "Administrative management of the complex and its staff.  Meet with the staff to communicate and resolve issues." 20% is to be spent on "Perform[ing] security and physical inspections; review and evaluate results to ensure compliance with policies and health standards." 10% is to be dedicated to "Coordinat[ing] the planning, development and implementations of policy and procedures for Prison Operations[.] Prepares comprehensive report and recommendations regarding security and/or inmate programming." 5% is dedicated to "Inmate management:  grievances, appeals, etc." 5% is to "Perform other duties, i.e., program review/evaluations; participating in public interaction and civic involvement, meetings, public speaking, etc." 5% is to "Design and implement construction modifications." 5% is to "Develop and propose policy changes with regard to security issues.  Develop and propose program changes." 5% is to "Monitor the fiscal and physical operations of the complex budget review." The final 5% is

-24-

| | |
|---|---|
| | for "Other duties as assigned as related to the position[.]" (STATE-000218.) |
| | **Deputy Warden Pitz**. As part of his official job duties, Deputy Warden Pitz was responsible for the safety and security of staff and inmates; provides supervision to security and non-security staff; provides direct supervision of key personnel i.e. Unit Chief of Security/Unit Program Manager; completes performance ratings for staff under supervision; provides supervision to inmates within the unit; prepares comprehensive reports of findings and recommendations regarding inmates and inmate related issues; completes grievances, appeals, classification, and discipline; develops and oversees inmate employment, leisure time activities, education, and treatment classes; ensures appropriate actions are administered regarding inmate protective custody requests/inmate movement; ensures appropriate actions are administered regarding personnel issues, health, safety and sanitation of the unit and maintenance issues within the unit; conducts staff training/evaluations/discipline; develops/proposes policy changes with regards to security and program issues; performs security and unit inspections; conducts reviews and evaluations to ensure compliance with policies/procedures/health standards; monitors fiscal and physical operations of the unit budget. |

## The Buckley Unit

| | |
|---|---|
| | The State's policy is that no active, verified STG members are permitted in the Buckley Unit. |
| | Each pod has 25 cells. Each cell has two beds. The HUs are numbered 1-4, and the pods are lettered A-D. The cells are numbered 1-25. |
| | The control rooms are identified by HU and pods (e.g., HU3-Pods C/D room or simply 3 C/D Control Room. |
| | Each housing unit has two control rooms from which staff can open, close, and monitor the entry doors to the housing unit, the pod entry doors, and the cell doors. (Doc. 171 ¶ 4.) |
| | In January and through February 13 of 2019, Plaintiff was assigned to building 3, pod D, cell 19 (3-D-19). |

## The Locks

| | |
|---|---|
| | In a letter dated January 12, 2019, and addressed to Complex Warden Thompson, Plaintiff wrote: |
| | The inmates in Morey Unit, Buckley Unit and Rast Unit have figured out how to compromise the locking mechanisms on the cell doors, pod doors, and building doors. |
| | I know an inexpensive and relatively simple way to fix the doors so that inmates cannot jam the locking mechanisms. |
| | I am at the end of a 25-year sentence. If you will give me a written recommendation for release in return for me showing ADC how to fix the doors, then I will show how to fix the doors. |
| | I think administration knows how dangerous it is to have hundreds of |

inmates breaking out of their cells at all times in the day and night.  So I feel me endangering myself by showing ADC how to fix the doors is a fair trade for a recommendation for release at my release hearing.

(Doc. 174-2 at 190-91.)

**Town Hall Meetings**

Unit administration typically holds Townhall meetings with inmates once a month.

A staff member prepares a record of what is said at these meetings.

Administrative Assistant April Townsend often took minutes at the Townhall meetings in 2018, though she did not prepare the November 2018 minutes.

The November 2018 Townhall minutes state:

Under "Inmate Accountability" and "Discussion":
- UA cell doors will result in a different course of action.
  - Changing tickets to an "A" charge.
  - Penalties will be severe.
- A group of people who UA cell doors will cause entire pod to be locked down along with the loss of showers and rec.
- Those who break windows will be charged the full cost of repair per window damaged.
  - In addition, inmates will be held accountable through discipline.
- Assault will not be tolerated on staff or other inmates.
  - Multiple inmates "rat packing on another is not acceptable.
  - Will create the loss privileges.

Under "Inmate Accountability" and "Outcome"
- Incentives for compliance:
  - 6 day rec/showers.
  - Increase in jobs and filling positions for current jobs.
  - Chow as a group.
  - Supplies provided to help repair facilities such as cleaning and painting supplies.

Warden Larson was "cc'd" on the November 30, 2018, meeting minutes (STATE-000087)

The December 2018 Townhall minutes state

Under "Inmate Accountability" and "Discussion":
- Inmates are still UAing doors daily
  - Will address individual inmates that are UAing doors, if multiple people then the entire pod will lose rec/showers.
  - While walk through for work orders was completed many doors were "capped" with items."

| | |
|---|---|
| | • Help to hold others accountable, important to use words and work issues out.<br>     o No violence is condoned by Administration.<br>• 6 day a week rec/shower.<br>     o With positive behavior staff can make changes such as painting cells and fixing issues.<br><br>Under "Inmate Accountability" and "Outcome":<br>• Incentives for compliance:<br>     o 6 day rec/showers<br>     o Increase in jobs and filling positions for current jobs.<br>     o Chow as a group.<br>     o Supplies provided to help repair facilities such as cleaning and painting supplies."<br><br>Under "Inmate Questions" and "Discussion":<br>• There were concerns about rec/showers being taken away when it is the same continuous inmates coming out and UAing doors, they don't want the entire pod punished.<br>     o DW Pitz advised that those particular inmates will be addressed on an individual level, if there are multiple people then the entire pod will lose rec/showers. |
| **Inmates** | |
| | Auturo Flores was moved to Buckley on 1/4/2019, according to his inmate record.  (STATE-000478.) |
| | On 5/3/2019, Flores was moved to ASPC-E SMU I CDU. (STATE- 000479.) |
| | From 2/7/2018 through 5/8/2019, Luis Parrado was housed at the Buckley Unit.  (STATE-000504.) |
| | From 6/1/2018 through 5/8/2019, Hector Ruiz was housed in the Buckley Unit.  (STATE-000525.) |
| **Other** | |
| | Inmate Kelvin Barnett, ADC No. 62516, went to the hospital on February 1, 2019. |
| | Plaintiff had a legal visit with attorney Holly Gieszl on April 30, 2019. |
| | Plaintiff's ADCRR Inmate Record says "04/23/19 RECLASS/ADM 4/4" and the next entry says "06/05/19 RE-CLASS/ADM 5/5." (See Doc. 174-2 at 5.)[6] [7] |

---

[6] Defendants' objection to the relevancy and admissibility of undisputed facts through this section were made on the morning of June 21, 2022, and plaintiff accordingly must reserve the right to further respond to those objections later.

[7] Defendants do not "stipulate" to these facts, nor do Defendants agree these facts are

| | |
|---|---|
| | Defendant David Shinn is the current director of the ADC.<br><br>**Defendants admitted this fact in para. 2 of their answer to the Third Amended Complaint ("TAC"). See Doc. 224.** |
| | Defendant Ryan admits to being named in his official capacity in the First Amended Complaint of *Russett v. Arizona et al.*, 2:16-cv-00431.<br><br>**Defendant Ryan admitted to this fact in para. 18 of his answer to the TAC.** |
| | Defendant Trujillo received reports that after the pins were installed prisoners were still able to UA their cells.<br><br>**Defendants admitted to this fact in para. 38 of their answer to the TAC.** |
| | On January 9, 2019, February 1, 2019, and April 5, 2019, two posts in housing unit 3 C/D were "collapsed."<br><br>**Defendants admitted this fact in para. 56 of their answer to the TAC.** |
| | There were 18 COs assigned to Buckley Unit during the a.m. shifts on January 9, 2019; February 1, 2019; and April 5, 2019.<br><br>**Defendants admitted this fact in para. 58 of their answer to the TAC.** |
| | The ADCRR Daily Post Sheet for January 9, 2019, does not show any employee names next to entries for "Housing Unit 3 C/D Control" and "Housing Unit C/D Floor." (See Doc. 174-2 at 181.)<br><br>**Defendants admitted this fact in para. 59 of their answer to the TAC.** |
| | Similarly, the Staff Schedule for February 1, 2019, does not show anyone assigned to 3 C/D control or 3 C/D floor.<br><br>**Defendants admitted this fact in para. 60 of their answer to the TAC.** |
| | The ADCRR Daily Post Sheet for April 5, 2019, does not show anyone assigned to 3 C/D control or 3 C/D floor posts.<br><br>**Defendants admitted this fact in para. 62 of their answer to the TAC.** |

undisputed in this case, nor they agree these facts are admissible or relevant.

-28-

| | Plaintiff is not a verified member of any security threat group ("STG"). **Defendants admitted this fact in para.  102 of their answer to the TAC.** |
| | On August 12, 2019, a document entitled "Report to Governor:  The Effectiveness of Locks at Lewis Complex" was submitted to the Arizona Governor. **Defendants admitted to this fact in para.  170 of their answer to the TAC.** |
| | The Report was written by Arizona Chief Justices Rebecca White Berch and Ruth V.  McGregor. **Defendants admitted to this fact in para.  171 of their answer to the TAC.** |
| | The authors interviewed certain prison employees and reviewed certain documents. **Defendants admitted to this fact in para.  172 of their answer to the TAC.** |
| | The Report discusses a purported "Step Down Program." **Defendants admitted to this fact in para.  173 of their answer to the TAC.** |

**The Parties**

| | **Director Ryan**.  While Charles Ryan was the Director for the ADC, he was ultimately responsible for the conditions of confinement for the inmates in ADC's custody. |
| | **Director Shinn**.  David Shinn is currently ultimately responsible for the conditions of confinement for the inmates in ADC's custody. |
| | **Director Shinn**.  Defendant Shinn's current and Defendant Ryan's past job responsibilities are described (in part) as follows:  Under the direction of the Governor, the Director of the ADC, now known as Arizona Department of Corrections, Rehabilitation & Reentry ("ADCRR" or the "Department"), is responsible for the overall planning, operations, organization and policies of the agency to include maintaining and administering all ADC institutions and programs;  administering community supervision services for adult offenders released from prison in accordance with the law;  developing uniform statewide community field supervision services in Arizona;  recommending policies and programs to the governor and Legislature for improving correctional programs;  establishing employment qualifications (based on education and practical experience) for Deputy Directors and other key personnel;  representing the |

158250145

| | |
|---|---|
| | department at administrative or legislative hearings, court hearings or other public or private gatherings; developing incentives for inmates to encourage good behavior and faithful performance of work; publicly advocates the ADC mission. |
| | Plaintiff is not a verified member of any security threat group ("STG"). |
| **News Coverage** | |
| | If April of 2019, Phoenix ABC Channel 15 aired a story about non-working prison-door locks, accompanied by video bootlegged from Lewis Prison. https://www.abc15.com/news/local- news/investigations/unlocked-and-un safe-leaked-videos-expose-arizona-prisons-broken-cell-doors |
| | In that video, inmates exited their cells on December 30, 2018, and attacked correctional officers. https://www.abc15.com/news/local-news/investigations/unlocked-and-un safe-leaked-videos-expose- arizona-prisons-broken-cell-doors |
| **Report to the Governor:   The Effectiveness of Locks at Lewis Prison (The "Berch/McGregor Report")** | |
| | On August 12, 2019, a document entitled "Report to Governor:  The Effectiveness of Locks at Lewis Complex" was submitted to the Arizona Governor. |
| | The Report was written by Arizona Chief Justices Rebecca White Berch and Ruth V.  McGregor. |
| | The report interviewed prison officials and reviewed certain documents and videos. |
| | The Berch/McGregor Report states that "State prisons in Arizona have experienced problems with cell locks for decades." (Doc. 53-1 at 1.) |
| | Further, "A 2006 video from the Department of Corrections' own website demonstrates how inmates at Lewis Prison can tamper with their cell doors so that they can later open them.  *Security Alert and Video* August 21, 2006." (Doc. 53-1 at 1.) |
| | After coverage of the non-working prison-door locks, the Arizona Governor's Office asked Justice Berch and Justice McGregor to provide an independent, third-party review into matters of security at the ADC, and specifically to provide an assessment of problems related to cell locks at Lewis Prison.  (Doc. 53-1 at 1); *see* https://azgovernor.gov/governor/news/2019/08/former-supreme-court-jus tices-finalize-third-party-corrections-investigation |
| | Specifically, they were "asked to produce a timeline relating to "the ineffectiveness of locks at Lewis Prison" and to address how long inmates have been able to open supposedly secured cell doors; what caused the problem; the steps ADC has taken to address the issue; and what proactive measures the state should take moving forward." (Doc. 53-1 at 1.) |
| | The Justices "were also asked to examine documents and view video evidence relating to assaults on inmates and staff resulting in serious injury |

158250145

| | |
|---|---|
| | that occurred between January 1, 2018, and April 30, 2019, and then to analyze ADC's actions in reviewing these incidents and the actions it took to prevent them from occurring again." (Doc. 53-1 at 1.) |
| | For each incident, the Justices "were to ascertain, if possible, whether ineffective locks contributed to the conditions that gave rise to the assault." (Doc. 53-1 at 1.) |
| | The Justices were also instructed to "review management decisions made by agency leadership" concerning accountability for oversight of the safety and security of the inmates and staff as they related to the ineffectiveness of locks at Lewis Prison." (Doc. 53-1 at 1.) |
| | Finally, the Justices were "asked to provide recommendations for further action." (Doc. 53-1 at 1.) |
| | The Justices formally interviewed 22 people and informally spoke with several others. (Doc. 53-1 at 2.) |
| | Only one person, former Lewis Warden Berry Larson, failed to respond to requests for an interview. (Doc. 53-1 at 2.) |
| | The Justices interviewed Charles Ryan on June 10, 2019, and again on August 8, 2019. (Doc. 53-1 at 2.) |
| | The Justices interviewed Gabriela Contreras, the Correctional Sergeant who released videos to ABC Ch. 15, on June 12, 2019. Doc. 53-1 at 2. |
| | The Justices interviewed Defendant Ernie Trujillo, the Northern Region Operations Director, on June 18, 2019. (Doc. 53-1 at 2.) |
| | The Justices interviewed Mark Hasz, a Correctional Lieutenant, on July 10, 2019. (Doc. 53-1 at 2.) |
| | The Justices also reviewed the documents listed on pages 3-5 of Doc. 53-1. |
| | The Justices constructed the timeline listed on pages 5-8 of Doc. 53-1. |
| | The Justices concluded that "despite initial disagreement about whether the doors are broken, consensus has now been reached that not all doors effectively and reliably close, lock, and secure the inmates. The inmates' ability to UA their doors presents an untenable security risk that must be remedied." (Doc. 53-1 at 10.) |
| | The Justices reported difficulties in determining the scope of the problem—the frequency with which inmates left their cells—because "Lewis records are not sufficiently complete to make an accurate determination possible. One supervisor with extensive experience in reviewing reports of inmate UAs estimated that from 50 to 70 percent of such incidents were not reported. Our review of various reports and then viewing related video appeared to confirm that observation." (Doc. 53-1 at 10.) |
| | A report from the warden to the Northern Regional Operations Director on July 18, 2018, referred to "a number of unwitnessed assaults" that had recently occurred in cells, but reports of numbers of such assaults could not be found." (Doc. 53-1 at 10-11.) |

158250145

| | |
|---|---|
| | The Justices concluded that "Several explanations exist for the failure to report. Some COs apparently concluded that filing disciplinary reports for inmates out of their cells was a waste of time because meaningful inmate discipline was not likely to occur; others failed to file reports because they did not have time to do so; while still others may not have wished to incur the inmates' wrath for strictly adhering to discipline protocols. Other COs stated that supervisors told them not to file disciplinary reports or reports for non-locking doors if the inmates returned to their cells when ordered to do so. Failure to report did not end with the COs. We found numerous examples of reports by deputy wardens and wardens that failed to accurately and completely describe an incident entitled to attention from leadership. The net result of these failures is that obtaining an accurate picture of the extent of inmate activity is not possible based on the reports filed." (Doc. 53- 1 at 11.) |
| | The Justices determined that "the inmates' freedom to UA their cells at Lewis appears dramatically worse than it is elsewhere in the system." (Doc. 53-1 at 12.) |
| | The Justices also determined that "Most of those with whom we spoke identified staff shortages as a major reason for lack of inmate control. Our examination of staff levels from FY 2005 to the present confirmed that ADC staffing, particularly for the COII position, has often been substantially below the level ADC considers adequate for safety and control." (Doc. 53-1 at 12.) |
| | The Justices found that "Yuma Prison features the same model of doors used at Lewis but does not have the same problem with mass inmate exits, perhaps because it has a far lower vacancy rate for COIIs." (Doc. 53-1 at 12 n. 7.) |
| | The Berch/McGregor Report states that "Lewis was designed for staffing of 30 COs in each unit, but Warden Larson reportedly cut staffing to 21. On some days, the units operate with far fewer. In extreme situations, such as days on which a large number of COs "call- in" asking to be excused from duty or days with a large number of inmate medical visits or programming activities or other CO assignments, staffing can be as sparse as 15 to 16 COs. The shortage of staff poses dangers to the COs who often have to work without ready back-up, and it predictably led to various problems. First, as noted in Section IV.A above, the short staffing left less time for COs to carefully inspect each door frame and shake the door to ensure that it was secured as they removed inmates or returned them to their cells. Staff also hesitated to hold inmates accountable because (a) they feared a physical response from the inmates and lacked sufficient backup from other COs on units also short-staffed and (b) they did not want to spend time completing the paperwork required to impose discipline." (Doc. 53-1 at 13.) |
| | Further, "the failure of the COs to make sure the doors were secure and not obstructed resulted in inmates being able to leave their cells almost at will. Inmates being outside their cells became a daily occurrence." (Doc. 53-1 at 14.) |

"The minutes from the Warden's meeting with COIIs on August 30, 2017, reflect that doors are "constantly breaking" and that Lewis has two dedicated officers working every day to make repairs." (Doc. 53- 1 at 19.)

The Berch/McGregor Report stated that "Monthly reports from the warden to the NROD clearly reflect the continued and growing struggle with inmates pulling pins and with failing doors.  See, e.g., Warden to NROD Memoranda, March 2018 (unit doors constantly failing or being manipulated by inmates; many pins do not engage); May 2018 (unit doors constantly failing or being manipulated by inmates; porters continue to unpin; too many cell doors open); June 2018 (inmates still capping cell doors and intentionally bending pins; porters continue to unpin; too many inmates left out and unsecured); July 2018 (inmates capping, manipulating, intentionally bending pins; some doorways out of alignment; unwitnessed assaults; staffing level; decreasing performance and increasing turnover rate); August 2018 (multiple ICSs due to disruptive inmates that pulled door pins and refused to lock down); September 2018 (inmates continue to unpin and UA); October 2018 (doors easily opened by inmates; maintenance issues and manipulating by obstructing; inmates have destroyed much of secondary pin system; inmate UAs a danger to staff and other inmates); November 2018 (same concerns as voiced in October; UAs have resulted in numerous ICSs and a draw on staff resources); December 2018 (cells doors continue to be a problem; inmates, despite pins, still able to access doors with impunity; door pins of little value; doors go through various stages of degradation)." (Doc. 53-1 at 20-21.)

The Justices reported that "At some point in 2019, supervisors at Lewis instituted a step down program, which used inmate "leaders" – those who had influence over other inmates – to help control inmate behavior and keep the peace.  These inmate leaders were rewarded by extra privileges and withholding discipline.  These privileges reportedly made other inmates unhappy.  When asked what makes inmates influential, interviewees told us that it was sometimes personality and often because of the inmates' connections, such as gang leadership positions or affiliation." (Doc. 53-1 at 23.)

Further, "This model of inmate-on-inmate discipline did not prove successful.  Although the paper records show that assaults appear to have gone down in frequency, interviewees told us that the assaults just occurred within the cells (where there are no video cameras) and weren't reported and, with increasing frequency, the "discipline" administered by the inmates was physical and severe." (Doc. 53-1 at 23-24.)

According to the Berch/McGregor Report, "although ADC leadership recognized the serious issue with broken locks statewide, the Lewis Complex was included in the budget requests for capital improvement funds for "Prison Facility Locking Systems Requests" only in 2011, 2012, and 2013.  That is, the Lewis Complex was not included in the requests for funds for prison locking systems in 2014, 2015, 2016, 2017, 2018, 2019, or 2020.  (See Attachment 4.) This is so even though, by at least 2017-18, assaults and deaths had resulted in part from the ability of inmates to "access their doors" and leave their cells without having the COs open the

-33-

158250145

doors for them, and ADC leadership had acknowledged being advised that inmates' ability to get of their cells had become an increasing problem." (Doc. 53-1 at 26.)

The Berch/McGregor Report further stated that "We note initially that, in reviewing video evidence of the assaults when that evidence was available, we found most striking the casual attitude of the inmates who leave their cells, wander the unit, and enter other cells. The inmates evidence no concern that they are visible on video and they may be called to account for their actions. The presence of an officer does not seem to deter this behavior. The videos make very clear the accuracy of the comments we heard about inmate UAs being an accepted part of prison life at Lewis." (Doc. 53-1 at 31.)

The Berch/McGregor Report stated that "In a number of incidents involving assaults on officers, ineffective locks seem clearly related to the injury-causing incident. In case 2018-100407, video shows that Officer Peralta was assaulted after responding to reports of multiple inmates out of their cells who were refusing to lock down. The assault in that case would not have occurred if the locks had worked effectively because multiple inmates would not have been in the pod. In 2018-100422, UAs also affected the situation that resulted in the assault on Officer Ballentine. That incident began when Officer Ballentine learned that two inmates had UA'd their cells and then attempted to move from one cell to another. Similarly, Officers Garza and Avila, in case 2018-100457, were injured when an inmate improperly out of his cell came to help two inmates who were reluctant to enter their cells. In case 2018-100460, Officer Pasos entered the area in which the assault was committed to lock down inmates who were out without authorization and who then pulled pins on several other cell doors. Sergeant Markowski, in case 2018-100484, encountered a situation in which at least six cell doors were open and at least eight inmates were out of their cells without authorization. Three of the inmates improperly roaming the common area assaulted Sgt. Markowski and Officer Contreras. A similar situation made possible the assault on Officers Nash and Duran-Vargas, who returned to an area after learning that inmates had UA'd their cells shortly after the officers had completed a security walk. See case 2018-100514. The video of that incident, which caused shock when it was broadcast, shows multiple inmates streaming out of their cells and assaulting the two officers. One of the assaults on an inmate also appears clearly related to UAs. In case 2018-100080, Inmate Mallory was assaulted in his cell. Unlike most such assaults, this assault begins with an inmate who is captured by video punching someone inside the cell, and later the fight spills into the area outside the cell, where it is clearly captured by video. At least four inmates are out of their cells and involved in the assault. Video and written evidence document many more assaults related to ineffective locks but not resulting in serious injury. We find convincing evidence that the ineffective locks at Lewis Prison contributed to assaults on both staff and inmates." (Doc. 53-1 at 32-33.)

The Berch/McGregor Report concluded that "For most of the 16- month review period, Lewis Prison was under the immediate supervision of a management team headed by Warden Berry Larson. In December 2018,

-34-

158250145

| | |
|---|---|
| | Director Ryan changed most members of that team by reassigning two team members, including the Warden, and demoting other officers. Because the warden, deputy warden of operations, and all deputy wardens except one were replaced, there seems little value in reviewing the management decisions of this team.  Director Ryan has already determined that it was not performing satisfactorily and has remedied that situation." (Doc. 53-1 at 34.) |
| | The Berch/McGregor Report found that "ADC fairly quickly revised the timeline as to when Director Ryan knew of the inmate UA situation from late May 2018 to November 2017.  Support for that date can be inferred because someone in leadership, presumably the Director, ordered the pinning of the doors of the cells at Lewis in November/December of 2017, a recognition that the locks alone were not holding.  We asked for a copy of the directive ordering installation of the pins, but never saw one. Interviewees indicated that the impetus came from NROD Ernie Trujillo, as he had overseen ADC facilities at which pinning was used effectively. Discussions with Trujillo about pinning cell doors at Lewis seem to have begun in the summer of 2017.    Nonetheless, the decision to pin by management indicates the understanding, by summer 2017, that the doors alone were not keeping the inmates in their cells." (Doc. 53-1 at 35.) |
| | The Berch/McGregor Report stated that "From the statements and documents we reviewed and the interviews we conducted, we cannot tell when, precisely, the Director came to understand that some locks would not secure and to appreciate the seriousness of the problem at Lewis. Whether it was 2018, 2017, or even 2019 (when the Director expressed surprise at the extent of UAs shown in the videos), all dates seem late in the game.    Overwhelming evidence shows that the inmates had been getting out of their cells for years.  Inmates being able to get out of their cells without the permission or assistance of the correctional officers is a problem in the prison setting, a threat to the safety and security of other inmates and the officers." (Doc. 53-1 at 36.) |
| | The Berch/McGregor Report stated that "This suggestion assumes, of course, that senior managers knew of the problems, as they should have known.  If they did not know, fault lies with them for not knowing, but also with a leader who continued to rely on the perhaps not-well- informed senior managers.  If senior management knew but failed to adequately inform the director, then some fault certainly lies with those senior managers.  But managers usually do not rise to senior positions without knowledge of their jobs, a part of which is to accurately and adequately advise their superior so that he might make effective decisions on behalf of the agency.  So if they did not fully report to the director, the question is why." (Doc. 53-1 at 36.) |
| | The Berch/McGregor Report found that "But regardless how it happened or whose fault it was, we conclude that the Director, for too long, remained surprisingly uninformed about the poor functioning of the locks and scope and seriousness of the danger the inmate UA issue that resulted at Lewis posed to inmates and officers.   That is not acceptable." (Doc. 53-1 at 36-37.) |

-35-

Additionally, "That belief that the locks were working does, however, explain the Department's multi-year failure to request funds to fix the doors at Lewis. The Director thought they were not broken, at least until late 2017 (to take the earliest stated date). It does not, however, explain why other decisive actions were not taken to ensure (a) that COs fully secured the doors, if that was believed to be the cause of the UAs, and issued disciplinary tickets for any inmates who got out of their cells, and (b) that mid-level supervisors were on the floor to actively mentor, assist, and supervise COs. If the failure to secure doors stemmed from lack of CO time (because of lack of staff), then the Department should have been aggressively requesting more money for staff and salaries and aggressively recruiting and training COs. In short, even if the Director was misled about the functioning of the locks, he bears the responsibility as the Director of the Department for not being fully informed. This is certainly so if he was underinformed because his staff feared to reveal to him the extent of problems. If the Director was adequately informed but disregarded the information, he bears responsibility for that as well. We are confident that the Director accepts ultimate responsibility for the Department's functioning." (Doc. 53-1 at 37.)

The Berch/McGregor Report stated that "Continued attention to staffing the prison at an adequate level is essential. We regard it as significant that, for at least the last fifteen years, ADC has not been able to fill the number of CO positions authorized." (Doc. 53-1 at 38.)

The Berch/McGregor report concluded that "Prisons play an important role in Arizona. Those who work there and those committed there by our justice system deserve a safe and secure environment. Lewis Prison has a problem with malfunctioning doors and doors inmates can manipulate to escape cells that are not otherwise secured by pins or padlocks. We attempted to isolate the causes of the problem so that they could be prevented or mitigated. We were not able to definitively document the scope of the problem, but evidence of it appears in videos showing inmates streaming from cells to attack correctional officers or other inmates and in the reports of malfunctioning security devices. This cannot be permitted in our prisons." (Doc. 53-1 at 39.)

Attachment 1 to Doc. 53-1 charts the average filled COII positions, the average vacant COII positions, the total COII positions, and the average daily inmate population for ASPC-Lewis. Doc. 53-1 at Attachment 1.

Attachment 2 to Doc. 53-1 charts the Correctional Officer Vacancy Rate at ASPC Lewis.

Attachment 4 to Doc. 53-1 provides the ADC Capital Improvement Plan Prison Facility Locking Systems Requests.

**Notes on Report to the Governor:  The Effectiveness of Locks at Lewis Prison (The "Berch/McGregor Notes")**

The Berch/McGregor Notes state that Director Ryan said that the prison locks at Lewis had been a "problem for several decades." (STATE-006389.)

| | |
|---|---|
| | The Berch/McGregor Notes state "staffing problems have contributed to the security problems at Lewis." (STATE-006390.) |
| | According to the Berch/McGregor Notes, at the time of the Justices' investigation, Director Ryan reported "approximately 1200 CO vacancies[.]" (*Id.*) |
| | The Berch/McGregor Notes state that Randy Standridge reported that Lewis was "using 19-21 per shift when he came back in 2016." (*Id.* at 006384.) |
| | Further, the Berch/McGregor Notes state the COs "often had too many jobs to do to effectively watch the inmates." (*Id.*) |
| | The Berch/McGregor Notes state that Randy Standridge reported that "certain areas" were left "under guarded." (*Id.*) |
| | The Berch/McGregor Notes report that, by Daniel Walker's own admission, "[s]taffing levels seem to require taking shortcuts" and Lewis "[n]eed[s] more staffing." (*Id.* at 006419.) |
| | The Berch/McGregor Notes state that, at Morey, a "plan was proposed and pursued to use members of inmate gangs – Mexican Mafia, Aryan Brotherhood – to keep the peace." (STATE-006401.) |
| | According to the Berch/McGregor Notes, the inmates who were involved "got special treatment – visitation, no discipline, phones, drugs – to keep the peace." (*Id.*) |
| | Mark Hasz reported to Justices Berch and McGregor that:<br><br>The step-down program, which involved bringing in 4 or 5 gang leaders, was a failure and really pissed off the other IMs. The cells for the step downs were power washed and painted before they arrived; they were given their own unit, with doors always open; they were given the best jobs. The program was an admission that staff could not control the IMs. Assault figures show the assaults as going down after the start of the program, but in fact they went up, with assaults being done in cells behind closed doors. He was chastised by DW Scott and Cap. Matos for searching the stepdown cells for contraband and told those cells could not be searched. They also returned the contraband he found— cell phones and batteries. The program was still in effect when they closed Morey. He described it as a very "old school" approach. ET [Defendant Trujillo] developed the program and gave Scott his marching orders.<br><br>(*Id.* at STATE-006344.) |
| | Mark Hasz reported to Justices Berch and McGregor that: |

The step-down program, which involved bringing in 4 or 5 gang leaders, was a failure and really pissed off the other IMs. The cells for the step downs were power washed and painted before they arrived; they were given their own unit, with doors always open; they were given the best jobs. The program was an admission that staff could not control the IMs. Assault figures show the assaults as going down after the start of the program, but in fact they went up, with assaults being done in cells behind closed doors. He was chastised by DW Scott and Cap. Matos for searching the stepdown cells for contraband and told those cells could not be searched. They also returned the contraband he found— cell phones and batteries. The program was still in effect when they closed Morey. He described it as a very "old school" approach. ET [Defendant Trujillo] developed the program and gave Scott his marching orders.

(*Id.* at STATE-006344.)

Luis De La O reported that the UA door issue goes back "years before 2017, perhaps as far back as 2007[.]" (STATE-006373.)

Further, Mr. De La O stated that, "Doors are easy to UA because of how poorly they were made. Before pins, inmates just had to jiggle the doors and they would come open. Doors were the same as they had been in the past. The difference was the prison gangs/power struggle/hierarchy, which gave inmates a reason to need to get out." (STATE-006374.)

Mr. De La O also reported that "In March 2019 or so, the Director tasked De La O to give him all the UAs between 2018-now and to identify ones that involved UAs and DA-related staff assaults. Luis found approximately 50 assaults related to UA, but found only approx. 10 reports." (STATE-006374.)

Further, "The gang unit failed Ramos. If they had done their job, there wouldn't have been so many assaults. They needed to validate these guys as gang and remove them off the yard. No one was validated for over a year. Gang unit failed to give Ramos what he needed to validate these guys and get them off the yard. Head of gangs: Heather Robinson. Not very knowledgeable. Communication was lacking between gang unit and administration. When assaults started occurring, the gang unit didn't do anything. (Luis was out of gang unit by then.) These gang guys remained in the yard. Ramos couldn't do anything until he had the information to act on. They weren't sending up the memos for him to act on. He should have been aware that he wasn't getting the information he needed. Said he wasn't getting information -documentation from SSU." (STATE-006375.)

Additionally, "Because of low staff numbers, so no staff on the floor, staff in control room would tell inmate pod porters to pull the pins on inmate

| | |
|---|---|
| | cells so the cell door could be opened. Excuse: low staffing. In the midst of that, there would be narcotics exchanged. Became a UA if the inmate accessed the door once the pin was pulled. Inmates broke the pins off." (STATE-006376.) |
| | Mr. De La O also reported that "Scott was retired and brought back. Changed since he got back. Not like he was. We would do a town hall. All validated inmates who were heads who came to Morey in Jan/Feb of 2019. Program fell through. Let them do whatever they wanted to do. They were supposed to keep peace among the inmates. Scott knew about assaults among the inmates, but didn't do anything. At one town hall (De La O didn't attend, but a friend did). One IM said we should let inmates police themselves, but that will have consequences. Travis Scott implicitly condoned the gangs enforcing, even if it meant some inmates wound up getting really hurt." (STATE-006377.) |
| | Additionally, "Warden, DW, new head of security. James Roan/Andrew Jackson knew we· had an issue with locks sent that information to Warden Larson, but nothing happened. It kept going on. Every: DW knew there was an issue, and they CYA'd." (STATE- 006377.) |
| | Finally, Mr. De La O reported that "When IMs were policing themselves, they would "talk to Jimmy" and Jimmy would have a black eye." (STATE-006378.) |

## ADC Procedures and Requirements

| | |
|---|---|
| | ADC has adopted a comprehensive set of Department Orders (https://corrections.az.gov/reports-documents/ adcrr-policies/department-orders-index) that direct the filing of a number of reports when staff members note deficiencies in security devices, which include doors and locks. See Arizona Department of Corrections: |
| | For example, the Chief of Security or his or her designee, must file a monthly report describing security device deficiencies and the actions taken to repair those deficiencies. Order Manual, Ch. 700, sec. 1.1.3. |
| | The Order Manual also directs the Warden to submit a monthly memorandum to the NROD; among other topics, the memorandum covers observations about security operations, the incident command system, and staff professional conduct. Order Manual, Ch. 700, sec. 2.3.1. |
| | Department Order 909.7.5 provides the procedure to deal with illicit property (e.g., narcotics). |
| | Department Order 803.3.0 describes the procedure for the filing and disposition of disciplinary reports. |
| | Department Order 708.1.3 describes the general search requirements. |

## Staffing

| | |
|---|---|
| | Buckley Unit has a total of 32 posts, which are staffed with one correctional officer (CO) at each post. |
| | On January 9, 2019, February 1, 2019, and April 5, 2019, two posts in housing unit 3 C/D were collapsed (Para. 56 of Doc. 224.) |

| | |
|---|---|
| 1 2 | The ADCRR Daily Post Sheet for January 9, 2019, does not show any employee names next to entries for "Housing Unit 3 C/D Control" and "Housing Unit C/D Floor." (Para 59 of Doc. 224.) |
| 3 | Similarly, the Staff Schedule for February 1, 2019, does not show anyone assigned to 3 C/D control or 3 C/D floor. (Para. 60 of Doc. 224.) |
| 4 5 | The ADCRR Daily Post Sheet for April 5, 2019, does not show anyone assigned to 3 C/D control or 3 C/D floor posts. (Para 62 of Doc. 224.) |
| 6 | The Buckley unit is supposed to have thirty-one staff to properly and safely operate. |
| 7 | In November 2018 through April 2018 there were as few as eight staff per shift and often no more than sixteen. |
| 8 9 | Supervisors at ASPC-Lewis used a policy known as "collapse and control" to adjust for staffing shortages in which COs would "collapse" their assigned post" and "control" a different collapsed post, leaving one of the posts without coverage. (Doc. 171 ¶ 13.) |
| 10 11 | Due to inadequate staff, Buckley would collapse an average of 18 out of 32 posts. (Doc. 186 ¶ 102.) |
| 12 | Due to understaffing, there would be no guards in the C and D control room for several hours at a time. |
| 13 14 | On January 9, 2019, February 1, 2019, and April 5, 2019, there were only 18 COs on shift during the day, and during the p.m. shifts, there were only 8 COs, leaving 24 to 25 posts out of 32 posts collapsed. (*Id.* ¶¶ 10-11; Doc. 186 ¶ 102.) |
| 15 16 17 | The 3 C/D control room post was collapsed on the February 1, 2019, a.m. shift and "staffing was at a critical low and they were collapsing the control room coverage to having one officer cover both A/B and C/D sides of the pods. This would make times when there was no officer coverage in the pod." (Doc. 186 ¶ 34.) |
| 18 | ADCRR Correctional Officer vacancy rates increased from 12.2% in 2017, to 14.3% in 2018, to 19% in 2019, and to 25.7% in 2021. (Doc. 53-1.) |
| 19 | ASPC-Lewis, Buckley had an average COII vacancy rate of 15.4% in 2017, 13.5 in 2018, and 22.5 in 2019. (Doc. 53-1.) |
| 20 | **The Locks** |
| 21 22 23 | Prisoners at ASPC-Lewis could open any cell door from inside or outside the cell with a pair of toenail clippers sold at the inmate store; the prisoner takes the handle off the toenail clippers, slides it under the locking rod, and levers the locking rod out of the notch, which allows the door to open. (Doc. 171 ¶ 19(a).) |
| 24 | In 2019, all door locks in Buckley Unit were disabled. (Doc. 171 ¶ 19(a).) |
| 25 | Defendants only spent $9,080.63 in 2018 to place a pin with bracket and clip onto each of the 1,000 cell doors in Morey, Buckley and Rast Units, or about $9.00 per door. (Doc. 186 ¶ 110.) |
| 26 | |

| | |
|---|---|
| | The cheap fix didn't work, and it made things worse; prisoners quickly disabled the pins in such a way that they could not be used and were able to use the pins to make prison shanks.  (Doc. 53-1 at 20.) |
| | The padlocks at Buckley "had no effect on inmates UA'ing doors when the Plaintiff was assaulted" on January 9, 2019, February 1, 2019, and April 5, 2019.  (Doc. 186 ¶¶ 45-46.) |
| | A 2018 memo from Defendant Larson states that prisoners UA'ing doors was an issue "due to the number of unwitnessed assaults." (Doc. 186 ¶ 48.) |
| | Prisoners would pay maintenance workers to bend the locking rod so it showed as closed on the control panel but allowed the doors to be pushed open.  (Doc. 171 ¶ 19(b).) |
| | Defendant Larson filed reports stating the doors were "broken," "faulty," and "malfunctioning." (Doc. 186 ¶ 20.) |
| | Between January 1, 2018, and April 30, 2019, The Buckley Unit Security Device Inspection Reports had several thousand entries about doors that would not secure, broken/missing locks on doors, bent/missing door pins, and broken cell windows.  (Doc. 171 ¶ 24.) |
| **Notice** | |
| | A 2016 civil rights lawsuit by ADCRR employees put Defendant Ryan and the State of Arizona on notice that ASPC-Lewis was inadequately staffed and that defective door locks allowed prisoners to exit cells out of the sight and hearing of guards and assault others. (Doc. 171 ¶ 14; Doc. 186 ¶ 100.) |
| | During the investigation of the June 6, 2018, murder of prisoner McCormick at ASPC-Lewis, COs were asked why so many prisoners were out of their cells during the murder, and the COs responded, "The cell doors don't secure even with the pin.  The moment we leave the pod the inmates access their cell doors." (Doc. 186 ¶ 18; Doc. 186-3 at 20, 37.) |
| | Several CO IIs also reported during the investigation that the cell doors at ASPC-Lewis "don't secure" and "inmates continually open their doors." (Doc. 186 ¶ 20.) |
| | Between January 1, 2018, and April 30, 2019, The Buckley Unit Security Device Inspection Reports had about 3000 entries about doors that would not secure, broken/missing locks on doors, bent/missing door pins, and broken cell windows.  (Doc. 171 ¶ 24.) |
| | Many entries repeated week after week because repairs were not made for some time.  (*Id.*) |
| | In 2006, ADCRR issued a security alert warning all staff at ASPC- Lewis that prisoners can tamper with door locks and UA their doors.  (Doc. 186 ¶ 18; Doc. 171 ¶ 20.) |
| | The 2006 security alert was re-issued in 2016 and remained in effect through 2019. (Doc. 186 ¶ 18.) |
| | Defendant Ryan was named in his official capacity in the First Amended Complaint of Russett v. Arizona et al., 2:16-cv-00431. |

158250145

| | |
|---|---|
| | Plaintiff CO II David Holder alleged in the lawsuit that supervisors at ASPC-Lewis used a policy known as "collapse and control" to adjust for staffing shortages in which COs would "collapse" their assigned post" and "control" a different collapsed post, leaving one of the posts without coverage. (Doc. 171 ¶ 13.) |
| | In 2017, COs at ASPC-Lewis informed Defendant Larson that "It seems like the doors are constantly breaking. Can't anything be done?" (Doc. 171 ¶ 23.) |
| | In 2017, Defendant Berry Larson wrote a memo to Defendant Trujillo (October 2017 703 Report) stating that "Morey Unit officers express safety concerns with operating with current staffing levels." (Doc. 171 ¶ 15.) The report goes on to say, "Morey Administration and Complex Administration continue to address the concerns as they arrive . . . programs staff continue to support security operations to help ensure operations function with minimal issues. Supervisors continue to monitor the progress of all shifts to ensure operations run smoothly." |
| | In 2018, Defendant Larson wrote memos to Defendant Trujillo informing Trujillo that doors were failing, door pins were not working, and prisoners were able to open cell doors, endangering other prisoners and staff. (Doc 171 ¶ 25, citing Ex. 15.) |
| | In 2018, Defendant Larson wrote a memo (July 2018 703 Report) to Defendant Trujillo stating that "staffing levels are causing difficulties with completing tasks and insuring [sic] the inmate population is provided the necessary safety and security needed." (Doc. 171 ¶ 16.) |
| | Defendant Trujillo received multiple memos sent by Defendant Larson in 2018 and then in 2019 from Defendant Thompson about the problems with the locks, prisoners UA'ing their doors, and assaults on prisoners and staff. (See Doc. 171 ¶ 25, citing Ex. 15.) |
| | Defendant Trujillo received reports that after the pins were installed prisoners were still able to UA their cells. (*Id.*) |
| | In August 2018, Larson wrote that "Buckley [unit] initiated multiple ICS [Incident Command Systems] during the month of August due to disruptive inmates that pulled the door pins and refused to lock down. Supervisors spoke to the inmates and the inmates would lock down. Most inmates did not require force to gain compliance." (Doc. 171 ¶25I.). |
| | In September 2018, Larson wrote, "Morey Unit, Rast unit, and Buckley unit continue to struggle with inmates pulling door pins. They initiated multiple ICS during the month of September due to disruptive inmates that pulled their door pins and refused to lock down." (*Id.* ¶ 25(f).) |
| | In October, Larson wrote, "A secondary pin system has been installed to assist but the inmates have destroyed many of them. . . . As a result of faulty doors inmates are able to exit their cells without staff opening them. This creates a danger to staff and other inmates." (*Id.* ¶ 25(g).) |

| | |
|---|---|
| | In December, Larson's last month as Warden at ASPC-Lewis, he wrote, "Despite the door pins the inmates are still able to access their doors with impunity." (*Id.* ¶ 25(i).) |
| | Shaun Holland, the Associate Deputy Warden of the Bachman Unit at ASPC Lewis, provided a whistleblowing disclosure to Governor Ducey in December of 2019 in which he reported that the Lewis Prison Administration had demonstrated "continued deliberate and intentional indifference to the safety of officers and inmates." |
| | Mr. Holland further alleged that doors at the prison were "failing at an alarming rate." |
| | Mr. Holland reported that "the prison administration is hiding the problems by 'closing out' hundreds of repair orders <u>without completing any repairs</u>." (Id.  (emphasis in original).) |
| | Mr. Holland observed employee work crews "go through the units, toy with broken doors, and then designate them as 'repaired' in official ADC records." (*Id.*) |
| | He stated that he "raised the failure to properly repair the doors with prison administration and warned that the doors were not actually being repaired. Again, no action [was] taken to address the issue." (*Id.* at 1-2.) |
| | He stated that he "raised the failure to properly repair the doors with prison administration and warned that the doors were not actually being repaired. Again, no action [was] taken to address the issue." (*Id.* at 1-2.) |
| | He "reported many of my concerns all the way up the chain of command, to the warden's superiors and even to the new director" but did not "receive[] any response." (*Id.* at 2.) |
| | Mr. Holland stated that his letter provided just the "brief[i]est outline of the horrendous safety issues" that existed at Lewis.  (*Id.*) |
| **Townhall Meetings/De Facto Inmate Staffing** | |
| | After several staff members were assaulted, Joseph Pitz, who was the deputy warden for Buckley, had a Townhall meeting with approximately 25 to 30 inmates from Buckley. |
| | Most of the inmates at the meeting were designated members of security threat groups by prison administrators. |
| | Security threat groups are the designation given to prison gangs like the Aryan Brotherhood, Mexican Mafia and La Doce Familia. |
| | Inmates also form other STG-like associations and may become members of hybrid prison gangs. |
| | On November 30, 2018, Plaintiff attended a Buckley Unit Townhall meeting.  (Doc. 186-1 at 4 ¶ 8.) |
| | At a December 28, 2018, Buckley Townhall meeting, Pitz told prisoners that "he wanted their 'help to hold others accountable.'" (Doc. 171 ¶ 41; Doc. 171-1 at 84.) |

| | |
|---|---|
| | Defendant Pitz told the inmates at a Townhall meeting in November or December of 2018 that they had been chosen to attend the meeting due to their influence and ability to control other inmates on the unit. |
| | The inmates at the meeting were asked to make inmates on the yard stop assaulting staff and stop opening cell doors and roaming the yard. |
| | Inmates would not be punished for assaulting inmates who were opening cell doors and roaming the yard. |
| | Inmates who agreed to help keep inmates in their cells would receive special favors from prison administrators, including but not limited to having disciplinary reports dismissed, having phone and visitation privileges reinstated, being placed into preferred job positions, and choosing cellmates. |
| | The security threat groups members and other influential inmates collectively agreed to keep inmates from opening cell doors and roaming the yard in return for promises made by Pitz. |
| | Prisoner Luis Parrado heard Pitz say at the Townhall meeting that he would give the prisoners attending the meeting jobs and privileges if they "would make inmates stop popping open their cell doors, stop running around the pods and the yard and stop inmates from popping out during count causing emergency counts to be called. Pitz said we can smash them just keep if off the camera." (Doc. 186-5 at 1 ¶ 3.) |
| | Prisoner Hector Ruiz also stated that at a November 2018 Townhall meeting, Pitz said he called the prisoners together because they "had influence on the yard, and the prison did not have enough money to fix the broken doors" and he needed those prisoners present "help to make inmates stay locked down on the yard." (Doc. 186-4 at 17 ¶ 2.) |
| | In November 2018, Pitz told prisoner Hector Ruiz he needed Ruiz's help "to make inmates stay locked down on the yard," and when Ruiz asked Pitz what would happen if he "had to forcibly make inmates lockdown, Pitz said nothing would happen to [Ruiz] for using force to make inmates lockdown." (Doc. 186-4 at 17 ¶ 2.) |
| | In January 2019, Defendant Pitz told prisoner Ernesto Lopez and other prisoners at a Townhall meeting "that he intended to begin using inmates to assault other inmates who open their cell doors without authorization." (Doc. 186-5 at 18 ¶ 1.) |
| | In February 2019, Defendant Pitz told prisoner Angel Torres that if Torres "would make inmates stay in their cells then [Torres'] disciplinary ticket would go away and [Torres'] phone and visitation privileges will be reinstated," but "not to get into any fights on camera." (Doc. 186-5 at 5 ¶ 4.) |
| | Prisoner Antrobus stated that Pitz told prisoners they would receive certain privileges if they stopped prisoners from coming out of their cells and that if they had to assault prisoners "just keep it off the cameras and out of medical." (Doc. 186-4 at 9 ¶ 3.) |
| | Prisoner Parrado stated that at a November 2018 Townhall meeting, Pitz |

-44-

| | |
|---|---|
| | said he handpicked the prisoners for the meeting because they were STG members and/or had influence on the yard through drug dealing activities. (Doc. 186-5 at 1 ¶ 3.) |
| | Parrado stated that Pitz told those present to "clean up the yard old school" and keep it off camera. (*Id.*) |
| | Pitz said he would give jobs and return phone and visitation privileges to those who had lost them if they would make prisoners "stop popping open their cell doors, stop running around the pods and the yard and stop inmates from popping out during count causing emergency counts to be called." (*Id.*) |
| | Parrado stated that he personally witnessed well over 100 prisoners being assaulted for leaving their cells, and those prisoners who were assaulted "were not allowed to go to medical unless they refused to come back to the yard." (*Id.* ¶ 5.) |
| **Plaintiff's Grievances** | |
| | Plaintiff refused to do as Pitz was asking (having influential/gang- affiliated inmates keep order and keep prisoners from UAing their doors) and chose instead to report what he was attempting to do by submitting an informal complaint. |
| | On December 5, 2018, Plaintiff submitted an Informal Complaint Resolution "requesting that Joseph Pitz stop directing inmates to make other inmates stop opening cell doors," and Plaintiff requested "that facility locking systems be replaced with tamper resistant locking systems and that more staff be assigned to Buckley unit." (Doc. 186-1 at 5 ¶ 9.) |
| | On December 11, 2018, Pitz told Plaintiff that he was not going to allow the December 5 Informal Complaint Resolution to be processed and "to stop submitting paperwork regarding his use of inmates to stop other inmates from opening cell doors." (*Id.* ¶ 10.) |
| | Pitz also said that the complex warden and the director are both aware of the door locks being broken and of him using security threat group members to keep inmates in their cells. |
| | Plaintiff asked why they were choosing to use security threat group members to control and manage the inmate population instead of simply replacing the defective door locks or placing more security staff on the unit. |
| | Pitz said there was no money in the current budget to replace all the door locks on the unit and the entire prison system is suffering from understaffing. |
| | Pitz then told the Plaintiff to stop causing problems by filing grievances and said "do not submit any more paperwork" on the issue of locks or him using security threat groups to control and manage the inmate population. |
| | Because Pitz had not given a written response, plaintiff elected to submit a formal grievance to establish a record of his attempt to file and exhaust the administrative remedies. |

| | On December 16, 2018, Plaintiff filed an Inmate Grievance stating that Pitz "should stop using inmates to stop other inmates from opening cell doors" and he attached his Informal Complaint Resolution and wrote what Pitz had told him on December 11.  (Doc. 186-1 ¶ 11.) |
| --- | --- |
| | Plaintiff gave the grievance to Sergeant Fink. |
| **Inmate Assailants** | |
| | Arturo Flores was determined by the State to be a validated STG member in 2017 and in 2019.  (STATE-000468.) |
| | During the period from January through April of 2019, Flores was a validated STG member. |
| | Luis Parrado was determined by the State to be a validated STG member. (STATE-000490.) |
| | During the period from January through April of 2019, Luis Parrado was a validated STG member. |
| | Hector Ruiz was determined by the State to be a validated STG member. (STATE-000513.) |
| | During the period from January through April of 2019, Hector Ruiz was a validated STG member. |
| | Erik Sampson was determined by the State to be a validated STG member. (STATE-000534.) |
| | During the period from January through April of 2019, Erik Sampson was a validated STG member. |
| **The Assaults** | |
| | Plaintiff was assaulted during the a.m.  shift in Buckley Unit's 3 A/B and 3 C/D hallways on January 9, 2019, February 1, 2019, and April 5, 2019. (Doc. 171 ¶ 7.) |
| | On January 9, 2019, after plaintiff had submitted the grievance, inmates Hector R.  Ruiz, ADC No. 198345, and Auturo M.  Flores, ADC No. 270776, came from the Buckley Blue yard through two locked security fences to the Buckley Red yard to Plaintiff's cell (3-D-19), opened Plaintiff's cell door, and forced Plaintiff into the C/D hallway, where there are no security video cameras. |
| | When they reached the hallway, Flores and Ruiz punched and kicked Plaintiff until he was bloody and unconscious; when Plaintiff regained consciousness, they told Plaintiff that Pitz "said do not submit any more paperwork regarding Joseph Pitz using inmates to stop other inmates from opening cell doors, they also told me do not go to medical for treatment of my injuries." (Doc. 186-1 at 5 ¶ 12.) |
| | Flores asked the Plaintiff if he understood, and Plaintiff said yes, he understood. |
| | Flores then told Plaintiff if he went to medical, he would be assaulted again. |
| | Plaintiff then returned to his cell. |

-46-

Plaintiff had cuts, bruising, and abrasions to his face and body. His forehead, scalp, and lip were gashed open. Some of the abrasions left tread print patterns on his back and torso, and he had a bloody nose.

Since that time, he has suffered from chronic headaches, back pain, and neck pain. He also has had sudden onsets of dizziness and disorientation. For approximately 48 hours after the assault, he had repeated bouts of vomiting.

Both inmates Flores and Ruiz are designated security threat group members.

Later in that day inmate Steve Antrobus, ADC No. 064479, came to the plaintiff's cell.

Antrobus said that Pitz sent him and asked him to tell the plaintiff to stop trying to make issues out of the broken door locks and out of him using security threat groups to control and manage the inmate population.

Antrobus then took medical tape out of his pocket and taped the two bigger cuts closed on Plaintiff's face.

Before leaving, Antrobus told Plaintiff that Pitz would send more inmates to assault him again if he submitted more paperwork.

On February 1, 2019, inmate Kelvin Barnett, ADC No. 62516, from cell 3-D-23, opened Plaintiff's door, came into Plaintiff's cell, and told Plaintiff that Barnett's boss, CO3 Robinson, wanted to see him in her office.

Plaintiff followed Barnett into the 3 C/D hallway, noting there were no staff in the 3 C/D control room.

Once in the hallway Barnett pulled out a prison made knife (called a shank) and began stabbing Plaintiff.

Plaintiff grabbed Barnett's shank hand and shoved it away from Plaintiff, causing Barnett to stab himself in the left eye.

Barnett ran away to the medical building and was taken to the hospital.

Plaintiff removed his shirt and asked another inmate to tell him where he had been stabbed.

Plaintiff had deep scratches on his neck and his chest, several puncture wounds to both hands, and one puncture wound to his right bicep.

Plaintiff waited to see if any staff were going to come investigate; when no staff came Plaintiff went to his cell and cleaned and taped his wounds.

Another inmate cleaned the blood out of the hallway.

To Plaintiff's surprise, Barnett was put back into cell 3-D-23 when he returned from the hospital.

Plaintiff went to Barnett and demanded to know why he attacked him.

Barnett was wearing an eyepatch and was clearly blind in the left eye.

Barnett told the plaintiff that Pitz told him to stab the plaintiff to make him stop submitting paperwork about the door locks.

158250145

| | |
|---|---|
| | Barnett said that Pitz gave him the weapon he stabbed plaintiff with from a 5-gallon bucket of confiscated weapons that Pitz kept in the office of Captain Whiting. |
| | Barnett said he did it because CO2 Henderson and CO2 Law caught him with two grams of heroin and a syringe (in approximately October of 2018), and Pitz later promised to make the disciplinary infraction go away and said no charges would be filed. |
| | Barnett then assured the plaintiff there would be nothing said about or done about his eye being stabbed out.  Plaintiff was then moved to 3- A-2. |
| | Barnett also said he threw the shank into the urinal vent pipe on the Buckley Red yard recreation field. |
| | The multiple stab wounds to Plaintiff's hands left them with a weakened grip strength, aching in his bones and joints around the stab wounds, and cramping when he attempts repetitive motions.  The stab wound to his right bicep left a scar and was very painful for about two weeks.  He also had a long scratch to his chest and neck that were painful for a couple of days. |
| | As with the first attack, Plaintiff was afraid to go to medical because he could have wrongfully been placed into solitary confinement or wrongfully issued a disciplinary ticket for fighting. |
| | In the beginning of April 2019 (April 4), CO3 Robinson told Plaintiff that attorney Holly Gieszl scheduled a legal call for April 11, 2019. |
| | On April 5, Plaintiff was called into the 3 A/B hallway by inmate Steve Antrobus, ADC No. 064479. |
| | While Plaintiff was talking to Antrobus, inmate Erik Sampson, ADC No. 166989, who is a member of the Aryan Brotherhood, snuck up behind the plaintiff and grabbed him in a chokehold while punching him in the kidney. |
| | Two of plaintiff's friends ran into the hallway and fought Sampson off of the Plaintiff. |
| | Plaintiff demanded that Sampson explain why he attacked him. |
| | Sampson said that visitation officer Muniz caught Sampson with two ounces of heroin in his cell in building two, and Pitz told Sampson if he made sure Plaintiff did not speak to the attorney about Pitz then Pitz would make sure no criminal charges were filed and dismiss the disciplinary infraction and reinstate his visitation and phone privileges and send him to a lower custody unit after the plaintiff refused the attorney's call. |
| | Plaintiff told Sampson to tell Pitz he would not take the legal call. |
| | On May 1, 2019, Pitz had the Plaintiff taken to visitation. |
| | Pitz asked the Plaintiff what he told Holly Gieszl. |
| | Plaintiff said he didn't tell Gieszl anything about Pitz. |
| | Pitz said he did not believe Plaintiff. |
| | Plaintiff was beaten, stabbed, and strangled on three separate occasions.  Plaintiff sustained stab wounds to his hands and arm; lacerations and |

-48-

| | |
|---|---|
| | bruising to his face and scalp; bruising and abrasions to his neck, arms chest, ribs, back, and legs; bloody nose and mouth; and temporary unconsciousness.  He also suffered extreme physical pain and serious mental anxiety. |
| | Mr. Crago still suffers from headaches and dizzy spells from the head injuries he suffered in the first (Jan.) attack. |
| | He also continues to have limited grip strength and range of motion in his hands due to the second (Feb.) knife attack |
| | Three of the four people who assaulted Plaintiff were designated STG members.  (Doc. 174 ¶ 16; Doc. 186 (Pl.'s Controverting Statement of Facts) ¶ 16.) |

**Retaliation**

| | |
|---|---|
| | On December 11, 2018, Pitz told Plaintiff that he was not going to allow the December 5 Informal Complaint Resolution to be processed and "to stop submitting paperwork regarding his use of inmates to stop other inmates from opening cell doors." (Doc. 186-1 at ¶ 10.) |
| | On February 8, 2019, Plaintiff was given a disciplinary infraction for a package that unknown persons mailed to the prison with two cellphones in it. |
| | The package was addressed to Plaintiff but was stopped by complex mail officers, who all inmates know x-ray all packages for contraband. |
| | When Plaintiff asked why he was being given a ticket for something he had no control over, he was told Pitz said to write the ticket. |
| | At the disciplinary hearing the D.H.O.  told Plaintiff that Pitz said to find him guilty. |
| | Because Plaintiff felt that Pitz was further attacking him over the administrative remedies he had submitted, Plaintiff submitted an inmate letter to the complex warden (Berry Larson) through the inmate mail system. |
| | The inmate letter said the door locks were broken and staff and inmates were being assaulted.  Plaintiff said he could show them how to fix the doors in return for a parole recommendation. |
| | Plaintiff also filed an appeal of the disciplinary findings. |
| | On May 2, 2019, in retaliation for Plaintiff's complaints, Plaintiff was transferred to Rast Max. |
| | At SMU, Plaintiff's legal box containing his grievance records were destroyed; when Plaintiff filed a grievance, he was told it was out of time frames. |
| | Steve Antrobus stated that Pitz told Antrobus on May 3, 2019, that he was sending Antrobus and several other prisoners to SMU "to make sure law enforcement agencies did not speak to us" and that they would only be there a few months "until the agencies stopped interviewing staff and inmates." (Doc. 186-4 at 12 ¶ 3.) |

-49-

| | |
|---|---|
| | Hector Ruiz stated that on May 2, 2019, DEA agents, FBI agents, and state gang force agents entered Buckley Unit and interviewed several STG members and "learned what was happening on the yard," and Ruiz was moved into maximum custody the next day "for assaulting inmates for Deputy Warden Pitz." (Doc. 186-4 at 18-19 ¶¶ 8-9.) |
| | A report was filed on May 2, 2019, that said that Plaintiff received a disciplinary report on May 3, 2019. |
| | Plaintiff filed and won a grievance against Pitz and SSU for entering a false STG designation and false disciplinary report into his prison record to justify moving him off Buckley Unit after Plaintiff filed grievances against Pitz and SSU. |
| | Plaintiff was taken to maximum custody for months before he was aware of the STG designation. While he was in maximum custody, he was held in a windowless cell, was not permitting shoestrings, and was made to undergo a strip search every time he left the cell. Given the past assault that Plaintiff suffered, every time he has to undergo a strip search, it brings back the trauma of that assault—the fear, humiliation, and his feelings of being dehumanized. |
| | When Plaintiff was at ASPC-Safford-Tonto, he was made to work in the kitchen. However, the long periods of standing, bending, twisting, lifting, and grasping caused extreme pain in his back and hands and he had to go to medical to get a special needs order excusing him from working due to injuries from the injuries suffered in the January and February assaults. |
| | Plaintiff had also been assigned to an upper bunk and fell several times getting out of the bunk. This was caused by his back pain, weakened grip strength, and dizziness due to his injuries from the first two attacks. He was given an SNO for the lower bunk. |
| | Plaintiff is currently taking medication for "anxiety syndrome" and remains in pain from his injuries and continues to live in fear. |
| | To resolve the grievance, ADCRR eventually removed the STG designation and sent Plaintiff from max. custody down to medium custody. |
| | Steve Antrobus reported that he was directed to remove grievances and they were shredded without being logged. |
| | Prisoner Ernesto Lopez asserted that he filed a grievance after he was assaulted by another prisoner for opening his cell door, and Defendant Pitz told Lopez that he threw the grievance in the trash and told Lopez to stop opening his cell door. (Doc. 186-5 at 18 ¶ 4.) |
| | Prisoner Levi Bodine stated that Defendant Pitz instructed other prisoners to assault Bodine for opening his cell door, and Bodine was repeatedly assaulted. (Doc.186-5 at 16 ¶ 2.) |
| | Bodine averred that, on May 2, 2019, he saw Defendant Trujillo in the yard and so Bodine "broke out" of his cell to talk to Trujillo and told Trujillo that Pitz was having prisoners assault him for opening his cell door. (Id.) |
| | Trujillo's response was for Bodine "to stop opening [his] cell door." (Id.) |

158250145

| | Pitz then placed Bodine in handcuffs and took Bodine behind "IMO," where a prisoner assaulted him and broke his nose.  (*Id*.) |

### A        DEFENDANTS' CONTENTIONS OF DISPUTED FACT

**Lewis Complex, Buckley Unit, and the Inmate Population**

1.        All inmates at the Buckley Unit are in protective custody.  From 2017 to 2019, Buckley Unit housed no verified Security Threat Group (STG) members.

2.        Buckley Unit is the only protective custody, close custody unit at Lewis.

3.        Rast Unit is a protective custody unit with both close custody and maximum custody sections.

4.        Morey Unit is the only general population, close custody unit at Lewis.

5.        Because of their differences in inmate populations, Morey Unit presented unique challenges and security concerns compared to Buckley Unit and is not relevant to this lawsuit.

6.        Plaintiff Crago was never housed at Morey Unit during the time in question.

7.        General population inmates can include members of prison gangs and verified security threat groups.  They are more likely to be violent and more likely to engage in criminal activity than protective custody inmates.

8.        General population, close custody inmates (like those at Morey Unit) are more likely to be violent than inmates at any other custody level.

9.        Inmates in protective custody are a mixed group, but can include sex offenders, former police officers, former corrections officers, LGBT inmates, and inmates with drug addiction.  As a whole, they are less likely to engage in violence.

10.        Because of the differences in inmate populations, Morey Unit tended to have more fights and assaults than Buckley Unit.

11.        It was more difficult to maintain staff and inmate security at Morey Unit than at Buckley Unit.

**Cell Door Locks and Defendants' Response to Inmates Accessing Their Doors**

12.     Around September 2017, Warden Larson learned for the first time that some inmates were able to access their cell doors without authorization.  Inmates and staff referred to this as "UA'ing" doors.

13.     Warden Larson understood that the majority of the time a door did not secure, it was not because the door was broken or defective, but because it had been capped by an inmate.

14.     Armed with this information, Warden Larson — along with Director Ryan and NROD Trujillo — authorized multiple measures to prevent inmates from UA'ing doors.

15.     First, the administration decided to install an external pinning system on the cell doors.

16.     Defendants Larson and Trujillo had experience with using an external pinning system in other facilities, including other close custody unit in Arizona.  They found pins to be a very effective way to ensure doors secure.

17.     Warden Larson asked the physical plant director to make a prototype of a pin that would work on the cell doors at Lewis.  The final prototype was approved in December 2017.

18.     The administration began installing pins at Buckley Unit on February 12, 2018 and completed this process on June 11, 2018.

19.     The pins are 8-inch steel rods attached to chains and welded to the cell door's frame.  When a cell door is closed, the pin is inserted through metal brackets welded to the door to create a secondary mechanism to secure the door.

20.     Before the pins were installed, Warden Larson instructed administrators that officers needed to inspect and physically tug on every cell door every time they conducted a security check and every time an inmate was returned to his cell.

21.     In addition to regular inspection by correctional officers, each Unit's Chief of Security was directed to do a weekly tour of his/her unit and inspect cell doors.

158250145

22.      Once pins were installed, officers needed to check that the pin was in place every security check.

23.      Warden Larson also directed administrators that if an officer noticed a door or pin had been tampered with, he or she was required to notify a shift commander and prepare a work order.

24.      Lewis also utilized a full-time, specially trained "door crew" who would travel between units, inspecting and repairing doors.

25.      Every Tuesday morning, Warden Larson would meet with the Unit Deputy Wardens, Associate Deputy Wardens, and Complex Chief of Security.  The Unit Deputy Wardens would report on any door that would not secure.  The door crew would then go to the unit to make necessary repairs.  The door crew was also deployed throughout the week as needed.

26.      Deputy Warden Pitz observed that the vast majority of times a door would not secure, it had been capped by an inmate living in that cell.

27.      Pitz required staff to check every door on every security check (which occurred at least once every hour).  He also instructed staff that any time they put an inmate back in a cell and closed the door, they were required to "tug" at the door and make sure it secured.

28.      Pitz personally went with officers into the pods multiple times a week to show them what to look for when inspecting doors and how to fix any problems they encountered.  He also instructed the Unit's Captain, Lieutenants, and Sergeants to make regular floor walks to inspect doors and help train officers to do the same.

29.      Pitz instructed officers to issue a disciplinary report if they found that an inmate had capped a door, removed a pin, or UA'd a door.

30.      If a door did not secure, officers were required to report it to their supervisor and prepare a work order.

31.      As soon as he arrived at Buckley, Pitz told inmates that leaving their cells without authorization was unacceptable, and that if they did so, they would be disciplined.

158250145

32.     He also provided incentives by increasing recreation to six days a week. However, if an inmate accessed his cell, he would lose recreation privileges.  If more than 20% of inmates in a pod UA'ed their cells, then the pod would lose recreation for that day.

33.     After Pitz implemented these policies, the number of inmate UA's dropped drastically.

34.     When Warden Thompson arrived at Lewis in late December 2018, he learned that some inmates were still able to access their cell doors without authorization, even with the external pinning system installed.

35.     It was Warden Thompson's understanding that the majority of the time a door did not secure, it was not because the door was broken or defective, but because it had been capped by an inmate.

36.     Warden Thompson immediately doubled the size of the door repair crew.

37.     Deputy Warden Pitz observed that the doubling of the door crew reduced even further the amount of time it took for doors at Buckley Unit to be repaired.

38.     Warden Thompson and other ADCRR administrators made the decision to install pad locks on cell doors.  They began this process in January 2019 and completed it in April 2019.

39.     The installation of these pad locks substantially reduced the number of door UAs.

**Staffing at Buckley**

40.     Between January and May 2019, a staffing pattern of one control room officer and one floor officer per building was used at Buckley Unit.  This was the standard graveyard shift.

41.     On January 9, 2019, there were 20 individuals posted at the Buckley Unit. Two supervisors were on site, and 18 officers were assigned to posts.  Housing Unit 3, where Plaintiff was assigned, had one officer in the control room and one on the floor.

-54-

158250145

42.      Likewise, on February 1, 2019, there were 21 individuals posted at the Buckley Unit.   There were three supervisors on site and 18 officers assigned to posts. Housing Unit 3 had one officer on the floor and one officer in the control room.

43.      On April 5, there were two supervisors on site and 16 officers assigned to posts, including one control room officer and one floor officer in Housing Unit 3.

44.      In addition to the above, additional staff members were on site at Buckley during this time, including the Deputy Warden, Associate Deputy Warden, COIVs, COIIIs, and Chief of Security.

**The Decrease in Inmate Assaults at Buckley Unit.**

45.      From fiscal year 2017 to fiscal year 2019, the number of inmate assaults at Buckley Unit decreased from 13 to 10.

46.      In the time period relevant to Plaintiff's claim (November 2018 through April 2019), Buckley Unit reported the following number of assaults:

| Inmate Assaults at Buckley Unit | | | | | |
|---|---|---|---|---|---|
| November 2018 | December 2018 | January 2019 | February 2019 | March 2019 | April 2019 |
| 0 | | 0 | 0 | 0 | 2 |

**No Known Risk to Crago**

47.      4In order to monitor inmate activity and potential threats, the Special Security Unit ("SSU") communicated with "line staff," screened inmate phone calls, searched inmate housing locations, and scanned inmate mail.

48.      SSU also conducted daily formal and informal interviews with inmates. Inmates would approach SSU staff with day-to-day problems (like needing to make a phone call); they would also provide intelligence on the yard (including reporting anticipated "hits" on other inmates) and request protection if they felt they needed it.

49.      SSU extensively monitored the activity of Crago at Buckley Unit.

-55-

50.     Crago was suspected of moving dangerous contraband (including drugs and cell phones) onto the yard, as well as money laundering and extortion.

51.     While SSU takes any threat to any inmate very seriously, they would have been particularly concerned about any threat to or assault on Plaintiff because of his suspected, high-level involvement in illegal activities.  Based on SSU's intelligence, any assault on Crago would have the potential to escalate quickly and cause further disruption and violence on the yard.

52.     Between November 2018 and May 2019, SSU staff had no notice of any danger to inmate Crago.

53.     SSU staff was not aware of any assault on Crago during this time.

54.     Plaintiff did not tell SSU staff that he had been assaulted or felt he was in danger.

55.     Further, none of the individual Defendants had any knowledge had any knowledge of any threat to Crago's safety at Buckley Unit in 2018 or 2019.

**The Step-Down Program Under Department Order 806**

56.     The actual Step-Down Program allows validated Security Threat Group members to renounce their membership and, after meeting set criteria, be reintegrated with the general population.

57.     The Step-Down Program has nothing to do with using inmates to "police" or "control" their units.  It has nothing to do with the door locks at Lewis Prison.

58.     In January 2019, a group of D.O. 806 "Step Down" inmates were introduced into the Morey Unit.

59.     These inmates were not given special privileges and were not encouraged or allowed to assault other inmates.

60.     There were never any D.O. 806 "Step Down" inmates at the Buckley Unit.

**Defendant Pitz**

-56-

158250145

61.    Deputy Warden Pitz conducted seven different town hall meetings in November 2018 and one in December 2018.   The purpose of these meetings was to encourage communication and cooperation between inmates and staff.

62.    The minutes from these meetings reveal that Pitz never made any statements even resembling those alleged by Plaintiff.

63.    In fact, Pitz specifically told inmates that assaults would not be tolerated.  He specifically stated that the administration does not condone violence against inmates or staff.

64.    Deputy Warden Pitz never, at any time, encouraged, instructed, or directed inmates to "police" or "control" Buckley Unit by committing assaults.

65.    He never told inmates that they would not be disciplined if they committed assaults, or that they would receive extra privileges if they committed assaults.

66.    He never made inmates "supervisors" over other inmates.

67.    Defendants Ryan, Larson, Thompson, and Trujillo were not aware of any program, policy, or directive at Buckley Unit in which inmates were used to "police" or "control" their units by assaulting others.

68.    SSU—with its vigorous surveillance and regular conversations with inmates— never heard any inmate state that that he committed an assault at the request or direction of Deputy Warden Pitz.

69.    Pitz never encouraged, instructed, or directed any inmate to assault Earl Crago.

**The Alleged Retaliation**

70.    Deputy Warden Pitz never discouraged any inmate (including Crago) from submitting grievances and never punished any inmate for attempting to file grievances.

71.    Deputy Warden Pitz was unaware Inmate Crago had submitted an informal Complaint and/or grievance complaining about door locks.

72.    There is no record of Inmate Crago submitting an Informal Complaint or grievance around the time he claims he did so.

73.     The Informal Complaint and Grievance forms contain carbon copies.   If Plaintiff had submitted an Informal Complaint or Grievance he would have a copy.

74.     Plaintiff has never produced a copy of the Informal Complaint or Grievance he claims he submitted.

75.     Deputy Warden Pitz did not ask inmate Crago about any conversations he had with his attorney.

76.     On February 8, 2019, mail room staff found two cell phones in an incoming box addressed to Inmate Crago.   The box was disguised as legal mail from the Attorney General's Office but contained a "false bottom" concealing the cell phones.

77.     This constituted promotion of prison contraband under ADCRR policy.

78.     Captain Shawn Baker was the Disciplinary Hearing Officer assigned to this matter.   He conducted the disciplinary hearing on March 13, 2019.

79.     Based on the evidence before him, Captain Baker found Crago guilty of promoting prison contraband.   He came to this decision independently.   Neither Deputy Warden Pitz or any other member of the administration told Captain Baker to sustain the charge.

80.     On or around May 2, 2019, SSU made the decision to move a group of inmates from Buckley Unit based on their involvement in selling or distributing narcotics and/or dangerous contraband.

81.     Inmate Crago was moved from Buckley Unit because he was believed to be highly involved with the sale and distribution of dangerous contraband.   SSU determined that inmate Crago needed a more structured environment on a different prison complex.

82.     On May 2, 2019, Crago had a classification score of 5 and qualified for maximum placement custody.

83.     He was not moved because of any complaints he made about the Buckley Unit.   He was not moved to prevent him from speaking with law enforcement.   He was not moved because of any complaints he made about Deputy Warden Pitz.

84.     Deputy Warden Pitz was not involved in the decision to move these inmates.

-58-

**Prior Disciplinary Matters Involving Crago**

85.     Plaintiff was familiar with the sale and distribution of narcotics and other contraband in the prison system.  While at Red Rock in 2016, he received a disciplinary ticket after an investigation found "substantial and compelling" evidence that he was actively involved in the "introduction, distribution and sale of narcotics at ASP Red Rock."

86.     In the Red Rock incident, Inmate Crago used former Inmate Steven Heindell to facilitate his narcotics sales by using a PayPal account and email.

87.     Former Inmate Heindell also provided mail to Plaintiff, improperly labeled as "Legal Mail," for which Plaintiff also received discipline.

88.     Plaintiff was repeatedly caught with illegal contraband (cell phones).  He would claim that the phones were not his or were sent to him by one of his "victims" to get back at him.

89.     Plaintiff was caught with confidential State Memos in his possession, which led to a "hit" being placed on someone he believed, based on information in the memo, was a "snitch."

**703 Reports and Security Device Inspection Reports**

90.     The Security Device Inspection Report dated January 4, 2019 does not list Plaintiff's cell (3D19) as needing attention.  (STATE-003737-3741)

91.     The Security Device Inspection Report dated January 11, 2019 does not list Plaintiff's cell (3D19) as needing attention.  (STATE-003742-3745)

92.     The Security Device Inspection Report dated February 1, 2019 does not list Plaintiff's cell (3D19) as needing attention.  (STATE-003754-57).

93.     'The Security Device Inspection Report dated April 5, 2019 does not list Plaintiff's cell (3A2) as needing attention.  (STATE-003790-93).

**The Russett v. Ryan Lawsuit**

94.     This lawsuit named (among others), Charles Ryan in his official capacity. CV-16-00431-PHX-ROS.

158250145

95.     Plaintiffs stipulated to dismiss Ryan in their Response to Defendants' Motion to Dismiss (CV-16-00431-PHX-ROS, Doc. 53).

96.     The remaining defendants twice moved to dismiss the claims, arguing they were entitled to qualified immunity under the state created danger doctrine and the lack of clearly established law.  The Ninth circuit held the law was not clearly established and reversed the denial of qualified immunity.  Russett v. Arizona, 798 Fed.  Appx.  111 (9th Cir. 2020)

97.     After Ryan was dismissed, none of the other named Defendants in this case were parties to the Russett suit.

**Procedural History**

98.     On May 17, 2022, Plaintiff amended his complaint to add all of his contentions from his Motion for Summary Judgment, whether relevant or not, and whether timely disclosed or not.  In answering the Third Amended Complaint, Defendants admitted the allegations that were factual, but did not agree that they were relevant or admissible.

## B     ISSUES OF LAW IN CONTROVERSY
### PLAINTIFF'S STATEMENT

Plaintiff incorporates his Pretrial Brief by reference here.  To summarize, the substantive issues of law in controversy are:

1.     Did Defendants' conduct in having insufficient staffing and/or doors that would not properly lock and/or de facto staffing by inmates demonstrate deliberate indifference, in violation of the Eighth Amendment?

2.     Have Defendants persisted for years in their deliberate indifference to the substantial risks of serious harm that Plaintiff experienced because of Defendants' unconstitutional conduct in providing insufficient staffing and/or doors that would not properly lock, and/or de facto inmate staffing, in violation of the Eighth Amendment?

158250145

3.     Should this Court issue a declaration that the conditions encountered by Plaintiff, and Defendants' relevant actions and omissions, violate the First and Eighth Amendments?

4.     Should this Court issue prospective relief that includes, among other things, an injunction to order Defendants to promptly hire sufficient, qualified staff to provide constitutionally adequate care to inmates and to mandate increased STG screening for those inmates in protective custody at Buckley, in addition to a mandate separating STG debriefers and/or members of hybrid prison gangs from the remainder of the inmates in protective segregation?

5.     Did Defendant Pitz retaliate against Plaintiff, in violation of Plaintiff's First Amendment right to file grievances?

6.     Did Defendant Pitz's conduct toward Plaintiff violate Plaintiff's Eighth Amendment right to be housed in a way that would not threaten his safety?

7.     Based on these violations of Plaintiff's constitutional rights, what quantum of compensatory damages is appropriate?

8.     8.     Based on these violations of Plaintiff's constitutional rights, what quantum of punitive damages is appropriate?

With regard to the procedural and evidentiary issues reasonably expected to be in controversy, Plaintiff incorporates Section N of this Joint Proposed Pretrial Order discussing Motions in Limine.   Plaintiff further incorporates discussions of the admissibility of certain evidence discussed in the Court's December 15, 2021, Order on Summary Judgment. See Dkt. # 195 at 2, 3, 5, 36.

**DEFENDANTS' STATEMENT**

1.     Whether evidence relating to the operation of unit other than Buckley are relevant and admissible to Plaintiff's Eighth Amendment failure to protect claim.

2.     Whether a 2016 lawsuit filed against Director Ryan in his official capacity, brought by a former correctional officer relating to an inmate-on-staff assault at the Morey

158250145

1  Unit in 2014, can provide "notice" to Director Ryan of a substantial risk of serious harm to

2  Plaintiff at Buckley in 2019.

3       3.     Whether the document entitled "Report to the Governor:  The Effectiveness

4  of Locks at Lewis Prison" (also, the "Justices' Report") is admissible as evidence.

5       4.     Whether the Justices' Report, submitted on August 12, 2019, is relevant and

6  admissible to the alleged substantial risks of serious harm to Plaintiff at Buckley between

7  January and April 2019.

8       5.     Whether the "evaluative conclusions" made by the Justices in their Report

9  are supported by adequate foundation and evidentiary basis and carry sufficient

10  trustworthiness for admission.  *See generally Daubert v. Merrell Dow Pharm.*, 509 U.S.

11  579 (1993); *Desrosiers v. Flight Int'l of Florida Inc.*, 156 F 3d 952, 961-62 (9th Cir. 1998)

12  (excluding significant portions of Judge Advocate General's report deemed

13  untrustworthy); *Heary Bros.  Lightning Prot.  Co. v. Lightning Prot.  Inst.*, 287 F. Supp. 2d

14  1038, 1076 (D.  Ariz.  2003), aff'd in part, rev'd in part on other grounds, 262 F.  App'x

15  815 (9th Cir. 2008).

16       6.     Whether inmate declarations secured by Plaintiff are inadmissible for lack of

17  trustworthiness, motive, bias, and hearsay.  *See* Rule 401, 403, 801.

18       7.     Whether the evidence produced by Plaintiff is sufficient to demonstrate a

19  substantial risk of serious harm at the Buckley Unit in 2019.

20       8.     Whether evidence of incidents at other Units and prisons can provide

21  "notice" of a substantial risk of harm to Plaintiff.

22       9.     Whether Plaintiff can prove all of the elements to meet the requirements of

23  deliberate indifference under the Eighth Amendment as to each named Defendant.

24       10.     Whether Defendants had any personal involvement in the activities giving

25  rise to Plaintiff's deliberate indifference claim.

26       11.     Whether there is sufficient evidence to prove that Defendant Ryan had actual

158250145

knowledge of a substantial risk of harm to Plaintiff.

12.     Whether there is sufficient evidence to prove that Defendant Trujillo had actual knowledge of a substantial risk of harm to Plaintiff.

13.     Whether there is sufficient evidence to prove that Defendant Larson had actual knowledge of a substantial risk of harm to Plaintiff.

14.     Whether there is sufficient evidence to prove that Defendant Thompson had actual knowledge of a substantial risk of harm to Plaintiff.

15.     Whether there is sufficient evidence to prove that Defendant Pitz had actual knowledge of a substantial risk of harm to Plaintiff.

16.     Whether Plaintiff's First and Third Count regarding Failure to Protect under the Eighth Amendment are duplicative and repetitive as to Defendant Pitz, and thus should be merged into the same claim.

17.     Whether Plaintiff has sufficient evidence to establish more than a de minimus injury to recover mental and emotional distress damages for his Eighth Amendment failure to protect claim.   *See* 42 U.S.C. § 1997e(e); *Lyons v. Leonhardt*, et al. (3:05-cv-00400-JCM-VPC), 2007 U.S. Dist. LEXIS 72919 * 3 (D. Nev. Sept. 27, 2017) (holding brief pain and loss of circulation in hands de minimus injury).

18.     Whether there is sufficient evidence to support punitive damages.

19.     Whether Plaintiff proves that each Defendant's conduct was malicious, oppressive, driven by evil motive or intent, or in reckless disregard or in callous indifference to Plaintiff's constitutional rights to establish punitive damages.

20.     Whether the claims for injunctive and declaratory relief must be bifurcated and decided at the conclusion of the jury portion of the trial.

21.     Whether Defendants are entitled to qualified immunity.

158250145

22. Whether evidence of Buckley Unit condition in 2018 (prior to the installation of padlocks and other measures) is relevant to show Defendants' "notice" of Buckley's condition in 2019.

23. Whether unreported assaults could put Defendants on notice that there was a substantial risk of serious harm to inmates in the Buckley Unit.

24. Whether the evidence of Defendants' actions or inactions is sufficient to support a finding of deliberate indifference.

25. Whether the evidence against Defendant Pitz is sufficient to support a claim of First Amendment retaliation in the prison context.

26. Whether any action taken by Plaintiff qualifies as "protected conduct" for the purposes of his First Amendment retaliation claim.

27. Whether any retaliatory animus represents a "but for" cause of any adverse action taken against the Plaintiff.

28. Whether Plaintiff can demonstrate adverse action taken against him in retaliation for exercising his First Amendment rights.

29. Whether Plaintiff can establish Defendant Pitz knew of the alleged adverse action or otherwise connect it to Defendant Pitz.

30. Whether Plaintiff can establish Defendant Pitz took any adverse action or ordered anyone else to take adverse action against Plaintiff for engaging in protected activity.

31. Whether Defendant Pitz had actual knowledge of Plaintiff's attempt to grieve or complaint.

32. Whether Defendant Pitz knew Plaintiff had engaged in protected activity.

33. Whether a person of ordinary firmness would be chilled against exercising any further First Amendment activities.

158250145

34.     Whether Plaintiff can demonstrate his protected conduct was "the substantial or motivating factor" behind Defendant Pitz' alleged actions. *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009), citing *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989)).

35.     Whether Plaintiff can demonstrate Defendant Pitz knew of the protected conduct and that either (1) there was proximity in time between the protected conduct and the allegedly retaliatory action, (2) that Defendant Pitz expressed opposition to the speech, or (3) Defendant Pitz's proffered reason for the adverse action was pretextual. *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009)

36.     Whether pretext requires proof that the reason was more than an inconsistency or a mistake; pretext is "a lie, specifically a phony reason for some action." *Huggins v Walbro, LLC*, CV 16_00595, 2018 U.S. Dist.  LEXIS 79683 * 29 (D.  Ariz. May 11, 2018), citing *Silvera v. Orange County School Bd.*, 244 F.3d 1253, 1261 (11th Cir.2001).

37.     Whether Plaintiff can prove the proffered reasons for the alleged adverse action was not in service of legitimate correctional goals.

38.     Whether Plaintiff is limited to nominal damages on his First Amendment claim, as there is no way to value and/or monetize a "chilling effect" on Plaintiff's protected conduct. *See Carey v. Piphus*, 435 U.S. 247, 254 (1978) (the purpose of § 1983 damages is to compensate persons for actual injuries caused by a constitutional violation); *Memphis Community School Dist.  v. Stachura*, 477 U.S. 299, 308-10 (1986) ("[T]he abstract value of a constitutional right may not form the basis for § 1983 damages.")

39.     Whether Plaintiff had demonstrated standing for his injunctive and declaratory relief.

40.     Whether Plaintiff is entitled to the declaratory or injunctive relief he seeks.

41.     Whether the statements of non-party officers and documents authored by

-65-

158250145

employees of the ADCRR are admissible for their truth against the individual defendants.

42.     Whether Warden Larson's retirement and Warden Thompson's hiring prior to the events of Plaintiff's Complaint, constitutes a superseding cause or otherwise severs the proximate cause of any action by Warden Larson.

43.     Whether Plaintiff failed to comply with Rule 26 in properly disclosing a computation of damages.

44.     Whether Plaintiff is entitled to any damages due to lack of disclosure of a computation of damages.

45.     Whether Plaintiff is entitled to compensatory damages.

46.     Whether Plaintiff properly disclosed witnesses and the substance of their testimony in compliance with Rule 26.

47.     Whether Plaintiff may recover damages for the alleged assaults under both his Eighth Amendment and First Amendment claims against Pitz.

48.     Whether prisoners have a constitutionally-protected liberty interest in being held at, or remaining at, a given facility.  *See, e.g., Meachum v. Fano*, 427 U.S. 215, 49 L.Ed. 2d 451, 96 S. Ct.  2532 (1976) (no such constitutional right).

49.     Whether on Plaintiff's First Amendment retaliation claim, Plaintiff bears the burden of proving all five elements by a preponderance of the evidence.  *See Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (explaining inmate "bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains.")

50.     Whether preserving institutional order and discipline are legitimate penological goals.  *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam) (holding that they are).

158250145

51.   Whether threats alone constitute adverse action. *See Gaut v. Sunn*, 810 F.2d 923, 925(9th Cir 1987) (finding mere threats of bodily harm insufficient to state a constitutional claim)

52.   Whether Plaintiff failed to mitigate his damages.

53.   Whether the allegations in (and answers to) to Plaintiff's Third Amended Complaint are deemed relevant and admissible.

54.   Whether Plaintiff's disciplinary history is admissible.

55.   Whether staffing patterns on days other than the three assaults are relevant and admissible.

56.   Whether staffing patterns at other units are relevant and admissible.

57.   Whether Plaintiff can show that the individual Defendants had actual knowledge of the staffing patters at Buckley Unit on January 9, February 1, and April 5, 2019.

58.   Whether Plaintiff or any of his witnesses have foundation to assert that a minimum number of officers are required to operate the Unit "safely."

59.   Whether inmate-on-inmate assaults at other units are relevant and admissible.

60.   Whether inmate-on-staff assaults are relevant and admissible.

61.   Whether Plaintiff may assert that inmate Andrew McCormick was "murdered" at the Morey Unit in 2018.

62.   Whether 703 reports discussing other units provided Defendants with notice of a substantial risk of serious harm at Buckley Unit.

63.   Whether 703 reports from 2018 provided Defendants with notice of a substantial risk of serious harm at Buckley Unit between January and April 2019.

64.   Whether hearsay statements of inmates is admissible.

65.   Whether hearsay statements of non-Defendant ADCRR employees is

-67-

admissible.

66.    Whether the testimony of ADCRR employees who did not work at the Buckley Unit at the relevant time is admissible.

67.    Whether the alleged, undocumented "law enforcement raid" asserted by inmates in their declarations is relevant and admissible.

68.    All issues preserved in motions in limine, Defendants' Motion For Summary Judgment, and other pretrial pleadings incorporated herein.

## C    SEPARATE TRIAL OF ISSUES

Plaintiff's position:  No separate trial is advisable or feasible.

Defendants' position:  The law requires a separate bench trial on Plaintiff's claims for injunctive and declaratory relief.  *Danjaq Ltd. Liab.  Co. v. Sony Corp.*, 263 F.3d 942, 962 (9th Cir. 2001) ("'the Seventh Amendment preserves the right to trial by jury of all legal claims,' whereas 'no right to a jury exists' for equitable claims." (quoting *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 170 (9th Cir. 1989)).  See section addressing the same in Defendants' contentions.

## D    WITNESSES.

Witnesses are listed in the tables below.  Plaintiff also reserves the right to call anyone who has been listed by Defendants but is not called as a witness.

Defendants invoke the rule of exclusion of witnesses, Fed. R. Evid. 615.

**PLAINTIFF'S WITNESSES:**

### 1.  WILL CALL

| Name | Anticipated Testimony |
|------|----------------------|
| Earl Crago | Mr. Crago will testify regarding the townhall meeting he attended, his grievances, his assaults, the retaliation by Mr. Pitz, and his personal observations regarding staffing and UA issues, assaults, and STG membership at Buckley, as described in more detail in his declaration and the complaint.<br><br>**Objection:  see Motions in Limine (401, 403, 602, 701, 801, 901).  *Nondisclosure: Plaintiff's attempt to expand the scope*** |

| | | |
|---|---|---|
| | | ***of this witness's testimony comes during the course of trial and is clearly prejudicial the Defendants.*** |
| | Mark Hasz (Lt. at Buckley in 2019) | 1.  He worked at the Morey Unit until he transferred to the Buckley Unit in May of 2019.<br>2.  He began working at the Morey Unit in 2006, and prison administrators knew that inmates at Morey were able to UA doors in 2006.  (STATE-006343.)<br>3.  About one or two inmates would engage in UA in a day. (STATE-006343.)<br>4.  In 2018, inmates learned to obstruct the locking pin at the back of the door, which could not be detected by visual inspection, so entire pods would UA doors.  (STATE-006343.)<br>5.  In 2018, NROD Ernie Trujillo developed and implemented the plan to use STG inmates to control and discipline the inmate population at ASPC-Lewis.  (STATE-006345.)<br>6.  STG inmates were given their own unit, staff were not allowed to search their cells, and they were allowed to possess cellular telephones.   They were also given the best jobs (STATE- 006344.)<br>7.  Short staffing caused control room posts to be collapsed, leaving inmates unsupervised.  (STATE-006344.)<br>8.  Warden Berry Larson downplayed problems at Lewis to make things look good while in charge.  (STATE-006344.)<br>9.   The Buckley unit needs 28 correctional officers. (STATE- 006344.)<br><br>**Objection:  401, 403, 602, 701, 801, 901, Motion in Limine, lack of disclosure.   This witness is one of eighty-eight individuals listed by name only in Plaintiff's Initial Disclosure Statement.  Plaintiff never provided Defendants with this witness's expected testimony – only a generalized boilerplate applicable to all eighty-eight individuals. Plaintiff never identified this witness in response to written discovery responses.** |
| | Shaun Holland (Deputy Warden at Lewis in 2019) | 1.  The door repair crew, which worked on all of the doors at Lewis prison, closed out hundreds of door work orders without repairing the broken door locks, including at Buckley Unit. Whistleblowing Disclosure 12/2/19.<br>2.  Holland reported the problem to Gerald Thompson, NROD Trujillo, and Director David Shinn.   When they refused to address the problem, Holland brought a news crew on the unit and they videotaped Holland walking up to a door that had been marked as repaired and pushing the doors open.  Holland also submitted a whistleblower disclosure to the Governor.  KGUN 9 News video 6/20/19; Whistleblowing Disclosure 12/2/19.<br>3. Holland will testify regarding his experiences as an employee of the ADC, including his observations regarding staffing, doors, issues with the locks, inmate assaults, inmate discipline (including inmate on inmate discipline), his whistleblower disclosure, Contreras' whistleblower disclosure, video evidence |

| | | |
|---|---|---|
| | | related to UAs/assaults, and other related topics.<br>4. Holland will also testify regarding issues with staffing (including the appropriate levels), issues with doors and locks at Lewis, and documentation (or lack thereof) of those issues.<br>5. Holland will testify regarding his interview with Justices Berch and McGregor and the Report that they produced.<br>6. Holland will also testify regarding Defendants' knowledge of the door locks, staffing, and STG issues, and their failures to address them.<br><br>**Objection:  401, 403, 602, 701, 801, 901, Motion in Limine**<br><br>***Supplemental Objections to Plaintiff's Proposed Amendments: (1) Nondisclosure, the Plaintiff's new disclosure expanding the scope of this witness's testimony comes during the course of trial. Disclosure at such a late date is clearly prejudicial to the Defendants' ability to address and answer the proposed expanded testimony of this witness; (2) Lack of foundation.*** |
| | Rebecca White Berch (Former Supreme Court Justice and co-author of the Report on Locks at Lewis) | She will attest to the accuracy of notes recording interviews with ADCRR officials and lay the foundation for the introduction of the August 12, 2019, Report to the Governor, as well as the notes of the interviews.  She will also discuss the contents of the investigative report.<br><br>**Objection:  401, 403, 602, 701, 801, 901, Motion in Limine, nondisclosure. This witness is one of eighty-eight individuals listed by name only in Plaintiff's Initial Disclosure Statement.  Plaintiff never provided Defendants with this witness's expected testimony – only a generalized boilerplate applicable to all eighty-eight individuals.  Plaintiff never identified this witness in response to written discovery responses.** |
| | Steve Antrobus (ADC # 64479) | 1.  He worked as an administrative clerk at Buckley from 2017- 2019.<br>2.  Pitz directed him to remove informal complaints and grievances addressed to COIIIs and the Grievance Coordinator from the institutional mail, which was given to him to place into employee mailboxes in the administrative building.  He would remove all such documents, give them to Pitz, and the documents would be shredded.<br>3. He witnessed Pitz instruct inmates to assault inmates who UA doors and to do so out for view of security cameras.<br>4.  He witnessed Erik Sampson assault Earl Crago on 4/5/19, and witnessed Sampson tell Crago that Pitz told Sampson to assault Crago to stop him from speaking to an attorney about Pitz.<br>5.  He witnessed Sampson say that Pitz promised, in return for assaulting Crago, that Sampson would not be criminally charged for drugs seized by Roger Arnott on 10/13/18 (STATE-001495) and he would remove disciplinary reports for the drugs from |

| | | |
|---|---|---|
| | | Sampson's inmate record (STATE-000544) and would make sure that Sampson was sent to a lower custody unit and given back visits, phones, and a job.  (See Decl.  of Steve Antrobus.)<br><br>**Objection:  401, 403, 602, 701, 801, 901, Motion in Limine, nondisclosure.  This witness is one of eighty-eight individuals listed by name only in Plaintiff's Initial Disclosure Statement.   Plaintiff never provided Defendants with this witness's expected testimony – only a generalized boilerplate applicable to all eighty-eight individuals.    To the extent Antrobus's Declaration supplements Plaintiff's disclosure, the witness is limited to what is in his Declaration, other than on cross examination.** |
| R.  Arnott (COII at Buckley in 2018) | 1.  He seized a bundle of a substance suspected to be narcotics from the cell of Erik Sampson on 10/13/18.  (STATE-001495.)<br>2.  He entered the findings in the unit search log and forwarded the report to Deputy Warden Pitz, in accordance with Dept. Order 708.1.3.<br>3.  He secured the suspected narcotics in an evidence bag and wrote his initials, date, and time on the bag.  He got a case number (18-L29-04144), wrote that on the bag, attached the information report to the bag, and gave the bag to the contraband control officer/CIU, in accordance with Department Order 909.7.5.<br>4.  He wrote a disciplinary report for Sampson possessing a narcotic-like substance and submitted it to the shift supervisor, in accordance with Department Order 803.3.0.<br>5.  The 10/15/18 entry in Sampson's Inmate Record stating that Sampson was removed from his job for a disciplinary reason (STATE-00544) is because of the disciplinary report written by Arnott.  // 6.  He does not know why the report does not show on Sampson's inmate record disciplinary history.<br><br>**Objection:  Lack of disclosure re:  scope of testimony, 401, 403, 602, 701, 801, 901.** |
| CO Oshit (possibly spelled Ohshita) (CO IV at Buckley in 2018) | 1.   Oshit observed Sampson keester an unknown substance during the Buckley visitation on 10/13/18 and canceled Sampson's visit.  (STATE-000543.)<br>2.  Oshit placed Sampson into/on 72-hour watch to recover the item that was keestered.  Oshit does not know why Sampson's inmate records do not show an entry for this.<br>3.  Oshit wrote Sampson a disciplinary report for keestering an item at visitation and submitted it to the shift supervisor, in accordance with Department Order 803.3.0, and he does not know why Sampson's inmate record disciplinary history does not show the disciplinary report.<br>4.  The 10/15/18 entry in Sampson's inmate record, stating that Sampson was removed from his job for disciplinary reasons, occurred because of the 10/13/18 disciplinary report for keestering during the visit.  (STATE-000544.) |

| | | |
|---|---|---|
| | | **Objection:  Lack of disclosure re:  scope of testimony, 401, 403, 602, 701, 801, 901, insufficient evidence for Defendants to identify officer** |
| | Arturo Flores (ADC # 270776) | 1.  He was validated as a member of the STG Warrior Society on 1/26/17.  (STATE-000474.) <br> 2.  His name was found on the membership list for the Warrior Society 11/12/19.  (STATE-000475.) <br> 3.  His name was found on the membership list for STG La Doce Familia on 8/28/19 and 10/30/19.  (STATE-000474-475.) <br> 4.  He was recruited by Pitz to assault Crago on 1/9/19 and make him stop submitting grievances against Pitz.  He entered the building through broken doors and entered the cell through the broken door.  *See* Decl.  of Arturo Flores. <br> 5.  He then forced Crago into the 3 C/D hallway (out of view of the camera) and beat him unconscious and bloody on the floor. <br> 6.  He later told him not to file grievances against Pitz and not to go to medical.  *See* Decl.  of Arturo Flores. <br> 7.  On 11/4/18, he was issued a disciplinary report for having a cellular phone, and, on  11/14/18, one for promoting prison contraband.  (STATE-000482.) <br> 8.  On 2/25/19, COIII Cortez recommended placement at max. custody for possessing cellular phone and a prison-made weapon.  (STATE-000470.) <br> 9.  On 2/28/19, Deputy Warden Pitz recommended a custody override ("C/O/R") to keep Flores at the Buckley unit. (STATE- 000470.) <br> 10.  Flores is granted a custody override based on Pitz's recommendation.  *Id*. <br> 11.  Flores admits to swallowing heroin on 4/24/19, but no disciplinary ticket was issued.  (STATE-000475.) <br> 12. Mr. Flores's observations regarding staffing levels and conditions of the prison cell door locks at ASPC Lewis during his time of incarceration including to the present. <br><br> **Objection:  Lack of foundation, 401, 403, 602, 701, 801, 901, nondisclosure. This witness is one of eighty-eight individuals listed by name only in Plaintiff's Initial Disclosure Statement.  Plaintiff never provided Defendants with this witness's expected testimony – only a generalized boilerplate applicable to all eighty-eight individuals.  Plaintiff never identified this witness in response to written discovery responses.  To the extent Flores's Declaration supplements Plaintiff's disclosure, the witness is limited to what is in his Declaration, other than on cross examination.** |
| | Hector Ruiz (ADC # 198345) | 1.  He became a validated STG Mexican Mafia member on 7/20/11.  (STATE-000520.) <br> 2.  His name appeared on the membership list for La Doce Familia on 8/28/19.  (STATE-000520.) <br> 3.  He was listed as pending validation for La Doce Familia on 11/30/19.  (STATE-000516.) <br> 4.  He was recruited by Pitz at the 11/30/18 Buckley Townhall |

-72-

| | | |
|---|---|---|
| | | meeting to makes inmates stop Uaing doors, where he was also told to keep assaults out of view of security cameras, and he was promised special privileges for doing so.<br>5.  He was directed by Pitz to assault Crago on 1/9/19 and make him stop submitting grievances against Pitz.  (See Decl.  of Hector Ruiz.)<br><br>**Objection:  Lack of Foundation, 401, 403, 602, 701, 801, 901, nondisclosure.  This witness is one of eighty-eight individuals listed by name only in Plaintiff's Initial Disclosure Statement.  Plaintiff never provided Defendants with this witness's expected testimony – only a generalized boilerplate applicable to all eighty-eight individuals.  Plaintiff never identified this witness in response to written discovery responses.  To the extent Ruiz's Declaration supplements Plaintiff's disclosure, the witness is limited to what is in his Declaration, other than on cross examination.**<br><br>***Supplemental Objections to Plaintiff's Proposed Amendments:  (1) Nondisclosure, the Plaintiff's new disclosure expanding the scope of this witness's testimony comes during the course of trial. Disclosure at such a late date is clearly prejudicial to the Defendants' ability to address and answer the proposed expanded testimony of this witness; (2) Lack of Foundation.*** |
| | Luis Parrado (ADC # 221073) | 1.  He was validated as a member of the Mexican Mafia on 6/18/15.  (STATE-000499.)<br>2.  He was removed from Buckley on 5/7/19 for membership in La Doce Familia.  (STATE-000591.)<br>3.  He was classified into maximum custody for STG activity on 6/17/19.  (STATE-000579.)<br>4.  He was recruited by Pitz at the 11/30/18 Buckley Townhall meeting to make inmates stop UAing doors, told to keep assaults out of view of security cameras, and was allowed to keep suspected narcotics as a favor for working for Pitz.<br>5.  He had disciplinary reports removed from his inmate record by SSU Baza (Bajraktarevic #9915).<br>6. He witnessed Bajraktarevic remove disciplinary reports from Erik Sampson's inmate record.  (See Decl.  of Luis Parrado.)<br><br>**Objection:  Lack of Foundation, 401, 403, 602, 701, 801, 901, nondisclosure.  This witness is one of eighty-eight individuals listed by name only in Plaintiff's Initial Disclosure Statement.  Plaintiff never provided Defendants with this witness's expected testimony – only a generalized boilerplate applicable to all eighty-eight individuals.  Plaintiff never identified this witness in response to written discovery responses.  To the extent Parrado's Declaration supplements Plaintiff's disclosure, the witness is limited to what is in his Declaration, other than on cross examination.** |
| | Scott Baker #558 | 1.  Staff at Lewis intercepted mail with a declaration for Andrew |

-73-

| | | |
|---|---|---|
| 1<br>2<br>3<br>4 | (Criminal Investigator at Lewis in 2019) | McAllister, which stated that Crago was stabbed multiple times by Kelvin Barnett on 2/1/19; Kelvin Barnett was stabbed in the eye and taken to the hospital, but staff did not report the incident. A search of the Serious Incident Report ("SIR") drive revealed that the incident was not reported.  Contact with SSU revealed that they were not notified about the Barnett eye injury. (STATE-000124.) |
| 5<br>6<br>7 | | 2.  He interviewed Crago on 9/23/19, and Crago confirmed the assault and said that Pitz gave Barnett the weapon from a bucket of weapons in Capt.  Whiting's office.  Pitz ordered the assault because Crago kept complaining about him using inmates to do things.  (STATE-000120-121.) |
| 8<br>9 | | 3.  He interviewed Capt.  Whiting and confirmed that there was a bucket of weapons in his office and Pitz had a key to the office. Capt.  Whiting also confirmed that inadequate staffing caused them to collapse coverage of the control room where Crago was assaulted by Barnett.  (STATE-000121.) |
| 10<br>11 | | 4.  He noted that the ADCRR policy prohibits keeping weapons stored on the unit.  (STATE-000122.) |
| 12 | | 5.  He concluded that Barnett assaulted Crago with a weapon on 2/1/19.    Barnett  invoked  his  right  to  remain  silent. (STATE- 000121.) |
| 13<br>14<br>15 | | **Objection: 401, 403, 602, 701, 801, 901, nondisclosure. This witness is one of eighty-eight individuals listed by name only in Plaintiff's Initial Disclosure Statement.  Plaintiff never provided Defendants with this witness's expected testimony – only a generalized boilerplate applicable to all eighty-eight individuals.    Plaintiff  never  identified  this  witness  in response to written discovery responses.** |
| 16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24 | COII S. Law (COII at Buckley in 2018) | 1.  He (and Henderson) seized heroin and a syringe from Barnett at cell 3-D-23 in the Buckley unit in 2018.  They took Barnett to the yard office and Barnett refused to submit to urinalysis.<br>2.    Barnett  was  issued  a  disciplinary  report  for  possessing  a narcotic-like  substance,  drug  paraphernalia,  and  refusal  to produce a urinalysis.  The reports were then submitted to the shift supervisor in accordance with Department Order 803.3.0.<br>3.   They secured the suspected narcotics and syringe in an evidence bag and wrote his initials, the date, and time on the bag. They obtained a case number and put it on the bag.  They also attached  an  information  report  and  gave  the  bag  to  the contraband control officer/Criminal Investigations Unit ("CIU") in accordance with Department Order 909.7.5.<br>4.  He does not know why there are no records of those events in  Barnett's  inmate  records  or  in  the  unit's  search  logs,  as required by Department Order 708.1.3. |
| 25<br>26 | | **Objection:  lack of disclosure re:  scope of testimony, 401, 403, 602, 701, 801, 901, nondisclosure. This witness is one of eighty-eight individuals listed by name only in Plaintiff's Initial  Disclosure  Statement.    Plaintiff  never  provided** |

-74-

| | |
|---|---|
| | **Defendants with this witness's expected testimony – only a generalized boilerplate applicable to all eighty-eight individuals.   Plaintiff never identified this witness in response to written discovery responses.** |
| COII D. Henderson (COII at Buckley in 2018) | 1.  He (and Law) seized heroin and a syringe from Barnett at cell 3-D-23 in the Buckley unit in 2018.  They took Barnett to the yard office and Barnett refused to submit to urinalysis. |
| | 2.   Barnett was issued a disciplinary report for possessing a narcotic-like substance, drug paraphernalia, and refusal to produce a urinalysis.  The reports were then submitted to the shift supervisor in accordance with Department Order 803.3.0. |
| | 3.   They secured the suspected narcotics and syringe in an evidence bag and wrote his initials, the date, and time on the bag.  They obtained a case number and put it on the bag.  They also attached an information report and gave the bag to the contraband control officer/CIU in accordance with Department Order 909.7.5. |
| | 4.  He does not know why there are no records of those events in Barnett's inmate records or in the unit's search logs, as required by Department Order 708.1.3. |
| | **Objection:  lack of disclosure re:  scope of testimony, 401, 403, 602, 701, 801, 901, nondisclosure.  This witness is one of eighty-eight individuals listed by name only in Plaintiff's Initial Disclosure Statement.   Plaintiff never provided Defendants with this witness's expected testimony – only a generalized boilerplate applicable to all eighty-eight individuals.   Plaintiff never identified this witness in response to written discovery responses.** |
| Levi Bodine (ADC # 127410) | 1.  Pitz told him that he would have STG inmates assault him for UAing his door (accessing his cell door without authorization), and he was assaulted multiple times for this. |
| | 2.  He told Trujillo that Pitz kept having him assaulted for Uaing his door.  Trujillo told him to stop Uaing his door.  Then he was placed in restraints, taken behind the yard office, and assaulted by an inmate, then taken to medical and treated for a broken nose.  He was then sent to his cell and told to stop UAing doors. |
| | 3.  He was sent to maximum custody and submitted a Notice of Appeal for Maximum Custody Placement on 6/19/19 to COII Valles (#3987). |
| | 4.   The appeal stated that he was assaulted multiple times for Uaing his door by Pitz, and when he told Trujillo he was assaulted again and sent to maximum custody. |
| | 5.  He said that Trujillo made it clear that ADC administration knew and also knew that Pitz was using inmates to assault inmates who open cell doors.  Notice of Appeal-Maximum Custody Placement, dated 6/19/19, signed received by COII Valles (#3987). |
| | **Objection:  401, 403, 602, 701, 801, 901, nondisclosure.  This witness is one of eighty-eight individuals listed by name only** |

158250145

| | | |
|---|---|---|
| | | in Plaintiff's Initial Disclosure Statement. Plaintiff never provided Defendants with this witness's expected testimony – only a generalized boilerplate applicable to all eighty-eight individuals. Plaintiff never identified this witness in response to written discovery responses. To the extent Bodine's Declaration supplements Plaintiff's disclosure, the witness is limited to what is in his Declaration, other than on cross examination. |
| | Luis De La O, COIII, Disciplinary Coordinator | 1. Mr. De La O's testimony is embodied in STATE-006372- 006378. Mr. De La O found, between 2018-2019, approximately 50 assaults related to UA, but found only approximately 10 reports. (STATE-006374.)<br>2. Mr. De La O also said that no one was validated for over a year as a gang member because the task force was not doing its job. (STATE-006375.)<br>3. Mr. De La O also said that there was a program where validated inmates were supposed to keep peace among the inmates and that Travis Scott implicitly condoned the gangs enforcing order. (STATE-006377.)<br>4. Mr. De La O also said that required reports were not being generated because staff did not have time to prepare them. *Id.*<br>5. Mr. De La O reported that, "When IMs were policing themselves, they would "talk to Jimmy" and Jimmy would have a black eye." (STATE-006378.)<br><br>**Objection: 401, 403, 602, 701, 801, 901, nondisclosure Motion in Limine, lack of foundation. This witness is one of eighty-eight individuals listed by name only in Plaintiff's Initial Disclosure Statement. Plaintiff never provided Defendants with this witness's expected testimony – only a generalized boilerplate applicable to all eighty-eight individuals. Plaintiff never identified this witness in response to written discovery responses.** |
| | Witnesses needed to authenticate/lay foundations for exhibits, including 1006 exhibits | To the extent necessary, Plaintiff discloses those document custodians or others who may need to authenticate and/or lay the foundation for the admission of various exhibits. |
| | Rebuttal witnesses | Any other witnesses necessary for rebuttal.<br>Objection: Non specific identification. All objections reserved. |

## 2. MAY CALL

| Name | Anticipated Testimony |
|---|---|
| Andrew Mcallister | Mr. Mcallister observed the assault on Mr. Crago by Barnett, as described in more detail in his declaration,<br><br>**Objection: 401, 403, 602, 701, 801, 901, nondisclosure. This witness is one of eighty-eight individuals listed by name only in Plaintiff's Initial Disclosure Statement. Plaintiff never provided** |

| | | |
|---|---|---|
| | | **Defendants with this witness's expected testimony – only a generalized boilerplate applicable to all eighty-eight individuals. Plaintiff never identified this witness in response to written discovery responses.  To the extent that Mcallister's Declaration supplemented his disclosure, Plaintiff is limited the contents of the Declaration.** |
| | Captain Whiting | 1. Capt.  Whiting can confirm that there was a bucket of weapons in his office and Pitz had a key to the office.<br>2. Captain Whiting can testify regarding the physical organization of ASPC Lewis, and specifically Buckley unit.<br>3. Capt.  Whiting also can confirm that inadequate staffing caused them to collapse coverage of the control room where Crago was assaulted by Barnett.  (STATE-000121.)<br>4. Capt. Whiting can testify regarding the conditions of the cell doors locks as ASPC Lewis, and the causes and consequences of the same.<br>5. Capt. Whiting can testify regarding meeting as ASPC Lewis that he attended and reports, videos, or other records kept in the ordinary course of business by ADC regarding ASPC Lewis that he authored or viewed.<br><br>**Objection:  lack of foundation, Motion in Limine, 401, 403, 602, 701, 801, 901, nondisclosure.  This witness was not disclosed in Plaintiff's disclosure statement or answers to NUI.**<br><br>***Supplemental Objections to Plaintiff's Proposed Amendments: (1) Nondisclosure, the Plaintiff's new disclosure expanding the scope of this witness's testimony comes during the course of trial. Disclosure at such a late date is clearly prejudicial to the Defendants' ability to address and answer the proposed expanded testimony of this witness.*** |
| | Angel Laborin Torres | Mr. Torres was recruited by D.W. Pitz to act as a de facto prison guard, as described more fully in his declaration.<br><br>**Objection:  401, 403, 602, 701, 801, 901, nondisclosure.  Plaintiff listed Torres' name in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since.  He provided only a generalized boilerplate.  To the extent Torres' Declaration supplemented his disclosure, Plaintiff is limited the contents of the Declaration.** |
| | Ernesto Lopez | Mr. Lopez described how he was assaulted for accessing his cell door without authorization; he also suffered retaliation for filing a grievance complaining about Pitz.  Additional details of his testimony are listed in his declaration.  (*See* Doc. 171-1 at 79.)<br><br>**Objection:  401, 403, 602, 701, 801, 901, nondisclosure.  Plaintiff listed Lopez's name in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since.  He provided only a generalized boilerplate.  To the extent that Lopez's declaration supplemented his disclosure, Plaintiff is limited the contents of the Declaration.** |
| | Carson | Justice Berch/McGregor's notes (STATE-006358) indicate that he was |

-77-

| | | |
|---|---|---|
| McWilliams | present at a meeting on 1/3/19 with Director Ryan regarding cell doors. He also has information regarding staffing issues.  (STATE-006384.) Justice Berch's notes indicate that McWilliams knew of serious problems with the doors at Lewis in 2017 (and heard of issues as early as 2006).  (STATE-006433.) | |
| | **Objection:  401, 403, 602, 701, 801, 901, nondisclosure.  Plaintiff listed McWilliams in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since.  He provided only a generalized boilerplate.  Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** | |
| Ernie Trujillo, Northern Region Operations Director | Justice Berch's notes state that Trujillo was aware of the UA issue becoming a "real problem" by late fall of 2017.  (STATE- 006434.) Trujillo was aware of UA and staffing issues in 2017 and later.  (*See* STATE-006409, STATE-006484, STATE-006489.) He can explain Mark Hasz's description of the step- down program and statement that Trujillo developed it.  (STATE-006344.) Trujillo can also explain why he told Bodine to "stop opening [his] cell door," as described in more detail in Levi Bodine's declaration. | |
| | **Objection:  401, 403, 602, 701, 801, 901, nondisclosure.  Plaintiff listed Trujillo his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since.  He provided only a generalized boilerplate.  Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information** | |
| Capt.  Luis Matos, Correctional Captain and Chief of Security at Morey Unit at Lewis | Matos can explain Mark Hasz's accusations that Matos chastised Hasz for searching the stepdown cells for contraband and told him those cells could not be searched.  (*See* STATE-006344.) Matos can also discuss staffing and UA issues.  (STATE-006423-006432.) | |
| | **Objection:   401, 403, 602, 701, 801, 901, Motion in Limine, nondisclosure.  This witness was never identified in Plaintiff's disclosure statement.** | |
| Randy Standridge | Mr. Standridge's testimony is embodied in STATE-006382- 006388.  He can speak to staff shortages and UA issues. | |
| | **Objection:  401, 403, 602, 701, 801, 901, nondisclosure.  Plaintiff listed Standridge in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since.  He provided only a generalized boilerplate.  Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** | |
| Gilbert Orrantia | Mr. Orrantia's testimony is embodied in STATE-006351- 006355.  He can speak to staff shortages and UA issues. | |
| | **Objection:  401, 403, 602, 701, 801, 901, nondisclosure.  Plaintiff listed Orrantia in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since.  He provided only a generalized** | |

158250145

| | | |
|---|---|---|
| | | boilerplate.  Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information. |
| | Daren Sikes (COII at Lewis and AZCPOA President) | 1.   He   worked   at   Lewis   for   20+   years   (1999-2019). (STATE- 006356-57.)<br>2.  Ernie Trujillo and Berry Larson had inmates working on the door maintenance crew in 2018.  These inmates would disable the door locking mechanism.  (STATE-006357.)<br>3.  In his capacity as union representative, he spoke to Deputy Warden Travis Cross.  Cross reported that doors were broken because of poor maintenance.  (STATE-006357.)<br>4. He spoke to Charles Ryan about the door locks.  Ryan said that there was no money to replace the door locks.  (STATE-006358.)<br>5. Deputy Wardens would hide how many doors were broken on their units to avoid looking bad.  (STATE-006360.)<br>6.  Video of cell doors not locking.<br><br>**Objection:   401, 403, 602, 701, 801, 901, Motion in Limine, nondisclosure.   Plaintiff listed Sikes in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since.  He provided only a generalized boilerplate.   Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| | Joseph Pitz | Mr. Pitz could explain the townhall meetings with influential Buckley inmates and use of inmates as de facto jail staff, as further described in Doc. 222 (the Complaint) and Doc. 195 (the MSJ order).<br><br>**Objection:   401, 403, 602, 701, 801, 901, unduly cumulative, nondisclosure.  Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since.  He provided only a generalized boilerplate.   Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| | Berry Larson | Ms. Larson was the author of various reports discussing the issues with door locks and staffing at Lewis (see, e.g. STATE- 006485-91); she was removed for performance deficiencies.<br><br>**Objection:  401, 403, 602, 701, 801, 901, Motion in Limine, unduly cumulative, nondisclosure.  Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of her testimony in the two- and-a-half years since.  He provided only a generalized boilerplate.  Plaintiff never supplemented his written discovery   responses   with   this   witness'   proposed testimony/information** |

| | | |
|---|---|---|
| Ruth V. McGregor, Chief Justice, Arizona Supreme Court | She will attest to the accuracy of notes recording interviews with ADCRR officials and lay the foundation for the introduction of the August 12, 2019, Report to the Governor, as well as the notes of the interviews.  She can also discuss the content of the investigative report.<br><br>**Objection:  401, 403, 602, 701, 801, 901, Motion in Limine, unduly cumulative, nondisclosure.  Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of her testimony in the two- and-a-half years since.  He provided only a generalized boilerplate.  Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** | |
| John Armstrong, Criminal Investigator | He will testify that multiple inmates accessed doors in Buckley Unit on 09/27/2018 in Building 2, pod A and assaulted Bradley Rakestraw. Armstrong will also testify to the procedures for seizing, tracking, and turning over suspected drugs to Criminal Investigators.<br><br>**Objection:  401, 403, 602, 701, 801, 901, nondisclosure.** | |
| Tara Diaz, Southern Regional Operations Director | The substance of Ms. Diaz's testimony is embodied in the notes located at STATE-006414-17.   She discusses assaults resulting from the staffing and non-functional door locks.<br><br>**Objection:  401, 403, 602, 701, 801, 901, nondisclosure.  Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of her testimony in the two-and-a-half years since.   He provided only a generalized boilerplate.  Plaintiff never supplemented his written discovery responses with this witness' proposed testimony.** | |
| Gerald Thompson, Warden at ASPC- Lewis | Trujillo received many memos from Defendant Thompson about the problems with the locks, prisoners UA'ing their doors, and assaults on prisoners and staff; Mr. Thompson can explain the conditions that prompted those memos,<br><br>**Objection:  401, 403, 602, 701, 801, 901, nondisclosure.  Plaintiff listed Thompson in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since.   He provided only a generalized boilerplate.  Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** | |
| M. Muniz, CO II, # 8659, Visitation Officer, Lewis Prison | Sampson said that visitation officer Muniz caught Sampson with two ounces of heroin in his cell in building two; Muniz can describe that incident and explain why no disciplinary report was issued.<br><br>**Objection:   401, 403, 602, 701, 801, 901, lack of foundation, nondisclosure.   Plaintiff listed Muniz in his initial disclosure statement, but never disclosed the scope or subjects of the testimony in the two-and-a-half years since.  He provided only a generalized boilerplate.  Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** | |

| April Townsend, Office Administrator, Lewis Prison | April Townsend kept records of several of the Townhall meetings (but not Nov. 2018) and can explain what transpired there.<br><br>**Objection:   401, 403, 602, 701, 801, 901, nondisclosure. Plaintiff listed Townsend in his initial disclosure statement, but never disclosed the scope or subjects of her testimony in the two-and-a-half years since.   He provided only a generalized boilerplate.   Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
|---|---|
| _____ Cordoza, Deputy Warden, Complex Compliance Officer, ____-2019 | Mr. Cordoza heard Defendant Pitz tell them to "clean up the yard old school" and keep it off camera.<br><br>**Objection:   401, 403, 602, 701, 801, 901, nondisclosure. Plaintiff listed Cordoza in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since.   He provided only a generalized boilerplate.   Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| J. Swayne, CO IV, Lewis Prison, ____-2019 | Mr. Angel Torres stated in his declaration that "In April2019, I spoke to CO Swayne and Assistant Deputy Warden Chavez about my phone and visitation privileges still not being reinstated as promised by Pitz.  Swayne and Chavez walked me to the administration building to one of their offices, CO4 Swayne then got on the AIMS computer screen and reinstated my phone and visitation privileges and told me to keep making sure inmates stay in their cells.  I said okay.  The following day my phones were back on."<br><br>Anticipated testimony:   Mr. Swayne can explain the circumstances surrounding this encounter.<br><br>**Objection:   401, 403, 602, 701, 801, 901, nondisclosure. Plaintiff listed Swayne in his initial disclosure statement, but never disclosed the scope or subjects of her testimony in the two-and-a-half years since.  He provided only a generalized boilerplate.   Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| L. Chavez, Assistant Deputy Warden, Lewis Prison, ____-2019 | Mr. Angel Torres stated in his declaration that "In April2019, I spoke to CO Swayne and Assistant Deputy Warden Chavez about my phone and visitation privileges still not being reinstated as promised by Pitz.  Swayne and Chavez walked me to the administration building to one of their offices, C04 Swayne then got on the AIMS computer screen and reinstated my phone and visitation privileges and told me to keep making sure inmates stay in their cells.  I said okay.  The following day my phones were back on." |

| | |
|---|---|
| | Anticipated testimony:   Mr. Chavez can explain the circumstances surrounding this encounter.<br><br>**Objection:   401, 403, 602, 701, 801, 901, nondisclosure. Plaintiff listed Chavez in his initial disclosure statement, but never disclosed the scope or subjects of her testimony in the two-and-a-half years since.  He provided only a generalized boilerplate.   Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| ____ Quintania, SSU, Lewis Prison, 2017-2019 | Luis Parrado stated in his declaration that, "On April 6, 2019, SSU Taylor and SSU Quintania told me and Flores we were doing a good job in our building but we needed to do more in other buildings to keep inmates in their cells." Mr. Quintania can explain this conversation and discuss the use of inmates as de facto guards.<br><br>**Objection:   401, 403, 602, 701, 801, 901, nondisclosure. Plaintiff listed Quintania in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since.   He provided only a generalized boilerplate.  Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| Erik Sampson | Erik Sampson may testify about his assault on Plaintiff, including his motivation.<br><br>**Objection: 401, 403, nondisclosure. Plaintiff listed Sampson in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since.  He provided only a generalized boilerplate.  Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.  To the extent that the Declarations of Plaintiff or inmate Antrobus supplemented this disclosure, Plaintiff is limited to the contents of those declarations.** |
| Kelvin Barnett | 1. Kelvin Barnett may testify as his assault on Plaintiff, including his motivations for the same, including the way in which Defendant Pitz leveraged personal events against Mr. Barnett that led to Mr. Barnett's assault of Mr. Crago.<br>2. Mr. Barnett's observations regarding staffing levels and conditions of the prison cell door locks at ASPC Lewis during his time of incarceration including to the present.<br><br>**Objection:   401, 403, 602, 701, 801, 901, nondisclosure. Plaintiff listed Sampson in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since.   He provided only a generalized boilerplate.  Plaintiff never supplemented his written.  To the extent that the Declarations of Plaintiff or** |

| | inmate McAllister supplemented this disclosure, Plaintiff is limited to the contents of those declarations.<br><br>***Supplemental Objections to Plaintiff's Proposed Amendments: (1) Nondisclosure, the Plaintiff's new disclosure expanding the scope of this witness's testimony comes during the course of trial. Disclosure at such a late date is clearly prejudicial to the Defendants' ability to address and answer the proposed expanded testimony of this witness; (2) Lack of Foundation.*** |
|---|---|

### 3.  UNLIKELY TO BE CALLED AT TRIAL

| Name | Anticipated Testimony |
|---|---|
| Mike Landry, ADC Facilities Administrator | Mr. Landry could testify regarding UA and door maintenance issues.<br><br>**Objection:  401, 403, 602, 701, 801, 901, nondisclosure. Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since.  He provided only a generalized boilerplate.  Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| Jake Gable, ADC Planning Budget Research Administrator | Mr. Gable could testify regarding funding for staff and door maintenance.<br><br>**Objection:  401, 403, 602, 701, 801, 901, nondisclosure. Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since.  He provided only a generalized boilerplate.  Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| Carlos Rena, Security Operations Officer, Statewide SSU Coordinator | Mr. Rena could testify regarding SSU procedures and policies.<br><br>**Objection:  401, 403, 602, 701, 801, 901, nondisclosure. Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since.  He provided only a generalized boilerplate.  Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| Kevin Tynan, ADC Engineering Facilities Project Manager | Mr. Tynan could testify regarding maintenance issues.<br><br>**Objection:  401, 403, 602, 701, 801, 901, nondisclosure. Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since.  He provided only a** |

-83-

| | |
|---|---|
| | **generalized boilerplate. Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| Maj. Daniel Walker | The substance of his testimony is embodied in Justice Berch's notes. (*See* STATE-006418-006422.)<br><br>**Objection: 401, 403, 602, 701, 801, 901, nondisclosure. Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since. Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |

-84-

| | |
|---|---|
| Travis Scott | Mr. Scott's testimony is embodied in STATE-006362-006367.<br><br>**Objection:  401, 403, 602, 701, 801, 901, nondisclosure. Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since.  He provided only a generalized boilerplate.  Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| Charles Ryan | Mr. Ryan's testimony is embodied in STATE-006389-006393. Mr. Ryan stated that the prison locks have been a "problem for several decades." (STATE-006389.) He could also speak to the ongoing staffing issues, including "approximately 1200 CO vacancies." (Id. at 006389-90.)<br><br>**Objection:  401, 403, 602, 701, 801, 901, nondisclosure. Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since. He provided only a generalized boilerplate.  Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| R. Peralta, C/O II, Lewis Prison | Could testify regarding his assault that occurred on 9/29/2018.<br><br>**Objection:  401, 403, 602, 701, 801, 901, Motion in Limine, nondisclosure.  Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since. He provided only a generalized boilerplate. Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| M. Ballentine, C/O II, Lewis Prison | Could testify regarding his assault that occurred on 10/05/2018.<br><br>**Objection:  401, 403, 602, 701, 801, 901, Motion in Limine, nondisclosure.  Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since. He provided only a generalized boilerplate. Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| J. Pasos, CO II, Lewis Prison | Could testify regarding his assault that occurred on 10/20/2018.<br><br>**Objection:  401, 403, 602, 701, 801, 901, Motion in Limine, Lack of disclosure, nondisclosure.  Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two- and-a-half years since. He provided only a generalized boilerplate.  Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |

-85-

| | |
|---|---|
| E.  Garza, CO II, Lewis Prison | Could testify regarding his assault that occurred on 10/29/2018.<br><br>**Objection:  401, 403, 602, 701, 801, 901, Motion in Limine, nondisclosure.   Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since. He provided only a generalized boilerplate.  Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| J.  Avila, CO II, Lewis Prison | Could testify regarding his assault that occurred on 10/29/2018.<br><br>**Objection:  401, 403, 602, 701, 801, 901, Motion in Limine, nondisclosure.   Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since. He provided only a generalized boilerplate.  Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| Z.  Markowski, Sergeant, Lewis Prison | Could testify regarding his assault that occurred on 11/22/2018.<br><br>**Objection:  401, 403, 602, 701, 801, 901, Motion in Limine, nondisclosure.   Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since. He provided only a generalized boilerplate.  Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| D.  Nash, CO II, Lewis Prison | Could testify regarding his assault that occurred on 12/30/2018.<br><br>**Objection:  401, 403, 602, 701, 801, 901, Motion in Limine, nondisclosure.   Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since. He provided only a generalized boilerplate.  Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| M.  Garcia, CO II, Lewis Prison | Could testify regarding his assault that occurred on 10/13/2018.<br><br>**Objection:  401, 403, 602, 701, 801, 901, Motion in Limine, nondisclosure.   Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since. He provided only a generalized boilerplate.  Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| L.  Bevins, CO, Lewis Prison | Could testify regarding his assault that occurred on 07/12/2014.<br><br>**Objection:  401, 403, 602, 701, 801, 901, Motion in Limine, nondisclosure.   Plaintiff listed this witness in his initial disclosure statement, but  never  disclosed  the  scope  or** |

-86-

158250145

| | |
|---|---|
| | subjects of his testimony in the two-and-a-half years since. He provided only a generalized boilerplate. **Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| J. Duran-Vargas, CO II, Lewis Prison,_____-2019 | Could testify regarding his assault that occurred on 12/30/2018.<br><br>**Objection: 401, 403, 602, 701, 801, 901, Motion in Limine, nondisclosure. Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since. He provided only a generalized boilerplate. Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| James Roan, Deputy Warden, Lewis Prison, _____-2019 | Could testify regarding inmate assaults, staffing issues, and problems with door locks.<br><br>**Objection: 401, 403, 602, 701, 801, 901, nondisclosure. Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since. He provided only a generalized boilerplate. Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| _____, Inspector General Bureau Auditor, Lewis Prison | Could testify regarding inmate assaults, staffing issues, and problems with door locks.<br><br>**Objection: 401, 403, 602, 701, 801, 901, nondisclosure. Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since. Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.**<br>**Objection: Vague, 401,** |
| D. Cardoza, CO II, Lewis Prison | Could testify regarding his assault that occurred on 11/22/2018.<br><br>**Objection: 401, 403, 602, 701, 801, 901, Motion in Limine, lack of disclosure. Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since. He provided only a generalized boilerplate. Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| N. Fink, Sergeant, Lewis Prison | Could testify regarding his assault that occurred in 2018-19.<br><br>**Objection: 401, 403, 602, 701, 801, 901, Motion in Limine, nondisclosure. Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since. He provided only a generalized boilerplate. Plaintiff never** |

-87-

| | |
|---|---|
| | supplemented his written discovery responses with this witness' proposed testimony/information. |
| W. Metzler, Sergeant, Lewis Prison | Could testify regarding his assault that occurred in 2018-19. 602, 701, 801, 901.<br><br>**Objection:   401, 403, Motion in Limine, nondisclosure. Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since.  He provided only a generalized boilerplate.   Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| M. Dicks, Sergeant, Lewis Prison | Could testify regarding his assault that occurred in 2018-19.<br><br>**Objection:  401, 403, 602, 701, 801, 901, Motion in Limine, nondisclosure.  Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since. He provided only a generalized boilerplate.  Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| Timothy Mallory, Inmate, Lewis Prison | Could testify regarding his assault that occurred on 02/27/2018.<br><br>**Objection:  401, 403, 602, 701, 801, 901, Motion in Limine, nondisclosure.  Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since. Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| _____, Mattia, Inmate, Lewis Prison | Could testify regarding his assault that occurred on 02/27/2018.<br><br>**Objection:  401, 403, 602, 701, 801, 901, Motion in Limine, nondisclosure.  Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since. He provided only a generalized boilerplate.  Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| _____, Bologna, Inmate, Lewis Prison | Could testify regarding his assault that occurred on 01/09/2018.<br><br>**Objection:  401, 403, 602, 701, 801, 901, Motion in Limine, nondisclosure.  Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since. He provided only a generalized boilerplate.  Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |

158250145

| | |
|---|---|
| _____, Johnson, Inmate, Lewis Prison | Could testify regarding his assault that occurred on 03/25/2018.<br><br>**Objection: 401, 403, 602, 701, 801, 901, Motion in Limine, nondisclosure. Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since. He provided only a generalized boilerplate. Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| _____ Lewis, Inmate, Lewis Prison | Could testify regarding his assault that occurred on 04/11/2018.<br><br>**Objection: 401, 403, 602, 701, 801, 901, Motion in Limine, nondisclosure. Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since. He provided only a generalized boilerplate. Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| _____, Olvera, Inmate, Lewis Prison | Could testify regarding his assault that occurred on 06/08/2018.<br><br>**Objection: 401, 403, 602, 701, 801, 901, Motion in Limine, nondisclosure. Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since. He provided only a generalized boilerplate. Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| _____, Ellis, Inmate, Lewis Prison | Could testify regarding his assault that occurred on 06/27/2018.<br><br>**Objection: 401, 403, 602, 701, 801, 901, Motion in Limine, nondisclosure. Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since. He provided only a generalized boilerplate. Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| _____, Mirza, Inmate, Lewis Prison | Could testify regarding his assault that occurred on 08/13/2018.<br><br>**Objection: 401, 403, 602, 701, 801, 901, Motion in Limine, nondisclosure. Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since. He provided only a generalized boilerplate. Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| _____, Bociung, Inmate, Lewis Prison | Could testify regarding his assault that occurred on 11/11/2018.<br><br>**Objection: 401, 403, 602, 701, 801, 901, Motion in Limine, nondisclosure. Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or** |

158250145

| | |
|---|---|
| | subjects of his testimony in the two-and-a-half years since. He provided only a generalized boilerplate. Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information. |
| _____, Espinoza, Inmate, Lewis Prison | Could testify regarding his assault that occurred on 12/23/2018.<br><br>**Objection: 401, 403, 602, 701, 801, 901, Motion in Limine, nondisclosure. Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since. He provided only a generalized boilerplate. Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| David Baker, Inmate, Lewis Prison | Could testify regarding his assault that occurred in 2019.<br><br>**Objection: 401, 403, 602, 701, 801, 901, Motion in Limine, nondisclosure. Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since. He provided only a generalized boilerplate. Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| Erick Mulkey, Inmate, Lewis Prison | Could testify regarding his assault that occurred in 2019.<br><br>**Objection: 401, 403, 602, 701, 801, 901, Motion in Limine, nondisclosure. Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since. He provided only a generalized boilerplate. Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| _____, Hernandez, Inmate, Lewis Prison | Could testify regarding his assault that occurred in 2019.<br><br>**Objection: 401, 403, 602, 701, 801, 901, Motion in Limine, nondisclosure. Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since. He provided only a generalized boilerplate. Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| _____, Rodriguez, Inmate, Lewis Prison | Could testify regarding his assault that occurred in 2019.<br><br>**Objection: 401, 403, 602, 701, 801, 901, Motion in Limine, nondisclosure. Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since. He provided only a generalized boilerplate. Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |

158250145

| | |
|---|---|
| _____, Thorpe | She could testify that Pitz pushed her out of a moving car on Wilmot Road in Tucson, Arizona when working the ASPC- Tucson.<br><br>**Objection: 401, 403, 404, 602, 701, 801, 901.** |
| Bradley Rakestraw, inmate at ASPC Lewis | The substance of his testimony can be found at Doc. 186-5, Ex. J. Mr. Rakestraw was attacked in his cell due to the lack of adequate staffing and doors that failed to lock; he also suffered retaliation when he asked to file a grievance about the incident.<br><br>**Objection: 401, 403, 602, 701, 801, 901, as to allegations of retaliation; stipulation re: sexual assault allegations. To the extent that Rakestraw's declaration was intended to supplement Plaintiff's disclosure, Plaintiff is limited to the contents of that disclosure.** |
| Jonathan Jarman, inmate at ASPC- Lewis | The substance of his testimony can be found at Doc. 186-5, Ex. I. He witnessed the broken cell door locks and was assaulted by inmates who opened their doors without authorization. He also suffered retaliation after attempting to file a grievance.<br><br>**Objection: 401, 403, 602, 701, 801, 901, Motion in Limine, inadequate disclosure as to scope of testimony. To the extent that Rakestraw's declaration was intended to supplement Plaintiff's disclosure, Plaintiff is limited to the contents of that disclosure. testimony/information.** |
| Carlos Garcia, Union Representative | Mr. Garcia received the video depicting the broken door locks from Sgt. Contreras and is aware of staffing issues and issues with the locks.<br><br>**Objection: 401, 403, 602, 701, 801, 901, Lack of Foundation, nondisclosure. Plaintiff never disclosed the scope of this witness's testimony, and never supplemented his written discovery responses with this witness's proposed testimony.** |
| Martin Bihn, Lawyer | Mr. Bihn represented Sergeant Gabriela Contreras. He also has Sean Holland's (who drafted the whistleblower disclosure to Gov. Ducey) contact information. He also has information related to McCormick's death due to the non-functional door locks.<br><br>**Objection: 401, 403, 602, 701, 801, 901, Lack of Foundation, Motion in Limine, nondisclosure. Plaintiff never disclosed the scope of this witness's testimony, and never supplemented his written discovery responses with this witness's proposed testimony.** |
| Wayan Cheetham, Inmate, Lewis Prison | Mr. Cheetham was an inmate at ASPC-Lewis from 2016-19 and has information relating to the non-functional door locks and conditions at ASPC-Lewis. |

158250145

| | |
|---|---|
| | **Objection: 401, 403, 602, 701, 801, 901, Motion in Limine, nondisclosure. Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since. He provided only a generalized boilerplate. Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| Alex Eschu, Inmate, Lewis Prison | Mr. Eschu was an inmate at ASPC-Lewis from 2018-19 and has information relating to the non-functional door locks and conditions at ASPC-Lewis.<br><br>**Objection: 401, 403, 602, 701, 801, 901, Motion in Limine, nondisclosure. Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since. He provided only a generalized boilerplate. Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| Sean Chavez, Inmate, Lewis Prison | Mr. Chavez was an inmate at ASPC-Lewis from 2018-19 and has information relating to the non-functional door locks and conditions at ASPC-Lewis.<br><br>**Objection: 401, 403, 602, 701, 801, 901, Motion in Limine, nondisclosure. Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since. He provided only a generalized boilerplate. Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| De La Rosa, CO II, Lewis Prison, _____ - 2019 | Mr. De La Rosa was a C/O at ASPC-Lewis through 2019 and has information relating to the non-functional door locks and conditions at ASPC-Lewis.<br><br>**Objection: 401, 403, 602, 701, 801, 901, Motion in Limine, lack of disclosure. Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since. He provided only a generalized boilerplate. Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| M. Wagner, CO II, Lewis Prison, _____ 2019 | Mr. Wagner was a C/O at ASPC-Lewis through 2019 and has information relating to the non-functional door locks and conditions at ASPC-Lewis.<br><br>**Objection: 401, 403, 602, 701, 801, 901, Motion in Limine, nondisclosure. Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since. He provided only a generalized boilerplate. Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |

158250145

| | |
|---|---|
| B. Devous, Sergeant, Lewis Prison, _____ - 2019 | Mr. Devous was a supervisor at ASPC-Lewis through 2019 and has information relating to the non-functional door locks and conditions at ASPC-Lewis. |
| | **Objection: 401, 403, 602, 701, 801, 901, Motion in Limine, nondisclosure. Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since. He provided only a generalized boilerplate. Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| G. Ravelo, C/O/II, Lewis Prison | Mr. Ravelo was a C/O at ASPC-Lewis and has information relating to the non-functional door locks and conditions at ASPC-Lewis. |
| | **Objection: 401, 403, 602, 701, 801, 901, Motion in Limine, nondisclosure. Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since. He provided only a generalized boilerplate. Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| M. Hawley, CO II, Lewis Prison | Mr. Hawley was a C/O at ASPC-Lewis and has information relating to the non-functional door locks and conditions at ASPC-Lewis. |
| | **Objection: 401, 403, 602, 701, 801, 901, Motion in Limine, nondisclosure. Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since. He provided only a generalized boilerplate. Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| M. Vega, CO II, Lewis Prison | Mr. Vega was a C/O at ASPC-Lewis and has information relating to the non-functional door locks and conditions at ASPC-Lewis. |
| | **Objection: 401, 403, 602, 701, 801, 901, Motion in Limine, nondisclosure. Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since. He provided only a generalized boilerplate. Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| _____ Meyers, CO II, Lewis Prison, _____- 2019 | Mr. Meyers was a C/O at ASPC-Lewis and has information relating to the non-functional door locks and conditions at ASPC-Lewis. |
| | **Objection: 401, 403, 602, 701, 801, 901, Motion in Limine, nondisclosure. Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or** |

| | |
|---|---|
| | subjects of his testimony in the two-and-a-half years since. He provided only a generalized boilerplate. Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information. |
| Doug Schuster, Deputy Warden, Lewis Prison, _____ - 2019 | Mr. Schuster was attacked at ASPC-Lewis, and he can speak to inadequate staffing and door locks, which created hazardous conditions for C/Os and inmates.<br><br>**Objection: 401, 403, 602, 701, 801, 901, Motion in Limine, nondisclosure. Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since. He provided only a generalized boilerplate. Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| _____ Robinson, CO III, Lewis Prison, _____ - 2019 | Robinson was a C/O at ASPC-Lewis and has information relating to the non-functional door locks and conditions at ASPC-Lewis.<br><br>**Objection: Insufficient disclosure, 401, 403 (cumulative), 602, 701, 801, 901, nondisclosure. Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since. He provided only a generalized boilerplate. Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| K. Taylor, CO II, SSU, Lewis Prison, _____ -2019 | Mr. Taylor has information related to the incident where Mr. Crago was accused of receiving a cell phone.<br><br>**Objection: Insufficient disclosure, 401, 403 (cumulative), 602, 701, 801, 901, nondisclosure. Plaintiff listed this witness in his initial disclosure statement, but never disclosed the scope or subjects of his testimony in the two-and-a-half years since. He provided only a generalized boilerplate. Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |
| L. Chavez, CO III, Lewis Prison, _____ - 2019 | Robinson was a C/O at ASPC-Lewis and has information relating to the non-functional door locks and conditions at ASPC-Lewis.<br><br>**Objection: Insufficient of disclosure (Defendants are unaware of a COIII L. Chavez), 401, 403 (cumulative), 602, 701, 801, 901, nondisclosure. Plaintiff listed a COIII Chavez and an ADW Chavez in his initial disclosure statement, but never disclosed the scope or subjects of his/her testimony in the two-and-a-half years since. He provided only a generalized boilerplate. Plaintiff never supplemented his written discovery responses with this witness' proposed testimony/information.** |

158250145

**DEFENDANTS' WITNESSES:**

1. **WILL CALL**

| Name | Anticipated Testimony |
|------|----------------------|
| Earl Crago | Mr. Crago is the plaintiff in this action and is expected to testify regarding the facts and circumstances giving rise to his complaint. He has information regarding his alleged injuries and damages. Mr. Crago also has knowledge regarding his background and prior litigation and grievances he filed.<br><br>**Objections: Plt.'s Mot. In Limine Nos. 1, 2, 3, 5, 7** |
| Joseph Pitz | Deputy Warden Pitz is a defendant in this action. He has knowledge regarding the allegations against him as set forth in Plaintiff's Third Amended Complaint. He also has knowledge about his position with ADCRR during the time frame of the allegations in Plaintiff's Complaint, and about all relevant ADCRR policies and procedures. Further, he has knowledge regarding all Town Hall meetings he attended and the accuracy of the minutes prepared for those meetings. Deputy Warden Pitz never told inmates to use violence to get other inmates to stay in their cells. He never ordered, instructed, or encouraged inmates to assault Crago or any other inmate. He never retaliated against Crago or any other inmate in any way, and he never ordered or participated in the destruction of any inmate grievances. He will deny the existence of any "Step Down" program as alleged by Plaintiff, or any other program or policy in which staff condoned inmate-on-inmate violence. Deputy Warden Pitz may also testify regarding the policies, practices, procedures, staffing, operations, facilities, and equipment of the Buckley Unit during the relevant timeframe.<br><br>**Objections: Fed. R. Evid. 401, 403, 602, 701, 801, 901; Plt.'s Mot. in Limine No. 7.** |
| Ernie Trujillo | Ernie Trujillo was the Northern Region Operations Director from October 2014 to June 2019 and is a Defendant in this lawsuit. He has information regarding the allegations against him as set forth in Plaintiff's Third Amended Complaint. He may testify regarding his knowledge of the policies, practices, procedures, staffing, operations, facilities, and equipment of the Buckley Unit during the relevant timeframe. He will deny the existence of any "Step Down" program as alleged by Plaintiff, or any other program or policy in which staff condoned inmate- on-inmate violence. He may testify regarding the purpose, operation, and implementation of the Step Down Program as set forth in Department Order 806. He may also testify regarding general population yards, protective custody yards, and the differences between the two, including the differences between Morey and Buckley.<br><br>**Objections: Fed. R. Evid. 401, 403, 602, 701, 801, 901; Plt.'s Mot. in Limine No. 7.** |

| | |
|---|---|
| Gerald Thompson | Warden Gerald Thompson was the Warden of Lewis Prison from December 2018 through May 2020 and is a Defendant in this lawsuit. He has information regarding the allegations against him as set forth in Plaintiff's Third Amended Complaint. He may testify regarding his knowledge of the policies, practices, procedures, staffing, operations, facilities, and equipment of the Buckley Unit during the relevant timeframe. He will deny the existence of any "Step Down" program as alleged by Plaintiff, or any other program or policy in which staff condoned inmate-on-inmate violence. He may also testify regarding general population yards, protective custody yards, and the differences between the two, including the differences between Morey and Buckley. He may testify regarding the inmate letter he received from Plaintiff in January 2019. He will refute allegations of Shaun Holland and Gabriela Contreras (if deemed admissible) regarding door locks being summarily closed without repairs.<br><br>**Objections: Fed. R. Evid. 401, 403, 602, 701, 801, 901; Plt.'s Mot. in Limine No. 7.** |
| Berry Larson | Ms. Larson was the Warden of Lewis Prison from July 2017 to December 28, 2018 and is a Defendant in this lawsuit. She has information regarding the allegations against her as set forth in Plaintiff's Third Amended Complaint. She may testify regarding the policies, practices, procedures, staffing, operations, facilities, and equipment of the Buckley Unit during the relevant timeframe. She will deny the existence of any "Step Down" program as alleged by Plaintiff, or any other program or policy in which staff condoned inmate-on-inmate violence. She may also testify regarding general population yards, protective custody yards, and the differences between the two.<br><br>**Objections: Fed. R. Evid. 401, 403, 602, 701, 801, 901; Plt.'s Mot. in Limine No. 7.** |
| Sgt. Kimo Taylor | Sgt. Taylor was a Special Services Unit Corrections Officer at Buckley Unit at all relevant times. He has since promoted to Sergeant. Sgt. Taylor has knowledge regarding the allegations in Plaintiff's Third Amended Complaint and the signed declarations disclosed by Plaintiff. Sgt. Taylor has information about Plaintiff's disciplinary history and activities at Buckley Unit, and the fact that he was known as a "predator" on the yard. He has knowledge regarding the May 2019 movement of inmates from Buckley Unit to ASPC-Eyman, SMU. He has knowledge that Plaintiff was moved because of his involvement in introducing contraband into the yard. Deputy Warden Pitz had no involvement in the decision to move Plaintiff from Buckley, and that decision was not related to cell doors, locks, or any complaints made by Plaintiff. Sgt. Taylor has information regarding the disciplinary history, movement, and activities of the inmates who provided declarations disclosed by Plaintiff. Sgt. Taylor never heard Deputy Warden Pitz condone inmate- on-inmate violence. He will deny the existence of any "Step Down" program as alleged by Plaintiff, or any other |

| | |
|---|---|
| | program or policy in which staff condoned inmate-on-inmate violence.<br><br>**Objections:  Fed. R. Evid. 401, 403, 404, 602, 701, 801, 901; Plt.'s Mot. in Limine Nos. 2, 3, 5, 7.** |
| Sergeant Bajraktarevic | Sergeant Bajraktarevic was an SSU Sergeant at Buckley Unit from August 2018 to April 2019.  He assisted in preparation of the SSU Memoranda titled "Buckley Unit Movement," (STATE-000416-417).  Sgt. Bajraktarevic also has information regarding the allegations in Plaintiff's Third Amended Complaint and the signed declarations disclosed by Plaintiff.  He has knowledge that Plaintiff was an inmate known to move contraband and had been subject to prior SSU investigations.  Sgt. Bajraktarevic has knowledge regarding the May 2019 movement of inmates from Buckley Unit to ASPC-Eyman, SMU.  He has specific knowledge regarding the fact that Plaintiff was moved because of his involvement in introducing contraband into the yard.  Deputy Warden Pitz had no involvement in the decision to move Plaintiff from Buckley, and the decision was not related to cell doors, locks, or any complaints made by Plaintiff.  Sgt. Bajraktarevic may also testify regarding the disciplinary history, movement, and activities of the inmates who provided declarations disclosed by Plaintiff.  Sgt. Bajraktarevic never heard Deputy Warden Pitz condone inmate-on-inmate violence.  He will deny the existence of any "Step Down" program as alleged by Plaintiff, or any other program or policy in which staff condoned inmate-on-inmate violence.<br><br>**Objections:  Fed. R. Evid. 401, 403, 404, 602, 701, 801, 901; Plt.'s Mot. in Limine Nos. 2, 3, 5, 7.** |
| Custodians of Record as needed | |

## 2.    MAY CALL

| Name | Anticipated Testimony |
|---|---|
| Caroline Haack | Ms. Haack is the Administrative Services Officer III for the Arizona Department of Corrections, Rehabilitation and Reentry.  Her job duties include gathering and compiling data on a number of different metrics, including inmate-on-inmate fights and assaults.  Ms. Haack prepared the Inmate Assault data disclosed at bates range STATE-006313-006319 and STATE-006320- 006321, and will provide foundation for the same if not otherwise stipulated to.  She also has information regarding how the reports are prepared and who they are sent to.<br><br>**Objections:  Fed. R. Evid. 401, 403, 602, 701, 801, 901; Plt.'s Mot. in Limine No. 7.** |

| | |
|---|---|
| Captain Shawn Baker | Captain Baker was the Buckley Unit Disciplinary Hearing Officer who presided over the March 13, 2019 disciplinary hearing regarding the two cellphones found in Plaintiff's incoming mail. He has information regarding the evidence presented at the hearing, his decision following the hearing, and any conversations with Deputy Warden Pitz regarding the same.<br><br>**Objections: Fed. R. Evid. 401, 403, 404, 602, 701, 801, 901; Plt.'s Mot. in Limine Nos. 2, 3, 5, 7.** |
| ADW Lindsey Chavez | At all relevant times, Lindsey Chavez was the Assistant Deputy Warden at Buckley Unit.  She has information regarding the allegations in Plaintiff's Third Amended Complaint and the signed declarations disclosed by Plaintiff.  She may testify regarding her knowledge of the policies, practices, procedures, staffing, operations, facilities, and equipment of the Buckley Unit during the relevant timeframe.  She will deny the existence of any "Step Down" program as alleged by Plaintiff, or any other program or policy in which staff condoned inmate-on-inmate violence.  ADW Chavez was present at the November 30, 2018 Town Hall meeting, and has knowledge regarding what was said at that meeting and the accuracy of the minutes disclosed as STATE-000086-87.  She never heard Deputy Warden Pitz condone inmate-on-inmate violence. She may also testify about her knowledge of Plaintiff's declarants.<br><br>**Objections:  Fed. R. Evid. 401, 403, 404, 602, 701, 801, 901; Plt.'s Mot. in Limine Nos. 5 & 7.** |
| COIV Rene Chavez | Officer Chavez was the grievance coordinator at Buckley Unit from September 2018 to January 2019.  He has information regarding the allegations in Plaintiff's Third Amended Complaint and the signed declarations disclosed by Plaintiff.  He has knowledge regarding the grievance process at Buckley Unit, his duties as grievance coordinator, and the lack of any grievances filed by Plaintiff between September 2018 and January 2019.  COIV Chavez does not recall seeing any grievances related to cell doors or locks.  He never saw any grievances from Plaintiff related to DW Pitz.  He has knowledge of the fact that inmates, including inmate porters, did not have access to submitted grievances and would have had no ability to shred or otherwise improperly destroy them.  COIV Chavez never heard of any person shredding or improperly destroying grievances, or being instructed to do so.  COIV Chavez never heard Deputy Warden Pitz condone inmate-on-inmate violence.<br><br>**Objections:  Fed. R. Evid. 401, 403, 404, 602, 701, 801, 901; Plt.'s Mot. in Limine Nos. 5 & 7.** |
| ADW Jody Swayne | Associate Deputy Warden Swayne (formerly COIV Swayne) was the grievance coordinator at Buckley Unit from January through May 2019.  She has knowledge regarding the allegations in Plaintiff's Third Amended Complaint and the signed declarations disclosed by Plaintiff.  She has knowledge regarding Plaintiff's involvement in illicit activities in the yard, as well as the activities of other inmates who provided grievances.  She has information |

-98-

158250145

| | | |
|---|---|---|
| | | regarding the grievance process at Buckley Unit, her duties as grievance coordinator, and the lack of any grievances filed by Plaintiff between January and May 2019.  She has knowledge that inmates, including inmate porters, did not have access to submitted grievances and not have been able ability to shred or otherwise improperly destroy grievances.  COIV Swayne never heard of any person shredding or improperly destroying grievances, or being instructed to do so.  COIV Swayne never heard Deputy Warden Pitz condone inmate-on-inmate violence.  She has knowledge that Buckley Unit has no record of the alleged assaults on Plaintiff, or the alleged complaints and/or grievances filed by Plaintiff.<br><br>**Objections:  Fed. R. Evid. 401, 403, 404, 602, 701, 801, 901; Plt.'s Mot. in Limine Nos. 2, 3, 5, 7.** |
| | COII Michael Halderman | COII Halderman is the lead key control/locksmith/door tech for Lewis Prison.  He is a certified facility locksmith and has taken additional coursework related to detention facilities.  He will dispute any allegations by Shaun Holland (if deemed admissible) that work orders were "closed out" without repairs.  COII Halderman became the lead locksmith for Lewis around late 2015 and began working directly with the door repair crew at this time.  COII Halderman has information regarding the locking system and the process by which work orders for the doors and/or locks were entered and processed.  He has information regarding his observations of the doors and/or locks when he personally resolved work orders.  He has knowledge regarding steps taken by ADCRR administration regarding the door locks.<br><br>**Objections:  Fed. R. Evid. 401, 403, 404, 602, 701, 801, 901; Plt.'s Mot. in Limine No. 7.** |
| | Sgt. Lance Uehling | Sgt. Uehling will rebut Plaintiff's allegations (disclosed for the first time at summary judgment, and if deemed relevant and admissible) that DW Pitz added an STG tag to Plaintiff in retaliation for his protected conduct.<br><br>Specifically, he has information that Plaintiff was tagged as an STG *suspect* by Pat Penowski in 2003.  He has knowledge that a Deputy Warden (including Deputy Warden Pitz) would not have the ability to "tag" an inmate as an STG suspect. |
| | Sgt. Jeffrey Muessig | Sgt. Muessig is the Chief of Security at ASPC-Lewis.  He was present for the fight the May 2, 2019 fight involving Inmate Bodine at Buckley Unit.  He has information regarding the accuracy of the allegations in Inmate Bodine's declaration regarding the same.  Specifically, he has knowledge that Bodine was not handcuffed at the time of the fight, and that Deputy Warden Pitz was not present.<br><br>**Objections:  Fed. R. Evid. 401, 403, 404, 602, 701, 801, 901; Plt.'s Mot. in Limine No. 7.** |
| | Travis Scott | Deputy Warden Travis Scott was the Deputy Warden of Morey Unit between January and July 2019.  He has knowledge regarding the accuracy of the information provided by Sgt. Gabriela Contreras |

158250145

| | | |
|---|---|---|
| | | and Lt. Mark Hasz to Justices Berch and McGregor regarding supposed inmate-on-inmate discipline at the Morey Unit.<br><br>**Objections: Fed. R. Evid. 401, 403, 404, 602, 701, 801, 901; Plt.'s Mot. in Limine No. 7.** |
| Luis Matos | | Mr. Matos worked for the Arizona Department of Corrections, Rehabilitation and Reentry from 2000 until his retirement in September 2021. He returned to work for the Department in October 2021, and currently serves as Regional Equipment Manager for Fleet Management. He has information regarding his interview with Justices Berch and McGregor. He also has information regarding the accuracy of the information provided by Sgt. Gabriela Contreras and Lt. Mark Hasz to the Justices regarding supposed inmate-on-inmate discipline at the Morey Unit.<br><br>**Objections: Fed. R. Evid. 401, 403, 404, 602, 701, 801, 901; Plt.'s Mot. in Limine No. 7.** |
| Officer Gene Coca | | COIV Coca is the grievance coordinator at ASPC-Safford-Tonto Unit. He has information regarding the availability of the grievance process while Plaintiff resided there. He also has information regarding any and all grievances filed by Plaintiff at the Safford/Tonto Unit. He has knowledge that Plaintiff received discipline for false reporting regarding his legal property box, and subsequently sued Officer Coca for retaliation.<br><br>**Objections: Fed. R. Evid. 401, 403, 404, 602, 701, 801, 901; Plt.'s Mot. in Limine Nos. 3, 7.** |
| Officer Rene Chavez | | Availability of grievance process, claims of inmate porters shredding grievances, reviewed 2/12/19 disciplinary report for bringing contraband onto yard<br><br>**Objections: Fed. R. Evid. 401, 403, 404, 602, 701, 801, 901; Plt.'s Mot. in Limine Nos. 3, 7.** |
| Charles Ryan | | Charles Ryan is the former Director for the Arizona Department of Corrections, Rehabilitation, and Reentry and is a Defendant in this action. He has information regarding the allegations against him as set forth in Plaintiff's Third Amended Complaint. He will deny the existence of any "Step Down" program as alleged by Plaintiff, or any other program or policy in which staff condoned inmate-on-inmate violence. He may testify regarding his knowledge of the policies, practices, procedures, staffing, operations, facilities, and equipment of the Buckley Unit during the relevant timeframe. He will testify regarding his personal knowledge of the Russett v. Ryan lawsuit.<br><br>**Objections: Fed. R. Evid. 401, 403, 404, 602, 701, 801, 901; Plt.'s Mot. in Limine No. 7.** |
| Investigator John Armstrong | | Investigator Armstrong may testify regarding his investigation into the assault on inmate Bradley Rakestraw at the Buckley Unit in September 2018. |

158250145

| | |
|---|---|
| | **Objections: Fed. R. Evid. 401, 403, 404, 602, 701, 801, 901; Plt.'s Mot. in Limine Nos. 3, 7.** |
| Erik Sampson | Erik Sampson may testify as to the alleged assault on Plaintiff, including his motivation for the same. <br><br> **Objections: Fed. R. Evid. 401, 403, 404, 602, 701, 801, 901; Plt.'s Mot. in Limine Nos. 3, 7.** |
| Kelvin Barnett | Kevlin Barnett may testify as to the alleged assault on Plaintiff, including his motivation for the same. <br><br> **Objections: Fed. R. Evid. 401, 403, 404, 602, 701, 801, 901; Plt.'s Mot. in Limine Nos. 3, 7.** |
| Steven Antrobus, ADC # 064479 | Inmate Antrobus provided a signed declaration in this matter. He has information regarding the content of that declaration. He has information regarding his background, the preparation of the declaration, any communication he had with any person regarding the declaration or this lawsuit, and any monetary or other incentive he received in exchange for providing the declaration. He has information regarding his agreement with Plaintiff in which he and his wife will receive 10% of any proceeds from this lawsuit in exchange for their cooperation and assistance. <br><br> **Objections: Fed. R. Evid. 401, 403, 404, 602, 701, 801, 901; Plt.'s Mot. in Limine Nos. 2, 3, 5 & 7.** |

### 3.      UNLIKELY TO CALL

| Name | Anticipated Testimony |
|---|---|
| Carson McWilliams | Carson McWilliams was the Division Director of Prison Operations from 2014-2019. He may testify regarding his knowledge of the policies, practices, procedures, staffing, operations, facilities, and equipment of the Buckley Unit during the relevant timeframe. He will deny the existence of any "Step Down" program as alleged by Plaintiff, or any other program or policy in which staff condoned inmate-on-inmate violence. <br><br> **Objections: Fed. R. Evid. 401, 403, 404, 602, 701, 801, 901; Plt.'s Mot. in Limine No. 7.** |
| Randy Standridge | Major Standridge was Chief of Security at Lewis Prison from December 2016 to March 2019. He may testify regarding his knowledge of the policies, practices, procedures, staffing, operations, facilities, and equipment of the Buckley Unit during the relevant timeframe. He will deny the existence of any "Step Down" program as alleged by Plaintiff, or any other program or policy in which staff condoned inmate-on-inmate violence. <br><br> **Objections: Fed. R. Evid. 401, 403, 404, 602, 701, 801, 901; Plt.'s Mot. in Limine No. 7.** |
| Daniel Walker | Major Walker was the Chief of Security at Lewis Prison from |

158250145

| | | |
|---|---|---|
| | | March 2019 through January 2020.  He may testify regarding his knowledge of the policies, practices, procedures, staffing, operations, facilities, and equipment of the Buckley Unit during the relevant timeframe.  He will deny the existence of any "Step Down" program as alleged by Plaintiff, or any other program or policy in which staff condoned inmate-on-inmate violence.<br><br>**Objections:  Fed. R. Evid. 401, 403, 404, 602, 701, 801, 901; Plt.'s Mot.  in Limine No. 7.** |
| | April Townsend | At all relevant times, Ms. Townsend was the administrative assistant at Buckley Unit.  She has information regarding the allegations in Plaintiff's Second Amended Complaint and the signed declarations disclosed by Plaintiff.  She regularly attended and prepared the minutes for Town Hall meetings.  Ms. Townsend never heard Deputy Warden Pitz condone inmate-on- inmate violence.  She has knowledge that inmates, including inmate porters, would not have had access to submitted grievances.<br><br>**Objections:  Fed. R. Evid. 401, 403, 404, 602, 701, 801, 901; Plt.'s Mot.  in Limine Nos. 5 & 7.** |
| | COIV Christopher Mansfield | COIV Mansfield is the grievance coordinator at ASPC-Eyman, SMU-I.  He has information regarding the availability of the grievance process while Plaintiff resided there.  He also has information regarding any and all grievances filed by Plaintiff at SMU-I.<br><br>**Objections:  Fed. R. Evid. 401, 403, 404, 602, 701, 801, 901; Plt.'s Mot.  in Limine No. 7.** |
| | Steven Heindell | Mr. Heindell has information regarding his background and relationship with Plaintiff.  He has information regarding any and all assistance he provided in the preparation or prosecution of this lawsuit.  He has information regarding any money or other consideration he received or was promised in exchange for his assistance in this litigation, as well as any money or other consideration he provided to Plaintiff or any other person, including the declarants, related to this lawsuit.  He also has information regarding any and all communication he prepared, sent, or received related to this litigation, Lewis Prison, Buckley Unit, or DW Pitz.<br><br>**Objections:  Fed. R. Evid. 401, 403, 404, 602, 701, 801, 901; Plt.'s Mot.  in Limine Nos. 5 & 7.** |
| | Kim Gustavson (a.k.a Kirst) | Ms. Gustavson is married to Steven Antrobus.  Ms. Gustavson has information regarding any and all assistance she provided in the preparation or prosecution of this lawsuit.  She has knowledge regarding any money or other consideration she received or was promised in exchange for her assistance in this litigation, as well as any money or other consideration she provided to Plaintiff or any other person, including the declarants, related to this lawsuit.  She also information has regarding her knowledge of the agreement between Plaintiff and Steven Antrobus in which she and Antrobus will receive 10% of any verdict or settlement.  She has information |

| | |
|---|---|
| | regarding any and all communication she prepared, sent, or received related to this litigation, Lewis Prison, Buckley Unit, or DW Pitz.<br><br>**Objections:  Fed. R. Evid. 401, 403, 404, 602, 701, 801, 901; Plt.'s Mot.  in Limine Nos. 4, 5 & 7.** |
| Arturo Flores, ADC # 270776 | Inmate Flores provided a signed declaration in this matter.  He has information regarding the content of that declaration.   He has information regarding his background, the preparation of the declaration, any communication he had with any person regarding the declaration or this lawsuit, and any monetary or other incentive he received in exchange for providing the declaration.<br><br>**Objections: Fed. R. Evid. 401, 403, 404, 602, 701, 801, 901; Plt.'s Mot. in Limine Nos. 2, 3, 5 & 7.** |
| Hector Ruiz, ADC # 198345 | Inmate Ruiz provided a signed declaration in this matter.  He has knowledge regarding the content of that declaration.   He has information regarding his background, the preparation of the declaration, any communication he had with any person regarding the declaration or this lawsuit, and any monetary or other incentive he received in exchange for providing the declaration.<br><br>**Objections:  Fed. R. Evid. 401, 403, 404, 602, 701, 801, 901; Plt.'s Mot. in Limine Nos. 2, 3, 5 & 7.** |
| Angel Laborin Torres, ADC #213200 | Inmate Torres provided a signed declaration in this matter.  He has information regarding the content of that declaration.   He has knowledge regarding his background, the preparation of the declaration, any communication he had with any person regarding the declaration or this lawsuit, and any monetary or other incentive he received in exchange for providing the declaration.<br><br>**Objections:  Fed. R. Evid. 401, 403, 404, 602, 701, 801, 901; Plt.'s Mot.  in Limine Nos. 2, 3, 5 & 7.** |
| Ernesto Lopez, ADC #128452 | Inmate Lopez provided a signed declaration in this matter.  He has information regarding the content of that declaration.   He has knowledge regarding his background, the preparation of the declaration, any communication he had with any person regarding the declaration or this lawsuit, and any monetary or other incentive he received in exchange for providing the declaration.<br><br>**Objections:  Fed. R. Evid. 401, 403, 404, 602, 701, 801, 901; Plt.'s Mot.  in Limine Nos. 2, 3, 5 & 7.** |
| Levi Bodine, ADC #127410 | Inmate Bodine provided a signed declaration in this matter.  He has information regarding the content of that declaration.   He has knowledge regarding his background, the preparation of the declaration, any communication he had with any person regarding the declaration or this lawsuit, and any monetary or other incentive he received in exchange for providing the declaration.<br><br>**Objections:  Fed. R. Evid. 401, 403, 404, 602, 701, 801, 901; Plt.'s Mot.  in Limine Nos. 2, 3, 5 & 7.** |

158250145

| | |
|---|---|
| Andrew Mcallister, ADC #229815 | Inmate McAllister provided a signed declaration in this matter.  He has knowledge regarding the content of that declaration.  He has information regarding his background, the preparation of the declaration, any communication he had with any person regarding the declaration or this lawsuit, and any monetary or other incentive he received in exchange for providing the declaration.<br><br>**Objections: Fed. R. Evid. 401, 403, 404, 602, 701, 801, 901; Plt.'s Mot. in Limine Nos. 2, 3, 5 & 7.** |
| Luis Parrado, ADC #221073 | Inmate Parrado provided a signed declaration in this matter.  He has information regarding the content of that declaration.   He has knowledge regarding his background, the preparation of the declaration, any communication he had with any person regarding the declaration or this lawsuit, and any monetary or other incentive he received in exchange for providing the declaration.<br><br>**Objections: Fed. R. Evid. 401, 403, 404, 602, 701, 801, 901; Plt.'s Mot. in Limine Nos. 2, 3, 5 & 7.** |
| Bradley Rakestraw, ADC #166987 | Inmate Rakestraw provided a signed declaration in this matter.  He has information regarding the content of that declaration.  He has knowledge regarding his background, the preparation of the declaration, any communication he had with any person regarding the declaration or this lawsuit, and any monetary or other incentive he received in exchange for providing the declaration.<br><br>**Objections:  Fed. R. Evid. 401, 403, 404, 602, 701, 801, 901; Plt.'s Mot. in Limine Nos. 2, 3, 5 & 7.** |
| Jonathan Jarman, ADC #156645 | Inmate Jarman provided a signed declaration in this matter.  He has information regarding the content of that declaration.   He has knowledge regarding his background, the preparation of the declaration, any communication he had with any person regarding the declaration or this lawsuit, and any monetary or other incentive he received in exchange for providing the declaration.<br><br>**Objections: Fed. R. Evid. 401, 403, 404, 602, 701, 801, 901; Plt.'s Mot. in Limine Nos. 2, 3, 5 & 7.** |
| Rebecca Farrell | Ms. Farrell is a Medical Records Supervisor at ASPC Stafford and an authorized Record Custodian for Centurion (contracted healthcare service provider for ADCRR).  She provided the Custodian of Record declaration pertaining to medical records received for Plaintiff as maintained in Centurion's ordinary course of business.  She has information regarding the inmate medical records produced to Defendants regarding Plaintiff Earl Crago as identified in her Declaration.   She has knowledge that ADCRR/Centurion has no record of Plaintiff seeking medical treatment between January 1, 2019 and May 1, 2019.<br><br>**Objections:  Fed. R. Evid. 401, 403, 602, 701, 801, 901; Plt.'s Mot. in Limine No. 7.** |
| Emily Gant, LPN | Ms. Gant was a Licensed Practical Nurse assigned to ASPC |

| | Eyman-SMU I East medical clinic during the relevant time period. Ms. Gant has knowledge and information related to the inmate Transfer/Receiving Health Services Encounter she conducted with Plaintiff dated May 5, 2019 upon Plaintiff's transfer from Lewis Complex to the SMU.  Specifically, LPN Gant has knowledge that when Plaintiff arrived at SMU, he did not raise any complaints regarding an assault or related injuries.<br><br>**Objections:   Fed. R. Evid. 401, 403, 602, 701, 801, 901; Plt.'s Mot.  in Limine No. 7.** |
|---|---|

### E   EXPERTS

Plaintiffs intend to call a physician expert, to be identified in supplemental filings, who holds a medical degree and holds a license to provide medical care and will opine on Plaintiff's physical health and damages following the events described in the Complaint.

Plaintiffs intend to call an expert in psychiatric medicine and/or psychology, to be identified in supplemental filings, who holds a relevant degree and is licensed to provide such care and/or testing and will opine on Plaintiff's mental health and damages following the events described in the Complaint.

Defendants will not call any expert witnesses.  Defendants oppose Plaintiff's attempt to call any undisclosed as experts as untimely and in noncompliance with the deadlines of disclosures in the Court's Scheduling Order.

Plaintiff never sought leave of court to amend the Scheduling Order and allow time for the addition of experts.  *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (explaining Rule 16(b)(4) permits a modification of scheduling only upon a showing of good cause by the party seeking amendment).  The good cause requirement focuses on the diligence of the parity seeing the extension.  *Id.* citing Fed. R. Civ. P. 16, Advisory Comm.  Notes (1983 Am.) ("[T]he the court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension.")  Here, counsel for Plaintiff was appointed on January 13, 2022 (Doc. 206) and counsel filed their Notice of Appearance on January 26, 2022 (Doc. 207).

1  Yet even now, with the filing of the Final Pretrial Order and trial less than 90 days away,

2  Plaintiff still has not moved to amend the Scheduling Order.

3  Any expert witness and testimony should be precluded pursuant to Fed. R. Civ. P.

4  Rule 37(c)(1), as such late disclosure of their testimony prejudices the Defendants in the

5  defense of this case.  Rule 37(c)(1) prohibits the use of an undisclosed witness at trial.

6  Plaintiff "bears the burden of proving that [his] failure to disclose the required information

7  was substantially justified or is harmless." *R&R Sails, Inc. v. Ins.  Co. of Penn.*, 673 F.3d

8  1240, 1246 (9th Cir. 2012).  Plaintiff cannot meet this burden here as discovery is closed

9  and the costs and delay caused by new experts would unduly prejudice Defendants.  *See*

10  *Ollier v. Sweetwater Union High Sch.  Dist.*, 768 F.3d 843, 862-64 (9th Cir. 2014)

11  (affirming district court's exclusion of witnesses based on late disclosure eight months

12  before trial because "[t]he late disclosure of witnesses throws a wrench into the machinery

13  of trial.  A party might be able to scramble to make up for the delay, but last-minute

14  discovery may disrupt other plans.  And if the discovery cutoff has passed, the party cannot

15  conduct discovery without a court order permitting extension.  This in turn threatens

16  whether a scheduled trial date is viable.  And it impairs the ability of every trial court to

17  manage its docket.").

18  **F      EXHIBITS**

19  <u>PLAINTIFF'S TRIAL EXHIBIT LIST</u>

20  (Full Proposed List)

21  *Exhibits stipulated admissible or admissible pending redaction

22  On June 21, 2022, the parties met and conferred regarding the list of exhibits.

23

24

25

26

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| 1 | 10/29/18 video of Garza (COII) and Avilo (COII) being assaulted at 21:37 hours in the Buckley unit. (STATE006326.) | 401, 403, 602, 801, 901, lack of foundation, Motion in Limine<br><br>**P's Response:  Plaintiff will lay the foundation for this exhibit with the relevant witness(es).  Plaintiff should be entitled to present evidence demonstrating that Defendants had knowledge of the risks resulting from conditions at Lewis and that they were obvious, and its use will not create prejudice, cause undue delay, or confuse the issues.  Evidence of such conditions prior to Plaintiff's assaults demonstrate that Defendants' knowledge predated Plaintiff's assaults and provided an opportunity to abate such risk.  Plaintiff will separately respond to the MIL.** |
| 2 | 6/20/19 KGUN9 News video of Shaun Holland. | Hearsay, lack of foundation, copy of video never disclosed, 401, 403, 602, 801, 901, Motion in Limine<br><br>To the extent Plaintiff intends to introduce this under Fed. R. Evid 801(d)(2): the declarant is not a party, insufficient disclosure<br><br>**P's Response:  Plaintiff will lay the foundation for this exhibit with the relevant witness(es).  This disclosure corroborates Plaintiff's position that Defendant's had knowledge of the risks resulting from conditions at ASPC Lewis and that they were obvious, and its use will not create prejudice, cause undue delay, or confuse the issues.  This interview is not hearsay because declarant made this statement while he was the party's agent or employee on a matter within the scope of that relationship and while the relationship existed (Fed. R. Evid. 801(d)(2)(D)).  This disclosure has been publicly available since June 20, 2019 and was listed by Plaintiff in his disclosures.  Plaintiff will separately respond to the MIL.** |

158250145

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| 3 | 5/21/19 ABC 15 News interview of Gabriella Contreras. | Hearsay, lack of foundation, copy of video never disclosed, 401, 403, 602, 801, 901, Motion in Limine<br><br>To the extent Plaintiff intends to introduce this under Fed. R. Evid 801(d)(2): the declarant is not a party, insufficient disclosure<br><br>**P's Response:  Plaintiff will lay the foundation for this exhibit with the relevant witness(es). This disclosure corroborates Plaintiff's position that Defendant's had knowledge of the risks resulting from conditions at ASPC Lewis and that they were obvious, and its use will not create prejudice, cause undue delay, or confuse the issues.  The interview is not hearsay because the declarant made this statement while she was the party's agent or employee on a matter within the scope of that relationship and while the relationship existed (Fed. R. Evid. 801(d)(2)(D)), or it falls under a hearsay exception because the declarant is unavailable and it is a statement against the declarant's interest (Fed. R. Evid. 804(b)(3)). Further, this video has been publicly available since May 21, 2019 and was listed by Plaintiff on his disclosures.   Plaintiff will separately respond to the MIL** |
| 4 | 6/6/18 video of Andrew McCormick's murder. (STATE006324.) | 401, 403, 602, 801, 901, lack of foundation, Motion in Limine, pejorative term regarding title of exhibit<br><br>**P's Response:  Plaintiff will lay the foundation for this exhibit with the relevant witness(es). Plaintiff should be entitled to present evidence demonstrating that Defendants had knowledge of the risks resulting from conditions at ASPC Lewis and that they were obvious.  Evidence of such conditions prior to Plaintiff's assaults demonstrate that Defendants' knowledge pre-dated Plaintiff's assaults and provided an opportunity to abate such risk, and its use will not create prejudice, cause undue delay, or confuse the issues. Plaintiff will separately respond to the MIL.** |

158250145

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| 5 | Gabriella Contreras' 5/15/19 whistleblowing disclosure. (CRAGO000891-93.) | Hearsay, 401, 403, 602, 801, 901, lack of foundation, Motion in Limine, pejorative term regarding title of exhibit |
| | | To the extent Plaintiff intends to introduce this under Fed. R. Evid 801(d)(2): the declarant is not a party, insufficient disclosure |
| | | **P's Response:  Plaintiff will lay the foundation for this exhibit with the relevant witness(es).  This disclosure corroborates Plaintiff's position that Defendant's had knowledge of the risks resulting from conditions at ASPC Lewis and that they were obvious, and its use will not create prejudice, cause undue delay, or confuse the issues.  The letter is not hearsay because the declarant made this statement while she was the party's agent or employee on a matter within the scope of that relationship and while the relationship existed (Fed. R. Evid. 801(d)(2)(D)), or it falls under a hearsay exception because the declarant is unavailable and it is a statement against the declarant's interest (Fed. R. Evid. 804(b)(3)).  This disclosure has been publicly available since May 15, 2019.  Plaintiff will separately respond to the MIL.** |
| 6 | Shaun Holland 12/2/19 whistleblowing disclosure. (CRAGO000894-96.) | Hearsay, 401, 403, lack of foundation, Motion in Limine, 602, 801, 901 pejorative term regarding title of exhibit |
| | | To the extent Plaintiff intends to introduce this under Fed. R. Evid 801(d)(2): the declarant is not a party, insufficient disclosure, and lack of disclosure in response to written discovery requesting 801(d)(2) admissions. |
| | | **P's Response:  Plaintiff will lay the foundation for this exhibit with the relevant witness(es).  This disclosure corroborates Plaintiff's position that Defendant's had knowledge of the risks resulting from conditions at ASPC Lewis and that they were obvious, and its use will not create prejudice, cause undue delay, or confuse the issues.  The letter is not hearsay because the declarant made this statement while he was the party's agent or employee on** |

158250145

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| | | **a matter within the scope of that relationship and while the relationship existed (Fed. R. Evid. 801(d)(2)(D)). Further, this exhibit falls within one or more hearsay exceptions (to be further discussed in the MIL briefing), is not hearsay because the declarant made the statement while he/she was the party's agent or employee on a matter within the scope of that relationship and while the relationship existed (Fed. R. Evid. 801(d)(2)(D)), or in the case of an unavailable witness was a statement against his/her interest (Fed. R. Evid. 804(b)(3)). This exhibit tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues. This disclosure has been publicly available since May 15, 2019. Plaintiff will separately respond to the MIL.** |
| 7 | Warden/COII 8/30/17 meeting minutes. (STATE-002097-2102.) | Lack of foundation, 401, 403, 602, 801, 901<br><br>**P's Response:   Defendants have themselves proposed this exhibit.  Plaintiff will stipulate to its use.  Plaintiff will lay the foundation for this exhibit with the relevant witness(es).   This disclosure corroborates Plaintiff's position that Defendant's had knowledge of the risks resulting from conditions at ASPC Lewis and that they were obvious, and its use will not create prejudice, cause undue delay, or confuse the issues. The letter is not hearsay because the declarant made this statement while he was the party's agent or employee on a matter within the scope of that relationship and while the relationship existed (Fed. R. Evid. 801(d)(2)(D)). Further, this exhibit falls within one or more hearsay exceptions (to be further discussed in the MIL briefing), is not hearsay because the declarant made the statement while he/she was the party's agent or employee on a matter within the scope of that relationship and while the relationship existed (Fed. R. Evid. 801(d)(2)(D)), or in the case of an unavailable witness was a statement against his/her interest (Fed. R. Evid. 804(b)(3)). This exhibit tends to corroborate Plaintiff's allegations,  and  its  use  will  not  create** |

158250145

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| | | prejudice, cause undue delay, or confuse the issues. |
| 8 | Buckley Unit Use of Force/Incident Command reports between December 2017 and May 2019 (100 reports). (STATE-006463-6471.) | Hearsay, lack of foundation, incomplete, does not comply with Rule 1006, 401, 403, 602, 801, 901<br><br>Duplicative of Plaintiff's Exhibit 14<br><br>**P's Response:  Plaintiff will lay the foundation for this exhibit with the relevant witness(es). This exhibit falls within a hearsay exception because it is a public record and/or business record (Fed. R. Evid. 803(6) & (8)), is not hearsay because the declarant made the statement while he/she was the party's agent or employee on a matter within the scope of that relationship and while the relationship existed (Fed. R. Evid. 801(d)(2)(D)), or in the case of an unavailable witness was a statement against his/her interest (Fed. R. Evid. 804(b)(3)).  This exhibit tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.  Plaintiff will provide a 1006 summary in advance of trial.   This exhibit is being offered in case Defendants object to Exhibit 14 in its entirety.** |
| 9 | 703 memos from Deputy Warden to Warden at Buckley from September 2017 to April 2019. (STATE-003421-3569.) | Lack of foundation, 401, 403, 602, 801, 901, hearsay<br><br>**P's Response:  Plaintiff will lay the foundation for this exhibit with the relevant witness(es). This exhibit falls within a hearsay exception because it is a public record and/or business record (Fed. R. Evid. 803(6) & (8)), is not hearsay because the declarant made the statement while he/she was the party's agent or employee on a matter within the scope of that relationship and while the relationship existed (Fed. R. Evid. 801(d)(2)(D)), or in the case of an unavailable witness was a statement against his/her interest (Fed. R. Evid. 804(b)(3)).  This exhibit tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.   This exhibit corroborates Plaintiff's position that Defendants had knowledge of the** |

158250145

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| | | risks resulting from conditions at ASPC Lewis and that they were obvious, and its use will not create prejudice, cause undue delay, or confuse the issues. |
| 10 | Buckley Town Hall meeting minutes. (STATE-000086-90.) | No objection.<br><br>**P's Response:  Defendants have themselves proposed this exhibit (as 312-313).  Plaintiff will stipulate to its use.** |
| 11 | Buckley staff schedules from December 2018- April 2019. (STATE-000609-1109, 1357-1492.) | Staff schedules for January 9, February 1, April 5, AM shift:  No objection<br><br>Any other staff schedules:   401, 403, 602, 801, 901, Motion in Limine<br><br>**P's Response:   This exhibit falls within a hearsay exception because it is a public record and/or business record (Fed. R. Evid. 803(6) & (8)), is not hearsay because the declarant made the statement while he/she was the party's agent or employee on a matter within the scope of that relationship and while the relationship existed (Fed. R. Evid. 801(d)(2)(D)), or in the case of an unavailable witness was a statement against his/her interest (Fed. R. Evid. 804(b)(3)).  This exhibit tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.  This exhibit corroborates Plaintiff's position that Defendants had knowledge of the risks resulting from conditions at ASPC Lewis and that they were obvious, and its use will not create prejudice, cause undue delay, or confuse the issues. Plaintiff will separately respond to the MIL.** |
| 12 | 703 security device inspection work orders for doors at Buckley between 2018 and April 2019. (STATE-003570- 3799.) | Reports for the weeks of January 4, January 11, February 1, and April 5:  lack of foundation, hearsay, 401, 403, 602, 801, 901<br><br>Other reports:  Lack of foundation, 401, 403, hearsay, 602, 801, 901<br><br>**P's Response:  Plaintiff will lay foundation with the relevant witness(es).  This exhibit falls within a hearsay exception because it is a** |

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| | | public record and/or business record (Fed. R. Evid. 803(6) & (8)), is not hearsay because the declarant made the statement while he/she was the party's agent or employee on a matter within the scope of that relationship and while the relationship existed (Fed. R. Evid. 801(d)(2)(D)), or in the case of an unavailable witness was a statement against his/her interest (Fed. R. Evid. 804(b)(3)). This exhibit tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.   This exhibit corroborates Plaintiff's position that Defendant's had knowledge of the risks resulting from conditions at ASPC Lewis and that they were obvious, and its use will not create prejudice, cause undue delay, or confuse the issues. |
| 13 | Report to the Governor: The Effectiveness of Locks at Lewis Prison. August 12, 2019.  Doc. 53-1. (CRAGO000011- 63.) | Hearsay, lack of foundation, 401, 403, 602, 801, 901, Motion in Limine.<br><br>**Response:  Exempted under Rule 801.  This exhibit also falls within several hearsay exceptions (e.g., public record), to be discussed further in the Motion in Limine briefing. Plaintiff will lay the foundation for this exhibit with Rebecca White Berch and other relevant witness(es) if necessary.   This exhibit corroborates Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.** |
| 14 | Notes of interviews with ADCRR administrators by Justices Berch and McGregor. (STATE- 006335-006494.) | Hearsay within hearsay, 401, 403, 602, 801, 901, Motion in Limine.<br><br>**P's Response:  Defendants have themselves proposed this exhibit (as 425).  Plaintiff will stipulate to its use, depending on the Court's ruling on the Defendants' MIL.**<br><br>**Exempted under Rule 801.  Further, this exhibit falls within one or more hearsay exceptions (to be further discussed in the MIL briefing), is not hearsay because the declarant made the statement while he/she was the party's agent or employee on a matter within the scope of that relationship and while the** |

158250145

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| | | relationship existed (Fed. R. Evid. 801(d)(2)(D)), or in the case of an unavailable witness was a statement against his/her interest (Fed. R. Evid. 804(b)(3)). This exhibit tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues. |
| 15 | Inmate assaults and fights (FY 2013-2019) for each unit in ADCRR. (STATE-006313- 006319.) | Lack of foundation, 401, 403 602, 801, 901, hearsay<br><br>**P's Response: Plaintiff will lay a foundation with the relevant witness(es). This exhibit falls within a hearsay exception because it is a public record and/or business record (Fed. R. Evid. 803(6) & (8)), is not hearsay because the declarant made the statement while he/she was the party's agent or employee on a matter within the scope of that relationship and while the relationship existed (Fed. R. Evid. 801(d)(2)(D)), or in the case of an unavailable witness was a statement against his/her interest (Fed. R. Evid. 804(b)(3)). This exhibit tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.** |
| 16 | ACA Standards: Adult Correctional Institution, 5th ed. | Hearsay, lack of foundation, 401, 403, not timely disclosed, failure to identify in response to written discovery, 602, 801, 901, See Motion in Limine<br><br>**P's Response: Plaintiff will lay foundation with the relevant witness(es). This exhibit falls under the hearsay exception because it is a treatise or pamphlet subject to judicial notice. This exhibit tends to show industry standards for correctional facilities and tends to corroborate Plaintiff's allegations regarding the inadequate staffing levels at ASPC Lewis, and its use will not create prejudice, cause undue delay, or confuse the issues. This document became available in March 2021 (after the close of discovery) and, given the time between now and trial, Defendants will suffer no undue prejudice by its inclusion.** |

158250145

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| 17 | Inmate record for Luis Parrado. (STATE-000486-510.) | Lack of foundation, 401, 403, 602, 801, 901, hearsay<br><br>**P's Response:  Plaintiff will lay a foundation with the relevant witness(es).  This exhibit falls within a hearsay exception because it is a public record and/or business record (Fed. R. Evid. 803(6) & (8)), is not hearsay because the declarant made the statement while he/she was the party's agent or employee on a matter within the scope of that relationship and while the relationship existed (Fed. R. Evid. 801(d)(2)(D)), or in the case of an unavailable witness was a statement against his/her interest (Fed. R. Evid. 804(b)(3)). This exhibit tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.** |
| 18 | Memorandum from Taylor to Trujillo stating Luis Parrado was taken out of Buckley Unit on 5/8/19. (STATE- 000591.) | Hearsay, lack of foundation, 401, 403, 602, 801, 901<br><br>**P's Response:  Plaintiff will lay foundation with the relevant witness(es).  This exhibit falls within a hearsay exception because it is a public record and/or business record (Fed. R. Evid. 803(6) & (8)), is not hearsay because the declarant made the statement while he/she was the party's agent or employee on a matter within the scope of that relationship and while the relationship existed (Fed. R. Evid. 801(d)(2)(D)), or in the case of an unavailable witness was a statement against his/her interest (Fed. R. Evid. 804(b)(3)). This exhibit tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.** |
| 19 | Inmate letter by Luis Parrado to a COIII/COIV, for appeal of max designation. (STATE-000587.) | Hearsay, 401, 403, 602, 801, 901<br><br>**P's Response:  This exhibit falls under a hearsay exception (present sense impression, excited utterance, recorded recollection, etc.), or in the case of an unavailable witness was a statement against his/her interest (Fed. R. Evid. 804(b)(3)).  This exhibit corroborates Plaintiff's allegations, and its use will not** |

158250145

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| | | create prejudice, cause undue delay, or confuse the issues. |
| 20 | Notice of appeal by Luis Parrado. (STATE-000580.) | Hearsay, 401, 403, 602, 801, 901<br><br>**P's Response:  This exhibit is not hearsay because it falls under a hearsay exception (present sense impression, excited utterance, recorded recollection, etc.), or in the case of an unavailable witness was a statement against his/her interest (Fed. R. Evid. 804(b)(3)).  This exhibit tends to corroborate Plaintiff's allegations and its use will not create prejudice, cause undue delay, or confuse the issues.** |
| 21 | Max Appeal Response stating that Luis Parrado was approved for max. custody on 6/17/19. (STATE-000579.) | Lack of foundation, 401, 403, 602, 801, 901<br><br>**P's Response:  Plaintiff will lay foundation with the relevant witness(es). This exhibit falls within a hearsay exception because it is a public record and/or business record (Fed. R. Evid. 803(6) & (8)), is not hearsay because the declarant made the statement while he/she was the party's agent or employee on a matter within the scope of that relationship and while the relationship existed (Fed. R. Evid. 801(d)(2)(D)), or in the case of an unavailable witness was a statement against his/her interest (Fed. R. Evid. 804(b)(3)). This exhibit tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.  This exhibit tends to corroborate Plaintiff's allegations that Mr. Parrado had an STG designation, and its use will not create prejudice, cause undue delay, or confuse the issues.**<br><br>**Defendants have themselves proposed this exhibit.  Plaintiff will stipulate to its use.** |
| 22 | Declaration of Luis Parrado. (CRAGO000108-110.) | Hearsay, 401, 403, 602, 801, 901<br><br>**P's Response:  This exhibit falls under a hearsay exception (present sense impression, excited utterance, recorded recollection, etc.), or in the case of an unavailable witness was a** |

158250145

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| | | statement against his/her interest (Fed. R. Evid. 804(b)(3)). |
| 23 | Inmate record for Arturo Flores. (STATE-000465-485.) | Lack of foundation, 401, 403, 602, 801, 901 **P's Response:  Defendants have themselves proposed this exhibit (as 385).  Plaintiff will stipulate to its use and will lay a foundation with the relevant witness(es).  This exhibit falls within a hearsay exception because it is a public record and/or business record (Fed. R. Evid. 803(6) & (8)), is not hearsay because the declarant made the statement while he/she was the party's agent or employee on a matter within the scope of that relationship and while the relationship existed (Fed. R. Evid. 801(d)(2)(D)), or in the case of an unavailable witness was a statement against his/her interest (Fed. R. Evid. 804(b)(3)). This exhibit tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.** |
| 24 | Declaration of Arturo Flores. (CRAGO000102-103.) | Hearsay, 401, 403, 602, 801, 901 **P's Response:  This exhibit falls under a hearsay exception (present sense impression, excited utterance, recorded recollection, etc.), or, in the case of an unavailable witness, was a statement against his interest (Fed. R. Evid. 804(b)(3)).** |
| 25 | Inmate record for Hector Ruiz. (STATE-000511-530.) | Lack of foundation, 401, 403, 602, 801, 901 P's Response:  Defendants have themselves proposed this exhibit (as 387).  Plaintiff will stipulate to its use and will lay a foundation with the relevant witness(es). This exhibit falls within a hearsay exception because it is a public record and/or business record (Fed. R. Evid. 803(6) & (8)), is not hearsay because the declarant made the statement while he/she was the party's agent or employee on a matter within the scope of that relationship and while the relationship existed (Fed. R. Evid. 801(d)(2)(D)), or in the case of an unavailable witness was a statement against his/her interest (Fed.  R. |

-117-

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| | | Evid. 804(b)(3)). This exhibit tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues. |
| 26 | Declaration of Hector Ruiz. (CRAGO000112-114.) | Hearsay, 401, 403, 602, 801, 901<br><br>**P's Response: This exhibit falls under a hearsay exception (present sense impression, excited utterance, recorded recollection, etc.), or, in the case of an unavailable witness, was a statement against his/her interest (Fed. R. Evid. 804(b)(3)).** |
| 27 | Notice of appeal for Levi Bodine on 6/19/19. (CRAGO-000100.) | Hearsay, 401, 403, 602, 801, 901<br><br>**P's Response: This exhibit falls under a hearsay exception (present sense impression, excited utterance, recorded recollection, etc.), or, in the case of an unavailable witness, was a statement against his/her interest (Fed. R. Evid. 804(b)(3)). This exhibit is relevant because it tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.** |
| 28 | Declaration of Levi Bodine. (CRAGO-000823.) | Hearsay, 401, 403, 602, 801, 901<br><br>**P's Response: This exhibit falls under a hearsay exception (present sense impression, excited utterance, recorded recollection, etc.), or, in the case of an unavailable witness, was a statement against his/her interest (Fed. R. Evid. 804(b)(3)).** |
| 29 | Objection against max. custody placement by Steve Antrobus. (STATE-000565.) | Hearsay, 401, 403, 602, 801, 901<br><br>**P's Response: This exhibit falls under a hearsay exception (present sense impression, excited utterance, recorded recollection, etc.), or in the case of an unavailable witness was a statement against his/her interest (Fed. R. Evid. 804(b)(3)). This exhibit is relevant because it tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.** |

158250145

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| 30 | Notice of appeal by Steve Antrobus. (STATE-000560.) | Hearsay, 401, 403, 602, 801, 901<br><br>**P's Response:  This exhibit falls under a hearsay exception (present sense impression, excited utterance, recorded recollection, etc.), or in the case of an unavailable witness was a statement against his/her interest (Fed. R. Evid. 804(b)(3)).   This exhibit is relevant because it tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.** |
| 31 | Max.  appeal response to Steve Antrobus (STATE-000559.) | Lack of foundation, 401, 403, 602, 801, 901<br><br>**P's Response:  Plaintiff will lay a foundation with the relevant witness(es).  This exhibit is relevant because it tends to corroborate Plaintiff's allegations, especially related to Defendants' efforts to prevent ASPC Lewis prisoners from speaking out about security failures at ASPC Lewis, and its use will not create prejudice, cause undue delay, or confuse the issues.  Plaintiff notes that this exhibit is the same as page 1 to Defendants' proposed Ex. 389.** |
| 32 | Declarations by Steve Antrobus dated July 12, 2019, and December 10, 2019. (CRAGO000093- 96.) | Hearsay, 401, 403, 602, 801, 901<br><br>**P's Response:  This exhibit falls under a hearsay exception (present sense impression, excited utterance, recorded recollection, etc.), or in the case of an unavailable witness was a statement against his/her interest (Fed. R. Evid. 804(b)(3)).** |
| 33 | Inmate records for Erik Sampson. (STATE-000531-558.) | Lack of foundation, 401, 403, 602, 801, 901<br><br>**P's Response:   Defendants have themselves proposed this exhibit. Plaintiff will stipulate to its use and will lay a foundation with R. Arnott, CO Oshit (possibly spelled Ohshita) (CO IV at Buckley in 2018), and other relevant witness(es).  This exhibit falls within a hearsay exception because it is a public record and/or business record (Fed. R. Evid. 803(6) & (8)), is not hearsay because the declarant made the statement while he/she was the party's agent or** |

-119-

158250145

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| | | employee on a matter within the scope of that relationship and while the relationship existed (Fed. R. Evid. 801(d)(2)(D)), or in the case of an unavailable witness was a statement against his/her interest (Fed. R. Evid. 804(b)(3)). This exhibit tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues. |
| 34 | Information report for Erik Sampson. (STATE-0001495.) | Lack of foundation, 401, 403<br><br>**P's Response: Plaintiff will lay a foundation for this exhibit with the R. Arnott.** |
| 35 | SSU memorandum dated 5/2/19 re Buckley Unit movement involving Crago. (STATE- 000416.) | Lack of foundation, 401, 403, 602, 801, 901<br><br>**P's Response: Defendants have themselves proposed this exhibit. Plaintiff will stipulate to its use and will lay a foundation with the relevant witness(es). This exhibit falls within a hearsay exception because it is a public record and/or business record (Fed. R. Evid. 803(6) & (8)), is not hearsay because the declarant made the statement while he/she was the party's agent or employee on a matter within the scope of that relationship and while the relationship existed (Fed. R. Evid. 801(d)(2)(D)), or in the case of an unavailable witness was a statement against his/her interest (Fed. R. Evid. 804(b)(3)). This exhibit tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.** |
| 36 | Grievance by Crago dated 11/19/19. (CRAGO-000831.) | Hearsay, 401, 403, 602, 801, 901<br><br>**P's Response: This exhibit falls under a hearsay exception (present sense impression, excited utterance, recorded recollection, etc.). This exhibit is relevant because it tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.** |

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| 37 | Notice of Appeal by E. Crago dated 5/15/19. (CRAGO-000120.) | Hearsay, 401, 403, 602, 801, 901<br><br>**P's Response:  This exhibit falls under a hearsay exception (present sense impression, excited utterance, recorded recollection, etc.). This exhibit is relevant because it tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.  This exhibit falls within a hearsay exception because it is a public record and/or business record (Fed. R. Evid. 803(6) & (8)).** |
| 38 | *Porter v. ADC*, CV-09- 2479-PHX-JAT. | Not disclosed, hearsay, 401, 403, 602, 801, 901, vague and ambiguous, Motion in Limine<br><br>**P's Response:  Plaintiff to confirm if previously disclosed.  Not hearsay because it tends to show notice and falls under a hearsay exception (e.g., recorded recollection, etc.). This exhibit is relevant because it tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.  Plaintiff will separately respond to the MIL.** |
| 39 | Confidential Report to Berry Larson Re.  inmates murder of Andrew McCormick on June 6, 2018.  (STATE- 004395, 004402-004437, 004439, 004441.) | Hearsay within hearsay, 401, 403, 602, 801, 901, Motion in Limine.<br><br>To the extent Plaintiff intends to introduce these under Fed.  R.  Evid 801(d)(2):  the declarants are not parties, insufficient disclosure<br><br>**P's Response:  Falls under rule 801.  This exhibit falls within a hearsay exception because it is a public record, business record, and/or a recorded recollection (Fed. R. Evid. 803(5), (6) & (8)), or in the case of an unavailable witness was a statement against his/her interest (Fed. R. Evid. 804(b)(3)).  It also contains an opposing partyent's statement (Fed. R. Evid. 801(d)(2).  This exhibit is relevant because it tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.  Plaintiff will separately respond to the MIL.** |

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| 40 | Charles Ryan Declaration, Doc. 174-2 at 16-17. | 401, 403 (cumulative), 602, 801, 901<br><br>**P's Response:  Defendants have themselves proposed this exhibit.  Plaintiff will stipulate to its use and it will not be used in a cumulative manner.   Relevant to Plaintiff's allegations. This exhibit falls within a hearsay exception because it is a public record and/or business record (Fed. R. Evid. 803(6) & (8)), is not hearsay because the declarant made the statement while he/she was the party's agent or employee on a matter within the scope of that relationship and while the relationship existed (Fed. R. Evid. 801(d)(2)(D)), or in the case of an unavailable witness was a statement against his/her interest (Fed. R. Evid. 804(b)(3)).  This exhibit tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.** |
| 41 | Charles Ryan's Third Supp. Resp. to Interrogatories, dated 4/27/21.<br>(CRAGO- 000498-512.) | 401, 403 (cumulative), 602, 801, 901<br><br>**P's Response:  Plaintiff will not use the exhibit in a cumulative manner.   Relevant to Plaintiff's allegations.** |
| 42 | Ernie Trujillo's Declaration, Doc. 174-2 at 23-25. | 401, 403 (cumulative), 602, 801, 901<br><br>**P's Response:   Defendants have themselves proposed this exhibit.  Plaintiff will stipulate to its use.  Not hearsay under Rules 801 and 803.** |
| 43 | Ernie Trujillo's First Supp. Resp. to Interrogatories, dated 8/17/20.<br>(CRAGO- 000524-533.) | 401, 403 (cumulative), 602, 801, 901<br><br>**P's Response:  Plaintiff will not use the exhibit in a cumulative manner.   Relevant to Plaintiff's allegations.   Not hearsay under Rules 801 and 803.** |
| 44 | Berry Larson's Decl. (Doc. 174-2 at 27-30.) | 401, 403 (cumulative), 602, 801, 901<br><br>**P's Response:   Defendants have themselves proposed this exhibit.  Plaintiff will stipulate to its use and it will not be used in a cumulative manner.   Relevant to Plaintiff's allegations. Not hearsay under Rules 801 and 803.** |

158250145

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| 45 | Berry Larson's Fifth Supp. Resp. to Interrogatories, dated 4/27/21. (CRAGO- 000535-552.) | 401, 403 (cumulative), 602, 801, 901<br><br>**P's Response:  Plaintiff will not use the exhibit in a cumulative manner.   Relevant to Plaintiff's allegations.   No hearsay under Rules 801 and 803.** |
| 46 | Gerald Thompson Declaration.  (Doc. 174-2.) | 401, 403 (cumulative), 602, 801, 901<br><br>**P's Response:  Plaintiff will not use the exhibit in a cumulative manner.   Relevant to Plaintiff's allegations.   Not hearsay under Rules 801 and 803.** |
| 47 | Gerald Thompson First Supp. Resp. to Interrogatories, dated 5/25/21. (CRAGO- 000554-564.) | 401, 403 (cumulative), 602, 801, 901,<br><br>**P's Response:  Plaintiff will not use the exhibit in a cumulative manner.   Relevant to Plaintiff's allegations.   Not hearsay under Rules 801 and 803.** |
| 48 | Crago's letter to Thompson dated 1/12/19. (CRAGO000163-64.) | No objection. |
| 49 | Thompson's inmate letter response dated 4/5/19. (STATE-000017- 19.) | No objection.<br><br>**P's Response:   Defendants have themselves proposed this exhibit. Plaintiff will stipulate to its use.** |
| 50 | Joseph Pitz's Declaration, Doc. 174-2 at 49-53. | 401, 403 (cumulative), 602, 801, 901<br><br>**P's Response:   Defendants have themselves proposed this exhibit. Plaintiff will stipulate to its use and it will not be used in a cumulative manner. Relevant to Plaintiff's allegations.** |
| 51 | Joseph Pitz's Third Supp. Resp. to Interrogatories dated 1/12/21. (CRAGO- 000566-581.) | 401, 403 (cumulative), 602, 801, 901<br><br>**P's Response:  Defendant Pitz's responses are highly relevant and will be presented in a non-cumulative manner.  Not hearsay under Rules 801 and 803.** |

158250145

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| 52 | Significant Incident Report dated 1/3/19. (STATE-001493001494.) | Lack of foundation, 401, 403, hearsay., 602, 801, 901<br><br>**P's Response:  Defendant Pitz was the Deputy Warden on duty and can lay a foundation for this exhibit.  Not hearsay under Rules 801 and 803.** |
| 53 | Plaintiff's Declaration in Support of Plaintiff's Motion for Summary Judgment. (CRAGO000085-91.) | Hearsay, 401, 403, lack of foundation, 602, 801, 901<br><br>**P's Response:  Plaintiff Crago will testify at trial regarding the contents of his declaration.  Declaration falls under various hearsay exceptions (present sense impression, excited utterance, recorded recollection, etc.).** |
| 54 | Job description for Northern Region Operations Director. (STATE-000221-227.) | Lack of foundation, hearsay, 401, 403 602, 801, 901<br><br>**P's Response:   Defendants have themselves proposed this exhibit/stipulated to the job description.  Plaintiff will stipulate to its use and will lay the foundation for this exhibit with the relevant witness(es).   Not hearsay under Rules 801 and 803.** |
| 55 | Investigative report for incident on February 1, 2019.  (STATE-000119-139.) | Lack of foundation, hearsay within hearsay, 401, 403, 602, 801, 901<br><br>**P's Response:  Plaintiff will lay foundation for this exhibit with S. Baker (#558).  This exhibit falls within a hearsay exception because it is a public record and/or business record (Fed. R. Evid. 803(6) & (8)), is not hearsay because the declarant made the statement while he/she was the party's agent or employee on a matter within the scope of that relationship and while the relationship existed (Fed. R. Evid. 801(d)(2)(D)), or in the case of an unavailable witness was a statement against his/her interest (Fed. R. Evid. 804(b)(3)).  This exhibit tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.  Plaintiff will lay the foundation for this exhibit with the relevant witness(es).** |

158250145

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| 56 | Department Order Manual for Department Order 803 Arizona Department of Corrections. (STATE- 000154-186.) | Lack of foundation, 401, 403, 602, 801, 901, Violation of Policy does not equate to constitutional Violation<br><br>**P's Response:   Defendants have themselves proposed this exhibit. Plaintiff will stipulate to its use and will lay the foundation for this exhibit with the relevant witness(es).   This exhibit is relevant to Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.  Not hearsay under Rules 801 and 803.** |
| 57 | Department Order Manual for Department Order 806 Arizona Department of Corrections. (STATE- 000187-213.) | Lack of foundation, 401, 403, 602, 801, 901, Violation of Policy does not equate to constitutional Violation<br><br>**P's Response:   Defendants have themselves proposed this exhibit. Plaintiff will stipulate to its use and will lay the foundation for this exhibit with the relevant witness(es).   This exhibit is relevant to Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.   Not hearsay under Rules 801 and 803.** |
| 58 | Investigative report for assault on October 5, 2018. (STATE-0001496-1504.) | Lack of foundation, hearsay, 401, 403, Motion in Limine, 602, 801, 901<br><br>**P's Response:  Plaintiff will lay the foundation for this exhibit with the relevant witness(es)/defendant to lay a foundation.  This exhibit falls under a hearsay exception (e.g., bus.  records, public records, etc), or is not hearsay because it falls under Fed. R. Evid. 801 as an admission.  This exhibit is relevant to Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.  Plaintiff will separately respond to the MIL.** |
| 59 | Investigative report for assault on October 29, 2018. (STATE-0001551-1564.) | Lack of foundation, hearsay, 401, 403, Motion in Limine, 602, 801, 901<br><br>**P's Response:  Plaintiff will lay the foundation for this exhibit with the relevant witness(es)/defendant to lay a foundation.  This exhibit falls under a hearsay exception (e.g.,** |

-125-

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| | | bus.  records, public records, etc), or is not hearsay because it falls under Fed. R. Evid. 801 as an admission.  This exhibit is relevant to Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.  Plaintiff will separately respond to the MIL. |
| 60 | Investigative report for assault on November 22, 2018. (STATE-0001681-1689.) | Lack of foundation, hearsay, 401, 403, Motion in Limine, 602, 801, 901<br><br>**P's Response:  Plaintiff will lay the foundation for this exhibit with the relevant witness(es)/defendant to lay a foundation. This exhibit falls under a hearsay exception (e.g., bus.  records, public records, etc), or is not hearsay because it falls under Fed. R. Evid. 801 as an admission.  This exhibit is relevant to Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.  Plaintiff will separately respond to the MIL.** |
| 61 | Investigative report for assault on October 30, 2018. (STATE-0001779-1788.) | Lack of foundation, hearsay, 401, 403, Motion in Limine, 602, 701, 801, 901<br><br>**P's Response:  Plaintiff will lay the foundation for this exhibit with the relevant witness(es)/defendant to lay a foundation. This exhibit falls under a hearsay exception (e.g., bus.  records, public records, etc.), or is not hearsay because it falls under Fed. R. Evid. 801 as an admission.  This exhibit is relevant to Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.  Plaintiff will separately respond to the MIL.** |
| 62 | Investigative report for assault on September 29, 2018. (STATE-0001882-1892.) | Lack of foundation, hearsay, 401, 403, Motion in Limine, 602, 701, 801, 901<br><br>**P's Response:  Plaintiff will lay the foundation for this exhibit with the relevant witness(es)/defendant to lay a foundation. This exhibit falls under a hearsay exception (e.g., bus.  records, public records, etc.), or is not hearsay because it falls under Fed. R. Evid. 801 as an admission.  This exhibit is relevant to Plaintiff's allegations, and its use will not** |

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| | | create prejudice, cause undue delay, or confuse the issues. Plaintiff will separately respond to the MIL. |
| 63 | First amended complaint and demand for jury trial for Christopher Russett case. (CRAGO000129-143.) | Hearsay, 401, 403, Motion in Limine, 602, 801, 901<br><br>**P's Response: This exhibit falls under a hearsay exception (e.g., bus. records, public records, etc.), or is not hearsay because it falls under Fed. R. Evid. 801 as an admission. This exhibit is relevant to Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues. Plaintiff will separately respond to the MIL.** |
| 64 | Investigative report for assault on December 30, 2018. (STATE-0001965-1976.) | Lack of foundation, hearsay, 401, 403, Motion in Limine, 602, 701, 801, 901<br><br>**P's Response: Plaintiff will lay the foundation for this exhibit with the relevant witness(es)/defendant to lay a foundation. This exhibit falls under a hearsay exception (e.g., bus. records, public records, etc.), or is not hearsay because it falls under Fed. R. Evid. 801 as an admission. This exhibit is relevant to Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues. Plaintiff will separately respond to the MIL.** |
| 65 | Investigative report for assault on February 27, 2018. (STATE-0002045-2061.) | Lack of foundation, hearsay, 401, 403, Motion in Limine, 602, 701, 801, 901<br><br>**P's Response: Plaintiff will lay the foundation for this exhibit with the relevant witness(es)/defendant to lay a foundation. This exhibit falls under a hearsay exception (e.g., bus. records, public records, etc.), or is not hearsay because it falls under Fed. R. Evid. 801 as an admission. This exhibit is relevant to Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues. Plaintiff will separately respond to the MIL.** |

158250145

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| 66 | Executive summary for the death of Andrew McCormick. (STATE004440-42.) | Lack of foundation, 401, 403, Motion in Limine., 602, 701, 801, 901<br><br>Duplicative of Plaintiff's Exhibit 40.<br><br>**P's Response:  Plaintiff can call the relevant witness(es) to lay a foundation.  This proposed exhibit is not duplicative of Exhibit 40 because contains different Bates numbers, except for STATE004441.  The death is highly relevant because it is related to Plaintiff's assertion of inmate assaults due to doors that would not lock.  Not hearsay under Rules 801 and 803. Plaintiff will separately respond to the MIL.** |
| 67 | Berch notes for interview with Randy Standridge. (STATE006382-88.) | Hearsay within hearsay, 401, 403, motion in limine, 602, 701, 801, 901<br><br>To the extent Plaintiff intends to introduce these under Fed. R. Evid 801(d)(2):  declarant is not a party, insufficient disclosure<br><br>Duplicative of Plaintiff's Exhibit 14<br><br>**P's Response:   This exhibit falls within a hearsay exception because it is a public record and/or business record (Fed. R. Evid. 803(6) & (8)), is not hearsay because the declarant made the statement while he/she was the party's agent or employee on a matter within the scope of that relationship and while the relationship existed (Fed. R. Evid. 801(d)(2)(D)), or in the case of an unavailable witness was a statement against his/her interest (Fed. R. Evid. 804(b)(3)).  This exhibit tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.   Plaintiff will lay the foundation for this exhibit with the relevant witness(es).  This exhibit is being offered in case Defendants object to Exhibit 14 in its entirety.  Plaintiff will separately respond to the MIL.** |

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| 68 | Berch notes for interview with Charles Ryan. (STATE006389-94.) | Hearsay within hearsay, 401, 403, motion in limine, 602, 701, 801, 901 |
| | | To the extent Plaintiff intends to introduce these under Fed. R. Evid 801(d)(2): insufficient disclosure |
| | | Duplicative of Plaintiff's Exhibit 14 |
| | | **P's Response:   This exhibit falls within a hearsay exception because it is a public record and/or business record (Fed. R. Evid. 803(6) & (8)), is not hearsay because the declarant made the statement while he/she was the party's agent or employee on a matter within the scope of that relationship and while the relationship existed (Fed. R. Evid. 801(d)(2)(D)), or in the case of an unavailable witness was a statement against his/her interest (Fed. R. Evid. 804(b)(3)).  This exhibit tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.  Plaintiff will lay the foundation for this exhibit with the relevant witness(es).   This exhibit is being offered in case Defendants object to Exhibit 14 in its entirety.  Plaintiff will separately respond to the MIL.** |
| 69 | Berch notes for interview with Gabriela Contreras. (STATE006395-405.) | Hearsay within hearsay, 401, 403, motion in limine, 602, 701, 801, 901 |
| | | To the extent Plaintiff intends to introduce these under Fed. R. Evid 801(d)(2): declarant is not a party, insufficient disclosure |
| | | Duplicative of Plaintiff's Exhibit 14 |
| | | **P's Response:   This exhibit falls within a hearsay exception because it is a public record and/or business record (Fed. R. Evid. 803(6) & (8)), is not hearsay because the declarant made the statement while he/she was the party's agent or employee on a matter within the scope of that relationship and while the relationship existed (Fed. R. Evid. 801(d)(2)(D)), or in the case of an unavailable witness was a statement against his/her interest (Fed. R. Evid. 804(b)(3)).  This exhibit tends to corroborate** |

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| | | **Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.  Plaintiff will lay the foundation for this exhibit with the relevant witness(es).  This exhibit is being offered in case Defendants object to Exhibit 14 in its entirety.  Plaintiff will separately respond to the MIL.** |
| 70 | Berch notes for interview with Ernie Trujillo. (STATE006409-13.) | Hearsay within hearsay, 401, 403, Motion in Limine, 602, 701, 801, 901

To the extent Plaintiff intends to introduce these under Fed.  R.  Evid 801(d)(2):   insufficient disclosure

Duplicative of Plaintiff's Exhibit 14

**P's Response:   This exhibit falls within a hearsay exception because it is a public record and/or business record (Fed. R. Evid. 803(6) & (8)), is not hearsay because the declarant made the statement while he/she was the party's agent or employee on a matter within the scope of that relationship and while the relationship existed (Fed. R. Evid. 801(d)(2)(D)), or in the case of an unavailable witness was a statement against his/her interest (Fed.  R.  Evid. 804(b)(3)).  This exhibit tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.  Plaintiff will lay the foundation for this exhibit with the relevant witness(es).   This exhibit is being offered in case Defendants object to Exhibit 14 in its entirety.  Plaintiff will separately respond to the MIL.** |
| 71 | Berch notes for interview with Daniel Walker. (STATE006418-22.) | Hearsay within hearsay, 401, 403, Motion in Limine, 602, 701, 801, 901

To the extent Plaintiff intends to introduce these under Fed.  R.  Evid 801(d)(2):   declarant is not a party, insufficient disclosure

Duplicative of Plaintiff's Exhibit 14

**P's Response:   This exhibit falls within a hearsay exception because it is a public record** |

-130-

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| | | **and/or business record (Fed. R. Evid. 803(6) & (8)), is not hearsay because the declarant made the statement while he/she was the party's agent or employee on a matter within the scope of that relationship and while the relationship existed (Fed. R. Evid. 801(d)(2)(D)), or in the case of an unavailable witness was a statement against his/her interest (Fed. R. Evid. 804(b)(3)). This exhibit tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues. Plaintiff will lay the foundation for this exhibit with the relevant witness(es). This exhibit is being offered in case Defendants object to Exhibit 14 in its entirety. Plaintiff will separately respond to the MIL.** |
| 72 | Berch notes for interview with Carson McWilliams. (STATE006433-37.) | Hearsay within hearsay, 401, 403, Motion in Limine, 602, 701, 801, 901 <br><br> To the extent Plaintiff intends to introduce these under Fed. R. Evid 801(d)(2): declarant is not a party, insufficient disclosure <br><br> Duplicative of Plaintiff's Exhibit 14 <br><br> **P's Response: This exhibit falls within a hearsay exception because it is a public record and/or business record (Fed. R. Evid. 803(6) & (8)), is not hearsay because the declarant made the statement while he/she was the party's agent or employee on a matter within the scope of that relationship and while the relationship existed (Fed. R. Evid. 801(d)(2)(D)), or in the case of an unavailable witness was a statement against his/her interest (Fed. R. Evid. 804(b)(3)). This exhibit tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues. Plaintiff will lay the foundation for this exhibit with the relevant witness(es). This exhibit is being offered in case Defendants object to Exhibit 14 in its entirety. Plaintiff will separately respond to the MIL.** |

158250145

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| 73 | Inmate health needs request for E. Crago. (CRAGO000002.) | Hearsay, 602, 701, 801, 901<br><br>**P's Response:  This exhibit falls under a hearsay exception (present sense impression, excited utterance, recorded recollection, statement made for medical diagnosis or treatment, etc.).** |
| 74 | Inmate complaint resolution for E. Crago. (CRAGO000003-10.) | Hearsay, lack of foundation, 401, 403, failure to timely disclose theory re:  retaliation, 602, 701, 801, 901<br><br>**P's Response:  Rule 801 applies, as do various hearsay exceptions (business record, etc.). Plaintiff will lay a foundation with the relevant witness(es), and the document is relevant to Plaintiff's claims.   This exhibit tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.   Plaintiff's theory re. retaliation has been extensively disclosed through these proceedings, including in his summary judgment briefing.   Not hearsay under Rules 801 and 803.** |
| 75 | Declaration of Andrew McCallister.<br><br>(CRAGO000105-106.) | Hearsay, 401, 403, 602, 701, 801, 901<br><br>**P's Response:  This exhibit falls under a hearsay exception (present sense impression, excited utterance, recorded recollection, etc.), or in the case of an unavailable witness was a statement against his/her interest (Fed. R. Evid. 804(b)(3)).** |
| 76 | Declaration of Angel Laborin Torres. (CRAGO000116-118.) | Hearsay, 401, 403, 602, 701, 801, 901<br><br>**P's Response:  This exhibit falls under a hearsay exception (present sense impression, excited utterance, recorded recollection, etc.), or in the case of an unavailable witness was a statement against his/her interest (Fed. R. Evid. 804(b)(3)).** |

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| 77 | Declaration of Jonathan Jarman.<br><br>(CRAGO000816-818.) | Hearsay, 401, 403, 602, 701, 801, 901<br><br>**P's Response:  This exhibit falls under a hearsay exception (present sense impression, excited utterance, recorded recollection, etc.), or in the case of an unavailable witness was a statement against his/her interest (Fed. R. Evid. 804(b)(3)).** |
| 78 | Declaration of Bradley Rakestraw.<br>(CRAGO000820-821.) | Hearsay, 401, 403, 602, 701, 801, 901<br><br>See Motion in Limine and Stipulation<br><br>**P's Response:  This exhibit falls under a hearsay exception (present sense impression, excited utterance, recorded recollection, etc.), or in the case of an unavailable witness was a statement against his/her interest (Fed. R. Evid. 804(b)(3)).** |
| 79 | Declaration of Ernesto Lopez.  (CRAGO000825.) | Hearsay, 401, 403, 602, 701, 801, 901<br><br>**P's Response:  This exhibit falls under a hearsay exception (present sense impression, excited utterance, recorded recollection, etc.), or in the case of an unavailable witness was a statement against his/her interest (Fed. R. Evid. 804(b)(3)).** |
| 80 | Department 703 report from J. Weiss to B.  Larson dated Dec. 3, 2018.<br>(STATE-003225-3228.) | Lack of foundation, 401, 403, Motion in Limine, hearsay, 602, 701, 801, 901<br><br>**P's Response:  Plaintiff will lay the foundation for this exhibit with Defendant Larson or other relevant witness(es).  This exhibit falls within a hearsay exception because it is a public record and/or business record (Fed. R. Evid. 803(6) & (8)), is not hearsay because the declarant made the statement while he/she was the party's agent or employee on a matter within the scope of that relationship and while the relationship existed (Fed. R. Evid. 801(d)(2)(D)), or in the case of an unavailable witness was a statement against his/her interest (Fed. R. Evid. 804(b)(3)).  This exhibit tends to corroborate Plaintiff's allegations, and its use will not** |

158250145

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| | | create prejudice, cause undue delay, or confuse the issues. Plaintiff will lay the foundation for this exhibit with the relevant witness(es). Plaintiff will respond separately to the MIL. |
| 81 | ~~Department 703 report dated August 9, 2018.~~ ~~(STATE0034893496.)~~ | Lack of foundation, 901, 401, 403, Motion in Limine<br><br>Duplicative of Plaintiff's Exhibit 9<br><br>**P's Response: Inadvertent duplicate deleted. Plaintiff withdraws this proposed exhibit.** |
| 82 | Summary of Department of Corrections 703 report records. (STATE-006480-6494.) | Hearsay, lack of foundation, does not comply with Rule 1006, 602, 701, 801, 901<br><br>Duplicative of Plaintiff's Exhibit 14<br><br>**P's Response: This exhibit falls within a hearsay exception because it is a public record and/or business record (Fed. R. Evid. 803(6) & (8)), is not hearsay because the declarant made the statement while he/she was the party's agent or employee on a matter within the scope of that relationship and while the relationship existed (Fed. R. Evid. 801(d)(2)(D)), or in the case of an unavailable witness was a statement against his/her interest (Fed. R. Evid. 804(b)(3)). This exhibit tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues. Plaintiff will lay the foundation for this exhibit with the relevant witness(es). This exhibit is being offered in case Defendants object to Exhibit 14 in its entirety. Defendants possess the underlying data.** |

158250145

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| 83 | Berch notes for interview with Luis De La O. (STATE-006372-6378.) | Hearsay within hearsay, 401, 403, motion in limine, 602, 701, 801, 901<br><br>To the extent Plaintiff intends to introduce these under Fed. R. Evid 801(d)(2): declarant is not a party, insufficient disclosure<br><br>Duplicative of Plaintiff's Exhibit 14<br><br>**P's Response: This exhibit falls within a hearsay exception because it is a public record and/or business record (Fed. R. Evid. 803(6) & (8)), is not hearsay because the declarant made the statement while he/she was the party's agent or employee on a matter within the scope of that relationship and while the relationship existed (Fed. R. Evid. 801(d)(2)(D)), or in the case of an unavailable witness was a statement against his/her interest (Fed. R. Evid. 804(b)(3)). This exhibit tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues. Plaintiff will lay the foundation for this exhibit with the relevant witness(es). This exhibit is being offered in case Defendants object to Exhibit 14 in its entirety. Plaintiff will separately respond to the MIL.** |
| 84 | ~~Significant Incident Report dated 2/2/2019. (STATE000132133.)~~ | Lack of Foundation, Duplicative of Plaintiff's Exhibit 56, 602, 701, 801, 901<br><br>**Plaintiff's Response: Inadvertent duplicate. Deleted. Plaintiff withdraws this proposed exhibit.** |
| 85 | Job responsibilities for the Warden. (STATE-000217-220.) | Lack of foundation, 401, 403, job duties already stipulated, 602, 701, 801, 901<br><br>**P's Response: Defendants have themselves proposed this exhibit/stipulated to the job description. Plaintiff will stipulate to its use and will lay the foundation for this exhibit with the relevant witness(es). This exhibit tends to corroborate Plaintiff's allegations (regarding Warden's responsibility for safety), and its use will not create prejudice, cause undue delay, or confuse the issues. Not** |

158250145

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| | | hearsay under Rules 801 and 803. |
| 86 | Inmate record for Earl Crago at STATE-000004. | Lack of foundation, 401, 403 **P's Response:  Plaintiff will lay foundation with the relevant witness(es).** |
| 87 | Inmate record for Kelvin Barnett. (STATE- 007147-72) | Lack of foundation, 401, 403, 602, 701, 801, 901 **Response:  Plaintiff will lay foundation with the relevant witness(es).  Not hearsay under Rules 801 and 803.** |
| 88 | 703 memos from 2017- 2019. (STATE-003328- 003569.) | Lack of foundation, hearsay, 401, 403, Motion in Limine, 602, 701, 801, 901 Duplicative of Plaintiff's Exhibit 9 **P's Response: Plaintiff will lay the foundation for this exhibit with the relevant witness(es). This exhibit falls within a hearsay exception because it is a public record and/or business record (Fed. R. Evid. 803(6) & (8)), is not hearsay because the declarant made the statement while he/she was the party's agent or employee on a matter within the scope of that relationship and while the relationship existed (Fed. R. Evid. 801(d)(2)(D)), or in the case of an unavailable witness was a statement against his/her interest (Fed. R. Evid. 804(b)(3)). This exhibit corroborates Plaintiff's position that Defendants had knowledge of the risks resulting from conditions at ASPC Lewis and that they were obvious, and its use will not create prejudice, cause undue delay, or confuse the issues. This exhibit is provided in case Defendants object to Exhibit 9 in its entirety. Plaintiff will separately respond to the MIL.** |
| 89 | Objections to Max. Custody Placement by Ernesto Lopez. (STATE- 000575.) | Hearsay, 401, 403, 602, 701, 801, 901 **P's Response:  This exhibit falls under a hearsay exception (present sense impression, excited utterance, recorded recollection, etc.), or in the case of an unavailable witness was a statement against his/her interest (Fed. R. Evid. 804(b)(3)).  This exhibit is relevant** |

-136-

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| | | because it tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues. |
| 90 | Daily Post Sheets for 1/9/19, 2/1/19, 4/5/19, and other dates. (e.g., STATE-000611, 000631, 000643, 000649, 000669, 000699, 000701, 000703, 000705, 000707, 000709, 000711, 000713, 000715, 000717, 000719, 000723, 000725, 000727, 000729, 000731, 000733, 000735, 000739, 000741, 000743, 000747, 001005, and 001491.) | Lack of foundation, 401, 403, Motion in Limine, 602, 701, 801, 901<br><br>Duplicative of Plaintiff's Exhibit 11<br><br>**P's Response:  Plaintiff will lay the foundation for this exhibit with the relevant witness(es). This exhibit corroborates Plaintiff's position that Defendants had knowledge of the risks resulting from conditions at ASPC Lewis and that they were obvious, and its use will not create prejudice, cause undue delay, or confuse the issues.  This exhibit has been listed in case Defendants object to Exhibit 11 in its entirety.** |
| 91 | Inmate Grievance Appeal by E.  Crago dated 4/17/2020. (CRAGO-000126.) | Hearsay, 401, 403, 602, 701, 801, 901<br><br>**P's Response:   This exhibit falls under a hearsay exception (present sense impression, excited utterance, recorded recollection, etc.). This exhibit is relevant because it tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.** |
| 92 | Inmate Grievance/Formal Response Notice dated 4/20/2020. (CRAGO-000127.) | Lack of foundation, 401, 403, 602, 701, 801, 901<br><br>**P's Response: Plaintiff will lay the foundation with the relevant witness(es) to lay a foundation.  This exhibit is relevant because it tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.   Not hearsay under Rules 801 and 803.** |
| 93 | ADC Department Order Manual, Ch.  800 (excerpts). (CRAGO-000145-150.) | Lack of foundation, 401, 403, 602, 701, 801, 901<br><br>**P's Response:  Plaintiff will lay foundation with the relevant witness(es).  This exhibit falls within a hearsay exception because it is a public record and/or business record (Fed. R. Evid. 803(6)  &  (8This exhibit tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay,** |

-137-

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| | | or confuse the issues.  Plaintiff will lay the foundation for this exhibit with the relevant witness(es). |
| 94 | ADC Department Order Manual, Ch.  900 (excerpts). (CRAGO-000152-158.) | Lack of foundation, 401, 403, 602, 701, 801, 901<br><br>**P's Response:  Plaintiff will lay foundation with the relevant witness(es).  This exhibit falls within a hearsay exception because it is a public record and/or business record (Fed. R. Evid. 803(6) & (8)).  This exhibit tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.** |
| 95 | Affidavit of Ernesto Lopez. (CRAGO-000160.) | Hearsay, 401, 403, 602, 701, 801, 901<br><br>**P's Response:  This exhibit falls under a hearsay exception (present sense impression, excited utterance, recorded recollection, etc.), or in the case of an unavailable witness was a statement against his/her interest (Fed. R. Evid. 804(b)(3)).  This exhibit tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.  Plaintiff will lay the foundation for this exhibit with the relevant witness(es).** |
| 96 | Staff Schedule Excerpts. (STATE-000134-135.) | Lack of foundation, 403 (cumulative), 401, duplicative, 602, 701, 801, 901<br><br>**P's Response: Plaintiff will lay the foundation with the relevant witness(es) and will not use the exhibit in a cumulative manner. Defendants' duplicative objection is vague and ambiguous because it does not note the source of the duplication.  Not hearsay under Rules 801 and 803.  This exhibit tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.  Plaintiff will lay the foundation for this exhibit with the relevant witness(es).** |

158250145

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| 97 | OIG Supplemental Report (2018-100484) (STATE-001690.) | Lack of foundation, hearsay, 401, 403, Motion in Limine, 602, 701, 801, 901<br><br>**P's Response:  Plaintiff will lay the foundation with the relevant witness(es).  This document tends to show notice by the Defendants.  Rule 801 applies.  This report also falls within a hearsay exception (business record, public record, etc.).   The report is relevant to Plaintiff's claims and supports his allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.  Plaintiff will respond separately to the Motion in Limine.** |
| 98 | CIU Report dated 9/28/2018. (STATE-001927-28.) | Lack of foundation, hearsay, Motion in Limine re:  sexual assault, 401, 403, 602, 701, 801, 901<br><br>**P's Response:  Plaintiff will lay the foundation with the relevant witness(es).  This document tends to show notice by the Defendants.  Rule 801 applies.  This report also falls within a hearsay exception (business record, public record, etc.).  Plaintiff will respond separately to the Motion in Limine.** |
| 99 | OIG Investigative Report dated 9/27/2018. (STATE-001929-1936.) | Lack of foundation, hearsay, Motion in Limine re:  sexual assault, 602, 701, 801, 901<br><br>**P's Response:  Plaintiff will lay the foundation with the relevant witness(es).  This document tends to show notice by the Defendants.  Rule 801 applies.  This report also falls within a hearsay exception (business record, public record, etc.).   The report is relevant to Plaintiff's claims and supports his allegations. Plaintiff will respond separately to the Motion in Limine.** |
| 100 | Nov. 5, 2017, memo to E. Trujillo from B.  Larson. (STATE-003442-3446.) | Lack of foundation, 401, 403, Motion in Limine, 602, 701, 801, 901<br><br>Duplicative of Plaintiff's exhibits 9, 89<br><br>**P's Response:  Plaintiff will lay the foundation with the relevant witness(es).  Not hearsay under Rules 801 and 803.  This exhibit corroborates Plaintiff's position that** |

-139-

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| | | Defendants had knowledge of the risks resulting from conditions at ASPC Lewis and that they were obvious, and its use will not create prejudice, cause undue delay, or confuse the issues. This exhibit is proposed to the extent Defendants object to Plaintiff's proposed exhibits 8 & 89 in their entirety. Plaintiff will respond separately to the Motion in Limine. |
| 101 | April 4, 2018, memo to E. Trujillo from B. Larson. (STATE-003466-3470.) | Lack of foundation, 401, 403, Motion in Limine, 602, 701, 801, 901 |
| | | Duplicative of Plaintiff's exhibits 9, 89 |
| | | **P's Response: Plaintiff will lay the foundation with the relevant witness(es). Not hearsay under Rules 801 and 803. This exhibit corroborates Plaintiff's position that Defendants had knowledge of the risks resulting from conditions at ASPC Lewis and that they were obvious, and its use will not create prejudice, cause undue delay, or confuse the issues. This exhibit is proposed to the extent Defendants object to Plaintiff's proposed exhibits 8 & 89 in their entirety. Plaintiff will respond separately to the Motion in Limine.** |
| 102 | June 4, 2018, memo to E. Trujillo from B. Larson. (STATE-003476-3481.) | Lack of foundation, 401, 403, Motion in Limine, 602, 701, 801, 901 |
| | | Duplicative of Plaintiff's exhibits 9, 89 |
| | | **P's Response: Plaintiff will lay the foundation with the relevant witness(es). Not hearsay under Rules 801 and 803. This exhibit corroborates Plaintiff's position that Defendants had knowledge of the risks resulting from conditions at ASPC Lewis and that they were obvious, and its use will not create prejudice, cause undue delay, or confuse the issues. This exhibit is proposed to the extent Defendants object to Plaintiff's proposed exhibits 8 & 89 in their entirety. Plaintiff will respond separately to the Motion in Limine.** |

158250145

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| 103 | July 10, 2018, memo to E. Trujillo from B. Larson. (STATE-003482-3488.) | Lack of foundation, 401, 403, Motion in Limine, 602, 701, 801, 901<br><br>Duplicative of Plaintiff's exhibits 9, 89<br><br>**P's Response: Plaintiff will lay the foundation with the relevant witness(es). Not hearsay under Rules 801 and 803. This exhibit corroborates Plaintiff's position that Defendants had knowledge of the risks resulting from conditions at ASPC Lewis and that they were obvious, and its use will not create prejudice, cause undue delay, or confuse the issues. This exhibit is proposed to the extent Defendants object to Plaintiff's proposed exhibits 8 & 89 in their entirety. Plaintiff will respond separately to the Motion in Limine.** |
| 104 | August 9, 2018, memo to E. Trujillo from B. Larson. (STATE-003489-96.) | Lack of foundation, 401, 403, Motion in Limine, 602, 701, 801, 901<br><br>Duplicative of Plaintiff's exhibits 9, 89<br><br>**P's Response: Plaintiff will lay the foundation with the relevant witness(es). Not hearsay under Rules 801 and 803. This exhibit corroborates Plaintiff's position that Defendants had knowledge of the risks resulting from conditions at ASPC Lewis and that they were obvious, and its use will not create prejudice, cause undue delay, or confuse the issues. This exhibit is proposed to the extent Defendants object to Plaintiff's proposed exhibits 8 & 89 in their entirety. Plaintiff will respond separately to the Motion in Limine.** |

-141-

158250145

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| 105 | September 12, 2018, memo to E. Trujillo from B. Larson. (STATE-003497-3504.) | Lack of foundation, 401, 403, Motion in Limine, 602, 701, 801, 901<br><br>Duplicative of Plaintiff's exhibits 9, 89<br><br>**P's Response: Plaintiff will lay the foundation with the relevant witness(es). Not hearsay under Rules 801 and 803. This exhibit corroborates Plaintiff's position that Defendants had knowledge of the risks resulting from conditions at ASPC Lewis and that they were obvious, and its use will not create prejudice, cause undue delay, or confuse the issues. This exhibit is proposed to the extent Defendants object to Plaintiff's proposed exhibits 8 & 89 in their entirety. Plaintiff will respond separately to the Motion in Limine.** |
| 106 | October 8, 2018, memo to E. Trujillo from B. Larson. (STATE-003505-10.) | Lack of foundation, 401, 403, Motion in Limine, 602, 701, 801, 901<br><br>Duplicative of Plaintiff's exhibits 9, 89<br><br>**P's Response: Plaintiff will lay the foundation with the relevant witness(es). Not hearsay under Rules 801 and 803. This exhibit corroborates Plaintiff's position that Defendants had knowledge of the risks resulting from conditions at ASPC Lewis and that they were obvious, and its use will not create prejudice, cause undue delay, or confuse the issues. This exhibit is proposed to the extent Defendants object to Plaintiff's proposed exhibits 8 & 89 in their entirety. Plaintiff will respond separately to the Motion in Limine.** |

-142-

158250145

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| 107 | November 9, 2018, memo to E. Trujillo from B. Larson. (STATE-0003511-17.) | Lack of foundation, 401, 403, Motion in Limine, 602, 701, 801, 901<br><br>Duplicative of Plaintiff's exhibits 9, 89<br><br>**P's Response: Plaintiff will lay the foundation with the relevant witness(es). Not hearsay under Rules 801 and 803. This exhibit corroborates Plaintiff's position that Defendants had knowledge of the risks resulting from conditions at ASPC Lewis and that they were obvious, and its use will not create prejudice, cause undue delay, or confuse the issues. This exhibit is proposed to the extent Defendants object to Plaintiff's proposed exhibits 8 & 89 in their entirety. Plaintiff will respond separately to the Motion in Limine.** |
| 108 | December 11, 2018, memo to E. Trujillo from B. Larson. (STATE-003518-24.) | Lack of foundation, 401, 403, Motion in Limine, 602, 701, 801, 901<br><br>Duplicative of Plaintiff's exhibits 9, 89<br><br>**P's Response: Plaintiff will lay the foundation with the relevant witness(es). Not hearsay under Rules 801 and 803. This exhibit corroborates Plaintiff's position that Defendants had knowledge of the risks resulting from conditions at ASPC Lewis and that they were obvious, and its use will not create prejudice, cause undue delay, or confuse the issues. This exhibit is proposed to the extent Defendants object to Plaintiff's proposed exhibits 8 & 89 in their entirety. Plaintiff will respond separately to the Motion in Limine.** |
| 109 | January 4, 2019, memo to E. Trujillo from B. Larson. (STATE-003525-29.) | Lack of foundation, 401, 403, Motion in Limine, 602, 701, 801, 901<br><br>Duplicative of Plaintiff's exhibits 9, 89<br><br>**P's Response: Plaintiff will lay the foundation with the relevant witness(es). This exhibit corroborates Plaintiff's position that Defendants had knowledge of the risks resulting from conditions at ASPC Lewis and that they were obvious, and its use will not create prejudice, cause undue delay, or** |

-143-

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| | | confuse the issues.  This exhibit is proposed to the extent Defendants object to Plaintiff's proposed exhibits 8 & 89 in their entirety. Plaintiff will respond separately to the Motion in Limine. |
| 110 | February 12, 2019, memo to E.  Trujillo from G. Thompson. (STATE-003550-3553.) | Lack of foundation, 401, 403, Motion in Limine, 602, 701, 801, 901<br><br>Duplicative of Plaintiff's exhibits 9, 89<br><br>**P's Response:  Plaintiff will lay the foundation with the relevant witness(es).   Not hearsay under Rules 801 and 803.    This exhibit corroborates    Plaintiff's    position    that Defendants   had   knowledge   of   the   risks resulting from conditions at ASPC Lewis and that they were obvious, and its use will not create   prejudice,   cause   undue   delay,   or confuse the issues.  This exhibit is proposed to the extent Defendants object to Plaintiff's proposed   exhibits   8   &   89   in   their   entirety. Plaintiff will respond separately to the Motion in Limine.** |
| 111 | March 5, 2019, memo to E.  Trujillo from G. Thompson. (STATE-003554-3557.) | Lack of foundation, 401, 403, Motion in Limine, 602, 701, 801, 901<br><br>Duplicative of Plaintiff's exhibits 9, 89<br><br>**P's Response:  Plaintiff will lay the foundation with the relevant witness(es).   Not hearsay under Rules 801 and 803.    This exhibit corroborates    Plaintiff's    position    that Defendants   had   knowledge   of   the   risks resulting from conditions at ASPC Lewis and that they were obvious, and its use will not create   prejudice,   cause   undue   delay,   or confuse the issues.  This exhibit is proposed to the extent Defendants object to Plaintiff's proposed   exhibits   8   &   89   in   their   entirety. Plaintiff will respond separately to the Motion in Limine.** |
| 112 | April 5, 2019, memo to E. Trujillo from G. Thompson. | Lack of foundation, 401, 403, Motion in Limine, 602, 701, 801, 901 |

158250145

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| | (STATE-003558-563.) | Duplicative of Plaintiff's exhibits 9, 89 **P's Response: Plaintiff will lay the foundation with the relevant witness(es). Not hearsay under Rules 801 and 803. This exhibit corroborates Plaintiff's position that Defendants had knowledge of the risks resulting from conditions at ASPC Lewis and that they were obvious, and its use will not create prejudice, cause undue delay, or confuse the issues. This exhibit is proposed to the extent Defendants object to Plaintiff's proposed exhibits 8 & 89 in their entirety. Plaintiff will respond separately to the Motion in Limine.** |
| 113 | OIG Investigative Report for incident dated 3/25/2018. (STATE-004287-4298.) | Lack of foundation, hearsay, 401, 403, Motion in Limine, 602, 701, 801, 901 **P's Response: Plaintiff will lay a foundation with the appropriate witness(es). Not hearsay under Rules 801 and 803. Document is not hearsay because it is being used to prove notice; it is also highly relevant. Rule 801 applies. This report also falls within a hearsay exception (business record, public record, etc.). The report is relevant to Plaintiff's claims and supports his allegations, and its use will not create prejudice, cause undue delay, or confuse the issues. Plaintiff will separately respond to the pending MIL.** |
| 114 | Arizona Department of Corrections log for E. Crago (STATE-000415.) | Lack of foundation, 401, 403, 602, 701, 801, 901 **P's Response: Plaintiff will lay Not hearsay under Rules 801 and 803. Document is not hearsay because it is being used to prove notice; it is also highly relevant. Rule 801 applies. This report also falls within a hearsay exception (business record, public record, etc.). The report is relevant to Plaintiff's claims and supports his allegations, and its use will not create prejudice, cause undue delay, or confuse the issues. Plaintiff will separately respond to the pending MIL. a foundation with the relevant witness(es).** |

158250145

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| 115 | ADC Department Order Manual, Ch. 700. | Lack of foundation, non-disclosure, 401, 403, 602, 701, 801, 901<br><br>**P's Response:  Plaintiff will lay foundation with the relevant witness(es).   This is a publicly available document that Defendants have had access to throughout the course of this litigation.  Not hearsay under Rules 801 and 803.  Document is not hearsay because it is being used to prove notice; it is also highly relevant.  Rule 801 applies.  This report also falls within a hearsay exception (business record, public record, etc.).   The report is relevant to Plaintiff's claims and supports his allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.  Plaintiff will separately respond to the pending MIL.** |
| 116 | Buckley Weekly Reconciliation of Security Device Deficiencies dated 9/16/2018 (from B. Whiting to B.  Larson) (STATE-003633-3667.) | Lack of foundation, 401, 403, hearsay, 602, 701, 801, 901<br><br>Duplicative of Plaintiff's Exhibit 12<br><br>**P's Response:  Plaintiff will lay the foundation with the relevant witness(es).   Not hearsay under Rules 801 and 803.   This exhibit corroborates Plaintiff's position that Defendants had knowledge of the risks resulting from conditions at ASPC Lewis and that they were obvious, and its use will not create prejudice, cause undue delay, or confuse the issues.  This exhibit is proposed to the extent Defendants object to Plaintiff's proposed Ex. 12 in its entirety.** |
| 117 | Buckley Weekly Reconciliation of Security Device Deficiencies, dated 3/1/2019, from J. Pitz to G. Thompson (STATE-003770-3773.) | Lack of foundation, 401, 403, hearsay, 602, 701, 801, 901<br><br>Duplicative of Plaintiff's Exhibit 12<br><br>**P's Response:  Plaintiff will lay the foundation with the relevant witness(es).   Not hearsay under Rules 801 and 803.   This exhibit corroborates Plaintiff's position that Defendants had knowledge of the risks resulting from conditions at ASPC Lewis and that they were obvious, and its use will not create prejudice, cause undue delay, or** |

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| | | confuse the issues.  **This exhibit is proposed to the extent Defendants object to Plaintiff's proposed Ex. 12 in its entirety.** |
| 118 | Unit Coordinator Grievance Log (STATE- 000410.) | Lack of foundation, 401, 403, hearsay, 602, 701, 801, 901<br><br>**P's Response: Plaintiff will lay the foundation with the relevant witness(es).  Not hearsay under Rules 801 and 803.   This exhibit corroborates Plaintiff's position that Defendants had knowledge of the risks resulting from conditions at ASPC Lewis and that they were obvious, and its use will not create prejudice, cause undue delay, or confuse the issues.** |
| 119 | ADC SSU Memorandum (STATE-000599.) | Lack of foundation, 401, 403, hearsay, 602, 701, 801, 901<br><br>**P's Response: Plaintiff will lay the foundation with the relevant witness(es).  Not hearsay under Rules 801 and 803.   This exhibit corroborates Plaintiff's position that Defendants had knowledge of the risks resulting from conditions at ASPC Lewis and that they were obvious, and its use will not create prejudice, cause undue delay, or confuse the issues.** |
| 120 | ADC Memo to B.  Larson from J. Weiss, dated Sept. 4, 2018. (STATE-003206-3209.) | Lack of foundation, 401, 403, Motion in Limine, hearsay, 602, 701, 801, 901<br><br>**P's Response: Plaintiff will lay the foundation with the relevant witness(es).  Not hearsay under Rules 801 and 803.   This exhibit corroborates Plaintiff's position that Defendants had knowledge of the risks resulting from conditions at ASPC Lewis and that they were obvious, and its use will not create prejudice, cause undue delay, or confuse the issues.** |

158250145

Case 2:19-cv-04532-ROS   Document 340   Filed 09/19/22   Page 151 of 192

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| 121 | Buckley Weekly Reconciliation of Security Device Deficiencies, dated 10/5/2018, from V. Williamson to B. Larson (STATE-003676-3683.) | Lack of foundation, 401, 403, hearsay, 602, 701, 801, 901<br><br>Duplicative of Plaintiff's Exhibit 12<br><br>**P's Response: Plaintiff will lay the foundation with the relevant witness(es). Not hearsay under Rules 801 and 803. This exhibit corroborates Plaintiff's position that Defendants had knowledge of the risks resulting from conditions at ASPC Lewis and that they were obvious, and its use will not create prejudice, cause undue delay, or confuse the issues. This exhibit is proposed to the extent Defendants object to Plaintiff's proposed Ex. 12 in its entirety.** |
| 122 | Buckley Weekly Reconciliation of Security Device Deficiencies, dated 3/22/2019, from J. Pitz to G. Thompson (STATE- 003782-3785.) | Lack of foundation, 401, 403, hearsay, 602, 701, 801, 901<br><br>Duplicative of Plaintiff's Exhibit 12<br><br>**P's Response: Plaintiff will lay the foundation with the relevant witness(es). Not hearsay under Rules 801 and 803. This exhibit corroborates Plaintiff's position that Defendants had knowledge of the risks resulting from conditions at ASPC Lewis and that they were obvious, and its use will not create prejudice, cause undue delay, or confuse the issues. This exhibit is proposed to the extent Defendants object to Plaintiff's proposed Ex. 12 in its entirety.** |
| 123 | Inmate Informal Complaint Resolution by E. Crago, dated 10/29/2019. (CRAGO-000830.) | Hearsay, 401, 403, failure to timely disclose theory re: retaliation, 602, 701, 801, 901<br><br>**P's Response: Not hearsay under Rules 801 and 803. This exhibit falls under a hearsay exception because it is a recorded recollection (Fed. R. Evid. 803(5)). This exhibit is relevant because it tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues. Plaintiff's retaliation theory was disclosed and briefed extensively (e.g., in his summary judgment motion).** |

-148-

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| 124 | Inmate Grievance by E. Crago, dated 11/19/2019. (CRAGO-000831.) | Hearsay, 401, 403, failure to timely disclose theory re:  retaliation, 602, 701, 801, 901<br><br>**P's Response:  Not hearsay under Rules 801 and 803.  This exhibit falls under a hearsay exception because it is a recorded recollection (Fed. R. Evid. 803(5)).  This exhibit is relevant because it tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.   Plaintiff's retaliation theory was disclosed and briefed extensively (e.g., in his summary judgment motion).** |
| 125 | Notice of Hearing and Inmate Rights for E. Crago, dated 12/06/2019 (CRAGO-000832.) | Lack of foundation, 401, 403, failure to timely disclose theory re:  retaliation, 602, 701, 801, 901<br><br>**P's Response:  Not hearsay under Rules 801 and 803.  This exhibit falls under a hearsay exception because it is a recorded recollection (Fed. R. Evid. 803(5)).  This exhibit is relevant because it tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.   Plaintiff's retaliation theory was disclosed and briefed extensively (e.g., in his summary judgment motion).** |
| 126 | Inmate Property Inventory Supplement, dated 5/3/19 (CRAGO-000834.) | Lack of foundation, 401, 403, failure to timely disclose theory re:  retaliation, 602, 701, 801, 901<br><br>**P's Response:  Not hearsay under Rules 801 and 803.  This exhibit falls under a hearsay exception because it is a recorded recollection (Fed. R. Evid. 803(5)).  This exhibit is relevant because it tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.   Plaintiff's retaliation theory was disclosed and briefed extensively (e.g., in his summary judgment motion).** |

158250145

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| 127 | Inmate Informal Complaint Resolution for E. Crago, dated 3/23/2020 (CRAGO-000835.) | Hearsay, 401, 403, failure to timely disclose theory re: retaliation, 602, 701, 801, 901 **P's Response:  Not hearsay under Rules 801 and 803.  This exhibit falls under a hearsay exception because it is a recorded recollection (Fed. R. Evid. 803(5)).  This exhibit is relevant because it tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.  Plaintiff's retaliation theory was disclosed and briefed extensively (e.g., in his summary judgment motion).** |
| 128 | Inmate Letter Response for E. Crago, dated 4/21/2020 (CRAGO- 000836.) | Lack of foundation, 401, 403, failure to timely disclose theory re: retaliation, 602, 701, 801, 901 **P's Response:  Not hearsay under Rules 801 and 803.  This exhibit falls under a hearsay exception because it is a recorded recollection (Fed. R. Evid. 803(5)).  This exhibit is relevant because it tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.  Plaintiff's retaliation theory was disclosed and briefed extensively (e.g., in his summary judgment motion).** |
| 129 | Inmate Grievance by E. Crago, dated 4/8/2020 (CRAGO-000837.) | Hearsay, 401, 403, failure to timely disclose theory re: retaliation, 602, 701, 801, 901 P's Response:  Not hearsay under Rules 801 and 803.  This exhibit is relevant to Plaintiff's alleged injuries, and using it will not create prejudice, cause undue delay, or confuse the issues.  Plaintiff notes that this exhibit is an excerpt of the same exhibit as Defendants' proposed Ex. 405. This exhibit is proposed to the extent Defendants' object to Exhibit 136 in its entirety. |

158250145

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| 130 | Patient Record Synopsis for E.  Crago (STATE-006510-006512.) | 401, 403, 602, 701, 801, 901<br><br>Duplicative of Exhibit 136<br><br>**P's Response:  Not hearsay under Rules 801 and 803.  Inadvertent duplicate will be deleted provided the parties stipulated to Exhibit 136.  This exhibit is again proposed to the extent Defendants object to Plaintiff's proposed Ex. 136 in its entirety.  This exhibit is relevant to Plaintiff's alleged injuries, and using it will not create prejudice, cause undue delay, or confuse the issues.** |
| 131 | Health Problem/Condition Report for E.  Crago (STATE-006508-7115; specifically includes STATE-006519-6521, 6526-27, 6530, 6547, 6549, 6563, 6565-66, 6580, 6585-88, 6600, 6624, 6758, 6805, 7004, 7012-7013, 7104.) | Lack of foundation, 401, 403, 602, 701, 801, 901<br><br>**P's Response:  Defendants have themselves proposed this exhibit.  Plaintiff will stipulate to its use.  Plaintiff will lay foundation for this exhibit with the relevant witness(es).   Not hearsay under Rules 801 and 803.   This exhibit is relevant to Plaintiff's alleged injuries, and using it will not create prejudice, cause undue delay, or confuse the issues.** |
| 132 | Email from criminal investigation unit describing incident on February 1, 2019. (STATE000124.) | Lack of foundation, hearsay, duplicative, 401, 403, 602, 701, 801, 901<br><br>**P's Response:  Plaintiff will lay foundation with the relevant witness(es). This exhibit falls under a hearsay exception because it is a recorded recollection, record of regularly conducted activity, or public record (Fed. R. Evid. 803(5), (6) & (8). Defendants' objection that this exhibit is duplicative is vague and confusing because it does not specify to which of the proposed exhibits such information may be duplicative.** |

158250145

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| 133 | DOC interview notes with Tara Diaz on June 18, 2019. (STATE006414-17.) | Hearsay within hearsay, 401, 403, motion in limine, 602, 701, 801, 901<br><br>To the extent Plaintiff intends to introduce these under Fed. R. Evid 801(d)(2):  declarant is not a party, insufficient disclosure<br><br>Duplicative of Plaintiff's Exhibit 14<br><br>**P's Response:   This exhibit falls within a hearsay exception because it is a public record and/or business record (Fed. R. Evid. 803(6) & (8)), is not hearsay because the declarant made the statement while he/she was the party's agent or employee on a matter within the scope of that relationship and while the relationship existed (Fed. R. Evid. 801(d)(2)(D)), or in the case of an unavailable witness was a statement against his/her interest (Fed. R. Evid. 804(b)(3)).  This exhibit tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.  Plaintiff notes that this is the is an excerpt of the same document that is Defendants' proposed Ex. 425. This exhibit is proposed to the extent Defendants object to Plaintiff's proposed Ex.  14 in its entirety.  Plaintiff will separately respond to the pending MIL.** |
| 134 | Interview notes for Captain Luis Matos on June 24, 2019. (STATE006423-32) | Hearsay within hearsay, 401, 403, Motion in Limine, 602, 701, 801, 901<br><br>To the extent Plaintiff intends to introduce these under Fed. R. Evid 801(d)(2):  declarant is not a party, insufficient disclosure<br><br>Duplicative of Plaintiff's Exhibit 14<br><br>**P's Response:   This exhibit falls within a hearsay exception because it is a public record and/or business record (Fed. R. Evid. 803(6) & (8)), is not hearsay because the declarant made the statement while he/she was the party's agent or employee on a matter within the scope of that relationship and while the relationship existed (Fed. R. Evid. 801(d)(2)(D)), or in the case of an unavailable witness was a statement** |

-152-

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| | | **against his/her interest (Fed. R. Evid. 804(b)(3)).  This exhibit tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.  Plaintiff notes that this is the is an excerpt of the same document that is Defendants' proposed Ex.  425.  This exhibit is proposed to the extent Defendants object to Plaintiff's proposed Ex.  14 in its entirety.  Plaintiff will separately respond to the pending MIL.** |
| 135 | Arizona Department of Corrections Department Order 806. (STATE000091-118.) | Lack of foundation, hearsay, 401, 403, 602, 701, 801, 901<br><br>**P's Response:  Plaintiff will lay foundation with the relevant witness(es).** |
| 136 | Video from February 26, 2018.  (STATE-006322.) | Lack of foundation, 401, 403, Motion in Limine.<br><br>**P's Response: Plaintiff will lay the foundation with the relevant witness(es).  This exhibit corroborates Plaintiff's position that Defendants had knowledge of the risks resulting from conditions at ASPC Lewis and that they were obvious, and its use will not create prejudice, cause undue delay, or confuse the issues.  Plaintiff will separately respond to the pending MIL.** |
| 137 | Video from February 26, 2018.  (STATE-006323.) | Lack of foundation, 401, 403, Motion in Limine, 602, 701, 801, 901<br><br>**P's Response: Plaintiff will lay the foundation with the relevant witness(es).  This exhibit corroborates Plaintiff's position that Defendants had knowledge of the risks resulting from conditions at ASPC Lewis and that they were obvious, and its use will not create prejudice, cause undue delay, or confuse the issues.  Plaintiff will separately respond to the pending MIL.** |

158250145

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| 138 | Video from September 27, 2018. (STATE- 006325.) | Lack of foundation, 401, 403, Motion in Limine, 602, 701, 801, 901<br><br>**P's Response: Plaintiff will lay the foundation with the relevant witness(es). This exhibit corroborates Plaintiff's position that Defendants had knowledge of the risks resulting from conditions at ASPC Lewis and that they were obvious, and its use will not create prejudice, cause undue delay, or confuse the issues. Plaintiff will separately respond to the pending MIL.** |
| 139 | Video from October 30, 2018. (STATE-006327.) | Lack of foundation, 401, 403, Motion in Limine, 602, 701, 801, 901<br><br>**P's Response: Plaintiff will lay the foundation with the relevant witness(es). This exhibit corroborates Plaintiff's position that Defendants had knowledge of the risks resulting from conditions at ASPC Lewis and that they were obvious, and its use will not create prejudice, cause undue delay, or confuse the issues. Plaintiff will separately respond to the pending MIL.** |
| 140 | Video from October 5, 2018. (STATE-006328.) | Lack of foundation, 401, 403, Motion in Limine, 602, 701, 801, 901<br><br>**P's Response: Plaintiff will lay the foundation with the relevant witness(es). This exhibit corroborates Plaintiff's position that Defendants had knowledge of the risks resulting from conditions at ASPC Lewis and that they were obvious, and its use will not create prejudice, cause undue delay, or confuse the issues. Plaintiff will separately respond to the pending MIL.** |

-154-

158250145

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| 141 | Video from October 30, 2018.  (STATE-006329.) | Lack of foundation, 401, 403, Motion in Limine, 602, 701, 801, 901<br><br>**P's Response:  Plaintiff will lay the foundation with the relevant witness(es).  This exhibit corroborates Plaintiff's position that Defendants had knowledge of the risks resulting from conditions at ASPC Lewis and that they were obvious, and its use will not create prejudice, cause undue delay, or confuse the issues.  Plaintiff will separately respond to the pending MIL.** |
| 142 | Video from September 27, 2018.  (STATE- 006330.) | Lack of foundation, 401, 403, 602, 701, 801, 901<br><br>**P's Response:  Plaintiff will lay the foundation with the relevant witness(es).  This exhibit corroborates Plaintiff's position that Defendants had knowledge of the risks resulting from conditions at ASPC Lewis and that they were obvious, and its use will not create prejudice, cause undue delay, or confuse the issues.  Plaintiff will separately respond to the pending MIL.** |
| 143 | Video from November 11, 2018.  (STATE-006331.) | Lack of foundation, 401, 403, Motion in Limine, 602, 701, 801, 901<br><br>**P's Response:  Plaintiff will lay the foundation with the relevant witness(es).  This exhibit corroborates Plaintiff's position that Defendants had knowledge of the risks resulting from conditions at ASPC Lewis and that they were obvious, and its use will not create prejudice, cause undue delay, or confuse the issues.  Plaintiff will separately respond to the pending MIL.** |

-155-

158250145

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| 144 | Video from September 27, 2018.  (STATE-006332.) | Lack of foundation, 401, 403, Motion in Limine, 602, 701, 801, 901<br><br>**P's Response:  Plaintiff will lay the foundation with the relevant witness(es).  This exhibit corroborates Plaintiff's position that Defendants had knowledge of the risks resulting from conditions at ASPC Lewis and that they were obvious, and its use will not create prejudice, cause undue delay, or confuse the issues.  Plaintiff will separately respond to the pending MIL.** |
| 145 | Video from October 29, 2018.  (STATE-006333.) | Lack of foundation, 401, 403, Motion in Limine, 602, 701, 801, 901<br><br>**P's Response:  Plaintiff will lay the foundation with the relevant witness(es).  This exhibit corroborates Plaintiff's position that Defendants had knowledge of the risks resulting from conditions at ASPC Lewis and that they were obvious, and its use will not create prejudice, cause undue delay, or confuse the issues.  Plaintiff will separately respond to the pending MIL.** |
| 146 | Video from October 29, 2018.  (STATE-006334.) | Lack of foundation, 401, 403, Motion in Limine, 602, 701, 801, 901<br><br>**P's Response:  Plaintiff will lay the foundation with the relevant witness(es).  This exhibit corroborates Plaintiff's position that Defendants had knowledge of the risks resulting from conditions at ASPC Lewis and that they were obvious, and its use will not create prejudice, cause undue delay, or confuse the issues.  Plaintiff will separately respond to the pending MIL.** |
| 147 | Staffing reports (STATE-000609-1492) | Lack of foundation, 401, 403, Motion in Limine, hearsay, 602, 701, 801, 901<br><br>Duplicative<br><br>P's Response:  Plaintiff will lay the foundation with the relevant witness(es).  Not hearsay under Rules 801 and 803.   This exhibit tends to corroborate Plaintiff's allegations, and its use |

-156-

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| | | will not create prejudice, cause undue delay, or confuse the issues.  Plaintiff will separately respond to the pending MIL. Defendants' objection that this exhibit is duplicative is vague and confusing because it does not specify to which of the proposed exhibits such information may be duplicative. |
| 148 | 1006 summary of staffing reports (STATE-000609-1492) | 401, 403, Motion in Limine, not produced, hearsay, 602, 701, 801, 901<br><br>**P's Response:  This exhibit is relevant to Plaintiff's allegations. Defendants' objections are vague as no Motion in Limine appears to apply.  Not hearsay under Rules 801 and 803. Plaintiff will separately respond to the pending MIL. Plaintiff will provide a 1006 summary in advance of trial.** |
| 149 | Door repair reports (STATE-002103-3309, STATE-003570-736, and STATE-003737-801) | Lack of foundation, 401, 403, Motion in Limine, hearsay, 602, 701, 801, 901,<br><br>**P's Response:  Defendants have themselves proposed this exhibit (STATE-002103- 003309).  Plaintiff will stipulate to its use.** |
| 150 | 1006 summary of door repair reports (STATE- 002103-3309, STATE-003570-736, and STATE-003737-801) | 401, 403, Motion in Limine, not produced, hearsay, 602, 701, 801, 901<br><br>**P's Response:  This exhibit is relevant to Plaintiff's allegations.  Not hearsay under Rules 801 and 803.  Defendants' objections are vague as no Motion in Limine appears to apply.  Plaintiff will separately respond to the pending MIL. Plaintiff will provide a 1006 summary in advance of trial.** |

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| 151 | Data regarding the number of validated members of STGs who were assigned to ASPC-Lewis, Buckley between 2017-19. | Not timely (never) disclosed; not timely raised with Court.  All objections reserved.  401, 403, 602, 701, 801, 901<br><br>Will supplement with additional objections if discovery allowed.<br><br>**P's Response:  We understand that the Court (Doc. 124 at 8-9 item iii) ordered Defendants to produce this information.   Not hearsay under Rules 801 and 803.  Probative and not prejudicial or confusing.** |
| 152 | Unredacted versions of the following:<br>STATE- 000516, 560, 578, 580, 587, 591, 599, 119-124. | Not timely (never) disclosed; not timely raised with Court.  All objections reserved.  401, 403, 602, 701, 801, 901<br><br>Will supplement with additional objections if discovery allowed.<br><br>**P's Response:   We understand that these documents were redactions related to STG designations and are responsive to Plaintiff's document requests.  Not hearsay under Rules 801 and 803.  Probative and not prejudicial or confusing.** |
| 153 | Arizona Department of Corrections ASPC-Lewis/Buckley Unit SSU Memorandum for May 2019 for Arturo Flores, Hector Ruiz, and Levi Bodine. | Not timely (never) disclosed; not timely raised with Court.  All objections reserved.  401, 403, 602, 701, 801, 901<br><br>Will supplement with additional objections if discovery allowed.<br><br>**P's Response:  We understand that the Court (Doc. 124 at 13) ordered Defendants to produce this information.  Not hearsay under Rules 801 and 803.   Probative and not prejudicial or confusing.** |

158250145

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| 154 | Notice of Appeal-Max Custody Placement submitted at SMU-1 in May/June 2019 by inmates Flores, Ruiz, and Bodine. | Not timely (never) disclosed; not timely raised with Court.  All objections reserved.  401, 403, 602, 701, 801, 901<br><br>Will supplement with additional objections if discovery allowed.<br><br>**P's Response:  We understand that the Court (Doc. 124 at 13) ordered Defendants to produce this information.  This exhibit falls within a hearsay exception because it is a public record and/or business record (Fed. R. Evid. 803(6) & (8).  This exhibit tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.  Plaintiff will lay the foundation for this exhibit with the relevant witness(es).** |
| 155 | Objection to Maximum Custody Placement submitted at SMU-1 in May/June 2019 by inmates Flores, Ruiz, and Bodine. | Not timely (never) disclosed; not timely raised with Court.  All objections reserved.  401, 403, 602, 701, 801, 901<br><br>Will supplement with additional objections if discovery allowed.<br><br>**P's Response:  We understand that the Court (Doc. 124 at 13) ordered Defendants to produce this information.  Not hearsay under Rules 801 and 803.  Probative and not prejudicial or confusing.** |
| 156 | Incident Reports for inmates UAing doors at Buckley (see STATE-006463-6471.) | Hearsay, lack of foundation, incomplete, does not comply with Rule 1006, 401, 403, 602, 701, 801, 901<br><br>Duplicative of Plaintiff's Exhibit 14<br><br>**P's Response:  We understand that the Court (Doc. 124 at 13) ordered Defendants to produce this information.  We would like the underlying reports referenced in the notes.  This exhibit falls within a hearsay exception because it is a public record and/or business record (Fed. R. Evid. 803(6) & (8)), is not hearsay because the declarant made the statement while he/she was the party's agent or employee on a matter within the scope of that** |

-159-

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| | | relationship and while the relationship existed (Fed. R. Evid. 801(d)(2)(D)), or in the case of an unavailable witness was a statement against his/her interest (Fed. R. Evid. 804(b)(3)).  This exhibit tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.   Plaintiff will lay the foundation for this exhibit with the relevant witness(es). |
| 157 | Full inmate record for Kelvin Barnett (not just the publicly available version). | Not timely (never) disclosed.   All objections reserved.  401, 403, 602, 701, 801, 901<br><br>**P's Response:   Defendants produced the publicly available version.   However, this version does not include all relevant information for Barnett.   This exhibit falls within a hearsay exception because it is a public record and/or business record (Fed. R. Evid. 803(6) & (8).   This exhibit tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues.   Plaintiff will lay the foundation for this exhibit with the relevant witness(es).** |
| 158 | Answer to Third Amended Complaint (Doc. 224). | 401, 403, 602, 701, 801, 901<br><br>**Not hearsay under Rules 801 and 803.  This exhibit tends to corroborate Plaintiff's allegations, and its use will not create prejudice, cause undue delay, or confuse the issues. Plaintiff will lay the foundation for this exhibit with the relevant witness(es).** |
| 159 | Crago Inmate Informal Complaint Resolution, 12-5-18, CRAGO001283 | **Hearsay, 403 (cumulative), failure to timely disclose, 901[8]**<br><br>**P's Response: The document falls under the hearsay exception as a recorded recollection. Fed. R. Evid. 803(5)). Defendant Pitz's statements are not hearsay because they are** |

---

[8] The parties previously agreed to withdraw all 901 objections, but at the time of that agreement, Defendants were unaware of Exhibits 159 and 160. Defendants challenge the authenticity of these documents and assert Rule 901 objections as to these, only.

158250145

| Exhibit No. | Description | Objections and Responses |
|---|---|---|
| | | party admissions. **FRE 801(d)(2)(D). Each notice provided by Plaintiff or others regarding the potential risk of harm is not cumulative but material to Plaintiff's claims. Plaintiff was unable to disclose because, as alleged in the complaint, his legal box, which was in the custody of Arizona Department of Corrections, containing copies of these notices was lost or otherwise misplaced until the disclose was made. Plaintiff will authenticate this document.** |
| 160 | Crago Inmate Grievance, 12-14-18, CRAGO001284 | Hearsay, 403 (cumulative), failure to timely disclose, 901 <br><br> **P's Response: The document falls under the hearsay exception as a recorded recollection. Fed. R. Evid. 803(5)). Defendant Pitz's statements are not hearsay because they are party admissions. FRE 801(d)(2)(D). Each notice provided by Plaintiff or others regarding the potential risk of harm is not cumulative but material to Plaintiff's claims. Plaintiff was unable to disclose because, as alleged in the complaint, his legal box, which was in the custody of Arizona Department of Corrections, containing copies of these notices was lost or otherwise misplaced until the disclose was made. Plaintiff will authenticate this document.** |
| 161 | ABC 15 Arizona Article dated August 15, 2019 including Arizona Department of Corrections Response to Berch and McGregor Report to the Governor. | |

-161-

158250145

## DEFENDANTS' TRIAL EXHIBIT LIST[9]

| # | Description | Bates Range/Docket cite | Plaintiff's Objections and Defendants' Responses |
|---|---|---|---|
| 300 | Plaintiff Earl Crago's Public AIMS Report | STATE-000001-000013 | Fed. R. Evid. 401 & 403; Plt.'s Mot. in Limine Nos. 2 & 3.<br><br>**Defs' Response: This demonstrates Plt's movement history at relevant times; His disciplinary history is s relevant under Fed. R. Evid. 404(b) and 608(b); his convictions are relevant under 609.** |
| 301 | Grievance Appeal L21-185-0l7, August 17, 2017, Buckley re: leaked memos with informants | STATE-000037-000041 | Fed. R. Evid. 401, 403, 602, 701, 801 & 901.<br><br>**Defs' Response: This is nonhearsay under 801(d) as it is Plts' statements.** |
| 302 | Disciplinary Appeal dated 1/25/2018 regarding cell phone found in cell | STATE-000042-000052 | Fed. R. Evid. 401, 403, 404 & 801; Plt.'s Mot. in Limine No. 3.<br><br>**Defs' Response: This is nonhearsay under 801(d) as it is Plts' statements; See also Fed. R. Evid. 404(b) and 608(b); *Tapp v. Tougas*, 2018 U.S. Dist. LEXIS 66743, at *10 (N.D.N.Y. Apr. 20, 2018) (holding an inmate's past discipline for "false info.", "impersonation", and "counterfeiting" was admissible to show his character for truthfulness.).** |
| 303 | Disciplinary ticket dated 2/12/2019 for cell phone found in cell 3D19, Crago's | STATE-000053 | Fed. R. Evid. 401, 403, & 404; Plt.'s Mot. in Limine No. 3<br><br>**Defs' Response: This is nonhearsay under 801(d) as** |

---

[9] Defendants have listed many exhibits pending rulings on Motions in Limine and are not "offering" for admission all exhibits on their list.

| # | Description | Bates Range/Docket cite | Plaintiff's Objections and Defendants' Responses |
|---|---|---|---|
| | cell | | it is Plts' statements; See also Fed. R. Evid. 404(b) and 608(b); *Tapp v. Tougas*, 2018 U.S. Dist. LEXIS 66743, at *10 (N.D.N.Y. Apr. 20, 2018) (holding an inmate's past discipline for "false info.", "impersonation", and "counterfeiting" was admissible to show his character for truthfulness.). |
| 304 | Disciplinary Appeal 19-L29-0384 for ticket dated 2/12/2019 Buckley re 2 cell phones | STATE-000054-000073 | Fed. R. Evid. 401, 403, 404 & 801; Plt.'s Mot. in Limine No. 3<br><br>**Defs' Response:   This is nonhearsay under 801(d) as it is Plts' statements; See also Fed. R. Evid. 404(b) and 608(b); *Tapp v. Tougas*, 2018 U.S. Dist. LEXIS 66743, at *10 (N.D.N.Y. Apr. 20, 2018) (holding an inmate's past discipline for "false info.", "impersonation", and "counterfeiting" was admissible to show his character for truthfulness.).** |
| | | | |
| | | | |
| 305 | Inmate Discipline Investigation Report 3/6/2007 No. 07C30004 Santa Rita re: lawsuits retaliation | STATE-000236 | Fed. R. Evid. 401, 403, 404, 801, 901; Plt.'s Mot. in Limine No. 3.<br><br>**Defs' Response:   This is nonhearsay under 801(d) as it is Plts' statements; See also Fed. R. Evid. 404(b) and 608(b); *Tapp v. Tougas*, 2018 U.S. Dist. LEXIS 66743, at *10 (N.D.N.Y. Apr. 20, 2018) (holding an inmate's past discipline for "false info.", "impersonation", and** |

158250145

| # | Description | Bates Range/Docket cite | Plaintiff's Objections and Defendants' Responses |
|---|---|---|---|
| | | | "counterfeiting" was admissible to show his character for truthfulness.). |
| 306 | Disciplinary Packet No. 09- L06-2667 Barchey re: fighting | STATE-000238-000250 | Fed. R. Evid. 401, 403, 404, 801, 901; Plt.'s Mot. in Limine Nos. 2 & 3.<br><br>**Defs' Response:   This is nonhearsay under 801(d) as it is Plts' statements; See also Fed. R. Evid. 404(b) and 608(b)** |
| 307 | Inmate Disciplinary Documents No. 12-L25-0663 Barchey re: disorderly conduct at classification hearing | STATE-000251-000256 | Fed. R. Evid. 401, 403, 404, 801, 901; Plt.'s Mot. in Limine No. 3.<br><br>**Defs' Response:   This is nonhearsay under 801(d) as it is Plts' statements; See also Fed. R. Evid. 404(b) and 608(b)** |
| 308 | Inmate Disciplinary Documents No. 12-L32-0678 Rast re: disorderly & intimidating conduct | STATE-000263-000268 | Fed. R. Evid. 401, 403, 404, 801, 901; Plt.'s Mot. in Limine No. 3.<br><br>**Defs's Response:   This is nonhearsay under 801(d) as it is Plts' statements; See also Fed. R. Evid. 404(b) and 608(b); *Tapp v. Tougas*, 2018 U.S. Dist. LEXIS 66743, at \*10 (N.D.N.Y. Apr. 20, 2018) (holding an inmate's past discipline for "false info.", "impersonation", and "counterfeiting" was admissible to show his character for truthfulness.).** |
| 309 | Inmate Disciplinary Documents 2/18/2014 No. 14- L29-0072 | STATE-000274-000281 | Fed. R. Evid. 401, 403, 404, 801, 901; Plt.'s Mot. in Limine No. 3.<br><br>**Defs' Response:   This is** |

158250145

| # | Description | Bates Range/Docket cite | Plaintiff's Objections and Defendants' Responses |
|---|---|---|---|
| | Buckley re: fighting | | nonhearsay under 801(d) as it is Plts' statements; See also Fed. R. Evid. 404(b) and 608(b). |
| 310 | Inmate Disciplinary Documents No. 16-M90-0146 Red Rock re: conspiracy to promote the sale & distribution of drugs | STATE-000282-000296 | Fed. R. Evid. 401, 403, 404, 801, 901; Plt.'s Mot. in Limine Nos. 2 & 3.<br><br>**Defs' Response: This is nonhearsay under 801(d) as it is Plts' statements; See also Fed. R. Evid. 404(b) and 608(b); *Tapp v. Tougas*, 2018 U.S. Dist. LEXIS 66743, at \*10 (N.D.N.Y. Apr. 20, 2018) (holding an inmate's past discipline for "false info.", "impersonation", and "counterfeiting" was admissible to show his character for truthfulness.).** |
| 311 | Inmate Disciplinary Documents 9/8/2016 No. 16L31-1502 Barchey re: threatening & intimidating; predatory activity to include drug trafficking | STATE-000297, STATE-000300, STATE-000302 | Fed. R. Evid. 401, 403, 404, 801, 901; Plt.'s Mot. in Limine Nos. 2 & 3.<br><br>**Defs' Response: This is nonhearsay under 801(d) as it is Plts' statements; See also Fed. R. Evid. 404(b) and 608(b); *Tapp v. Tougas*, 2018 U.S. Dist. LEXIS 66743, at \*10 (N.D.N.Y. Apr. 20, 2018) (holding an inmate's past discipline for "false info.", "impersonation", and "counterfeiting" was admissible to show his character for truthfulness.).** |
| | | | |
| 312 | Inmate Disciplinary Documents 9/12/2016 No. 16- L31-1522 Rast re: possession of | STATE-000298 | Fed. R. Evid. 401, 403, 404, 801, 901; Plt.'s Mot. in Limine No. 3.<br><br>**Defs' Response: This is nonhearsay under 801(d) as** |

-165-

158250145

| # | Description | Bates Range/Docket cite | Plaintiff's Objections and Defendants' Responses |
|---|---|---|---|
| | cellphone charger in "legal mail" | | it is Plts' statements; **See also Fed. R. Evid. 404(b) and 608(b);** *Tapp v. Tougas,* **2018 U.S. Dist. LEXIS 66743, at \*10 (N.D.N.Y. Apr. 20, 2018) (holding an inmate's past discipline for "false info.", "impersonation", and "counterfeiting" was admissible to show his character for truthfulness.).** |
| 313 | Inmate Disciplinary Documents No. 16-L31-1534 Rast re: possession of confidential State Memos that resulted in inmate assault | STATE-000299, STATE-000301 | Fed. R. Evid. 401, 403, 404, 801, 901; Plt.'s Mot. in Limine No. 3. **Defs' Response: This is nonhearsay under 801(d) as it is Plts' statements; See also Fed. R. Evid. 404(b) and 608(b);** *Tapp v. Tougas,* **2018 U.S. Dist. LEXIS 66743, at \*10 (N.D.N.Y. Apr. 20, 2018) (holding an inmate's past discipline for "false info.", "impersonation", and "counterfeiting" was admissible to show his character for truthfulness.).** |
| 314 | Second-Level Disciplinary Appeal Package 1/25/2018 No. 18 L29-0017 Buckley re possession of cellphone, charger, and SIM card | STATE-000303-000314 | Fed. R. Evid. 401, 403, 404 & 801; Plt.'s Mot. in Limine No. 3; duplicative of proposed Ex. 307. **Defs' Response: This is nonhearsay under 801(d) as it is Plts' statements; See also Fed. R. Evid. 404(b) and 608(b);** *Tapp v. Tougas,* **2018 U.S. Dist. LEXIS 66743, at \*10 (N.D.N.Y. Apr. 20, 2018) (holding an inmate's past discipline for "false info.", "impersonation", and "counterfeiting" was admissible to show his** |

158250145

| # | Description | Bates Range/Docket cite | Plaintiff's Objections and Defendants' Responses |
|---|---|---|---|
| | | | character for truthfulness.). |
| 315 | Inmate Letter & Response, 10/28/2005, 05-1608 Eyman SMU I re: assault with deadly weapon and alleging retaliation and offering to drop complaint if moved from SMU | STATE-000315, STATE-000317 | Fed. R. Evid. 401, 403, 404, 801, 901; Plt.'s Mot. in Limine No. 3. **Defs' Response: This is nonhearsay under 801(d) as it is Plts' statements; See also Fed. R. Evid. 404(b) and 608(b); *Tapp v. Tougas*, 2018 U.S. Dist. LEXIS 66743, at \*10 (N.D.N.Y. Apr. 20, 2018) (holding an inmate's past discipline for "false info.", "impersonation", and "counterfeiting" was admissible to show his character for truthfulness.).** |
| 316 | Information Report 10/8/1998 No. 3-A08-10116 SMU re: IM allegation against Crago extortion | STATE-000316 | Fed. R. Evid. 401, 403, 404, 801, 901; Plt.'s Mot. in Limine No. 3. **Defs' Response: This is nonhearsay under 801(d) as it is Plts' statements; See also Fed. R. Evid. 404(b) and 608(b); *Tapp v. Tougas*, 2018 U.S. Dist. LEXIS 66743, at \*10 (N.D.N.Y. Apr. 20, 2018) (holding an inmate's past discipline for "false info.", "impersonation", and "counterfeiting" was admissible to show his character for truthfulness.).** |
| 317 | Inmate Letter 2/24/2010 & Response re: alleged administration segregation as act of retaliation for filing lawsuits | STATE-000332-000333 | Fed. R. Evid. 401, 403 & 801. **Defs' Response: This is nonhearsay under 801(d) as it is Plts' statements; See also Fed. R. Evid. 404(b) and 608(b); *Tapp v. Tougas*, 2018 U.S. Dist. LEXIS 66743, at \*10 (N.D.N.Y. Apr. 20, 2018) (holding an inmate's past discipline for "false** |

-167-

| # | Description | Bates Range/Docket cite | Plaintiff's Objections and Defendants' Responses |
|---|---|---|---|
| | | | info.", "impersonation", and "counterfeiting" was admissible to show his character for truthfulness.). |
| 318 | Memorandum dated 3/26/2012 from R. Lopez to DW Currier, Barchey re: extortion; father of inmate complaining about it, saying son will be stabbed if he does not pay Crago. | STATE-000334 | Fed. R. Evid. 401, 403, 404, 801, 901; Plt.'s Mot. in Limine No. 3.<br><br>**Defs' Response: Ds will lay the appropriate foundation; See Fed. R. Evid. 404(b) and 608(b); *Tapp v. Tougas*, 2018 U.S. Dist. LEXIS 66743, at \*10 (N.D.N.Y. Apr. 20, 2018) (holding an inmate's past discipline for "false info.", "impersonation", and "counterfeiting" was admissible to show his character for truthfulness.).** |
| 319 | Maximum Custody Placement Recommendation dated 5/9/2012 / Approval - Barchey, in part because of 3/26/2012 Memo | STATE-000335-000338 | Fed. R. Evid. 401, 403, 404, 801, 901; Plt.'s Mot. in Limine No. 3.<br><br>**Defs' Response: Ds will lay the appropriate foundation; state of mind evidence; See also Fed. R. Evid. 404(b) and 608(b); *Tapp v. Tougas*, 2018 U.S. Dist. LEXIS discipline for "false info.", "impersonation", and "counterfeiting" was admissible to show his character for truthfulness.).** |
| 320 | Information Report 5/9/2012 No. 12- L31-1283 Barchey re: refusing to house because $1000 debt owed to Crago | STATE-000339-000341 | Fed. R. Evid. 401, 403, 404, 801, 901; Plt.'s Mot. in Limine No. 3.<br><br>**Defs' Response: Ds will lay the appropriate foundation state of mind evidence; See also Fed. R. Evid. 404(b) and 608(b); *Tapp v. Tougas*, 2018 U.S. Dist. LEXIS 66743, at \*10 (N.D.N.Y. Apr. 20,** |

158250145

| # | Description | Bates Range/Docket cite | Plaintiff's Objections and Defendants' Responses |
|---|---|---|---|
| | | | 2018) (holding an inmate's past discipline for "false info.", "impersonation", and "counterfeiting" was admissible to show his character for truthfulness.). |
| 321 | Information Report 1/25/2016 No. 16- M90-1922 Red Rock re: Crago assault on other inmate | STATE-000343 | Fed. R. Evid. 401, 403, 404, 801, 901; Plt.'s Mot. in Limine No. 3.<br><br>**Defs' Response:  Ds will lay the appropriate foundation; state of mind evidence; See also Fed. R. Evid. 404(b) and 608(b); *Tapp v. Tougas*, 2018 U.S. Dist.  LEXIS 66743, at *10 (N.D.N.Y.  Apr.  20, 2018) (holding an inmate's past discipline for "false info.", "impersonation", and "counterfeiting" was admissible to show his character for truthfulness.).** |
| 322 | Disciplinary Report memo 3/1/2016 Red Rock re Crago involvement in introduction, sale, and distribution of narcotics using associate Heindell. | STATE-000344-000347 | Fed. R. Evid. 401, 403, 404, 801, 901; Plt.'s Mot. in Limine No. 3.<br><br>**Defs' Response:  Ds will lay the appropriate foundation; state of mind evidence; See also Fed. R. Evid. 404(b) and 608(b); *Tapp v. Tougas*, 2018 U.S. Dist.  LEXIS 66743, at *10 (N.D.N.Y.  Apr.  20, 2018) (holding an inmate's past discipline for "false info.", "impersonation", and "counterfeiting" was admissible to show his character for truthfulness.).** |
| 323 | Request for Verification of Release Credits dated 3/10/2016 No.16-M90-0146 | STATE-000348 | Fed. R. Evid. 401, 403, 404, 801, 901; Plt.'s Mot. in Limine No. 3.<br><br>**Defs' Response:  Ds will lay the appropriate foundation** |

| # | Description | Bates Range/Docket cite | Plaintiff's Objections and Defendants' Responses |
|---|---|---|---|
| | Red Rock re: conspiracy to commit offense dated 3/1/2016 | | state of mind evidence; 803(6) See also Fed. R. Evid. 404(b) and 608(b); *Tapp v. Tougas*, 2018 U.S. Dist. LEXIS 66743, at *10 (N.D.N.Y. Apr. 20, 2018) (holding an inmate's past discipline for "false info.", "impersonation", and "counterfeiting" was admissible to show his character for truthfulness.). |
| 324 | Information Report 8/2/2016 No. 16- L25-00072 Barchey re:  Crago paying for a hit because the victim was a snitch | STATE-000349-000351 | Fed. R. Evid. 401, 403, 404, 801, 901; Plt.'s Mot. in Limine No. 3.

**Defs' Response:  Ds will lay the appropriate foundation state of mind evidence; 803(6), See also Fed. R. Evid. 404(b) and 608(b); *Tapp v. Tougas*, 2018 U.S. Dist. LEXIS 66743, at *10 (N.D.N.Y. Apr. 20, 2018) (holding an inmate's past discipline for "false info.", "impersonation", and "counterfeiting" was admissible to show his character for truthfulness.).** |
| 325 | Information Report No. 16-L31-03582 Barchey re:  Crago paying for a hit because the victim was a snitch and confidential SSU memo found in possession of inmates at Buckley naming Crago | STATE-000352 | Fed. R. Evid. 401, 403, 404, 801, 901; Plt.'s Mot. in Limine No. 3.

**Defs' Response:  Ds will lay the appropriate foundation state of mind evidence; 803(6), See also Fed. R. Evid. 404(b) and 608(b); *Tapp v. Tougas*, 2018 U.S. Dist. LEXIS 66743, at *10 (N.D.N.Y. Apr. 20, 2018) (holding an inmate's past discipline for "false info.", "impersonation", and "counterfeiting" was** |

-170-

158250145

| # | Description | Bates Range/Docket cite | Plaintiff's Objections and Defendants' Responses |
|---|---|---|---|
| | | | admissible to show his character for truthfulness.). |
| 326 | Confidential Informant Reliability Assessment Questionnaire 8/2/2016 (CIRAQ) re: Crago payment for a hit | STATE-000353 | Fed. R. Evid. 401, 403, 404, 801, 901; Plt.'s Mot. in Limine No. 3.<br><br>**Defs' Response:  Ds will lay the appropriate foundation state of mind evidence; 803(6), See also Fed. R. Evid. 404(b) and 608(b);** *Tapp v. Tougas*, **2018 U.S. Dist. LEXIS 66743, at *10 (N.D.N.Y. Apr. 20, 2018) (holding an inmate's past discipline for "false info.", "impersonation", and "counterfeiting" was admissible to show his character for truthfulness.).** |
| 327 | Offender Comments dated 8/15/2016 re: detention | STATE-000354 | Fed. R. Evid. 401, 403, 404, 801, 901; Plt.'s Mot. in Limine No. 3. |
| 328 | Notice of Hearing and Inmate Rights (Proposed Maximum Custody Placement) dated 11/10/2016 - Rast Unit regarding threat to safety and security of the institution | STATE-000355-000358 | Fed. R. Evid. 401, 403, 404, 801, 901; Plt.'s Mot. in Limine No. 3.<br><br>**Defs' Response:  Ds will lay the appropriate foundation state of mind evidence; 803(6), See also Fed. R. Evid. 404(b) and 608(b);** *Tapp v. Tougas*, **2018 U.S. Dist. LEXIS 66743, at *10 (N.D.N.Y. Apr. 20, 2018) (holding an inmate's past discipline for "false info.", "impersonation", and "counterfeiting" was admissible to show his character for truthfulness.).** |
| 329 | Visitation application and denial for Steven | STATE-000359-000362 | Fed. R. Evid. 401, 403, 801, 901; Plt.'s Mot. in Limine No. 3. |

158250145

| # | Description | Bates Range/Docket cite | Plaintiff's Objections and Defendants' Responses |
|---|---|---|---|
| | Heindell re: criminal history dated 8/20/2019 | | **Defs' Response:  Ds will lay the appropriate foundation state of mind evidence; 803(6), See also Fed. R. Evid. 404(b) and 608(b); *Tapp v. Tougas*, 2018 U.S. Dist. LEXIS 66743, at *10 (N.D.N.Y. Apr. 20, 2018) (holding an inmate's past discipline for "false info.", "impersonation", and "counterfeiting" was admissible to show his character for truthfulness.).** |
| 330 | IR 18-L29-00782 Buckley dated 8/22/2018 re: inmate fears for his safety from threats by Crago due to debt on the yard | STATE-000363 | Fed. R. Evid. 401, 403, 404, 801, 901; Plt.'s Mot. in Limine No. 3. <br><br> **Defs' Response:  Ds will lay the appropriate foundation state of mind evidence; 803(6) See also Fed. R. Evid. 404(b) and 608(b); *Tapp v. Tougas*, 2018 U.S. Dist. LEXIS 66743, at *10 (N.D.N.Y. Apr. 20, 2018) (holding an inmate's past discipline for "false info.", "impersonation", and "counterfeiting" was admissible to show his character for truthfulness.).** |
| 331 | IR 18-L29-04028 Buckley dated 10/2/2018 re:  intel on contraband (phones) being introduced through visitation and held by other inmates for Crago | STATE-000364 | Fed. R. Evid. 401, 403, 404, 801, 901; Plt.'s Mot. in Limine No. 3. <br><br> **Defs' Response:  Ds will lay the appropriate foundation state of mind evidence; 803(6). See also Fed. R. Evid. 404(b) and 608(b); *Tapp v. Tougas*, 2018 U.S. Dist. LEXIS 66743, at *10 (N.D.N.Y. Apr. 20, 2018) (holding an inmate's past discipline for "false info.",** |

-172-

158250145

| # | Description | Bates Range/Docket cite | Plaintiff's Objections and Defendants' Responses |
|---|---|---|---|
| | | | "impersonation", and "counterfeiting" was admissible to show his character for truthfulness.). |
| 332 | Incident Command Report Buckley 12/26/2017 re: search of Crago's cell finding contraband in cell (phone and charger) | STATE-000365-000368 | Fed. R. Evid. 401, 403, 404, 801, 901; Plt.'s Mot. in Limine No. 3.<br><br>**Defs' Response:  Ds will lay the appropriate foundation state of mind evidence; 803(6), See also Fed. R. Evid. 404(b) and 608(b);** *Tapp v. Tougas*, **2018 U.S. Dist. LEXIS 66743, at *10 (N.D.N.Y. Apr. 20, 2018) (holding an inmate's past discipline for "false info.", "impersonation", and "counterfeiting" was admissible to show his character for truthfulness.).** |
| | | | |
| 333 | Inspector General Investigative Report 2/28/2019 DR 2019-10044 re: promoting contraband/misuse of legal mail (Heindell) | STATE-000386-000392 | Fed. R. Evid. 401, 403, 404, 801, 901; Plt.'s Mot. in Limine No. 3.<br><br>**Defs' Response:  Ds will lay the appropriate foundation state of mind evidence; 803(6), See also Fed. R. Evid. 404(b) and 608(b); Tapp v. Tougas, 2018 U.S. Dist. LEXIS 66743, at *10 (N.D.N.Y. Apr. 20, 2018) (holding an inmate's past discipline for "false info.", "impersonation", and "counterfeiting" was admissible to show his character for truthfulness.).** |
| 334 | Inmate Complaint documents 7/2/2019 | STATE-000393-000397 | Fed. R. Evid. 401 & 403.  Plt.'s |

| # | Description | Bates Range/Docket cite | Plaintiff's Objections and Defendants' Responses |
|---|---|---|---|
| | No. A08269-019 Eyman/SMU re: phone time | | Mot. In Limine No. 3.<br><br>**Defs' Response:  Ds will lay the appropriate foundation state of mind evidence; 803(6), See also Fed. R. Evid. 404(b) and 608(b); *Tapp v. Tougas*, 2018 U.S. Dist. LEXIS 66743, at *10 (N.D.N.Y. Apr. 20, 2018) (holding an inmate's past discipline for "false info.", "impersonation", and "counterfeiting" was admissible to show his character for truthfulness.).** |
| 335 | HousingInformation re:  Crago | STATE-000414-000415 | Fed. R. Evid. 401, 403; Plt.'s Mot.  in Limine No. 3.<br><br>Defs' Response:  Ds will lay foundation under Rule 803(6). |
| 336 | Buckley Unit Movement memo re Crago's disciplinary history | STATE-000416-000417 | None as to STATE-000416, which is the same as Plt.'s proposed Ex. 35.<br><br>With respect to STATE-000417 only: Fed. R. Evid. 401, 403, 404, 801 & 901; Plt.'s Mot. in Limine No. 3.<br><br>**Defs' Response:  Ds will lay foundation under Rule 803(6); this is relevant to Plt's retaliation claim** |
| 337 | Grievance Appeal Packet No. L21- 031-017 Rast unit re:  diet | STATE-000418-000428 | Fed. R. Evid. 401, 403, 404, 801, 901; Plt.'s Mot.  in Limine No. 3.<br><br>**Defs' Response:   This is nonhearsay under Rule 801d.** |

-174-

| # | Description | Bates Range/Docket cite | Plaintiff's Objections and Defendants' Responses |
|---|---|---|---|
| 338 | Audio file re: 6/30/2019 recorded call between inmate S. Antrobus and wife K. Gustavson regarding payment in exchange for assistance with lawsuits. | STATE-000454 | Fed. R. Evid. 401, 402, 403, 801 & 802. Plt.'s Mot. In Limine Nos. 4, 5, 7. **Defs' Response:   This is relevant  impeachment  to establish  Plt's witness  has financial   interest   in   the outcome of the case.** |
| 339 | Audio file re: 7/14/2019 recorded call between inmate S. Antrobus and wife K. Gustavson regarding payment in exchange for assistance with lawsuits. | STATE-000455 | Fed. R. Evid. 401, 402, 403, 801 & 802. Plt.'s Mot. In Limine Nos. 4, 5, 7. **Defs' Response:   This is relevant  impeachment  to establish  Plt's witness  has financial   interest   in   the outcome of the case.** |
| 340 | Transcript excerpt from 6/30/2019 call between S. Antrobus and K. Gustavson | STATE-000456-000457 | Fed. R. Evid. 401, 106, 402, 403, 801 & 802. Plt.'s Mot. In Limine Nos. 4, 5, 7. **Defs' Response:   This is relevant  impeachment   to establish  Plt's witness  has financial   interest   in   the outcome of the case.** |
| 341 | Transcript excerpt from 7/14/2019 call between S. Antrobus and K. Gustavson | STATE-000458-000459 | Fed. R. Evid. 106, 401, 402, 403, 801 & 802. Plt.'s Mot. In Limine Nos. 4, 5, 7. **Defs'  Response:   This  is relevant   impeachment   to establish  Plt's witness  has financial   interest   in   the outcome of the case.** |
| 342 | Inmate Ruiz's work assignments from May 2007 to October 2019 | STATE-000461 | Fed. R. Evid. 401, 403 & 901. **Defs' Response:  Ds will lay foundation.  If this witness' activities are implicated, this document is relevant.** |
| 343 | Inmate Sampson's work assignments | STATE-000462-000463 | Fed. R. Evid. 401, 403 & 901. |

158250145

| # | Description | Bates Range/Docket cite | Plaintiff's Objections and Defendants' Responses |
|---|---|---|---|
| | from October 2016 to April 2020 | | **Defs' Response:  Ds will lay foundation.   If this witness' activities are implicated, this document is relevant.** |
| 344 | Inmate Flores' work assignments from July 2012 to September 2018 | STATE-000464 | Fed. R. Evid. 401, 403 & 901.<br><br>**Defs' Response:  Ds will lay foundation.   If this witness' activities are implicated, this document is relevant.** |
| 345 | 9/6/2019 Max custody appeal packet of Inmate Antrobus | STATE-000559-000570 | None as to STATE-000559, which is the same as Plt.'s proposed Ex. 31<br><br>With respect to STATE-000560000570: Fed. R. Evid. 401, 403, 801, 901; Plt.'s Mot. in Limine Nos. 2 & 3.<br><br>**Defs' Response:  Ds will lay foundation.    Rule 803(6); 404(b), 608(b).** |
| 346 | Crago's ADCRR / Centurion Medical Records  with COR declarations | STATE-004153-004286 | Fed. R. Evid. 401, 403.<br><br>None.  Same as Plt.'s proposed Ex. 136. |
| 347 | Inmate assaults & fights data for Fiscal Years 2017 through 2019 (redacted) | STATE-006313-006319 | Fed. R. Evid. 401, 403, 801, 901 & 1006.<br><br>**Defs' Response:  Ds will lay foundation.   See Hack Declaration and Defs' Motion for Summary Judgment; Plaintiff did not properly preserve a Rule 1006 objection previously.** |
| 348 | Month-by-month data on inmate assaults for Fiscal Year 2019, Buckley Unit (redacted) | STATE-006320-006321 | Fed. R. Evid. 401, 403, 801, 901 & 1006.<br><br>**Defs' Response:  Ds will lay foundation.   See Hack Declaration and DS' Motion for Summary Judgment;** |

-176-

| # | Description | Bates Range/Docket cite | Plaintiff's Objections and Defendants' Responses |
|---|---|---|---|
| | | | **Plaintiff did not properly preserve a Rule 1006 objection previously.** |
| 349 | Declaration of Carson McWilliams | Doc. 174-2 p. 19-21 | Fed. R. Evid. 401 & 403.<br><br>**Defs' Response:  Ds will lay foundation.  Other witnesses rely on his Declaration.  See also Rule 807.** |
| 350 | Declaration of Kimo Taylor | Doc. 174-2 p. 55-57 | Fed. R. Evid. 401 & 403.<br><br>**Defs' Response:  Ds will lay foundation.  Other witnesses rely on his Declaration.  See also Rule 807.** |
| 351 | Declaration of Caroline Haack | Doc. 174-2 p. 59-70 | Fed. R. Evid. 401 & 403.<br><br>**Defs' Response:  Ds will lay foundation.  Other witnesses rely on his Declaration.  See also Rule 807.** |
| 352 | Declaration of Apryl Townsend | Doc. 174-2 p. 100-101 | Fed. R. Evid. 401 & 403.<br><br>**Defs' Response:  Ds will lay foundation.  Other witnesses rely on his Declaration.  See also Rule 807.** |
| 353 | Declaration of Shawn Baker | Doc. 174-2 p. 114-115 | Fed. R. Evid. 401 & 403.<br><br>**Defs' Response:  Ds will lay foundation.  Other witnesses rely on his Declaration.  See also Rule 807.** |
| 354 | Declaration of Admir Bajraktarevic | Doc. 174-2 p. 167-171 | Fed. R. Evid. 401 & 403.<br><br>**Defs' Response:  Ds will lay foundation.  Other witnesses rely on his Declaration.  See also Rule 807.** |
| 355 | ADC Security Operations Central Office Draft | STATE-006495-006500 | Fed. R. Evid. 401, 403, 801 & 901. |

158250145

| # | Description | Bates Range/Docket cite | Plaintiff's Objections and Defendants' Responses |
|---|---|---|---|
| | Memorandum re: Operations Action Plan 4/26/2019 | | **Defs' Response:  Ds will lay foundation.  Rule 803(6).** |
| 356 | Inmate Disciplinary Report 3/9/2022 No. 22-LW5-000714 Buckley re:  Crago Threatening or Intimidating | STATE-006502-006504 | Fed. R. Evid. 401, 403, 404, 801 & 901.  Plt's Mot.  In Limine 3.<br><br>**Defs' Response:   This is nonhearsay under 801(d) as it is Plts' statements; See also Fed. R. Evid. 404(b) and 608(b); Tapp v. Tougas, 2018 U.S. Dist.  LEXIS 66743, at *10 (N.D.N.Y.  Apr.  20, 2018) (holding an inmate's past discipline for "false info.", "impersonation", and "counterfeiting"  was admissible to show his character for truthfulness.).** |
| 357 | Inmate Disciplinary Report 4/1/2022 No. 22-LW5-000837 Buckley re:  Crago Threatening or Intimidating | STATE-006505-006507 | Fed. R. Evid. 401, 403, 404, 801 & 901.  Plt's Mot.  In Limine 3.<br><br>**Defs' Response:   This is nonhearsay under 801(d) as it is Plts' statements; See also Fed. R. Evid. 404(b) and 608(b); *Tapp v. Tougas*, 2018 U.S. Dist.  LEXIS 66743, at *10 (N.D.N.Y.  Apr.  20, 2018) (holding an inmate's past discipline for "false info.", "impersonation", and "counterfeiting"  was admissible to show his character for truthfulness.).** |
| 358 | Warden 1/4/2019 December 2018 703 Report (redacted) | STATE-003525-49 | |
| 359 | Warden January 2019 703 Report 2/12/2019 (redacted) | STATE-003550-53 | |

158250145

| # | Description | Bates Range/Docket cite | Plaintiff's Objections and Defendants' Responses |
|---|---|---|---|
| 360 | Warden February 2019 703 Report 3/5/2019 (redacted) | STATE-003554-57 | |
| 361 | Warden March 2019 703 Report 4/5/2019 (redacted) | STATE-003558-63 | |
| 362 | Warden April 2019 703 Report 5/5/2019 (redacted) | STATE-003564-69 | |
| | | | |
| 363 | D0 806 – Security Threat Groups (STGs) | STATE-000187-000213 | None.  Same as Plt.'s proposed Ex. 58. |
| 364 | Demonstrative aerial photo of ASPC-Lewis | STATE-006508 | Fed. R. Evid. 403 (confusing)<br><br>**Defs' Response:  Plaintiff previously stipulated to this exhibit, and have disclosed their own, nearly identical exhibit to be used in Plaintiff's Opening Statement. The photo is an accurate depiction of Lewis Complex.** |
| 365 | Demonstrative photos of Buckley Unit | STATE-006509–006515 | Fed. R. Evid. 403 (confusing, misleading)<br><br>**Defs' Response:  Plaintiff previously stipulated to this exhibit. The photo is an accurate depiction of Buckley Unit, Housing Unit 3.** |
| 366 | Inmate record for Luis Parrado (previously listed by Plaintiff as Exhibit 17) | STATE-000486-510 | Fed. R. Evid. 403 (relevance, prejudicial), 404 (improper character evidence), hearsay.<br><br>**Defs' Response: This exhibit is relevant to Plaintiff's claim and will not cause undue prejudice.   Defs   have** |

-179-

| # | Description | Bates Range/Docket cite | Plaintiff's Objections and Defendants' Responses |
|---|---|---|---|
| | | | redacted any improper character evidence. Rule 404(b)(2.) This exhibit falls within a hearsay exception because it is a business record (Fed. R. Civ. 803(6). |
| 367 | Memorandum from Taylor to Trujillo stating Luis Parrado was taken out of Buckley Unit on 5/8/19 (previously listed by Plaintiff as Exhibit 18) | STATE-000591 | Fed. R. Evid. 403 (relevance, confusing),404 (improper character evidence).<br><br>**Defs' Response: This exhibit is relevant to Plaintiff's claim and will not cause confusion.** *See* **Rule 404(b)(2).** |
| 368 | Inmate letter by Luis Parrado to a COIII/COIV, for appeal of max designation. (previously listed by Plaintiff as Exhibit 19) | STATE-000587 | Fed. R. Evid. 403 (relevance, confusing, cumulative), 404 (improper character evidence), hearsay.<br><br>**Defs' Response: This exhibit is relevant to Plaintiff's claim and is not cumulative or confusing.** *See* **Rule 404(b)(2). State of mind evidence.** |
| 369 | Notice of appeal by Luis Parrado. (previously listed by Plaintiff as Exhibit 20) | STATE-000580 | Fed. R. Evid. 403 (relevance, confusing, cumulative), 404 (improper character evidence), hearsay.<br><br>**Defs' Response: This exhibit is relevant to Plaintiff's claim and is not cumulative or confusing.** *See* **Rule 404(b)(2). State of mind evidence.** |
| 370 | Max Appeal Response stating that Luis Parrado was approved for max. custody on 6/17/19. (previously listed by Plaintiff as Exhibit 21) | STATE-000579 | Fed. R. Evid. 403 (relevance, confusing, cumulative), 404 (improper character evidence).<br><br>**Defs' Response: This exhibit is relevant to Plaintiff's claim and is not cumulative or confusing.** *See* **Rule** |

| # | Description | Bates Range/Docket cite | Plaintiff's Objections and Defendants' Responses |
|---|---|---|---|
| | | | 404(b)(2). |
| 371 | Inmate record for Arturo Flores. (previously listed by Plaintiff as Exhibit 23) | STATE-000465- 485 | Fed. R. Evid. 404 (improper character evidence), hearsay.<br><br>**Defs' Response: Defs have redacted any improper character evidence. Rule 404(b)(2.) This exhibit falls within a hearsay exception because it is a business record (Fed. R. Civ. 803(6).** |
| 372 | Inmate record for Hector Ruiz. (previously listed by Plaintiff as Exhibit 25) | STATE-000511- 530 | Fed. R. Evid. 403 (relevance, confusing)<br><br>**Defs' Response: This exhibit is relevant to Plaintiff's claim and is not confusing.** |
| 373 | Notice of appeal for Levi Bodine on 6/19/19. (previously listed by Plaintiff as Exhibit 27) | CRAGO-000100 | |
| 374 | Objection against max. custody placement by Steve Antrobus. (previously listed by Plaintiff as Exhibit 29) | STATE-000565 | |
| 375 | Notice of appeal by Steve Antrobus. (previously listed by Plaintiff as Exhibit 30) | STATE-000560 | |
| 376 | Inmate records for Erik Sampson. (previously listed by Plaintiff as Exhibit 33) | STATE- 000531-558 | |
| 377 | Information report for Erik Sampson. (previously listed by | STATE-0001495 | Fed. R. Evid. 404 (improper character evidence). |

| # | Description | Bates Range/Docket cite | Plaintiff's Objections and Defendants' Responses |
|---|---|---|---|
| | Plaintiff as Exhibit 34) | | **Defs' Response: 404(b)(2)** |
| 378 | SSU memorandum dated 5/2/19 re Buckley Unit movement involving Crago (previously listed by Plaintiff as Exhibit 35) | STATE-000416 | Fed. R. Evid. 403 (relevance, confusing), 404 (improper character evidence).<br><br>**Defs' Response: This exhibit is relevant to Plaintiff's claim and is not cumulative or confusing. *See* Rule 404(b)(2).** |
| 379 | Inmate Complaint resolution packet for E. Crago re: property (previously listed by Plaintiff as Exhibit 74) | CRAGO000003-10 | Fed. R. Evid. 403 (relevance, confusing).<br><br>**Defs' Response: This exhibit is relevant to Plaintiff's retaliation claim and credibility and is not confusing.** |
| 380 | Inmate record for Kelvin Barnett. (previously listed by Plaintiff as Exhibit 87) | STATE-007147-72 | Fed. R. Evid. 403 (relevance), 404 (character evidence), hearsay.<br><br>**Defs' Response: This exhibit is relevant to Plaintiff's claim. Defs have redacted any improper character evidence. Rule 404(b)(2.) This exhibit falls within a hearsay exception because it is a business record (Fed. R. Civ. 803(6).** |
| 381 | Objections to Max. Custody Placement by Ernesto Lopez. (previously listed by Plaintiff as Exhibit 89) | STATE-000575 | Fed. R. Evid. 403 (relevance, confusing), 404 (improper character evidence).<br><br>**Defs' Response: This exhibit is relevant to Plaintiff's claim. Rule 404(b)(2).** |
| 382 | Inmate Grievance by E. Crago, dated 11/19/2019. | CRAGO-000831 | Fed. R. Evid. 403 (relevance), 404 (improper character |

| # | Description | Bates Range/Docket cite | Plaintiff's Objections and Defendants' Responses |
|---|---|---|---|
| | (previously listed by Plaintiff as Exhibit 124) | | evidence).<br><br>**Defs' Response: This exhibit is relevant to Plaintiff's claim. Rule 404(b)(2).** |
| 383 | Notice of Hearing and Inmate Rights for E. Crago, dated 12/06/2019 (previously listed by Plaintiff as Exhibit 125) | CRAGO-000832 | Fed. R. Evid. 403 (relevance), 404 (improper character evidence).<br><br>**Defs' Response: This exhibit is relevant to Plaintiff's claim. Rule 404(b)(2)** |
| 384 | Health Problem/Condition Report for E. Crago (previously listed by Plaintiff as Exhibit 131) | STATE-006508-7115; specifically includes STATE-006519-6521, 6526-27, 6530, 6547, 6549, 6563, 6565-66, 6580, 6585-88, 6600, 6624, 6758, 6805, 7004, 7012-7013, 7104 | Fed. R. Evid. 403 (prejudicial, confusing, waste of time),<br><br>**Defs' Response: This exhibit is relevant to Plaintiff's claim, including damages.** |
| 385 | Crago's letter to Thompson re locks on doors, dated 1/12/2019 (previously listed by Plaintiff as Exhibit 48) | CRAGO000163-164 | |
| 386 | Thompson's Inmate Letter Response to Crago, dated 4/5/2019 (previously listed by Plaintiff as Exhibit 49) | STATE-000017-19 | |

158250145

**G    MOTIONS IN LIMINE & REQUESTED EVIDENTIARY RULINGS**

None of the below motions in limine have been ruled upon; they have been filed concurrently with this joint proposed pretrial statement.

Plaintiff's Motions:

**1.    Motion in Limine No. 1 (Trial Attire)**

Through Plaintiff's pending Motion in Limine, Plaintiff asks the Court to permit him to appear before the jury in civilian clothing, without visible restraints, and without visible uniformed guards because requiring Plaintiff to appear visibly restrained, with visible guards, and in prison garb would be unduly prejudicial in this § 1983 matter.  See Fed. R. Evid. 401, 403-404.

**2.    Motion in Limine No. 2 (Prior Convictions)**

Through Plaintiff's pending Motion in Limine, Plaintiff asks the Court to exclude, inter alia, testimony and evidence regarding the circumstances surrounding the convictions of inmate-witnesses (including Plaintiff).  Such a ruling would expedite the trial by not wasting precious time questioning them about facts irrelevant to Plaintiff's claims.  Fed. R. Evid. 611(a); see Fed. R. Evid. 402.  Plaintiff will stipulate to the fact that each of Plaintiff's Witnesses who is incarcerated has one or more criminal convictions, that they are incarcerated as a result of these convictions, and the dates of these convictions, subject to the time limitations of Fed. R. Evid. 609(b).

**3.    Motion in Limine No. 3 (Disciplinary Histories)**

Through Plaintiff's pending Motion in Limine, Plaintiff asks the Court to exclude, inter alia, testimony and evidence regarding the circumstances surrounding the disciplinary history of inmate-witnesses (including Plaintiff).  The admission of such histories would be inadmissible propensity evidence under Federal Rule of Evidence 404(a).  Further, such evidence is of no probative value and will only serve to prejudice or mislead the jury and should be excluded under Fed. R. Evid. 403.

4.      **Motion in Limine No. 4 (Antrobus Call)**

Through Plaintiff's pending Motion in Limine, Plaintiff asks the Court to exclude portions of certain calls involving inmate Steven Antrobus on June 30, 2019, and July 14, 2019, which Defendants mentioned in their disclosure statement.  These call excerpts are both irrelevant and unfairly prejudicial.  See Fed. R. Evid. 401-403.  Further, they represent inadmissible hearsay.  Fed. R. Evid. 801, 802.

5.      **Motion in Limine No. 5 (Purported Promises to Pay)**

Through Plaintiff's pending Motion in Limine, Plaintiff asks the Court to exclude the twelve individuals with knowledge regarding monetary consideration or other incentive exchanged for or promised for providing assistance, declarations, or other cooperation in this lawsuit who were identified in Defendants' Tenth Supplemental Disclosure Statement.  These allegations are both irrelevant and unfairly prejudicial and should be excluded.  See Fed. R. Evid. 401-403.  Further, they represent inadmissible hearsay.  Fed. R. Evid. 801, 802.

6.      **Motion in Limine No. 6 (Testimony of Shawn Baker)**

Through Plaintiff's pending Motion in Limine, Plaintiff asks the Court to exclude the testimony of Shawn Baker, the Buckley Unit Disciplinary Hearing Officer who presided over a disciplinary hearing involving Plaintiff Crago on March 19, 2019.  Specifically, Defendants stated that Baker had "information regarding the evidence presented at the hearing, his decision following the hearing, and any conversations with Deputy Warden Pitz regarding the same." This information is both irrelevant and unfairly prejudicial and should be excluded.  See Fed. R. Evid. 401-403.

158250145

### 7.   Motion in Limine No. 7 (Exclusion of Certain References and Arguments)

Through Plaintiff's pending Motion in Limine, Plaintiff asks the Court to exclude, inter alia, certain arguments and references during the trial that would be unduly prejudicial, including the following:  (A) referring to Plaintiff by his incarcerated status alone; (B) referencing any of Plaintiff's arrests that did not lead to conviction; (C) referring to any other litigation in which Plaintiff has been involved, (D) offering evidence of any of Defendants' commendations, (E) developing questions and arguments designed to prompt admiration for corrections officials; (F) making a negative inference argument regarding evidence that Defendants were not disciplined; (G) arguing that an award of damages would burden taxpayers; and (H) referring to Plaintiff or any of Plaintiff's witnesses with pejorative nicknames.  See Fed. R. Evid. 401, 403, 404.

**Defendants' Motions:**

### 1.   Motion in Limine No. 1 (Staffing):  

First, Defendants object to evidence regarding the staffing pattern at Buckley Unit other than the times of the alleged assaults (the A.M.  shifts of January 9, February 1, and April 5, 2019).  Defendants further object to evidence regarding staffing patterns at other units on any dates.  Second, neither Plaintiff nor his witnesses have the foundation to assert that a specific number of officers is required to operate the unit "safety." Third, Plaintiff cannot introduce hearsay statements regarding staffing.

### 2.   Motion in Limine No. 2.  (Other Assaults):  

Defendants object to evidence regarding assaults at other units, as well as assaults on staff at any unit, as irrelevant and more prejudicial than probative.  Further, Defendants object to Plaintiff referring to the death of inmate Andrew McCormick (who was housed at the Morey Unit) a "murder." McCormick told investigators multiple times that he fell in his cell; in addition, the Medical Examiner's Report found that McCormick died of natural causes.  Finally, Plaintiff should

1    not be permitted to introduce hearsay statements regarding assaults at other units.

2        **3.** **Motion in Limine No. 3 (Notice to Defendants)**:  Defendants object to the

3    Russett v. Ryan lawsuit as evidence of notice to Defendant Ryan.  First, it involved a single

4    assault on an officer in another unit over five years before the events in this case.  Next,

5    Plaintiff stipulated to dismiss Ryan at the Rule 12 stage.  Defendants further object to all

6    portions of the 703 Reports exchanged between Larson, Thompson, and Trujillo regarding

7    any Unit other than Buckley under Rule 401 and 403.

8        **4.** **Motion in Limine No. 4 (Hearsay)**:

9        Defendants object to Plaintiff introducing hearsay statements of non-Defendant

10   employees, other inmates, or of Plaintiff.

11       **5.** **Motion in Limine No. 5 (the Justices' Report)**:  In addition to the

12   arguments raised in Defendants' summary judgment briefing, the Report is likely to

13   confuse or mislead the jury.  The Justices did not interview any person who was actually

14   posted at Buckley during the events in question in this case.

15       **6.** **Motion in Limine No. 6 (Witnesses Who Did Not Work at Buckley**

16   **Between November 2018 and May 2019)**.

17       Defendants object to testimony or correspondence (including so called

18   "whistleblower" letters) by Shaun Holland, Gabriela Contreras, Mark Hasz, and Luis De

19   La O, who have no personal knowledge of this case and did not work at the Buckley Unit

20   during the time in question.

21       **7.** **Motion in Limine No. 7 (Law Enforcement Raid)**

22       Defendants object to any inmate testifying about a "law enforcement raid" at

23   Buckley Unit on May 2 or May 3, 2019.  The State has no record of any external law

24   enforcement agency visiting Lewis Complex between May 1 and May 5, 2019.  Allegations

25   of such a "raid" are irrelevant to Plaintiff's claims and likely to confuse the issues and

26   mislead the jury.

158250145

1    **8.     Motion in Limine No. 8 (Untimely Disclosure of Documents)**

2    Defendants object to the use of documents that were not timely disclosed pursuant

3    to Rule 26 and this Court's Scheduling Order.

4    **9.     Motion in Limine No. 9 (Computation of Damages)**

5    Defendants object to Plaintiff seeking compensatory damages at trial, as he never

6    provided a computation of damages, as required by Fed. R. Civ. P. 26(a).

7    **H      PROBABLE LENGTH OF TRIAL**

8    The trial has been scheduled for five days.

9    **I      TRIAL DATE**

10   The trial has been set for September 12, 2022, at 8:30AM.

11   **FOR A JURY TRIAL**

12   **J      STIPULATED PROPOSED STATEMENT OF THE CASE, JURY
        INSTRUCTIONS,    VOIR    DIRE    QUESTIONS,    JUROR**

13   **QUESTIONNAIRES,   FORMS   OF   VERDICT   AND   TRIAL
        MEMORANDUM OF LAW**

14

15   The items identified in the heading of Section Q shall be filed with this proposed

16   order in accordance with the procedures set forth in this Court's Rule 16 Scheduling Order.

17   **K      MISCELLANEOUS**

18   Set forth any other appropriate matters which will aid the effective presentation or

19   disposition of the action.

20   **L      MODIFICATION OF ORDER**

21   The Court may, in order to prevent manifest injustice or for good cause shown, at

22   the trial of the action or prior thereto upon application of counsel for either party, made in

23   good faith, or upon the motion of the Court, modify the Final Pretrial Order upon such

24   conditions as the Court may deem just and proper.

25

26

-188-

158250145

1    DATED this 19th day of September 2022.

2                                         WIENEKE LAW GROUP, PLC

3                            By:    */s/ Laura Van Buren*

4                                   Kathleen L. Wieneke
                                    Laura Van Buren
5                                   Jacob A. Weld
                                    1225 West Washington Street, Suite 313
6                                   Tempe, Arizona 85288
                                    *Attorneys for Defendants Larson, Pitz, Ryan,*
7                                   *Trujillo, Shinn and Thompson*

8

9

10   DATED this _____ day of _____, 20_____.

11        _____
                    Honorable Roslyn O. Silver
12                Senior United States District Judge

13   158228466

14

15

16

17

18

19

20

21

22

23

24

25

26

-189-