Christopher D. Thomas (#010482)
Andrea J. Driggs (#023633)
Paul F. Eckstein (#001822)
Janet M. Howe (#034615)
Kelleen Mull (#036517)
**PERKINS COIE LLP**
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
Telephone:  602.351.8000
Facsimile:  602.648.7000
CThomas@perkinscoie.com
ADriggs@perkinscoie.com
PEckstein@perkinscoie.com
JHowe@perkinscoie.com
KMull@perkinscoie.com
DocketPHX@perkinscoie.com

Cara Wallace (WA #50111)
*(admitted pro hac vice)*
Thomas J. Tobin (WA #55189)
*(admitted pro hac vice)*
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Telephone: 206.359.8000
TTobin@perkinscoie.com
CWallace@perkinscoie.com

*Attorneys for Plaintiff Earl Felton Crago, Jr.*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Earl Felton Crago, Jr., | No. 2:19-cv-04532-ROS-ESW |
| Plaintiff, | |
| v. | **REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO REOPEN DISCOVERY AND CONDUCT FURTHER PROCEEDINGS** |
| Joseph Pitz, et al., | |
| Defendant. | **[ORAL ARGUMENT REQUESTED]** |

Nothing in Defendant's Response in Opposition to Plaintiff's Motion to Reopen Discovery and Conduct Further Proceedings [Dkt. 376]—which is filled with irrelevant background material, willful misreads of Plaintiff's filings, and incorrect statements of the law—changes the fact that the Court should consider evidence of current conditions at ASPC Lewis when resolving Plaintiff's claim for equitable relief and necessary discovery containing that evidence is not currently in the record.

# I.  BACKGROUND

## A.  Defendant's recitation of prior discovery requests and pre-trial conversations with Plaintiff's counsel are irrelevant.

Defendant uses considerable space in his 21-page response to review Plaintiff's prior discovery requests. Yet nearly all the identified discovery requests relate to ASPC Lewis conditions pre-2020 (not current conditions) or to the time period the individual Defendants worked at ASPC Lewis (also not current conditions). And Defendant completely ignores the fact that the Court limited document production in response to Plaintiff's ADC discovery requests to conditions and events before May 2, 2019, as explained in Plaintiff's opening brief. [*See* Dkt. 367 at 10; Dkt. 124] Further, Defendant skirts the fact that Plaintiff has not propounded any discovery into conditions at ASPC Lewis since the December 2020 close of discovery.

Bottom line, none of this background material changes the fact that Plaintiff has not yet been able to obtain information on current conditions that will be necessary to resolve his claim for equitable relief. *See Roman v. Wolf*, 977 F.3d 935, 945 (9th Cir. 2020) (vacating certain provisions of injunction and remanding to district court to determine which provisions continue to apply to the current circumstances at immigration detention center); *see also Unknown Parties v. Nielsen*, No. CV-15-00250-TUC-DCB, 2020 WL 813774, at *19 (D. Ariz. Feb. 19, 2020) (granting injunctive relief to plaintiffs because "existing conditions of confinement were likely to remain in the future").

Similarly, conversations with counsel about possibly reopening discovery before the Court's pre-trial orders are irrelevant. After Plaintiff's counsel was appointed on January 13, 2022, two years after the close of discovery, there was some discussion about reopening discovery for the purpose of narrowing the issues at trial. The parties failed to reach an agreement on the proposed discovery, and ultimately Plaintiff chose not to move for additional discovery after the Court set the trial date. [Dkt. 221 at 1] Plaintiff's current

1  motion seeks only a modest and limited reopening of discovery related to those *current*

2  conditions that Plaintiff alleges violate his constitutional rights. [*See* Dkt. 367 at 10-11]

3  The fact that Plaintiff previously discussed reopening discovery is immaterial.

**B.    Plaintiff has provided Defendant an explanation of his requested injunctive relief on multiple occasions.**

6  Defendant (at 6) wrongfully asserts that Plaintiff failed to disclose his requested

7  injunctive relief. This is not true. Plaintiff has repeatedly disclosed requests for injunctive

8  relief related to faulty locks, staffing shortages, risks to inmate health and safety, and

9  concerns over proper screening and management of gang affiliated inmates. From his

10  first complaint, Plaintiff requested an "[i]njunction requiring Buckley unit be closed until

11  the faulty door locking mechanisms are replaced." [Dkt. 1 at 11] And an "[i]njunction

12  requiring video cameras to be placed in building hallways." [*Id.*] In his second amended

13  complaint, Plaintiff provided that he was seeking "[a] permanent injunction requiring

14  security video cameras in all building entry/exit hallways" and "ordering the Department

15  of Corrections to create gang units to segregate verified gang members from the rest of

16  the prison population." [Dkt. 56 at 18] And a "declaration stating that it is illegal to use

17  security threat groups/prison gangs to control and manage the prison population." [*Id.*]

18  Then in Plaintiff's third amended complaint, he requested "necessary injunctive

19  relief" related to ADC's violation of Plaintiff's Eighth Amendment rights. [Dkt. 222

20  ¶¶ 185-92] In support, Plaintiff alleged that "the policies and practices described herein,

21  [by which] Defendants have shown and continue to show deliberate indifference to a

22  substantial risk of harm" to Plaintiff [*Id.* ¶ 190], including failing to fix the faulty locks,

23  understaffing the facility, and using inmates to police other inmates.

24  Plaintiff reiterated these requests for injunctive relief in the pretrial order [Dkt.

25  241-1 at 8, 59 (requesting cessation of Defendant's objectionable conduct, sufficient and

26  qualified staff, constitutionally adequate care to inmates, and increased STG screening

1  for inmates in protective custody)]. Defendant has acknowledged that Plaintiff seeks

2  relief related to staffing, inadequate conditions, security cameras in the hallways, and

3  segregation of verified gang members. [*See id.* at 13][1]

4      Thus, while Plaintiff has not always iterated the requested relief in the same

5  manner, the theme has stayed consistent throughout: quantity and quality of staffing,

6  inadequate or unconstitutional care of inmates, and management of gang affiliated

7  inmates. These are the same topics that make up Defendant's policies and practices in

8  Plaintiff's Third Amended Complaint and they are the same topics that Plaintiff seeks

9  discovery on. [Dkt. 367 at 10-11] Defendant's contention that he was unaware of

10 Plaintiff's requested injunctive relief lacks merit.

11

12     **C.**    **The Court's denial of Defendant's motion to bifurcate does not prohibit Plaintiff from putting forth equitable relief evidence.**

13     Defendant (at 10) asserts that the Court's order on Defendant's Motion to

14 Bifurcate somehow precludes Plaintiff from offering additional evidence. This is a

15 misread of the Court's order, which provides: "[I]t would be inefficient to bifurcate the

16 trial. The evidence and testimony relevant to the claims for monetary damages as well as

17 injunctive relief overlap. For example, the history of staffing and the minimum

18 appropriate number of staffing are relevant to money damages and injunctive relief. In

19 addition, arranging for testimony by certain witnesses such as Plaintiff himself, requires

20 significant effort and coordination." [Dkt 288 at 23] The Court thus acknowledged that

21 the parties may rely on evidence presented during the damages phase to litigate Plaintiff's

22     [1] Defendant (at 7-8) asserts that Plaintiff was required to update his discovery and
23 disclosure statement to disclose a computation of his injunctive relief as a type of
damages. This is perplexing. The two are not the same: there are no injunctive damages.
*See Damages*, Black's Law Dictionary (11th ed. 2019) ("Money claimed by, or ordered
24 to be paid to, a person as compensation for loss or injury."); *Injunction*, Black's Law
Dictionary (11th ed. 2019) ("A court order commanding or preventing an action.").
25 Indeed, the "damages" definition is extensive and *still* doesn't support Defendant's
argument. None of the 86 types of damages individually defined by Black's under the
26 definition of "damages" encompasses injunctive relief. *See id.*

1  claim for equitable relief, but nowhere did the Court prohibit Plaintiff from offering

2  additional equitable relief evidence, as Defendant suggests (at 12).

3       Indeed, during the pretrial conference, the Court informed the parties: "If Director

4  Shinn is being called only for the injunction purposes and not as a witness, as a fact

5  witness in this case, that I will undertake after the jury reaches a verdict one way or

6  another. I don't know if there are other witnesses that are going to testify only to the

7  injunction portion of this case, if so, I will undertake having them testify after the jury

8  reaches a verdict." [Tr. (9/08/2022) at 35:6-12] Critically, in the Court's reference to the

9  equitable relief claim, it did not limit the witnesses that could be called after the jury

10  verdict to Director Shinn or Defendant's witnesses; but instead made clear that the

11  equitable relief claim, and presentation of equitable relief evidence, would be undertaken

12  separately after the jury verdict. That is exactly what Plaintiff proposes to do once he

13  updates discovery with current condition evidence.

14  **II.    ARGUMENT**

15      **A.    Plaintiff is entitled to pursue equitable relief.**

16          **1.    The jury verdict does not prohibit Plaintiff's equitable relief.**

17       In relation to Plaintiff's first Eighth Amendment claim, the jury was asked to

18  decide "Did [Defendant Ryan, Defendant Trujillo, Defendant Larson, or Defendant Pitz]

19  fail to protect Plaintiff Crago in violation of the Eighth Amendment." [Dkt. 342] That's

20  it. The jury did not make a single finding related to whether conditions resulting from

21  ADC's policies and practices violated Plaintiff's constitutional rights. And the jury made

22  no findings regarding whether Defendant Shinn *currently* violates Plaintiff's

23  constitutional rights by implementing policies and practices that are deliberately

24  indifferent to a substantial risk of serious harm to Plaintiff. Thus, the jury's findings

25  cannot foreclose Plaintiff's injunctive relief claim and relief remains appropriate. *C & E*

26  *Servs., Inc. v. Ashland, Inc.*, 601 F. Supp. 2d 262, 278-79 (D.D.C. 2009) ("An

examination of the trial evidence, the parties' argument and the Court's instructions and the verdict form indicates beyond any argument that the jury was not called upon to make any factual finding as to the intention of the government and of Ashland when they entered into the settlement agreement …. Accordingly, the jury's verdict has no preclusive effect on the equitable indemnification claim."); *see also Clergeau v. Loc. 1181, Amalgamated Transit Union, AFL-CIO*, 162 F. App'x 32, 35 (2d Cir. 2005) ("In the instant case, the judge's factual findings covered the time-frame after the jury's verdict, thus they did not necessarily conflict with the jury's findings regarding Clergeau's ability to find unionized work up until its verdict.").

Cases cited by Defendant (at 13) are inapposite. In *Mayfield v. United States*, 599 F.3d 964 (9th Cir. 2010), the Ninth Circuit considered only whether the plaintiff had standing for prospective injunctive relief. *Id.* at 969. It did not address a jury verdict or evaluate a Plaintiff's injunctive claim after a jury trial. *See id.* Indeed, in *Mayfield* it was undisputed that past constitutional violations had occurred. *Id.* at 970. It thus has no bearing on the court's findings in this case. Nor does *Green v. Mansour*, 474 U.S. 64, 68 (1985), support Defendant's point. There, the Supreme Court did not address a jury verdict or evaluate a Plaintiff's injunctive claim after a jury trial. It stands only for the undisputed proposition that injunctive relief requires a continuing violation of federal law. Plaintiff has repeatedly alleged that ASPC Lewis's current conditions violate his constitutional rights and constitute such a continuing violation.[2]

---

[2] This is consistent with the common practice of courts in other contexts. Courts often, for example, separate injunctive relief sought against the state from damages sought against individual defendants when evaluating qualified immunity. *See Vincent v. Stewart*, 757 F. App'x 578, 581 (9th Cir. 2018) (affirming dismissal of individual defendants entitled to qualified immunity although a genuine dispute remained as to whether the plaintiff was entitled to injunctive relief); *Hausken v. Lewis*, No. C12-5882 BHS-JRC, 2014 WL 1912058, at *4 (W.D. Wash. May 12, 2014) (noting the court's order earlier in the matter finding that that some defendants "had qualified immunity from damages, but . . . [Plaintiff] could proceed with a claim for injunctive relief against

1    **2.    Plaintiff's proposed relief is narrowly tailored.**

2        The scope of Mr. Crago's proposed injunction conforms to the Prison Litigation

3    Reform Act's (PLRA) requirement that a court "shall not grant or approve any

4    prospective relief unless the court finds that such relief is narrowly drawn, extends no

5    further than necessary to correct the violation of the Federal right, and is the least

6    intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. §

7    3626(a)(1). An injunction granting Mr. Crago access to safe living arrangements—

8    including working locks, accurate STG screening, and an adequately staffed facility—is

9    narrowly drawn, extends no further than necessary to correct the constitutional violations,

10   and is the least intrusive means necessary to correct the violation. The relief that Mr.

11   Crago requests merely requires Defendant to comply with their obligation to provide him

12   with constitutionally adequate care and living arrangements. *See Norsworthy v. Beard*, 87

13   F. Supp. 3d 1164, 1195 (N.D. Cal. 2015). Further, "[t]here is no evidence that granting

14   this relief will have any adverse impact on public safety or the operation of the criminal

15   justice system." *See id.* at 1195 (quoting 18 U.S.C. § 3626(a)(2)).[3]

16   **3.    Plaintiff's proposed relief must be based on current conditions.**

17       Plaintiff's equitable relief claim can only be based on evidence of current

18   conditions at ASPC Lewis. *See Roman*, 977 F.3d at 945; *see cf. Vincent v. Stewart*, 2020

19   WL 59870, at *9 (W.D. Wash. Jan. 2, 2020), *report and recommendation adopted*, 2020

20   WL 59531 (W.D. Wash Jan. 6, 2020). ("Equitable authority of the district court requires

21

22   them in their official capacities"); *Daurio v. Ariz. Dep't of Child Safety*, No. CV-18-
     03299-PHX-GMS, 2020 WL 6940812, at *4 (D. Ariz. Nov. 25, 2020), *reconsideration*

23   *denied,* No. CV-18-03299-PHX-GMS, 2021 WL 1044180 (D. Ariz. Feb. 8, 2021)
     (dismissing damages claims because defendants were entitled to qualified immunity but

24   allowing the claims to proceed as to injunctive relief).

25   [3] Although Defendant suggests the PLRA creates an additional hurdle to
     Plaintiff's prospective relief, the Ninth Circuit has clarified that the PLRA "has not
     substantially changed the threshold findings and standards required to justify an

26   injunction." *Gomez v. Vernon*, 255 F. 3d 1118, 1129 (9th Cir. 2001).

1   an examination of circumstances that exist at the time of trial, and therefore the rule of

2   mandate bends to accommodate new facts showing changes in conditions, context and

3   circumstances that are relevant to the need for, and scope of, any equitable remedy."). As

4   discussed at length in Plaintiff's Motion, the limited evidence available to Plaintiff

5   demonstrates that Plaintiff's constitutional rights to be safe and secure in his

6   accommodations are currently violated by Defendant's policies and practices at ASPC

7   Lewis. [*See* Dkt. 367 at 5-10] But Plaintiff has largely been prohibited from discovering

8   the information necessary to fully litigate the adequacy of current conditions, especially

9   since discovery closed nearly two years ago. [*Id.* at 10]

10          **B.      The Court should allow Plaintiff to reopen discovery.**

11                  **1.      The Court has discretion to reopen post-trial discovery.**

12          Contrary to Defendant's assertion (at 14), in the narrow subset of cases where

13   courts have reopened discovery for the limited purpose of updating facts in the equitable

14   relief phase, they did not engage in a Rule 16 analysis.

15          In *McKenna v. City of Phila.*, Nos. 98-5835, 99-1163, 2010 WL 2891591, at *1

16   (E.D. Pa. July 20, 2010), three plaintiffs filed retaliation claims against their employer.

17   The court held a jury trial on the plaintiffs' retaliation claims and retained equitable relief

18   claims for a post-jury-trial separate proceeding. *Id.* at 7. After the jury verdict, the court

19   permitted limited discovery on the issue of one Plaintiff's equitable entitlement to front

20   and back pay. *Id.* at *8. When the defendants later challenged the court's decision to

21   allow additional discovery into the equitable relief claims, the court reasoned that it was

22   proper because additional discovery was necessary to update plaintiff's wage and earning

23   information for the five-year period between the end of discovery and the hearing on the

24   equitable relief claim. *Id.* at *14-15 ("Permitting this additional discovery was neither

25   unfair to the plaintiffs nor an abuse of discretion by the Court.").

26

1      In *Reyazuddin v. Montgomery Cnty.*, 276 F. Supp. 3d 462, 464 (D. Md.

2  2017), *aff'd*, 754 F. App'x 186 (4th Cir. 2018), plaintiff brought compensatory and

3  equitable claims against her employer for failing to provide reasonable accommodations

4  for her disability. A jury found for plaintiff on her claims up to October 2015. *Id.* at 465.

5  Plaintiff did not submit to the jury the question of whether her employer had provided a

6  reasonable accommodation by offering a new position to plaintiff in October 2015.

7  Instead, after jury trial, the parties proceeded to discovery regarding that new position. *Id.*

8      Defendant (at 17) attempts to distinguish these cases because they involved claims

9  where the jury verdicts informed the Court's post-trial equitable relief proceedings.

10  Plaintiff does not dispute that the plaintiffs in *McKenna* and *Reyazuddin* received some

11  type of relief from the jury before the courts considered their equitable relief claims. But

12  those facts are irrelevant here. Plaintiff cites these cases to demonstrate that, when a court

13  properly considers equitable relief after a jury verdict, the court may allow discovery to

14  update information related to the equitable relief. And that is exactly what Plaintiff is

15  asking the Court to do here. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1027

16  (9th Cir. 2006) ("[D]istrict courts have 'wide latitude in controlling discovery, and [their]

17  rulings will not be overturned in the absence of a clear abuse of discretion.'" (quoting

18  *California v. Campbell*, 138 F.3d 772, 779 (9th Cir 1998)).

19                  **2.      Plaintiff has good cause to reopen discovery.**

20      Even if Rule 16's good cause standard does apply here, the six factors weigh in

21  favor of allowing Plaintiff to reopen discovery:

22      First, the hearing or bench trial date on Plaintiff's equitable relief claim has not yet

23  been set. So, the first factor weighs in favor of Plaintiff. *See Watt v. All Clear Business*

24  *Solutions, LLC*, 840 F. Supp. 2d 324, 327 (D.D.C. 2012) (granting motion to reopen

25  discovery despite plaintiff's lack of diligence, because no trial date had been set,

26  defendant was not prejudiced, and the discovery was limited).

The second factor—opposition to the request—weighs in favor of the Defendant.

The third factor (Defendant's prejudice) weighs in favor of Plaintiff. Defendant merely asserts that this factor weighs in its favor, and "Defendant will be prejudiced if Plaintiff are [sic] allowed to undercut the jury's verdict," without any further evidence or explanation. This baseless assertion does not tilt the scales in Defendant's favor on this factor. *See Anderson v. Colo., Dep't of Corrs.*, 848 F. Supp. 2d 1291, 1301 (D. Colo. 2012); *In re Christou*, Nos. 06-68251-MHM, 06--68376-MHM, 2008 WL 7880888, at *1 (Bankr. N.D. Ga. Nov. 30, 2008) (granting motion to reopen discovery where the length of delay was short, delay was justified, and "Defendant [presented] no specific evidence or prejudice except the mere passage of time."). To the extent Defendant claims he is prejudiced by the scope of Plaintiff's requested discovery, that is discussed below. Any complaint about the breadth of the discovery can also be addressed by the Court by modifying the scope of Plaintiff's proposal.

The fourth factor, diligence, weighs in favor of Plaintiff because he could not have obtained evidence about current conditions at ASPC Lewis necessary to prove equitable relief until it was time for the Court to proceed on his equitable relief claim. Plaintiff was therefore diligent in seeking this discovery now, before the court set the hearing. *See cf. Great N. Ins. Co v. Ruiz*, 688 F. Supp. 2d 1362, 1376 (S.D. Ga. Feb. 5, 2010) (finding good cause where Plaintiffs were unable to request a modification in a scheduling order until they had access to the necessary information). Further, Defendant admits, in his extensive discussion of Plaintiff's early discovery efforts, that Plaintiff was diligent in pursuing discovery during the discovery period, especially considering he was pro se. *See Galvan v. Duffie*, No. EDCV 13-1492, 2018 WL 10436581, at *3 (C.D. Cal. Aug. 27, 2018) ("The Court is satisfied that Plaintiff has shown diligence in pursing discovery as far as possible."). But that diligence would not have helped Plaintiff obtain evidence on

1    current conditions at ASPC Lewis before the close of fact discovery and in preparation

2    for the hearing on Plaintiff's equitable relief claim.

3         The fifth factor, foreseeability, weighs in favor of Defendant because Plaintiff

4    knew he would need updated current conditions to support his equitable relief claim. But

5    as discussed above, Plaintiff needed to wait to ask for this discovery until it was time to

6    proceed on his equitable relief claim.

7         And the sixth factor strongly favors Plaintiff. Discovery into conditions at ASPC

8    Lewis from 2020-2022, which has never been exchanged in this proceeding, will most

9    certainly lead to relevant evidence regarding whether the conditions at ASPC Lewis

10   continue to be unsafe and unsecure and whether Plaintiff's equitable relief is appropriate.

11
           **3.    The unique posture of Plaintiff's equitable relief claim warrants
12              a reopening of discovery on current conditions at ASPC Lewis,
                regardless of whether there is good cause.**

13        Even if the Court found that Plaintiff failed to demonstrate good cause, it could

14   still allow a limited reopening of discovery to update current conditions, which is all that

15   is required here. *See Campos-Eibeck v. C.R. Bard Inc.*, 2020 WL 835305, at *6 (S.D. Cal.

16   Feb. 20, 2020) (denying a reopening of general fact discovery under Rule 16 but allowing

17   limited additional expert discovery to update medical literature published since 2017).

18        Indeed, in an analogous situation, courts often reopen discovery for limited

19   purposes when a case is on remand from the circuit court. *See, e.g., Vincent*, 2020 WL

20   59870, at *9 (allowing parties to update discovery and issuing new discovery deadline

21   where "the bench trial must include the facts that exist in discovery as to the conduct of

22   individual defendants as well as currently relevant policies of the defendants who are

23   sued in their official capacities, the specific acts and omissions of defendants, as well as

24   any practices or customs that are relevant to the implementation of those policies by the

25   defendants in this case"); *id.* ("[E]quitable relief justifies discovery that allows for up-to-

26   date information at trial"); *see also United States v. Sci Applications Int'l Corp.*, 301

1  F.R.D. 1, 4 (D.D.C. 2013) ("Barring SAIC from pursing limited discovery regarding

2  current value would subject it to a manifest injustice."). This is because "[f]rom a

3  practical standpoint, … common sense dictates that a dispute over prospective relief

4  requires consideration of the facts as they exist at the time of the hearing, not as they

5  existed over three years ago[.]" *Mercexchange, LLC v. eBay, Inc.*, 467 F. Supp. 2d 608,

6  612 (E.D. Va. 2006).

7          **C.    Plaintiff's proposed discovery is reasonable and appropriate.**

8          Defendant incorrectly argues (at 18) that Plaintiff's proposed discovery is

9  unreasonable. Contrary to Defendant's position, the Ninth Circuit does not require

10  Plaintiff to make a "particularized showing" of necessity before obtaining additional

11  discovery. *See Coleman v. Dep't of Healthcare Servs.*, 2020 WL 589194, at *6 (E.D. Cal.

12  Feb. 6, 2020) ("[R]ecognizing that this 'particularized showing' standard does not appear

13  in the text of the rules themselves, many courts have eschewed imposing this heightened

14  burden on parties seeking to exceed the default discovery limits."); *see also id.*

15  (collecting cases). Rather, the court may grant leave to seek additional discovery so long

16  as the additional discovery is consistent with Rule 26(b)(2). *Krause v. Hawaiian Airlines,*

17  *Inc.*, No. 2:18-CV-00928 JAM AC, 2019 WL 3731732, at *4 (E.D. Cal. Aug. 8, 2019).

18  "Rule 26(b)(2), in turn, requires that the court apply a benefits versus burden approach

19  and ensure that the discovery is not unreasonably cumulative or duplicative." *Id.* (internal

20  citations and quotations omitted).

21          Here, Plaintiff's requested discovery will not be cumulative or duplicative because

22  Plaintiff has never obtained discovery into current conditions at ASPC Lewis. But even if

23  the "particularized showing" was required, Plaintiff would satisfy it here. In this case,

24  Plaintiff has sought "necessary injunctive relief" for 1) the lack of safety and security; 2)

25  the severe and chronic understaffing at the prison; and 3) the use of inmates to control

26  and discipline other inmates as "de facto" staff. [Dkt. 222 at 3-14, 22, 26] Consistent with

1    his request for injunctive relief, Plaintiff has explicitly identified six narrow issues upon

2    which he seeks further discovery, as well as the evidence he expects to uncover. Because

3    each of these issues is directly relevant to the current conditions at ASPC Lewis,

4    Plaintiff's requests for additional discovery are reasonable.

5

6          **D.    The Court should appoint a special master to assist with gathering and
            reviewing the relevant discovery.**

7          Contrary to Defendant's assertions (at 19), 18 U.S.C. § 3626(f)(1)(B) does not

8    limit appointment of a special master to only the remedial phase of a case. Rather,

9    § 3626(f)(1)(B) simply clarifies that *if* the court appoints a special master "during the

10   remedial phase of the action," it must first find that the remedial phase is sufficiently

11   complex to warrant appointment. 18 U.S.C. § 3626(f)(1)(B). *Hawker v. Consovoy*, 198

12   F.R.D. 619, 629 (D.N.J. 2001), is not inconsistent with this understanding. There, the

13   court denied the class members' request for a special master at the remedial stage of the

14   case because the proposed settlement agreement already provided adequate oversight

15   protections. *Id*. at 629.

16         Otherwise under § 3626(f)(1), the Court may appoint a special master in any civil

17   action involving prison conditions, so long as the individual appointed is "disinterested

18   and objective" and "will give due regard to the public safety, to conduct hearings on the

19   record and prepare proposed findings of fact." Indeed, a special master may be

20   particularly helpful where, like here, evidence is completely controlled by one party who

21   has been recalcitrant and litigious over every single discovery request to date.[4] *See Smith*

22   *v. Premiere Valet Servs., Inc.*, No. CV19-09888-CJC (MAAx), 2021 WL 3413317, at *1

23   (C.D. Cal. Aug. 3, 2021) (appointing a special master to oversee "extensive and

24   ───────────────

25          [4] For example, as discussed in Plaintiff's motion, after the close of trial Plaintiff
     received a copy of meeting minutes demonstrating that Defendant Pitz condoned inmate-
     on-inmate violence, yet that document was not ever produced during discovery. [Dkt. 367
26   at 11 n.4]

1    contentious" discovery); *Perez v. Sw. Fuel Mgmt., Inc.*, No. CV16-4547 FMO (AGRx),

2    2017 WL 10574066, at *2 (C.D. Cal. Feb. 13, 2017) (appointing a special master to

3    supervise "contentious" discovery disputes "predicated on defendants' refusal to provide

4    discovery, alleged spoliation of evidence . . . [and] assertion that they anticipate filing

5    'numerous additional discovery disputes'").[5]

6         Further, under Rule 53 a special master has authority to "regulate all proceedings,"

7    "conduct[] an evidentiary hearing," and "compel, take, and record evidence." Fed. R.

8    Civ. P. 53(c)(A), (C). This authority includes the ability to supervise the parties'

9    discovery and presentation of evidence. *See Glover v. Udren*, No. 08-990, 2011 WL

10   5445232, at *2 (W.D. Pa. Nov. 9, 2011) (holding that a magistrate judge did not abuse his

11   discretion in appointing a special master under Rule 53 to oversee the parties' discovery-

12   related disputes), *aff'd sub nom. Glover v. Wells Fargo Home Mortg.*, 629 F. App'x 331

13   (3d Cir. 2015).

14        **E.    The Court should not certify a decision for interlocutory review.**

15        Defendant's request that any decision be certified for interlocutory appeal (at 21)

16   should be denied. Defendant conclusively asserts that "whether to grant the losing party

17   at a jury trial the ability to reopen discovery on injunctive relief for constitutional

18   violations which a jury has determined do not exist is certainly a controlling question of

19   law to which there is substantial ground for difference." This is not sufficient to warrant

20   interlocutory review.

21

22        _____

          [5] Defendant also asserts (at 20) that the costs of appointing a special master would

23   be unduly burdensome. But under the PLRA, the compensation and costs of a special

     master are "paid with funds appropriated to the Judiciary" at an "hourly rate not greater

24   than the hourly rate established under section 3006A for payment of court-appointed

     counsel." 18 U.S.C. § 3626(f)(4); *see Balla v. Idaho State Bd. of Corr.*, No. 1:81-CV-1165-

25   BLW, 2011 WL 108727, at *2 (D. Idaho Jan. 6, 2011) (appointing a special master under

     § 3626(f) as "the most cost-effective and efficient route" to resolving the parties'

26   "stalemate."). Thus, Defendant's concerns here are unwarranted.

1    The requirements for certification of interlocutory appeal are: "(1) that there be a

2    controlling question of law, (2) that there be substantial grounds for difference of

3    opinion, and (3) that an immediate appeal may materially advance the ultimate

4    termination of the litigation." *In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d

5    1020, 1026 (9th Cir. 1982). The party pursuing interlocutory appeal has the burden of

6    establishing that exceptional circumstances warrant it. *Couch v. Telescope Inc.*, 611 F.3d

7    629, 633 (9th Cir. 2010). When movant fails to meet the requirements for interlocutory

8    appeal, such relief is appropriately denied. *See Reid v. I.C. Sys. Inc.*, No. CV-12-02661-

9    PHX-ROS, 2013 WL 12177463, at *2 (D. Ariz. Nov. 20, 2013).

10    As discussed above, the law provides that the jury verdict will not control the

11    Court's consideration of Plaintiff's equitable relief claim because the findings of fact in

12    the verdict do not overlap with the findings the Court will make to resolve Plaintiff's

13    equitable relief claim. Thus, if Plaintiff's motion is granted it will be based on that

14    established legal principle and the Court's discretion. There will therefore be no

15    substantial grounds for difference of opinion, and no basis to certify an order for

16    interlocutory appeal.

17    **III.    CONCLUSION**

18    For the foregoing reasons, Plaintiff respectfully asks that the Court to grant his

19    motion and allow discovery into the current conditions of ASPC Lewis, consistent with

20    the proposal in his motion. [Dkt. 367 at 10-11].

21

22

23

24

25

26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Dated:  October 14, 2022

**PERKINS COIE LLP**

By: */s/ Janet M. Howe*
      Christopher D. Thomas
      Andrea J. Driggs
      Paul F. Eckstein
      Janet M. Howe
      Kelleen Mull
      2901 North Central Avenue, Suite 2000
      Phoenix, Arizona 85012-2788

      Thomas J. Tobin *(admitted pro hac vice)*
      Cara Wallace *(admitted pro hac vice)*
      1201 Third Avenue, Suite 4900
      Seattle, Washington 98101

*Attorneys for Plaintiff Earl Felton Crago, Jr.*

1

2 **CERTIFICATE OF SERVICE**

3    I hereby certify that on October 14, 2022, I electronically transmitted the attached

4 documents to the Clerk's Office using the CM/ECF System for filing and transmittal of a

5 Notice of Electronic Filing to the following CM/ECF registrants:

6 Kathleen L. Wieneke
Laura A. Van Buren
7 Jacob A. Weld
Wieneke Law Group PLC, Suite 209
8 1225 West Washington Street, Suite 313
Tempe, Arizona 85288
9 Email: kwieneke@wienekelawgroup.com
Email: lvanburen@wienekelawgroup.com
10 Email: jweld@wienekelawgroup.com

11 Attorneys for Defendants

12
   I hereby certify that on October 14, 2022, I served the attached document by first
13
class mail on Judge Roslyn O. Silver, United States District Court of Arizona, 401 West
14
Washington Street, SPC 59, Phoenix, Arizona 85003-2158.
15

16 *s/ Shawne Murphy*

17

18 158496900.1

19

20

21

22

23

24

25

26